**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Louis B. Antonacci | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:26-cv-00211-LLA |
| | ) | |
| Rahm Israel Emanuel, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS**
**THE LANE CONSTRUCTION CORPORATION AND SETH FIRMENDER**

**INTRODUCTION**

Despite three federal courts having previously dismissed with prejudice as wholly insubstantial and frivolous two similar complaints filed by Plaintiff, a *pro se* attorney, Plaintiff now attempts a third bite at the apple by filing yet another Complaint that recycles the same implausible allegations of a boundless criminal enterprise, made up of members, including The Lane Construction Corporation ("Lane") and its former General Counsel, Seth Firmender, who, other than once having engaged Plaintiff on a single matter and terminated him during the engagement, shared no connection with the other alleged enterprise members beyond an alleged intent to destroy Plaintiff and his legal career as committed "Zionists."

Plaintiff's Complaint is as insubstantial and frivolous as the two that preceded it, and warrants the same fate that they met. The Complaint's wild and outlandish accusations of a "criminal Zionist enterprise" intent on violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") present no federal question suitable for decision, so the Complaint should be dismissed for lack of subject-matter jurisdiction. The Complaint also violates

3230377.50094191.2

Fed. R. Civ. P. 8 by presenting not a short and plain statement of the claims, but rather a rambling and untidy assortment of preposterous claims that lump together all the Defendants indiscriminately, making it impossible for Lane and Mr. Firmender to prepare an adequate response or defense, which is also reason to dismiss the Complaint.

Even if the Court were to exercise jurisdiction and not dismiss the Complaint under Rule 8, the claims asserted against Lane and Mr. Firmender still require dismissal.  In addition to being time-barred, the Complaint's RICO claim fails to state a plausible claim, as it does not sufficiently allege facts establishing either an "enterprise," that Lane and Mr. Firmender were members of any such enterprise, necessary predicate acts, or a "pattern of racketeering activity" that caused injury to Plaintiff.  Given Plaintiff's failure to sufficiently plead a RICO violation, and because it fails to sufficiently allege an agreement to violate RICO and is time-barred, Plaintiff's RICO conspiracy claim also must fail.

Even were the Court to exercise supplemental jurisdiction over Plaintiff's D.C. Antitrust Act conspiracy claim – and it should not, given the absence of a plausible RICO claim – that claim must be dismissed because it fails to sufficiently allege an agreement to violate that antitrust statute, does not plead the type of antitrust injury to the market necessary to confer antitrust standing on Plaintiff, and is time-barred.

Finally, Plaintiff's conspiracy claim to interfere with civil rights must also be dismissed for failure to state a plausible claim because it does not sufficiently allege the necessary agreement to deprive Plaintiff of any legal rights and protections, let alone one motivated by a class-based, invidiously discriminatory animus.

Having previously filed in other courts roughly the same complaints dismissed with prejudice, Plaintiff, no stranger to the courts, should not be given license to further and needlessly

3230377.50094191.2

waste the time and effort of the parties or the Court, and Plaintiff's Complaint, therefore, should be dismissed with prejudice.

## STATEMENT OF RELEVANT ALLEGED FACTS

Plaintiff, an attorney, alleges in his Complaint that, beginning when he joined the law firm of Holland & Knight, LLP as an associate in 2018 and continuing to this day, "a Zionist criminal enterprise has sought to destroy him" and his legal career. Complaint, Doc. 1 at 4.

This "Zionist criminal enterprise" is made up of "various actors" who have "a personal or professional relationship" with Plaintiff – including "corrupt" state and federal courts in Illinois and Virginia who have "defamed" him, former White House Chief of Staff, Mayor of Chicago and U.S. Ambassador to Japan "Rahm Emanuel, a Zionist tool," a "fraudulent" and "Zionist district court judge" in the Eastern District of Virginia, who dismissed "another federal suit against this Zionist criminal enterprise" filed by Plaintiff in 2024, and "the Zionist-run Virginia State Bar" – and who, on behalf of this "Zionist criminal enterprise," "spread . . . false narratives" and "lies" about Plaintiff "[i]n furtherance of this scheme" to "destroy him" and his legal career. *Id*. at 4-5. According to the Complaint, these "Zionists seek to elevate the weak to protect them from the strong, because Zionists are afraid of everything," "[t]his Zionist criminal enterprise has created a race to the bottom in the profession responsible for maintaining the credibility of our political institutions," and "[t]he Zionists must be stopped before they undo all social and economic progress over the past two centuries." *Id*. at 5-6.

Specifically, Plaintiff alleges in his Complaint that while he was an associate at Holland & Knight LLP, he filed a RICO and state law fraud claim "against an alleged enterprise that sought to defend a firm client," and he planned to name in the lawsuit "a Jew and a Zionist," Gerald Katz, but was countermanded by the firm's executive partner, Paul Kiernan, also a "Zionist and Jew." *Id*., ¶¶ 29-46. At that time, Plaintiff began looking for another job and was on the verge of

3

receiving an offer to join the law firm of Sheppard Mullin LLP, but Stephen Shapiro, a partner at Holland & Knight and also "a Zionist and a Jew," "knowingly defamed" him to prevent him from being offered the position because "the criminal enterprise" of which Messrs. Kiernan and Shapiro were a part was "afraid of the legal theories espoused" by Plaintiff and "wished to end his career as quickly as possible" and "prevent him from gaining subsequent employment." *Id*., ¶¶ 60-64, 72. Plaintiff was asked to resign from Holland & Knight on April 27, 2010. *Id*., ¶¶ 52, 72.

According to Plaintiff, Rahm Emanuel "is a leader" of the alleged "Zionist criminal enterprise" who, while he served as President Obama's Chief of Staff from January 2009 to October 2010, agreed with Paul Kiernan, Stephen Shapiro and Gerald Katz "to use their enterprise to destroy [Plaintiff's] legal career because his contempt for corruption posed a threat to them and the socialist totalitarianism that is the goal of Zionism." *Id*., ¶¶ 87-88.  After relocating to Chicago, in August 2011, Plaintiff accepted a job offer at Seyfarth Shaw, LLP ("Seyfarth") but "[t]his was a trap set by this enterprise, particularly through Kiernan, Seyfarth and Emanuel." *Id*., ¶¶ 92-93, 127.

Plaintiff alleges that in August 2011, at the direction of then-Mayor Rahm Emanuel, the City of Chicago engaged Seyfarth and Anita Ponder on a matter, and Seyfarth tasked Plaintiff to work with Ms. Ponder, but "she is impossible to work with and regularly harasses those assigned to work with her." *Id*., ¶¶ 96-100.  Rahm Emanuel retained Ms. Ponder so that, among other things, she could "compromise [Plaintiff's] legal career," which Mr. Emanuel "deems a threat to this enterprise." *Id*., ¶ 106.  On May 22, 2012, Seyfarth, "at the behest of Rahm Emanuel, Paul Kiernan and Stephen Shapiro, who deem [Plaintiff] a threat to their criminal enterprise," terminated the employment of Plaintiff, who was "told that his work with Ponder months earlier was the issue,"

4

but Plaintiff alleges that "[t]he real reason [he] was terminated was to prevent him from promoting legal theories that would implicate this enterprise." *Id.*, ¶¶ 109-115.

In November 2012, Plaintiff filed suit against Seyfarth and Ms. Ponder in Illinois state court. *Id.*, ¶ 134. Because he was not a member of the Illinois Bar, he engaged an attorney, a Ms. Major, to represent him, and he alleges that Ms. Major, with Rahm Emanuel, Seyfarth, Matthew Gehringer, former General Counsel of the law firm of Perkins Coie and "a Jew," a judge and court reporters in the case conspired to sabotage his case and damage his professional reputation. *Id.*, ¶¶ 122-142, 150, 153-156, 171-172, 179, 199-250.

At around the same time, in November 2012, Plaintiff submitted to the Illinois Bar an Illinois Bar application, which was assigned to Ellen Mulaney of the Illinois Bar Character and Fitness Committee for review. *Id.*, ¶ 132. Plaintiff alleges that an Inquiry Panel, which included Ms. Mulaney and others, scheduled a hearing on Plaintiff's application on January 25, 2013, and engaged in an ongoing pattern of defrauding, harassing and intimidating Plaintiff into withdrawing or settling his lawsuit against Seyfarth and Ms. Ponder, which he refused to do. *Id.*, ¶ 132-133, 138, 143-149, 158-197. In April 2013, the Inquiry Panel issued a report, which Plaintiff's alleges "is rife with fraud," declining to certify Plaintiff's Illinois Bar application. *Id.*, ¶¶ 157, 176-178.

On April 29, 2015, Plaintiff filed a complaint against Seyfarth, Ms. Ponder and others in the U.S. District Court for the Northern District of Illinois "alleging RICO and other fraud claims against members of this criminal enterprise." *Id.*, ¶ 251.[1] Six days later, U.S. District Court Judge Milton I. Shadur dismissed Plaintiff's complaint *sua sponte* for lack of subject matter jurisdiction. *Id.*, ¶ 264. The court found that "Antonacci's assertions that he has assertedly been the victim of a massive global conspiracy on the part of what seems to be the entire world with which he comes

---

[1] A true and correct copy of that complaint is attached hereto as Exhibit A.

5

into contact plainly appears to fail – flat out – the 'plausibility' requirement established by the *Twombly-Iqbal* canon that has taken the place of the long-standing and overly generous *Conley v. Gibson* approach." *Antonacci v. City of Chicago*, 2015 U.S. Dist. LEXIS 58490, *2 (N.D. Ill. May 5, 2015).  The court held that "Antonacci cannot use civil RICO as the springboard for federal-question jurisdiction in the subjective and objective good faith regarded by Rule 11(b) . . . ." *Id*. at *5.

The Seventh Circuit affirmed the district court's judgment, Doc. 1, ¶ 275, agreeing that "this is not a simple case of failure to state a claim on which relief can be granted" and instead "is governed" by *Bell v. Hood*, 327 U.S. 678 (1946) because "Antonacci's federal claims were so insubstantial that they did not suffice to engage federal jurisdiction . . . ." *Antonacci v. City of Chicago*, 640 F. App'x 553, 555 (7th Cir. 2016).  The Seventh Court held that

> Antonacci's complaint fails to raise anything that is worth salvaging . . . .  The difficult question is whether Antonacci's RICO claims are legally frivolous, or if they simply fail to state a claim.  In our view, the former is the proper description.  While he premises his RICO claims on multiple allegations of fraud, each individual allegation is so unsupported by any plausible detail as to be preposterous.

*Id*. at * 557.  Plaintiff petitioned the U.S. Supreme Court for a writ of certiorari, which was denied in October 2016. Doc. 1, ¶ 280.

Undeterred, as Plaintiff alleges, on February 14, 2024, he "filed his second federal lawsuit against this Zionist criminal enterprise" in the U.S. District Court for the Eastern District of Virginia. Doc. 1, ¶ 240.[2]  Plaintiff alleges that "his second federal lawsuit against this Zionist criminal enterprise" was "prematurely assigned" to Judge Michael Nachmanoff, "a Zionist district judge appointed by Joe Biden," who dismissed the complaint for lack of subject matter jurisdiction.

---

[2] A true and correct copy of that complaint is attached hereto as Exhibit B.

6

Doc. 1 at 5.  Plaintiff appealed Judge Nachmanoff's ruling and "[t]he Fourth Circuit then sat on . . . [the] appeal for ten months, allowing the Zionist-run Virginia State Bar to pursue an attack on Antonacci's law license." *Id*.  Plaintiff alleges that after the Fourth Circuit "affirmed [Judge] Nachmanoff's fraudulent disgrace in a one-page order," he petitioned the U.S. Supreme Court for a writ of certiorari, which was denied. *Id*.

In his order, Judge Nachmanoff noted that Plaintiff's second federal lawsuit "mirrors" his previous federal lawsuit filed in the Northern District of Illinois, and asserts "roughly identical allegations concerning all the events prior to his previous federal lawsuit," and also "that additional individuals and companies, which are part of the same criminal enterprise, have taken actions since then to destroy him." *Antonacci v. Emanuel*, 2024 U.S. Dist. LEXIS 107279, *6 (E.D. Va. May 23, 2024).  For example, Plaintiff alleged, "without any other context," that one defendant "'race-baited' him at a restaurant and threatened to kill him before punching Antonacci in the nose," other defendants "involved in this alleged fraudulent scheme 'monitored Antonacci by illegally hacking into his computer system and/or mobile phone,'" and "Defendant Seth Firmender, whose employer was at one point Antonacci's client, 'set up Antonacci for a false claims act investigation' on the matter, though Antonacci does not allege that anyone ever brought a False Claims Act suit against him." *Id*.

According to Judge Nachmanoff, "[a]lthough Antonacci has added new defendants and allegations, the alleged conspiracy – and the fundamental implausibility of it – has not changed" and he "agree[d] with the Seventh Circuit's assessment that Antanocci's previous, and now renewed, allegations are 'legally frivolous' because they are 'so unsupported by any plausible detail as to be preposterous.'" *Id*. at *7 (quoting *Antonacci*, 640 F. App'x at 557).  Judge Nachmanoff observed that Plaintiff's new allegations, including those related to Defendant Seth

7

Firmender, "do not move the needle towards plausibility – if anything they reinforce the implausibility of the alleged conspiracy.  Antonacci continues to 'fl[ing] wild accusations at a large,' and seemingly never-ending, 'number of people' who have no apparent connection other than their interactions, however tangential, to Antonacci." *Id*. (quoting *Antonacci*, 640 F. App'x at 557).

Reiterating Judge Shadur's admonition that "Antonacci cannot use civil RICO as the springboard for federal-question jurisdiction," *id*. (quoting *Antonacci*, 2015 U.S. Dist. LEXIS 58490 at *5), Judge Nachmanoff dismissed Plaintiff's complaint with prejudice for lack of subject matter jurisdiction "[b]ecause Antonacci's RICO and [Computer Fraud and Abuse Act] allegations are 'wholly insubstantial.'" *Id*. (quoting *Bell*, 327 U.S. at 682-83).

Undeterred still, Plaintiff now attempts a third bite at the apple and recycles essentially the same allegations, including those made against Mr. Firmender and now Lane itself, which two federal courts have previously found to be "legally frivolous" and so "insubstantial" that they do not suffice to engage federal jurisdiction. *See generally*, Doc. 1, ¶¶ 337-399.  Plaintiff again alleges, like he did in his complaint filed in the Eastern District of Virginia, that, after Plaintiff applied for a position with the U.S. Department of Justice in September 2019, "[t]he enterprise saw [his] application as a direct threat to their activity, so it set the AECOM Fraud in motion." *Id*. ¶ 340.[3]

Supposedly toward that end, Plaintiff alleges that one of his childhood friends, who "agreed to assist the criminal enterprise, through Emanuel, in its attempt to destroy Antonacci and his legal career," "connected the enterprise" with Mr. Firmender, then Lane's General Counsel. *Id*. ¶¶ 306,

---

[3] Indeed, just as the allegations in Plaintiff's second complaint mirrored those in his first complaint, most of the allegations in his latest Complaint now before this Court reiterate – often verbatim – the allegations in those earlier complaints. *See* Affidavit of Kelley Halliburton, attached hereto as Exhibit C.

8

310.  Lane then retained Plaintiff in October 2019, *id.* ¶ 345, to prepare "a legal analysis" of a dispute involving Lane's backcharge claim against AECOM Technical Services, Inc. ("AECOM"), Lane's design subcontractor on a construction project. *Id.* ¶¶ 346, 352, 357.  That dispute developed into litigation in Fairfax County Circuit Court. *Id.*, ¶ 361.

The Complaint alleges that, because the enterprise protects Mr. Firmender and other members from accountability, Mr. Firmender agreed to perpetrate the "AECOM Fraud," a scheme through which Mr. Firmender  agreed to orchestrate "dubious" claims against AECOM in order to "set[] up Antonacci for a false claims act investigation associated with Antonacci's representation of Lane" and "to sabotage Lane's case and implicate Antonacci in pursuit of Lane's dubious claims."  *Id.*, ¶¶ 313, 316.  The Complaint does not allege any False Claims Act investigation or claim was ever brought against Plaintiff.

The Complaint alleges that the AECOM Fraud consisted of, among other things: Lane changing its position regarding a legal issue "right before a hearing," *id.*, ¶ 316a; one of Lane's employees allegedly destroying documents, *id.*, ¶¶ 316a, 380; seeking to falsely associate Plaintiff with that employee's destruction of documents and data collection efforts, *id.*, ¶¶ 316b, 381; delaying hiring a consultant and ediscovery vendor, *id.*, ¶¶ 316d; and ordering the ediscovery vendor to stop work. *Id.*, ¶ 316e.

The Complaint alleges that the AECOM Fraud targeted Plaintiff and was premediated and agreed between AECOM's counsel and Mr. Firmender, who assured AECOM's counsel that Lane would be satisfied with the outcome of that suit because Mr. Firmender could agree to settle it at any time. *Id.*, ¶ 347.

The Complaint alleges that Lane and AECOM held a two-day mediation in June 2020 that "was a staged event meant only to attempt to implicate Antonacci in the AECOM Fraud" because

9

"[t]he parties had no intent of settling at mediation" and instead intended "to wait until the election to see if Biden won, in which case the enterprise's control of DOJ would allow them to perpetrate the AECOM Fraud with impunity." *Id*., ¶ 359. According to the Complaint, "President Biden, an admitted Zionist, is affiliated with this enterprise, particularly through Emanuel." *Id*., ¶ 362.

The Complaint alleges that Plaintiff was concerned that Fairfax County Circuit Court "Judge Thomas Mann, a Jew" who was assigned to the AECOM matter and had denied every motion and request presented by Antonacci, "was assisting this enterprise" and would use evidence presented by Antonacci against Lane, "thus providing Lane a basis for a legal malpractice claim." *Id*., ¶ 387. The Complaint does not allege that Lane ever filed a legal malpractice claim against Plaintiff.

The Complaint alleges that Antonacci raised concerns regarding the AECOM matter with Mr. Firmender, *id*., ¶ 392, and "[i]mmediately after Antonacci raised his concerns, Firmender asked Antonacci to cease working on the case immediately." *Id*., ¶ 393. "[O]n June 17, 2021, Firmender ordered all effort on the case halted." *Id*., ¶ 384.

## LEGAL STANDARD

"Federal [district] courts are courts of limited jurisdiction." *Stallard v. Goldman Sachs Grp., Inc*., 2024 U.S. Dist. LEXIS 215791, *8 (D.D.C. Nov. 27, 2024) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994)). "Federal law empowers federal district courts to hear only certain kinds of cases, and it is presumed that a cause lies outside this limited jurisdiction.'" *MSP Recovery Claims, Series LLC v. Pfizer, Inc.*, 2023 U.S. Dist. LEXIS 58653, *8 (D.D.C. Apr. 4, 2023) (quoting *Kokkonen*, 511 U.S. at 377).

"Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction." *MSP Recovery Claims, Series LLC*, 2023 U.S. Dist. LEXIS 58653 at *8 (citing Fed. R. Civ. P. 12(b)(1). A motion to dismiss under

10

Rule 12(b)(1) "presents a threshold challenge to the "[C]ourt's jurisdiction." *Stallard*, 2024 U.S. Dist. LEXIS 215791 at *8 (quoting *Morrow v. United States*, 723 F. Supp. 2d 71, 75 (D.D.C. 2010)). "Thus, the Court is obligated to dismiss a claim if it 'lacks . . . subject-matter jurisdiction.'" *Id*. (quoting Fed. R. Civ. P. 12(b)(1)). *See MSP Recovery Claims, Series LLC*, 2023 U.S. Dist. LEXIS 58653 at *8-9 ("A court that lacks jurisdiction must dismiss the action.") (citing Fed. R. Civ. P. 12(b)(1), 12(h)(3)).

Because it is to be presumed that a cause lies outside the Court's limited jurisdiction, the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Stallard*, 2024 U.S. Dist. LEXIS 215791 at *8-9 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). *Accord, MSP Recovery Claims, Series LLC*, 2023 U.S. Dist. LEXIS 58653 at *9) (citing *Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180, 185 (D.D.C. 2020)).

"When deciding a Rule 12(b)(1) motion, the court must 'assume the truth of all material factual allegations in the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Id*. (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). *Accord*, *Stallard*, 2024 U.S. Dist. LEXIS 215791 at *9. "But the Court 'may undertake an independent investigation that examines 'facts developed in the record beyond the complaint' in order to 'assure itself of its own subject matter jurisdiction.'" *MSP Recovery Claims, Series LLC*, 2023 U.S. Dist. LEXIS 58653 at *8 (quoting *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005)). *See Stallard*, 2024 U.S. Dist. LEXIS 215791 at *9 (in deciding a Rule 12(b)(1) motion, "the [C]ourt need not limit itself to the allegations of the complaint" but "may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case") (quoting *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9,

11

14 (D.D.C. 2001); *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000)).

On a Rule 12(b)(1) motion, the court does not assume the truth of legal conclusions; nor does it accept inferences that are unsupported by the facts set out in the complaint. *MSP Recovery Claims, Series LLC*, 2023 U.S. Dist. LEXIS 58653 at *8 (citing *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). Moreover, "the [p]laintiff's factual allegations in the complaint will bear closer scrutiny in resolving a [Rule] 12(b)(1) motion than resolving a [Rule] 12(b)(6) motion for failure to state a claim." *Stallard*, 2024 U.S. Dist. LEXIS 215791 at *9 (quoting *Grand Lodge*, 185 F. Supp. 2d at 13-14.

Fed. R. Civ. P. 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. *Moore v. U.S. Dep't of State*, 351 F. Supp. 3d 76, 87, (D.D.C. 2019). "To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to 'state a claim to relief that is plausible on its face.'" *Moore*, 351 F. Supp. at 87 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A facially plausible claim is one that 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Moore*, 351 F. Supp. 3d at 87 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). *Accord, Doe v. Siddig*, 810 F. Supp. 2d 127, 132 (D.D.C. 2011).

"This standard does not amount to a specific probability requirement, but it does require 'more than a sheer possibility that a defendant has acted unlawfully.'" *Moore*, 351 F. Supp. 3d at 87 (quoting *Iqbal*, 556 U.S. at 678). *See Siddig*, 810 F. Supp. 2d at 132 ("The plaintiff must provide more than just 'a sheer possibility that a defendant has acted unlawfully.'") (quoting *Iqbal*, 556 U.S. at 678). A complaint need not contain detailed factual allegations, "but alleging facts that are 'merely consistent with a defendant's liability . . . stops short of the line between possibility and

12

plausibility.'" *Moore*, 351 F. Supp. 3d at 87 (quoting *Iqbal*, 556 U.S. at 678). "'Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief,' and the case can be dismissed." *Cimino v. Internt'l Bus. Machines Corp.*, 2019 U.S. Dist. LEXIS 168059, *12 (D.D.C. Sept. 30, 2019) (quoting *Iqbal*, 556 U.S. at 679). *Accord, Klayman v. Judicial Watch, Inc.*, 296 F. Supp. 3d 208, 217 (D.D.C. 2018).

When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed to be true and should be liberally construed in the plaintiff's favor, and the plaintiff must be given every favorable inference that may be drawn from the allegations of fact. *G'Sell v. Carven*, 724 F. Supp. 2d 101, 107 (D.D.C. 2010) (citations omitted). *Accord, Moore*, 351 F. Supp. 3d at 87. "However, 'the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.'" *G'Sell*, 724 F. Supp. 2d at 107 (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). *See also Moore*, 351 F. Supp. 3d at 87 ("An 'unadorned, the defendant – unlawfully – harmed – me accusation' is not credited; likewise, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'") (quoting *Iqbal*, 556 U.S. at 678); *Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73, 79 (D.D.C. 2013) ("pleading must offer more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'") (quoting *Iqbal*, 556 U.S. at 678).

"Nor does the court accept 'a legal conclusion couched as a factual allegation,' or 'naked assertions devoid of further factual enhancement.'" *G'Sell*, 724 F. Supp. 2d at 107 (quoting *Iqbal*, 556 U.S. at 678). *See Moore*, 351 F. Supp. 3d at 87 ("The assumption of truth does not apply, however, to a 'legal conclusion couched as a factual allegation.'") (quoting *Iqbal*, 556 U.S. at 678);

13

*Nat'l ATM Council, Inc*., 922 F. Supp. 2d at 79 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions") (quoting *Iqbal*, 556 U.S. at 678).

"Ultimately, 'determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Moore*, 351 F. Supp. 3d at 87 (quoting *Iqbal*, 556 U.S. at 679). *Accord*, *Seed v. Pruitt*, 246 F. Supp. 3d 251, 254 (D.D.C. 2017); *Badwal v. Bd. of Trustees of Univ. of District of Columbia*, 139 F. Supp. 3d 295, 307 (D.D.C. 2015). S*ee also Siddig*, 810 F. Supp. 2d at 132 ("when a complaint's well-pleaded facts do not enable a court, 'drawing on its judicial experience and common sense,' 'to infer more than the mere possibility of misconduct,' it has not shown that the pleader is entitled to relief.").

Finally, "although *pro se* complaints are generally 'held to less stringent standards,' . . . this leniency is not afforded to *pro se* litigants who . . . are licensed attorneys." *Jones v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*, 2025 U.S. Dist. LEXIS 59302, *11 (D.D.C. Mar. 30, 2025) (citing *Spence v. VA*, 109 F. 4th 531, 536 (D.C. Cir. 2024)). *See Klayman v. Judicial Watch, Inc.*, 2021 U.S. Dist. LEXIS 28116, *7 (D.D.C. Feb. 16, 2021) ("several courts in this district have found that *pro se* attorney litigants are 'not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff because an attorney is presumed to have knowledge of the legal system and need[s] less protections from the court'") (quoting *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 234 (D.D.C. 2007)).  In any event, any liberal standard afforded to a *pro se* litigant is certainly "not a license to ignore the Federal Rules of Civil Procedure," and "even *pro se* litigants must comply with [those] Rules." *Kaul v. Fed'n of State Med. Bds*., 2021 U.S. Dist.

LEXIS 62007, *12, 47 (D.D.C. Mar. 31, 2021) (quoting *Neuman v. United States*, 70 F. Supp. 3d 416, 422 (D.D.C. 2014)).

## ARGUMENT

### A. Plaintiff's Complaint Should Be Dismissed For Lack of Subject-Matter Jurisdiction Because It is Wholly Insubstantial and Frivolous

"Dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction is justified where a claim is "immaterial and made solely for the purpose of obtaining jurisdiction or [it] is 'wholly insubstantial and frivolous.'" *Carmichael v. Pompeo*, 486 F. Supp. 3d 360, 367 (D.D.C. 2020) (quoting *Arbaugh v. Y&H Comp.*, 546 U.S. 500, 513 n. 10 (2006) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). *Accord*, *Agudas Chasidei Chabad v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008); *Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 25-26 (D.D.C. 2012); *Alec L. v. Jackson*, 863 F. Supp. 2d 11, 14 (D.D.C. 2012); *Anderson v. Wiggins*, 460 F. Supp. 2d 1, 7 (D.D.C. 2006). *See Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) ("A complaint may be dismissed on jurisdictional grounds when it 'is "patently insubstantial," presenting no federal question suitable for decision.'") (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)); *Page v. Raimondo*, 2024 U.S. Dist. LEXIS 129362, *6 (D.D.C. July 23, 2024) ("[A] court must dismiss a complaint for lack of jurisdiction . . . where the plaintiff's claims are 'wholly insubstantial and frivolous.'") (quoting *Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015) (quoting *Bell*, 327 U.S. at 682-83)); *Marino v. CIA*, 2012 U.S. Dist. LEXIS 139661, *4 (D.D.C. Sept. 28, 2012) ("[F]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' . . . 'wholly insubstantial,' . . . 'plainly unsubstantial,' . . . or 'no longer open to discussion . . . .'") (citations omitted).

"The 'patently insubstantial' rule is a recognition that some allegations, although they may nominally reference federal law, are simply too outlandish to create an actual federal controversy

15

within the meaning of the statute." *Poblete v. U.S. Marshalls Serv.*, 253 F. Supp. 3d 115, 118 (D.D.C. 2017). "If the court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Oliver v. Black Knight Asset Mgmt., LLC*, 812 F. Supp. 2d 2, 8 (D.D.C. 2011) (citing *Arbaugh*, 546 U.S. at 514).

That is the case here. Plaintiff's Complaint mirrors his earlier federal complaints that were dismissed for lack of subject matter jurisdiction, and contains the same allegations of a massive global conspiracy of breathtaking scope which Judge Shadur of the Northern District of Illinois concluded were "flat-out" implausible, *Antonacci*, 2015 U.S. Dist. LEXIS 58490 at *2, and which both the Seventh Circuit and Judge Nachmanoff of the Eastern District of Virginia concluded were "legally frivolous" because "they are so unsupported by any plausible detail as to be preposterous," and deprived the court of subject-matter jurisdiction because they were "wholly insubstantial." *Antonacci*, 640 F. App'x at 557; *Antonacci*, 2024 U.S. Dist. LEXIS 107279 at *7.

Indeed, the minor tweaks made by Plaintiff in his third Complaint only "reinforce the implausibility of the alleged conspiracy." *Antonacci*, 2024 U.S. Dist. LEXIS 107279 at *7. What was previously alleged to be a "criminal enterprise" has now become a "Zionist criminal enterprise," whose members include a parade of lawyers, judges, court reporters, family members, and others who are either "Jews" or "Zionists," including Rahm Emanuel and even President Biden. Without providing any plausible detail, the Complaint alleges that these "Jews" and "Zionists" conspired among themselves and with others to: destroy his career at Holland & Knight and then Seyfarth, and prevent him from obtaining employment elsewhere as an attorney, Doc. 1, ¶¶ 22-251; infiltrate and access his computer and mobile phone, *id.*, ¶¶ 252-263, 343, 669-672; undertake a disinformation campaign against Plaintiff, *id., ¶¶*278-79; "race-bait" and attempt to murder Plaintiff, *id.*, ¶¶ 281-293; set up Plaintiff for a False Claim Act claim and investigation and

16

malpractice suit, *id*., ¶¶ 318-336; collect and fabricate opposition research and make "deepfakes" of Plaintiff, *id*., ¶ 419; persecute and prosecute him before the Virginia State Bar, *id*., ¶¶ 420-473; falsely claim that Plaintiff had tax liens on his property, *id*., ¶¶ 474-499; and undermine Plaintiff's personal injury case against a hit-and-run driver. *Id*. ¶¶ 500-514.

Plaintiff's Complaint "continues to 'fling wild accusations at a large,' and seemingly never-ending, 'number of people' who have no apparent connection other than their interactions, however tangential, to Antonacci." *Antonacci*, 2024 U.S. Dist. LEXIS 107279 at *7 (quoting *Antonacci*, 640 F. App'x at 557. Because those wild allegations remain wholly insubstantial and frivolous, Plaintiff's Complaint should be dismissed for lack of subject-matter jurisdiction.

### B. Plaintiff's Complaint Should Be Dismissed for Failure to Comply with Fed. R. Civ. P. 8

"Federal Rule of Civil Procedure 8(a)(2) provides that any pleading asserting a claim for relief must include a 'short and plain statement of the claims showing that the pleader is entitled to relief.'" *Raja v. FDIC*, 2026 U.S. Dist. LEXIS 14132, *7 (D.D.C. Jan. 26, 2026) (quoting Fed. R. Civ. P. 8(a)(2)). "Rule 8(d)(1) requires that the pleading be 'simple, concise, and direct.'" *Id*. (quoting Fed. R. Civ. P. 8(d)(6)). "Taken together, Rules 8(a) and 8(d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Id*. (quoting *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004)).

The purpose of Rule 8(a) "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (citations omitted). *Accord*, *Johnson v. Dinapoli*, 2022 U.S. Dist. LEXIS 31320, *1-2 (D.D.C. Feb. 18, 2022); *Kaul*, 2021 U.S. Dist. LEXIS 62007 at *47; *T.M. v. District of Columbia*, 961 F. Supp. 2d 169, 173-74 (D.D.C. 2013). Beyond that, Rule 8(a) "serves to

17

sharpen the issues to be litigated and to confine discovery and the presentation of evidence at trial within reasonable bounds." *T.M.*, 961 F. Supp. 2d at 174 (quoting *Brown*, 75 F.R.D. at 498). The Rule 8(a) "standard also assists the court in determining whether it has jurisdiction over the subject matter." *Johnson*, 2022 U.S. Dist. LEXIS 31320 at *2.

Rule 8(a) "'is by no means exacting,' and it 'accords the plaintiff wide latitude in framing his claims for relief." *T.M.*, 961 F. Supp. 2d at 174 (quoting *Brown*, 75 F.R.D. at 499). "Yet despite the liberality envisioned by the rule, even a *pro se* complaint is subject to dismissal if the pleading fails reasonably to inform the adverse party of the asserted cause of action." *Brown*, 75 F.R.D. at 499 (citations omitted).

"Thus the courts have unhesitatingly dismissed actions where the complaint: consisted of 'a labyrinthian prolixity of unrelated and vituperative charges that defy comprehension . . .; was 'confusing, ambiguous, redundant, vague and, in some respects, unintelligible . . .'; was 'so verbose, confused and redundant that its true substance, if any, is well disguised' . . .; contained . . . 'a completely unintelligible statement of argumentative fact' . . . with 'little more than demands, charges, and conclusions' . . .; represented 'circuitous diatribes far removed from the heart of the claim' . . .; or set forth ' . . . a meandering, disorganized, prolix narrative." *Brown*, 75 F.R.D. at 499 (citations omitted). *See e.g.*, *Chennareddy v. Dodaro*, 697 F. App'x 704, 706 (D.C. Cir. 2017) ("disjointed, voluminous, and unspecific pleadings do not comport with Rule 8.") *Raja*, 2026 U.S. Dist. LEXIS 14132 at *9-10 (plaintiff's complaint, "largely a reproduction of [his] prior complaint," "patently fails to satisfy Rule 8" because it "is again 'long, rambling, disjointed, [and] incoherent' and . . . contains 'an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments'") (quoting *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 413 (D.D.C. 2017));

18

*Johnson*, 2022 U.S. Dist. LEXIS 31320 at *3 (same); *Kaul*, 2021 U.S. Dist. LEXIS 62007 at *47 ("complaint that is excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material does not meet [Rule 8's] liberal pleading requirement") (quoting *T.M.*, 961 F. Supp. 2d at 174); *Brock v. Oklahoma*, 2019 U.S. Dist. LEXIS 208599, *3 (D.D.C. Dec. 4, 2019) ("When a *pro se* litigant's complaint 'sets forth "a meandering, disorganized, prolix narrative" or is "so verbose, confused and redundant that its true substance, if any, is well disguised,"' the Court may dismiss the motion *sua sponte*") (quoting *Hamrick v. United States*, 2010 U.S. Dist. LEXIS 86694, *2 (D.D.C. Aug. 24, 2010)).

In addition, a plaintiff flouts Rule 8 "by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Whaleco Inc. v. Shein Tech. LLC*, 2025 U.S. Dist. LEXIS 193394, *19 (D.D.C. Sept. 30, 2025) (quoting *Toumazou v. Turkish Rep. of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014)). "Courts in this District have thus granted motions to dismiss when the plaintiff's 'factual allegations refer[red] to "Defendants" collectively without specifying which of' the individual defendants 'allegedly took each action described in the complaint.'" *Id.* (citations omitted). The throughline of those cases is that a plaintiff cannot escape his burden by grouping different entities under "Defendants" or some other umbrella without alleging some facts about the role each played in the challenged conduct or, at the very least, something about the nature of their business that might implicate them. *Id.* at *25. *See, e.g., Raja*, 2026 U.S. Dist. LEXIS 14132 at *12 (complaint that "brings vague, conclusory allegations of unlawful and fraudulent action against all Defendants, without providing clarity as to which Defendants the allegations apply, and what those Defendants are specifically alleged to have done to harm Plaintiffs" fails under Rule 8).

19

Over the course of 121 pages and 672 paragraphs, Plaintiff's Complaint presents "a confused and rambling narrative of charges and conclusions concerning numerous persons [and] . . . organizations" and "contains an untidy assortment of claims that are neither plainly nor concisely stated nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments." *Brown*, 75 F.R.D. at 499. Paragraph after paragraph present a meandering narrative of an alleged "criminal Zionist enterprise" made up of members with no connection to each other, allegedly taking unrelated actions together in order to destroy Plaintiff and his livelihood, including undermining his career at law firms, sabotaging his and their own ligation claims, setting Plaintiff up for failure and legal and malpractice liability, defaming Plaintiff, hacking into his computer and phone, targeting his law licenses and even attempting to kill him.

The Complaint also impermissibly lumps the Defendants together without sufficiently distinguishing their individual conduct. For example, it alleges indiscriminately that: "Defendants sought to sabotage the Circuit Court Case, Doc. 1, ¶ 523b; "Defendants unnecessarily delayed the Circuit Court Case, *id*., ¶ 523c; Defendants conspired with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, *id*., ¶ 523d; "Defendants falsified official documents and took official action without legal authority," *id*., ¶ 523e; "Defendants, through the AECOM Fraud, attempted to set up Antonacci for a False Claims Act violation," *id*., ¶ 523f; "Defendants utilized interstate wires to provide false, incomplete, and/or misleading information" and "transmitted, and caused others to transmit, wire communications," *id*., ¶¶ 523i, 523j; "Defendants attempted to murder Louis Antonacci," *id*. ¶ 527; "Defendants either infiltrated Antonacci's mobile device or communicated with his 'friends' to discover where he would be the evening before he was scheduled to fly to Germany," *id*., ¶ 527a; "Defendants . . . conspired . . . to interfere with interstate commerce by extortion," *id*., ¶ 547a; "Defendants . . . set up Antonacci

20

Law to do business with a front company," *id*., ¶ 550g; "Defendants conspired with Palma and Parrish in order to attempt to murder Antonacci," *id*., ¶ 550l; "Defendants conspired with Derran Eaddy to attempt to murder Antonacci and race-bait him," *id*., ¶ 609; "Defendants . . . conspired with Rokk and Fusion GPS to perpetuate a surreptitious defamation campaign against Antonacci, *id*., ¶ 610; and "Defendants . . . conspired with . . . the Virginia State Bar, to communicate to Mr. Antonacci, threats to take action as public officials, without lawful authority." *Id*., ¶ 616.

Given all of this, "[i]t belabors the obvious to conclude that the [C]omplaint filed in this action falls for short of the admittedly liberal standard set in F. R. Civ. P. 8(a)." *Brown*, 75 F.R.D. at 499. And while ordinarily the remedy for noncompliance with Rule 8(a) is dismissal with leave to amend, "where, as here, . . . [P]laintiff has shown that he is no stranger to the courts, having filed . . . previous lawsuits akin to this one, dismissal with prejudice is not inappropriate." *Brown*, 75 F.R.D. at 499 (citation omitted). *Accord*, *Raja*, 2026 U.S. Dist. LEXIS 14132 at *13-14. *See Dalbis v. France*, 2026 U.S. Dist. 1659, *2-3 (D.D.C. Jan. 6, 2026) (in dismissing plaintiff's complaint for failure to comply with Rule 8(a), "the Court concludes that dismissal WITH PREJUDICE is warranted due to [plaintiff's] repeat filing of essentially the same lawsuit that was previously dismissed with prejudice).

Plaintiff, himself an attorney, is no stranger to the courts, having previously filed in two other courts roughly the same complaints, which were dismissed with prejudice. "To permit [P]laintiff to institute this lawsuit another time will needlessly waste time and effort." *Brown*, 75 F.R.D. at 499. Instead, Plaintiff's Complaint should be dismissed with prejudice for failure to comply with Rule 8.

3230377.50094191.2

### C. Count I of the Complaint Must Be Dismissed Because It is Untimely and Does Not State a Plausible RICO Claim

#### 1. Count I Must Be Dismissed Because It is Untimely

"It is well established that RICO claims are subject to a four-year statute of limitations period, . . . which begins to run 'when a plaintiff knew or should have known of his injury.'" *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 226 (D.D.C. 2012) (quoting *Rotella v. Wood*, 528 U.S. 549, 553 (2000)). *Accord*, *Sanders v. D.C.* 2013 U.S. Dist. LEXIS 89946, *2 (D.D.C. June 17, 2013).

The Complaint alleges that Lane retained Plaintiff in October 2019 to work on the AECOM matter, which went to litigation on November 17, 2020, "once it was clear that President Biden had won the election." Doc. 1, ¶¶ 345, 361.  Mr. Firmender then "perpetrated the AECOM Fraud" by "orchestrat[ing] dubious claims" against AECOM, "while setting up Antonacci for a false claims act investigation associated with Antonacci's representation of Lane," and attempting to "sabotage Lane's case and implicate Antonacci in the pursuit of Lane's dubious claims." *Id.*, ¶¶ 313-316.  After Plaintiff allegedly raised concerns with Mr. Firmender regarding the AECOM matter, he "asked Lane to seek separate counsel to proceed with the matter." *Id.*, ¶ 391. Mr. Firmender asked Plaintiff to cease working on the case immediately and on June 17, 2021, Mr. Firmender ordered all effort on the case halted, and Lane immediately "retained . . . a Zionist, Washington, DC law firm." *Id.*, ¶¶ 384-393, 395.

According to the Complaint, therefore, at the time Plaintiff raised with Mr. Firmender his concerns regarding the alleged "AECOM Fraud," which he did before being directed to cease working on the AECOM matter on June 17, 2021, he knew of the alleged AECOM Fraud and Lane's alleged attempt to implicate him in it.  RICO's four-year statute of limitations began to run at that time and the limitations period ended on June 17, 2025.  Because Plaintiff did not file his

22

Complaint until January 23, 2026, his RICO's claims asserted against Lane and Mr. Firmender in Count I are time-barred.

    **2.   Count I Must Be Dismissed for Failure to State a Plausible RICO Claim Because It Does Not Sufficiently Allege The Existence of an "Enterprise," Necessary Predicate Acts or a "Pattern of Racketeering Activity" That Caused Plaintiff Injury**

In order to state a claim for a violation of the RICO statute, 18 U.S.C. § 1962, "a plaintiff must allege the following elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Son Ly*, 910 F. Supp. 2d at 26 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). *Accord*, *Perez v. Coleman*, 2025 U.S. Dist. LEXIS 164608, *2 (D.D.C. Aug. 25, 2025); *Zernik v. U.S. DOJ*, 630 F. Supp. 2d 24, 27 (D.D.C. 2009). For several reasons, Count I fails to plausibly allege that Lane or Mr. Firmender violated RICO.

Plaintiff's Complaint fails to allege – as it must – sufficient facts showing a cognizable enterprise distinct from its alleged members. The Complaint alleges that "[t]he association-in-fact of all Defendants . . . constitutes an 'enterprise.'" Doc. 1, ¶ 539. An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "This type of enterprise 'must have three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."'" *Cent. Am. Bank for Econ. Integration v. Mossi*, 2025 U.S. Dist. LEXIS 189018, *36 (D.D.C. Sept. 25, 2025) (quoting *United States v. Eiland*, 738 F.3d 338, 360 (D.C. Cir. 2013) (quoting *Boyle*, 556 U.S. at 946). *Accord*, *Pinson v. U.S. DOJ*, 2023 U.S. Dist. LEXIS 54486, *16 (D.D.C. Mar. 30, 2023); *U.S. Dominion, Inc. v. MyPillow, Inc.*, 2022 U.S. Dist. LEXIS 90530, *4 (D.D.C. May 19, 2022). "Put differently, to successfully state a claim under RICO, a plaintiff must plead facts 'identifying the common purpose and

23

3230377.50094191.2

organizational and decisonmaking structure of the alleged enterprise.'" *Cent. Am. Bank for Econ. Integration*, 2025 U.S. Dist. LEXIS 189018 at \*37 (quoting *Stankevich v. Kaplan*, 156 F. Supp. 3d 86, 94 (D.D.C. 2016) (quoting *Dodd v. Infinity Travel*, 90 F. Supp. 2d 115, 117 (D.D.C. 2000)).

Plaintiff's Complaint fails to make that showing.  The Complaint baldly alleges that Mr. Firmender "agreed to work with this enterprise in its attempt to set up Antonacci for pursuing Lane's fabricated claims against its architect, whose attorney was aware of the scheme and helped to achieve it," "to set[] up Antonacci for a false claims act investigation" and claim, "to sabotage Lane's case and implicate Antonacci in pursuit of Lane's dubious claims," and "provid[e] Lane a basis for a legal malpractice claim" against Plaintiff.  Doc. 1 at 5, ¶¶ 313, 316, 387, 523f, 524f. But the Complaint contains no *facts* to support the claim that Mr. Firmender and Lane agreed to work together with the enterprise in taking those actions, or that those actions were taken to further a shared, common purpose with the enterprise.  Nor does the Complaint contain – as it must – any facts identifying the organizational and decisionmaking structure of the enterprise, or that Lane "communicated, met or otherwise coordinated" with other members of the enterprise or even knew any of those members.  *Cent. Am. Bank for Econ. Integration*, 2025 U.S. Dist. LEXIS 189018 at \*37.  Instead, the facts alleged in the Complaint show that the actions allegedly taken by Lane and Mr. Firmender regarding the "AECOM Fraud" were in isolation from, and had no relation to, any other actions taken by members allegedly associated with the enterprise.

"[M]embers of a RICO enterprise must be 'distinct' – that is, 'one must allege and prove the existence of two distinct entities: (1) a 'person;' and (2) an 'enterprise' that is not simply the same person referred to by a different name.'" *U.S. Dominion, Inc.*, 2022 U.S. Dist. LEXIS 90530 at \*14 (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)). *Accord*, *Pinson*, 2023 U.S. Dist. LEXIS 54486 at \*15.  Because the Complaint alleges no facts showing that Lane

or Mr. Firmender associated, met or otherwise coordinated with the alleged enterprise, or that the actions of Lane or Mr. Firmender were part of the organizational and decisionmaking structure of that enterprise, it does not plausibly allege that those individuals shared a common purpose of engaging in a course of conduct.  Nor does the Complaint allege facts showing the necessary longevity sufficient to permit Lane and Mr. Firmender to pursue the alleged enterprise's purpose. The alleged "AECOM Fraud" transpired over only a limited period of months before Plaintiff's engagement as Lane's counsel was terminated.  Because the Complaint does not allege facts showing a shared common purpose and relationships over a sufficiently long time among Lane, Mr. Firmender and the other alleged members of the enterprise, it fails to identify – as it must – an enterprise distinct from Lane and Mr. Firmender, with which those defendants allegedly associated and for that reason as well, Count I should be dismissed.

Apart from that, the Complaint fails to allege facts showing that the alleged enterprise, through Lane and Mr. Firmender, engaged in a pattern of racketeering activity.  Among the predicates constituting "racketeering activity" under RICO are mail fraud and wire fraud. *Bates v. Northwestern Human Servs.*, 466 F. Supp. 2d 69, 78 (D.D.C. 2006) (citing 18 U.S.C. § 1961(1)). The elements of federal mail and wire fraud are "(1) a scheme to defraud, and (2) use of the mails or wires for the purpose of executing the scheme." *Ambellu v. Re'Ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 77 (D.D.C. 2019) (quoting *United States v. Alston*, 609 F.2d 531, 536 (D.C. Cir. 1979)).

"RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *DC2NY, Inc. v. Academy Bus, LLC*, 2019 U.S. Dist. LEXIS 134972, *14 (D.D.C. Aug. 12, 2019). *Accord*, *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 14

25

(D.D.C. 2014). "Mail and wire fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that 'the circumstances constituting fraud . . . be stated with particularity.'" *Ambellu*, 406 F. Supp. 3d at 78. *Accord*, *Bates*, 466 F. Supp. 2d at 88.[4]  "A party pleading fraud must therefore 'state the time, place[,] and content of the false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud.'" *Ambellu*, 406 F. Supp. 3d at 78 (quoting *Kowal*, 16 F.3d at 1278).  *Accord, Cent. Am. Bank for Econ. Integration*, 2025 U.S. Dist. LEXIS 189018 at *40; *Bates*, 466 F. Supp. 2d at 89.  Thus, "[r]elevant circumstances of mail and wire fraud subject to this heightened standard include 'the time, place and contents of [these] false representations."  *Ambellu*, 406 F. Supp. 3d at 78.

Plaintiff's Complaint alleges without further detail that: "Firmender deliberately sought to sabotage Lane's case and implicate Antonacci in the pursuit of Lane's dubious claims, [by] utilizing interstate wires, Doc. 1, ¶ 52; "utilizing interstate wires, a Lane Project engineer further invited Antonacci to Lane's Chantilly, VA office to give Antonacci two thumb drives containing data that Lane hoped would implicate Antonacci in the AECOM Fraud," *id*., ¶ 351; this enterprise utilized interstate wires to communicate to the process server that he should not file the documents with the clerk's office," *id*., ¶ 377; "Defendants violated 18 U.S.C. § 1343 (Wire Fraud)" by "attempt[ing] to set up Antonacci for a False Claims Act violation" and through "Firmender, Wiggins, and others ma[king] false statements about Antonacci's litigation skills," *id*., ¶¶ 523f, 523g; "Defendants violated 18 U.S.C. § 1341 (Mail Fraud) . . . "by attempt[ing] to set up Antonacci for a False Claims Act violation," *id*., ¶ 524f; and Defendants violated 18 U.S.C. 1952

---

[4] Rule 9(b) is designed in part "to allow a District Court to distinguish valid from invalid claims . . . and to terminate needless litigation early in the proceedings." *Id*. at 89 (citation omitted).

(Interstate and foreign travel or transportation in aid of racketeering enterprises)" through, among others, Allen Wiggins, Assistant General counsel for Lane, who "frequently traveled between North Carolina and Virginia, Connecticut and Washington, DC in furtherance of this fraudulent scheme." *Id*. ¶ 526a(ii).

Nowhere does the Complaint state – as it must – the time, place and content of the false representations allegedly made by Lane or Mr. Firmender by mail or wire, or what was retained by Lane or given up by Plaintiff as a consequence of the alleged fraud.[5]  The Complaint does not specify – as it must – "what fraudulent statements were made and in what context, when they were made, who made them, and the manner in which the statements were misleading." *Bates*, 466 F. Supp. 2d at 89 (quoting *Intex Recreation Corp. v. Team Worldwide Corp*., 390 F. Supp. 2d 21, 24 (D.D.C. 2005)).  Nor does the Complaint allege – as it must – that Lane or Mr. Firmender made "a false statement or omission of fact *to* the [P]laintiff," or that "the allegedly fraudulent statements 'misled the [P]laintiff,'" which is necessary to support a claim of wire or mail fraud. *Bates*, 466 F. Supp. 2d at 91 (citations omitted).  Here, "the court is essentially left with conclusory statements" that Lane and Mr. Firmender "were committing fraud, with no true allegations." *Cheeks v. Fort Myer Constr. Corp*., 216 F. Supp. 3d 146, 158 (D.D.C. 2016).  Such allegations "do not satisfy Rule 9(b)'s pleading standard" and "are wholly insufficient to state a plausible claim." *Id*. at 158-59.[6]

---

[5] The Complaint does not allege that Mr. Wiggins made *any* false representations and does not state any facts describing when he made his interstate travels or how those travels were "in furtherance of this fraudulent scheme."

[6] Plaintiff's wire and mail fraud claims against Lane and Mr. Firmender "fail for an additional, independent reason. Litigation-related activity, even if abusive or meritless, does not 'constitute a RICO predicate act.'" *U.S. Dominion, Inc.*, 2022 U.S. Dist. LEXIS 90530 at *17-18 (quoting *E. Sav. Bank FSB*, 31 F. Supp. 3d at 13).  "Put differently, 'allegations of fraudulent . . . litigation activities – without more – cannot constitute a RICO predicate act." *Id*. at *18 (quoting *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)).  Here, the Complaint alleges that Lane and Mr. Firmender used interstate wires and mailings in an attempt "to sabotage Lane's case [against AECOM] and implicate Antonacci in the pursuit of Lane's dubious claims." Doc. 1, ¶ 52.  Those litigation-related activities cannot constitute a RICO predicate act.

3230377.50094191.2

Even if the Complaint's allegations of mail and wire fraud against Lane and Mr. Firmender were sufficiently pleaded – and they are not – the Complaint fails to allege a "pattern of racketeering activity" on the part of those two defendants. "[T]he Supreme Court has construed the pattern element to require a showing that the racketeering predicates are both related and continuous." *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 12 (citing *H.J. Inc. v. N.W. Bell Telephone Co.*, 492 U.S. 229, 239 (1989)). *See Cent. Am. Bank for Econ. Integration*, 2025 U.S. Dist. LEXIS 189018 at *35 (to show a pattern, "[t]he predicate offenses must be 'related' and 'amount to or pose a threat of continued criminal activity'") (quoting *H.J., Inc.*, 492 U.S. at 234). *Accord*, *DC2NY, Inc.*, 2019 U.S. Dist. LEXIS 134972 at *13; *Ambellu v. Re'Ese Adbarat Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71, 85 (D.D.C. 2019).

Among the factors courts should consider when determining whether the plaintiff has established a "pattern of racketeering activity" are "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 12 (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995)). *Accord*, *Cent. Am. Bank for Econ. Integration*, 2025 U.S. Dist. LEXIS 189018 at *47-48; *Son Ly*, 910 F. Supp. 2d at 27.

In light of those factors, "at least one near bright-line rule has emerged: 'if a plaintiff alleges only a single scheme, a single injury, and a few victims, it is "virtually impossible"' for the plaintiff to state a RICO claim." *DC2NY*, 2019 U.S. Dist. LEXIS 134972 at *13 (quoting *W. Assocs., Ltd. P'shp v. Market Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) (quoting *Edmonson*, 48 F.3d at 1265). *Accord*, *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 12.

28

Although Plaintiff's Complaint contains the conclusory allegation that "Defendants' enterprise presents a clear threat of continued racketeering activity," Doc. 1, ¶ 529, it contains no facts to suggest that the actions of Lane, Mr. Firmender or even "the enterprise" present a threat of continued racketeering activity. Indeed, the Complaint alleges only a few discrete actions taken by Lane or Mr. Firmender with regard to the "AECOM Fraud" that occurred over only a few months while Plaintiff briefly served as Lane's counsel on the AECOM matter several years ago. The Complaint "allege[s] no continuing acts of wire or mail fraud" by Lane or Mr. Firmender and "identif[ies] no other reasons to believe that the specter of RICO violations [by Lane or Mr. Firmender] remains." *Ambellu*, 387 F. Supp. 3d at 86. Plaintiff has "therefore failed to plausibly allege the type of 'long-term criminal conduct' that Congress was concerned with in enacting the RICO statute." *Id*.

Moreover, Plaintiff's Complaint alleges only a single scheme – to destroy Plaintiff and his legal career – with one injury – that destruction – and a single victim – Plaintiff. "As such, [P]laintiff fails, at a minimum, to allege a *pattern* of racketeering activity, as his claims relate to a single alleged scheme, for which he was the sole injured party." *Zernik v. U.S. DOJ*, 630 F. Supp. 2d 24, 27 (D.D.C. 2009).

Finally, "[i]n order to state a claim under civil RICO, injured parties must show that the RICO predicate offense was not only the 'but for cause of their injury, but the proximate cause as well." *Greenpeace, Inc. v. Dow Chem. Co.*, 808 F. Supp. 2d 262, 269 (D.D.C. 2011) (citations omitted). *Accord*, *E. Sav. Bank FSB*, 31 F. Supp. 3d at 11. *See Perez v. Coleman*, 2025 U.S. Dist. LEXIS 164608, *2 (D.D.C. Aug. 25, 2025) ("To succeed on a RICO claim, a plaintiff must 'show that a RICO predicate offense was the proximate cause of injury to his or her business or property.'") (quoting *Cheeks v. Fort Myer Constr. Corp.*, 728 F. App'x 12, 13 (D.C. Cir. 2018)).

29

Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Greenpeace Inc*., 808 F. Supp. 2d at 269 (citation omitted). *See E. Sav. Bank, FSB*, 31 F. Supp. 3d at 15 ("in order to plead a RICO injury, the injury alleged must involve a 'direct causal connection between the predicate offense and the alleged harm.'") (citation omitted). "A link that is too remote, purely contingent, or indirect is insufficient." *Greenpeace, Inc*., 808 F. Supp. 2d at 269 (citation omitted). *Accord*, *Cheeks*, 216 F. Supp. 3d at 159.

After alleging in only conclusory terms that all of the "Defendants" committed "RICO violations," the Complaint alleges without further detail that "[a]s a proximate result of these RICO violations, Mr. Antonacci has been injured in the amount of $35,000,000 in lost earnings." Doc. 1, ¶ 534. "Plaintiff's conclusory assertions do not state a claim under RICO or any other federal law." *Perez*, 2025 U.S. Dist. LEXIS 164608 at 2. The Complaint fails to allege – as it must – any *facts* showing a direct relation between the acts of wire or mail fraud allegedly committed by Lane and Mr. Firmender and Plaintiff's alleged lost earnings. Indeed, the Complaint alleges that Mr. Firmender agreed to orchestrate dubious claims against AECOM in order to "set up" Plaintiff for a False Claims Act investigation or claim, Doc. 1, ¶ 313, but does not allege that any such investigation or claim was ever brought against Plaintiff. The Complaint alleges that the enterprise utilized interstate mails and wires to communicate with the process server to prejudice Antonacci's case and give Lane a basis to file a malpractice claim against Plaintiff, *id*., ¶¶ 377, but "[f]ortunately, Antonacci quickly noticed and resolved the issue." *Id*., ¶ 378. The Complaint alleges that Plaintiff was concerned that Judge Mann would use evidence presented by Plaintiff in the AECOM matter against Lane and, thus, provide Lane with a basis for a legal malpractice claim against Plaintiff, *id*., ¶ 387, but does not allege that Lane ever filed any such claim against Plaintiff. And the Complaint alleges that "Lane's IT Department, at the behest of Firmender, sought to

30

falsely associate Antonacci with Lane's destruction of documents" but "Antonacci promptly corrected Lane." *Id.*, ¶ 381.

Not only does the Complaint not allege any facts showing a direct relation between Lane's and Mr. Firmender's alleged wire and mail fraud and Plaintiff's alleged lost earnings, it alleges facts showing that the alleged conduct of Lane and Mr. Firmender caused no adverse consequences for Plaintiff. That "lack of causation is another fatal flaw to [P]laintiff's RICO claim." *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 15.

### D. Count II of the Complaint Must Be Dismissed Because It Does Not State a Plausible RICO Conspiracy Claim and is Untimely

The elements of a RICO conspiracy claim are that (1) two or more people agreed to commit a RICO offense and (2) a defendant agreed to further the endeavor. *Cheeks*, 216 F. Supp. 3d at 153 (citation omitted). *See* 18 U.S.C. § 1962(d) (making it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b) and (c) of" RICO). Plaintiff's claim for RICO conspiracy against Lane and Mr. Firmender must be dismissed for several reasons.

"Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 16 (quoting *Lightning Lube, Inc. v. Wilco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993)). "Since . . . [P]laintiff has failed to plead a RICO violation under 18 U.S.C. § 1962(a)-(c), [his] claim under § 1962(d) must fail, because there was no violation in which . . . [any] defendant could have conspired." *Id. Accord*, *Son Ly*, 910 F. Supp. 2d at 28; *Greenpeace, Inc.*, 808 F. Supp. 2d at 274.

Furthermore, Plaintiff has "failed to allege" – as he must – "any facts directly showing" an "agreement to commit RICO offenses and . . . to further the endeavor to commit RICO offenses." *Cheeks*, 216 F. Supp. 3d at 162. The Complaint does not contain *any* conspiracy allegations

31

against Lane and merely alleges without any factual support that "Firmender conspired on behalf of himself and this enterprise." Doc. 1, ¶ 573.  That conclusory allegation, with "no further details" showing the necessary agreement, "will not do" because Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id*. (quoting *Twombly*, 550 U.S. at 555). *See Son Ly*, 910 F. Supp. 2d at 28 (plaintiffs fail to state a claim for RICO conspiracy where they do not set forth any factual allegations that defendants agreed to further any such RICO conspiracy, "other than plaintiff's' conclusory allegations").

Finally, even if the Complaint otherwise stated a plausible claim for RICO conspiracy against Lane and Mr. Firmender – and it does not – that claim must still fail because it is untimely. "The statute of limitations for a civil conspiracy claim under RICO is four years and accrues upon discovery." *Chalabi v. Hashemite Kingdom of Jordan*, 2007 U.S. Dist. LEXIS 68951, *14 (D.D.C. Sept. 19, 2007) (citations omitted).  As noted above, the four-year statute of limitations began to run at the latest on June 17, 2021, when, according to the Complaint, Plaintiff became aware of the alleged AECOM Fraud and Lane's attempt to implicate him in it and was directed to stop working on the AECOM matter after he raised his concerns with Mr. Firmender.  Because Plaintiff did not file his Complaint until January 23, 2026, well past the end of the limitations period on June 17, 2025, his RICO conspiracy claim asserted against Lane and Mr. Firmender is time-barred.

### E. Count III of the Complaint Must Be Dismissed for Lack of Subject-Matter Jurisdiction and Failure to State a Plausible and Timely Antitrust Conspiracy Claim

The Complaint appears to allege in Count III that Mr. Firmender – but not Lane – "conspired with the Defendants and others . . . to orchestrate the AECOM Fraud in violation of the federal mail and wire statutes and False Claims Act, 18 U.S.C. §§ 1341, 1343 & 3729, and Virginia's conspiracy statute, VA Code § 18.2-499, in order "to destroy Antonacci's legal career" and "monopolize the private practice of law among corrupt Zionists," and that, "as a proximate

3230377.50094191.2

result of these violations of D.C. Code §§ 4502 and 4503, Mr. Antonacci has been injured in the amount of $35,000,000 in lost earnings." Doc. 1 ¶¶ 590-592, 611, 635, 649.  Count III should be dismissed for several reasons.

Courts routinely "decline to exercise supplemental jurisdiction" over a state law claim when the court "has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).[7]  *See*, *e.g.*, *DeWayne v. United States*, 2020 U.S. Dist. LEXIS 166922, *3 (D.D.C. July 28, 2020) ("Absent a plausible RICO cause of action, the court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.") (citing 28 U.S.C. § 1367(c)(3)); *Ambellu*, 387 F. Supp. 3d at 87 ("Because the Court has dismissed the RICO counts, it finds that declining to exercise jurisdiction is proper."); *Son Ly*, 910 F. Supp. 2d at 29 (in the usual case in which the federal-law claims are eliminated, "judicial economy, convenience, fairness, and comity . . . will point toward declining to exercise jurisdiction over the remaining state-law claims") (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 n. 7 (1988)). *See also Antonacci*, 2024 U.S. Dist. LEXIS 107279 at *7 ("Antonacci cannot use civil RICO as the springboard for federal question jurisdiction" and "[a]s that is the only basis for jurisdiction, the Court will decline to exercise supplemental jurisdiction over Antonacci's state-law claims.") (citing 28 U.S.C. § 1367(c)(3)).

Here too, because the only purported basis for jurisdiction over the claims asserted against Lane and Mr. Firmender is RICO, and because Plaintiff's RICO claims must be dismissed, the

---

[7] "For the purposes of supplemental jurisdiction, the term 'State' includes the District of Columbia." *Ambellu*, 387 F. Supp. 3d at 86 n. 5 (citing 28 U.S.C. § 1367(e)).

Court should decline to exercise jurisdiction over Plaintiff's remaining state-law claim against Lane and Mr. Firmender for conspiracy to violate the D.C. Antitrust Act.[8]

Even were the Court to exercise supplemental jurisdiction over Count III, that claim must still fail. "In order to survive a motion to dismiss for failure to state a claim for civil conspiracy under District of Columbia law, a complaint must allege with some factual support: '(1) an agreement between two or more persons, (2) to participate in an unlawful act, or in a lawful act in an unlawful manner, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme.'" *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010) (quoting *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000)).

Again, "the existence of an agreement . . . is the 'essential element of a conspiracy claim.'" *Id.* (quoting *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997)). "[I]n pleading that a defendant entered into an agreement the plaintiff must set forth more than just conclusory allegations of [the] agreement." *Id.* (quoting *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004)) (citing *Graves*, 961 F. Supp. at 321). Allegations that fail "to provide any indication of when or how such an agreement was brokered, or how [the defendants] . . . were parties to an agreement" are "lacking and devoid of any factual support" and "fatal" to a civil conspiracy claim. *Id.*

Count III contains only conclusory allegations that all the "Defendants" agreed to effect a preconceived plan, and Mr. Firmender "conspired on behalf of himself and this enterprise." Doc. 1, ¶¶ 590, 635. Those bald allegations are "not buttressed with any factual support" showing when

---

[8] Although Count IV alleges that "all" the Defendants also violated 42 U.S.C. § 1985, it contains no allegations specific to either Lane of Mr. Firmender. As discussed below, Count IV fails to state a claim against Lane or Mr. Firmender and, thus, cannot constitute a basis for federal subject-matter jurisdiction.

34

or how the alleged agreement was brokered and how it is that Mr. Firmender became a party to it, which "render[s] the pleading deficient." *Id*.

Indeed, Plaintiff's civil conspiracy claim, by including allegations that Mr. Firmender, through acts of wire and mail fraud, "conspired with the Defendants and others . . . to orchestrate the AECOM Fraud," Doc. 1, ¶ 611, is, as noted previously, subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b), which requires that the circumstances constituting fraud be stated with particularity. As shown above, the Complaint's allegations – including those in Count III – do not satisfy Rule 9(b)'s heightened pleading standard and are wholly insufficient to state a plausible claim for civil conspiracy alleged in Count III.

Count III must fail for additional reasons. D.C. Code § 28-4502 prohibits "every contract, combination . . . or conspiracy in restraint of trade . . . within the District of Columbia," and D.C. Code § 28-4503 makes it unlawful for "any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce . . . within the District of Columbia."[9]

To state a claim under D.C. Code § 28-4502, the plaintiff "must show that there is a 'concerted action' that 'unreasonably restrains trade.'" *District of Columbia v. Amazon.com, Inc.*, 320 A.3d 1073, 1080 (D.C. 2024) (citing *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 186 (2010). *See WAKA, LLC v. DC Kickball*, 517 F. Supp. 2d 245, 250 (D.D.C. 2007) (to state a claim under Section 1 of the Sherman Act, "a plaintiff must allege that 'defendants entered into some contract, combination, conspiracy, or other concerted activity that unreasonably restricts

---

[9] "Because these provisions essentially track the language of §§ 1, 2 of the Sherman Act, respectively, much of the analysis for federal antitrust claims will provide much force in the context of these provisions." *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 45 (D.D.C. 1998). *See also* D.C. Code § 28-4515 (allowing court to "use as a guide interpretations given by federal courts to comparable antitrust statutes").

trade in the relevant market'") (quoting *Dial A Car, Inc. v. Transp. Inc.*, 884 F. Supp. 584, 591 (D.D.C. 1995)).

To state a claim under D.C. Code § 28-4503 for alleged monopolization, a plaintiff must allege that the Defendant had (1) "a specific intent to destroy competition or control competition in the relevant market" and (2) "a dangerous probability of success in actually monopolizing the relevant market." *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 48-49 (D.D.C. 2018) (quoting *Dial A Car, Inc.*, 884 F. Supp. at 589). To sufficiently assert a claim under D.C. Code § 28-4503 for conspiracy to monopolize, a plaintiff must allege "(1) the existence of a combination or conspiracy to monopolize, (2) overt acts done in furtherance of the combination or conspiracy, (3) an effect upon an appreciable amount of . . . intrastate commerce, and (4) specific intent to monopolize a designated segment of commerce." *Id.* at 49 (quoting *GTE New Media Servs.*, 21 F. Supp. 2d at 44).

"To survive a 12(b)(6) motion to dismiss in an antitrust case, plaintiffs must do more than simply paraphrase the antitrust laws or state in conclusory terms that [the defendant] has violated those laws." *WAKA, LLC*, 517 F. Supp. 2d at 249 (citing *Dial A Car, Inc.*, 884 F. Supp. at 588). If the facts he narrates do not at least outline or adumbrate such a violation, "he will get nowhere merely by dressing them up in the language of antitrust," and "'[b]are legal conclusion[s]' will not suffice." *Id.* (quoting *Dial A Car, Inc.*, 884 F. Supp. at 588).

Here, Plaintiff's Complaint merely states in conclusory terms that Mr. Firmender "conspired with the Defendants and others . . . to orchestrate the AECOM Fraud" and "conspired on behalf of himself and this enterprise," and those actions are "violations of D.C. Code §§ 4502 and 4503" Doc. 1, ¶¶ 611, 635, 649.

36

Indeed, Count III does not even attempt to "dress up" those alleged antitrust violations "in the language of antitrust."   The Complaint does not narrate *any* facts showing how or why Mr. Firmender's actions in "orchestrating the AECOM Fraud": "unreasonably restrains trade," which is necessary to state a claim under Section 4502; evinces "a specific  intent" to destroy or control competition in the relevant market and "a dangerous probability of success in actually monopolizing the relevant market," which is necessary to state a claim for alleged monopolization under Section 4503; or had "an effect upon an appreciable amount of commerce" in the District of Columbia and revealed a "specific intent to monopolize a designated segment of commerce," which is necessary to state a claim for conspiracy to monopolize under Section 4503.

Absent those required factual allegations, the Complaint does not plead the type of "antitrust injury" necessary to confer on Plaintiff standing to bring his antitrust claims. *Atl. Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc*., 295 F. Supp. 2d 75, 88 (D.D.C. 2003).  "Because the antitrust laws were enacted for the 'protection of *competition*, not *competitors*,' . . . a plaintiff must . . . show an anticompetitive impact on the market." *WAKA, LLC*, 517 F. Supp. 2d at 249 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477, 488 (1977)). *Accord, Banneker Ventures, LLC v. Graham*, 19 F. Supp. 3d 231, 251 (D.D.C. 2014). *See Stallard*, 2024 U.S. Dist. LEXIS 215791 at *24-25 (in determining whether a plaintiff has "antitrust standing" courts must focus on "the bedrock principle of this field: antitrust laws protect market (*i.e.*, economic) competition") (quoting *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 983 (D.C. Cir. 2017).

"Therefore, in proving an antitrust injury, the plaintiff must plead . . . an '[actual] injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *WAKA, LLC*, 517 F. Supp. 2d at 249 (quoting *Brunswick Corp*., 429

37

U.S. at 489). "Absent injury to competition, injury to plaintiff as competitor will not satisfy the pleading requirement." *Id*. (quoting *Mizlou Television Network, Inc. v. Nat'l Broad. Co*., 603 F. Supp. 677, 684 (D.D.C. 1984)). *Accord, Banneker Ventures, LLC*, 19 F. Supp. 3d at 251. *See Johnson*, 869 F.3d at 983 (plaintiffs only claim injuries to them as individuals, but "injury to a single competitor does not suffice to constitute an injury to competition," so the "injuries [p]laintiffs claim are simply not those contemplated by the antitrust laws" and, therefore, their "antitrust claims fail to meet the requirements of antitrust standing"). *See also Stallard*, 2024 U.S. Dist. LEXIS 215791 at *25 ("plaintiff lacks antitrust standing because he has not properly alleged how Voodoo harmed the competitive mobile video game market").

Beyond implausibly alleging in conclusory terms that a "purpose" of Defendants' "plan was to monopolize the private practice of law among corrupt Zionists in the District of Columbia, the City of Chicago, and Northern Virginia," Doc. 1, ¶ 592, Plaintiff's Complaint pleads no facts showing that, in "orchestrating the AECOM Fraud," either Lane or Mr. Firmender caused any economic injury to any market, or had any effect on an appreciable amount of commerce in the District of Columbia.

The Complaint, therefore, does not plausibly allege the type of "antitrust injury" necessary to confer on Plaintiff standing to bring his antitrust claims. Indeed, the real gravamen of Count III and the Complaint generally, alleged repeatedly, is that the enterprise: sought to destroy Plaintiff, Doc. 1 at 4; has "defamed" or "disparaged" him, *id*.; spread "false narratives" and "lies" about him, *id*.; "attempted to murder" him, *id*.; attempted "to associate" him with "dubious claims . . . orchestrated" by Lane or Mr. Firmender in order to "set up," "sabotage," "target," and "implicate" him in the "AECOM Fraud," *id*., at 5, ¶¶ 316, 347, 351; "wished to end his career," *id*., ¶ 64, "sought retaliation against him, *id*., ¶ 65; sought "to prevent" him "from obtaining employment,"

38

*id.*, ¶ 81; sought to ensnare him in "a trap," *id.*, ¶ 93; sought to "sabotage" one of his cases, *id.*, ¶ 40; acted to sabotage his Illinois Bar application, *id.*, ¶ 176; collected and fabricated "opposition research" on him, *id.*, ¶ 419; "infiltrated" his computer and mobile phone, *id.*, ¶ 367; and prosecuted him before the Virginia State Bar. *Id.*, ¶ 459.

In short, as Count III makes clear, the alleged purpose of the enterprise's concerted plan "was to destroy Antonacci's legal career." *Id.*, ¶ 591. The D.C. Antitrust Act, however, was enacted to protect "competition," and not an individual from those types of individual injuries asserted by Plaintiff. Because Plaintiff's alleged injuries do not suffice to constitute an economic injury to competition or the market, his claims in Count III must be dismissed for lack of antitrust standing.

Finally, even if Plaintiff had antitrust standing – and he does not – and the Complaint otherwise stated a plausible claim under the D.C. Antitrust Act – and it does not – that claim must still fail because it too is untimely. The D.C. Code does prescribe a specific limitations period for actions based on a violation of the D.C. Antitrust Act, D.C. Code §§ 28-4502, 4503. Accordingly, those actions are subject to the three-year residual limitations period in D.C. Code § 12-301(8). As noted above, the limitations period began to run at the latest on June 17, 2021, when, according to the Complaint, Plaintiff became aware of the alleged AECOM Fraud and Lane's attempt to implicate him in it and was directed to stop working on the AECOM matter after he raised his concerns with Mr. Firmender. Because Plaintiff did not file his Complaint until January 23, 2026, well past the end of the three-year limitations period on June 17, 2024, his D.C. Antitrust Act claim asserted against Lane and Mr. Firmender is time-barred.

3230377.50094191.2

**F. Count IV of the Complaint Must Be Dismissed for Failure to State a Plausible Conspiracy Claim to Interfere with Civil Rights**

The Complaint alleges in Count IV (mislabeled "Count V" by Plaintiff) that "all Defendants" conspired to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985. Specifically, without making any mention of either Lane or Mr. Firmender, Count IV alleges that "[Richard] Johnson and the Virginia State Bar, while acting under the color of state law, deprived Antonacci of rights, privileges and immunities guaranteed by the U.S. Constitution," by investigating him and suspending his Virginia Bar license, Doc. 1, ¶¶ 652-662, 665, and that those acts are "part of the same conspiracy and all Defendants are therefore liable for the conspiratorial acts alleged herein." *Id*., ¶ 663.   Count IV fails to state a plausible claim against Lane or Mr. Firmender.

In order "[t]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, any person or class of persons the equal protection of the laws [or of equal privileges and immunities under the laws], . . . and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *Jones*, 2025 U.S. Dist. LEXIS 59302 at \*17 (quoting *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009)).   "Notably, '[t]he statute does not apply to *all* conspiratorial tortious interference with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus.'" *Id*. at \*17-18 (quoting *Atherton*, 567 F.3d at 688).[10]

Again, a conspiracy requires, among other things, "an agreement between two or more persons." *Id*. at \*15.   Count IV, however, "fails to identify an agreement" between Mr. Firmender

---

[10] "This requirement is to be read narrowly to avoid converting Section 1985 into a general federal tort law." *McCreary v. Heath*, 2005 U.S. Dist. LEXIS 34082, \*19 (D.D.C. Sept. 26, 2005) (citation omitted).

or Lane and Mr. Johnson, the Virginia State Bar or any other Defendant to investigate Plaintiff and seek the suspension of his Virginia Bar license, "but rather asserts in wholly conclusory terms," *Jones*, 2025 U.S. Dist. LEXIS 59302 at *15, that the actions of Mr. Johnson, the Virginia State Bar and Shaun So are "all part of the same conspiracy" allegedly also involving Lane and Mr. Firmender.  Doc. 1, ¶ 663.

But again, "[c]onclusory allegations of an agreement will not suffice." *Jones*, 2025 U.S. Dist. LEXIS 59302 at *15 (quoting *Burnett v. Sharma*, 511 F. Supp. 2d 136, 143 (D.D.C. 2007)). Like the complaint in *Jones*, Plaintiff's Complaint "contains only 'conclusory allegations' of a conspiracy; it 'fails to allege the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between [Lane or Mr. Firmender and] any of the [other] defendants' to deprive [Plaintiff] of any legal rights or protections," *id*., at *18 (quoting *McCreary*, 2005 U.S. Dist. LEXIS 34082 at *17-18), "let alone an agreement 'motivated' by 'class-based, invidiously discriminatory animus.'" *Id*. (quoting *Atherton*, 567 F.3d at 688.  The allegations asserted against Lane and Mr. Firmender in Count IV, therefore, must be dismissed for failure to state a claim. [11]

## CONCLUSION

For the foregoing reasons, Defendants The Lane Construction Corporation and Seth Firmender respectfully request that the Court dismiss Plaintiff's Complaint against them with prejudice.

---

[11] Count V of the Complaint is brought against only Storij, Inc. and, therefore, is not a subject of Lane's and Mr. Firmender's Motion to Dismiss.

3230377.50094191.2

42

Dated:  February 26, 2026               Respectfully submitted,

                       /s/ Christopher W. Mahoney

                   Christopher W. Mahoney, Esquire
Barclay Damon LLP
1742 N Street, NW
Washington, DC 20036
cmahoney@barclaydamon.com
*Counsel for Defendants The Lane Construction Corporation and Seth Firmender*

42

3230377.50094191.2

43

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of February 2026, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing upon all parties of record to this cause by electronic notification (NEF) to the CM/ECF participating attorneys.

/s/ Christopher W. Mahoney
Christopher W. Mahoney

3230377.50094191.2