IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LOUIS B. ANTONACCI,

    Plaintiff,

v.

RAHM ISRAEL EMANUEL, ET AL.

    Defendants.

Case No.: 1:26-CV-00211

DEFENDANT THE SO COMPANY'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Rules 12(b)(1), (5), and (6) of the Federal Rules of Civil Procedure and Local

Rules 7, Defendant Storij, Inc. d/b/a The So Company d/b/a Driggs Research International d/b/a

STOR Technologies ("The So Company") provides this memorandum in support of its Motion to

Dismiss.

## I.    INTRODUCTION

On January 23, 2026, Plaintiff Louis B. Antonacci filed his 672-paragraph complaint,

ECF No. 1, alleging an extensive, winding, and decades-long criminal conspiracy to, among

other things, derail his legal career and destroy his reputation. This is his third attempt to bring

this matter in federal court. Mr. Antonacci based each of his prior attempts on nearly identical

factual allegations that courts have dismissed for lack of subject matter jurisdiction and described

as "legally frivolous" and "preposterous." *Antonacci v. City of Chicago, et al.*, 640 Fed. Appx.

553, 557 (7th Cir. 2016), cert. denied, 580 U.S. 825 (2016).

According to the latest iteration of Mr. Antonacci's story, which omits any discussion of

the patent deficiencies in his prior two attempts, this criminal enterprise was orchestrated to

1

enact revenge on Mr. Antonacci for his efforts to expose an underlying fraud perpetuated by a criminal network involving, among others, Antonacci's former employers, coworkers, and clients, including Hon. Rahm Emanuel—former White House Chief of Staff, Mayor of Chicago, and United States Ambassador to Japan. As it relates to The So Company, the Complaint asserts, without any factual details to support the allegations, that The So Company engaged Mr. Antonacci to provide legal services as a rouse to conduct illegal surveillance on Plaintiff's computer at the direction of other Defendants in supposed furtherance of the scheme to end Plaintiff's legal career. In addition to being insufficient under the Federal Rules of Civil Procedure, the allegations against The So Company are simply unbelievable.

With respect to the required pleading standards, Mr. Antonacci's Complaint should not survive The So Company's Motion to Dismiss. First, Mr. Antonacci's Complaint lacks subject matter jurisdiction under Rule 12(b)(1). Second, the Complaint fails under Rule 8, which requires a short and plain statement of facts constituting a basis for relief and the pleading standards enumerated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Third, each of Plaintiff's claims fails to state a legally cognizable claim upon which this Court may grant relief under Rule 12(b)(6). Fourth, as of filing this motion, Mr. Antonacci has failed to properly serve The So Company, such that The So Company reserves the right to seek dismissal pursuant to Rule 12(b)(5). Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

## II.    BACKGROUND

### A.  Allegations Against The So Company

Mr. Antonacci met Shaun So and Richard Wheeler in 2015. *Id.* at ¶¶ 251-52. Mr. So and Mr. Wheeler served in the Army together, where both gained experience in the intelligence community. *Id.* at ¶ 254. Plaintiff claims that Mr. Wheeler "has expertise hacking, infiltrating,

2

331731716v.1

and exploiting computer systems and mobile devices," while Mr. So's "expertise is human intelligence and interrogation." *Id.* at ¶¶ 255-56. Mr. So and Mr. Wheeler are owners of The So Company, and according to Plaintiff, they are members of a convoluted and expansive criminal enterprise that is targeting Mr. Antonacci. *Id.* at ¶ 257.

Mr. Antonacci alleges that he was introduced to Mr. So and Mr. Wheeler "under the false pretense that Storij needed legal assistance with its government contracts," when, in Mr. Antonacci's contrived reality, they were actually directed by a criminal enterprise to "keep tabs on Antonacci and stay apprised of his plans regarding his federal lawsuit against the enterprise, his law business and his clients, and his personal contacts and his perspective relationship with Livya." *Id.* at ¶¶ 253, 261. The So Company retained Mr. Antonacci's law firm from 2015 to 2021. *Id.* at ¶¶ 258-59. During that time, Plaintiff claims the enterprise used Mr. Wheeler to "infiltrate and exploit Antonacci's protected computer systems and mobile phone." *Id.* at ¶ 263.

Without any support, Mr. Antonacci claims that The So Company "paid or otherwise incentivized [Derran] Eaddy to attempt to murder Antonacci, assault and race-bait him" on or around September 2016. *Id.* at ¶¶ 281, 292.

On December 8, 2023, Mr. Antonacci's law firm formally terminated its service agreement with The So Company. *Id.* at ¶ 417. Mr. Antonacci then filed a complaint in the United States District Court for the Eastern District of Virginia, naming The So Company as a defendant and alleging nearly the same facts and legal claims asserted in the Complaint before this Court. *Id.* at ¶ 420. Shaun So filed a bar complaint against Mr. Antonacci on May 9, 2024, alleging the suit was frivolous. *Id.* at ¶ 421.On June 30, 2025, Chief Judge Kimberly Irving issued a Final Judgment Memorandum Order finding by clear and convincing evidence that Mr. Antonacci violated Virginia Rules of Professional Conduct 1.9(c)(1)(Conflict of Interest:

3

331731716v.1

Prohibited Transactions); 1.9(c)(2)(Conflict of Interest: Prohibited Transactions); and 3.1(Meritorious Claims and Contentions). *See Virginia State Bar v. Louis Bernardo Antonacci*, Case No. CL25000531-00, Final Judgment Memorandum Order, dated June 20, 2025.

### B.  Relevant Procedural History

Mr. Antonacci's efforts for a federal court to hear these claims began in 2015 when he filed a substantially similar complaint in the United States District Court for the Northern District of Illinois against several defendants, many of whom he named as defendants in this case as well. *See generally*, *Antonacci v. City of Chicago, et al.*, No. 15-c-3750, 2015 U.S. LEXIS 58490 (N.D. Ill. May 5, 2015). The district court described that complaint as asserting that Mr. Antonacci is "the victim of a massive global conspiracy on the part of what seems to be the entire world with which he comes into contact." *Id.* at *2.  Without delay, the district court issued an order dismissing the complaint "*sua sponte* because of some patently problematic aspects of the pleading," including, in part, Mr. Antonacci's failure to establish the existence of federal subject matter jurisdiction. *Id.* at *1-5 (emphasis added). The district court found that the complaint lacked complete diversity,[1] and further held "that Antonacci cannot use civil RICO as the springboard for federal-question jurisdiction in the subjective and objective good faith required by Rule 11(b)." *Id.* at *4.

Mr. Antonacci appealed the dismissal to the United States Court of Appeals for the Seventh Circuit, which readily affirmed the dismissal for lack of federal subject matter

---

[1] "That last deficiency on Antonacci's part is particularly troublesome, for Seyfarth Shaw and Perkins Coie are national law firms with multiple offices around the country. If either has even a single member that (like Antonacci) is a citizen of the District of Columbia the complete diversity that has been required for more than two centuries (*see Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806)) would be destroyed, and with it Antonacci's access to this federal district court." *Antonacci v. City of Chicago*, No. 15-c-3750, 2015 U.S. LEXIS 58490, at *4 (N.D. Ill. May, 5, 2015).

331731716v.1

jurisdiction. *Antonacci v. City of Chicago, et al.*, 640 Fed. Appx. 553, 557 (7th Cir. 2016), cert. denied, 580 U.S. 825 (2016). The Seventh Circuit explained that "even though his RICO allegations describe specific actions undertaken by specific defendants on certain dates, it takes more than that to allege a plausible conspiracy." *Id.* The Circuit Court held that Mr. "Antonacci's federal claims are legally frivolous." *Id.*

Mr. Antonacci's second attempt to bring these claims in federal court was in 2024 when he filed a complaint, one that "mirror[ed] Antonacci's previous federal suit," in the United States District Court for the Eastern District of Virginia. *Antonacci v. Emanuel, et al.*, No. 1:24-cv-172, 2024 U.S. Dist. LEXIS 107279, at *6 (E.D. V.A. May 23, 2024). In this complaint, Mr. Antonacci brought "four claims against all Defendants, most of whom were defendants in the previous federal case: (1) RICO violations under 18 U.S.C. § 1962(a)-(c); (2) RICO conspiracy under 18 U.S.C. § 1962(d); (3) Virginia business conspiracy under Va. Code § 18.2-499, 18.2-500; and (4) common law civil conspiracy." *Id.* at *5. Mr. Antonacci also brought a claim against The So Company for violating 18 U.S.C. § 1030, the Computer Fraud and Abuse Act ("CFAA"). *Id.* at *5-6. The district court dismissed Mr. Antonacci's complaint, again, for lack of federal subject matter jurisdiction, stating:

> Although Antonacci has added new defendants and allegations, the alleged conspiracy—and the fundamental implausibility of it—has not changed. This Court agrees with the Seventh Circuit's assessment that Antonacci's previous, and now renewed, allegations are "legally frivolous" because they are "so unsupported by any plausible detail as to be preposterous." 640 F. App'x at 557. And the new allegations do not move the needle towards plausibility—if anything, they reinforce the implausibility of the alleged conspiracy. Antonacci continues to "fl[ing] wild accusations at a large," and seemingly never-ending, "number of people" who have no apparent connection other than their interactions, however tangential, to Antonacci. *Id.*

*Id.* at *7. After finding that Mr. Antonacci's RICO and CFAA allegations were "wholly insubstantial" to establish federal subject matter jurisdiction, the district court declined to

5

exercise supplemental jurisdiction over Mr. Antonacci's state-law claims. *Id.* On appeal, the United States Court of Appeals for the Fourth Circuit affirmed the dismissal. *Antonacci v. Emanuel, et al.*, No. 24-1544, No. 24-1545, 2025 U.S. App. LEXIS 8471 (4th Cir. April 9, 2015), cert. denied, 145 S. Ct. 2755 (2025).

On January 23, 2026, Mr. Antonacci filed his third attempt at establishing federal subject matter jurisdiction, this time in the United States District Court for the District of Columbia. *See* Pl.'s Compl., ECF 1. Mr. Antonacci's choice of venue is one of the few changes made since his prior attempt in Virginia. Nine of the defendants remain the same, including The So Company. Mr. Antonacci substituted the forum-specific claims, replacing the Virginia statutory business conspiracy count with the D.C. Antitrust Act. He further replaced the common law conspiracy claim with conspiracy to interfere with civil rights under 42 U.S.C. § 1985. Alarmingly, the most notable difference in the D.C. Complaint is Mr. Antonacci's introduction of explicit antisemitic characterizations of defendants, judges, and issues by framing the alleged conspiracy as members of a "Zionist criminal enterprise" that has "no place in the legal profession or public American life." *E.g.*, ECF 1 at 4-6; ECF 1 ¶ 459.

## III.    ARGUMENT

### A.  This Court Lacks Subject Matter Jurisdiction Under 12(b)(1)

Plaintiff asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1331. ECF 1 ¶ 18. In establishing federal question jurisdiction, the right to federal jurisdiction must be clear on the complaint's face. Federal courts are courts of limited jurisdiction and therefore must address jurisdiction as a "threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). To determine whether jurisdiction exists, a court may "undertake an independent investigation to assure itself of its own subject matter jurisdiction" and "consider facts developed

331731716v.1

in the record beyond the complaint." *CFA Inst. v. Andre*, 74 F. Supp. 3d 462, 465 (D.D.C. 2014) (internal citations omitted). "Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Grell v. Trump*, 330 F. Supp. 3d 311, 316 (D.D.C. 2018).

"Dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction is justified where a claim is 'immaterial and made solely for the purpose of obtaining jurisdiction' or [it] is 'wholly insubstantial and frivolous.'" *Carmichael v. Pompeo*, 486 F. Supp. 3d 360, 367 (D.D.C. 2020) (quoting *Arbaugh v. Y&H Comp.*, 546 U.S. 500, 513 n. 10 (2006) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). "The 'patently insubstantial' rule is a recognition that some allegations, although they may nominally reference federal law, are simply too outlandish to create an actual federal controversy within the meaning of the statute." *Poblete v. U.S. Marshalls Serv.*, 253 F. Supp. 3d 115, 118 (D.D.C. 2017). "If the court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Oliver v. Black Knight Asset Mgmt., LLC*, 812 F. Supp. 2d 2, 8 (D.D.C. 2011) (citing Arbaugh, 546 U.S. at 514).

Here, Mr. Antonacci's claims parrot both of his previously dismissed complaints in the Northern District of Illinois and the Eastern District of Virginia. *Antonacci v. Emanuel, et al.*, No. 1:24-cv-172, 2024 U.S. Dist. LEXIS 107279, at *6 (E.D. V.A. May 23, 2024). Those complaints contained the same allegations of a massive global conspiracy of breathtaking scope which Judge Shadur of the Northern District of Illinois concluded were "flat-out" implausible, *Antonacci*, 2015 U.S. Dist. LEXIS 58490 at *2, and which both the Seventh Circuit and Judge Nachmanoff of the Eastern District of Virginia concluded were "legally frivolous" because "they are so unsupported by any plausible detail as to be preposterous," and deprived the court of subject-matter jurisdiction

7

because they were "wholly insubstantial." *Antonacci*, 640 F. App'x at 557; *Antonacci*, 2024 U.S. Dist. LEXIS 107279 at \*7.

Indeed, the minor tweaks in Mr. Antonacci's third Complaint only "reinforce the implausibility of the alleged conspiracy." *Antonacci*, 2024 U.S. Dist. LEXIS 107279 at \*7. What was previously alleged to be a "criminal enterprise" has now become a "Zionist criminal enterprise," whose members include a vast alleged cabal of lawyers, judges, court reporters, family members, and others who are either "Jews" or "Zionists," including Rahm Emanuel and even President Biden. Without providing any plausible detail, the Complaint alleges that these individuals conspired among themselves and with others to: destroy his career at Holland & Knight and then Seyfarth, and prevent him from obtaining employment elsewhere as an attorney, ECF 1 at ¶¶ 22-251; infiltrate and access his computer and mobile phone, *id.* at ¶¶ 252-263, 343, 669-672; undertake a disinformation campaign against Mr. Antonacci, *id.* at ¶¶278-79; "race-bait" and attempt to murder Mr. Antonacci, *id.* at ¶¶ 281-293; set up Mr. Antonacci for a False Claim Act claim and investigation and malpractice suit, *id.* at ¶¶ 318-336; collect and fabricate opposition research and make "deepfakes" of Mr. Antonacci, *id.* at ¶ 419; persecute and prosecute him before the Virginia State Bar, *id.* at ¶¶ 420-473; falsely claim that Mr. Antonacci had tax liens on his property, *id.* at ¶¶ 474-499; and undermine Mr. Antonacci's personal injury case against a hit-and-run driver, *id.* at ¶¶ 500-514.

These absurd claims, which lack any basis in law or fact, either are identical to the claims he previously filed or are further disconnected from any plausible or specific factual allegations. As such, Mr. Antonacci's claims are "wholly insubstantial and frivolous," and he has not met his burden to establish subject matter jurisdiction by a preponderance of the evidence.

8

**B.  The Complaint Fails to Provide a Short and Plain Statement Showing Entitlement to Relief Under Rule 8(a)(2)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Mr. Antonacci's 672 paragraph complaint, spanning more than 120 pages of vague and unconnected allegations, is not a "short and plain statement of claim[s]" required under Rule 8(a). Dismissal is warranted for this reason alone. "[C]ourts have unhesitatingly dismissed actions where the complaint: consisted of 'a labyrinthian prolixity of unrelated and vituperative charges that defy comprehension . . .; was 'confusing, ambiguous, redundant, vague and, in some respects, unintelligible . . .'; was 'so verbose, confused and redundant that its true substance, if any, is well disguised' . . .; contained . . . 'a completely unintelligible statement of argumentative fact' . . . with 'little more than demands, charges, and conclusions' . . .; represented 'circuitous diatribes far removed from the heart of the claim' . . .; or set forth ' . . . a meandering, disorganized, prolix narrative." *Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C. 1977) (internal citations omitted). Mr. Antonacci's complaint is just that: a circuitous diatribe against almost everyone he has come into contact with over the past few years – including many people who are not defendants, such as family members, court reporters, and process servers. Therefore, Defendant The So Company respectfully requests this Court dismiss Mr. Antonacci's complaint pursuant to Rule 8(a)(2).

**C.  The Complaint Fails to State a Claim Under Rule 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court may dismiss a matter for failure to state a claim upon which relief can be granted.  In considering a motion to dismiss, the Court accepts a plaintiff's well-pleaded allegations as true and draws all reasonable inferences in favor of plaintiff. *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024). However, "the tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The pleading is required to state, "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570.

1. Count I: Violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962 (a), (b), and (c))

To state a claim for a violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962, "a plaintiff must allege the following elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Son Ly v. Solin, Inc.*, 910 F.Supp.2d 22, 26 (D.D.C. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Count I should be dismissed because the Complaint fails to adequately allege the existence of a criminal enterprise and that the supposed enterprise engaged in a pattern of racketeering activity.

RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise "is 'a group of persons associated together for a common purpose of engaging in a course of conduct,'" and must have at least three structural features: "a purpose, relationships among those associated with

10

331731716v.1

the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Mr. Antonacci alleges no facts that demonstrate a legitimate RICO violation. The Complaint alleges a complex network of Defendants—ranging from large, international law firms to small businesses like The So Company, to public figures—many of whom are in no way connected to one another, conducting the most tangential acts, which apparently are supposed to establish a decades-long criminal enterprise. But Mr. Antonacci neither articulates the nature or members of the alleged criminal enterprise. Nor does he describe the relationship between those members aside from the aspersions he attributes to their Jewish heritage. Mr. Antonacci alleges, without any evidence whatsoever, that:

> [Ambassador] Emmanuel is a leader of this enterprise. While he was in the greater Washington area working as Obama's Chief of Staff, Emanuel, Paul Kiernan, Shapiro and Katz, agreed to use their enterprise to destroy Antonacci's legal career because his contempt for corruption posed a threat to them and the socialist totalitarianism that is the goal of Zionism.

ECF 1 ¶ 88. That statement is not supported by a single act that the supposed criminal enterprise is doing. There are certainly no allegations that The So Company was involved in the creation of this purported criminal enterprise, nor allegations that support a relationship with such an enterprise. While the allegations are lengthy, they are devoid of any details to support conclusory statements. There is no plausibly pleaded criminal enterprise. Count I fails on that alone.

The remaining elements of a RICO violation are also non-existent. Mr. Antonacci's Complaint fails to allege a sufficient and plausible pattern of racketeering activity consisting of, at a minimum, two independent acts performed by members of the alleged criminal enterprise in furtherance of the criminal enterprise's scheme. Among the predicates constituting "racketeering

11

activity" under RICO are mail fraud and wire fraud. *Bates v. Northwestern Human Servs.*, 466 F. Supp. 2d 69, 78 (D.D.C. 2006) (citing 18 U.S.C. § 1961(1)). The elements of federal mail and wire fraud are "(1) a scheme to defraud, and (2) use of the mails or wires for the purpose of executing the scheme." *Ambellu v. Re'Ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 77 (D.D.C. 2019) (quoting *United States v. Alston*, 609 F.2d 531, 536 (D.C. Cir. 1979)). "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *DC2NY, Inc. v. Academy Bus, LLC*, 2019 U.S. Dist. LEXIS 134972, *14 (D.D.C. Aug. 12, 2019). "Mail and wire fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that 'the circumstances constituting fraud . . . be stated with particularity.'" *Ambellu*, 406 F. Supp. 3d at 78. "A party pleading fraud must therefore 'state the time, place[,] and content of the false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud.'" *Ambellu*, 406 F. Supp. 3d at 78 (quoting *Kowal v. MCI Communs. Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)). Thus, "[r]elevant circumstances of mail and wire fraud subject to this heightened standard include 'the time, place and contents of [these] false representations." *Ambellu*, 406 F. Supp. 3d at 78.

At best, Mr. Antonacci superficially claims that this enterprise orchestrated a fraudulent scheme under which The So Company engaged Mr. Antonacci for legal assistance under false pretenses to obtain access to his computer systems. ECF 1 ¶¶ 253, 261, 263. There are no factual allegations to support that statement. Yet, Mr. Antonacci alleges that The So Company violated RICO § 1962(c) because: "So and Wheeler utilized interstate wires to knowingly, and with intent to defraud, accessed Antonacci's computer systems and mobile phone without authorization or

12

exceeding authorized access, in order to surveil him and monitor his behavior, in violation of 18 U.S.C. § 1830," or, "[a]lternatively, So, Wheeler, Storij, and other Defendants utilized interstate wires to provide false, incomplete, and/or misleading information to U.S. government officials in order to obtain illegally a warrant allowing them to do so." ECF 1 ¶ 523 (h)-(i). Mr. Antonacci further alleges that "So and Wheeler traveled between New York, California, and Washington, DC numerous times in furtherance of this fraudulent scheme," in violation of 18 U.S.C. § 1952. *Id.* ¶ 526(a)(i). Those are the exact type of recitations of the elements for a violation that fail under Rules 8, 9(b), and 12(b)(6).

Finally, Mr. Antonacci's Complaint also fails to plausibly establish that Mr. Antonacci was injured in his business or property by reason of the criminal enterprise's pattern of racketeering activity. Mr. Antonacci "must show that the RICO predicate offense was not only the 'but for cause of their injury, but the proximate cause as well." *Greenpeace, Inc. v. Dow Chem. Co.*, 808 F. Supp. 2d 262, 269 (D.D.C. 2011) (citations omitted). Here, the Complaint only states that "As a proximate result of these RICO violations, Mr. Antonacci has been injured in the amount of $35,000,000 in lost earnings, exclusive of interest and costs." ECF 1 ¶ 534. The Complaint does not state what actions of the criminal enterprise or The So Company could have led to $35,000,000 in damages. Searching for any allegations of *how* those nonexistent actions lead to tens of millions of dollars of damage is similarly futile. Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Greenpeace Inc.*, 808 F. Supp. 2d at 269 (citation omitted). Mr. Antonacci's conclusory assertions do not state a claim under RICO. Therefore, Defendant Storij respectfully requests this Court dismiss the Count I.

13

2.  Count II: Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act (18 U.S. § 1962 (d))

18 U.S.C. § 1962(d) provides that it is "unlawful for any person to conspire" to violate a substantive RICO provision. To state a conspiracy under § 1962(d), the complaint must allege that (1) two or more people agreed to substantive offense, and (2) a defendant agreed to further that endeavor. *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1047-48 (D.C. Cir. 2012) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)).

The dismissal of Count I should result in the dismissal of Count II alleging a conspiracy to violate RICO. *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 15 (D.D.C. 2014). "Since the plaintiff has failed to plead a RICO violation under 18 U.S.C. § 1962(a)-(c), its claim under § 1962(d) must fail, because there was no violation in which the defendant could have conspired." *Id.* For the reasons stated in section III.C.1, *supra*, Defendant Storij respectfully requests this Court dismiss Count II. The Complaint does not plausibly allege even the existence of a criminal enterprise, let alone the existence of a specific agreement between The So Company and others named in the Complaint to accomplish the overall objective of the alleged RICO offenses. The absence of an agreement to commit the predicate acts is ground for dismissal of the RICO conspiracy claim under Rule 12(b)(6) and Rule 8. The absence of specific details about such an agreement is grounds for dismissal of the RICO conspiracy claim under Rule 9(b). The Complaint alleges neither predicate acts nor specific details about any related agreement. Count II should therefore also be dismissed with prejudice.

3.  Count III: Violation of D.C. Antitrust Act (D.C. Code §§ 28-4502, 4503, 4508)

In Count III, Mr. Antonacci asserts a claim under D.C. Code §§ 28-4502, 4503, and 4508. D.C. Code § 28-4502 provides that "[e]very contract, combination in the form of a trust or

14

otherwise, or conspiracy in restraint of trade or commerce all or any part of which is within the District of Columbia is declared to be illegal." Section 28-4503 provides that "[i]t shall be unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce, all or any part of which is within the District of Columbia." Finally, Section 28-4508 creates a private right of action.

At the outset, the Court should decline to exercise supplemental jurisdiction over Mr. Antonacci's state law claim. However, even if the Court exercises supplemental jurisdiction over Count III, the Complaint should still be dismissed. To state a claim under D.C. Code § 28-4502, the plaintiff "must show that there is a 'concerted action' that 'unreasonably restrains trade.'" *District of Columbia v. Amazon.com, Inc.*, 320 A.3d 1073, 1080 (D.C. 2024) (citing *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 186 (2010).

To state a claim under D.C. Code § 28-4503 for alleged monopolization, a plaintiff must allege that the Defendant had (1) "a specific intent to destroy competition or control competition in the relevant market" and (2) "a dangerous probability of success in actually monopolizing the relevant market." *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 48-49 (D.D.C. 2018) (quoting *Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 589 (D.D.C. 1995)). To sufficiently assert a claim under D.C. Code § 28-4503 for conspiracy to monopolize, a plaintiff must allege "(1) the existence of a combination or conspiracy to monopolize, (2) overt acts done in furtherance of the combination or conspiracy, (3) an effect upon an appreciable amount of . . . intrastate commerce, and (4) specific intent to monopolize a designated segment of commerce." *Id.* at 49 (quoting *GTE New Media Servs. V. Ameritech Corp.*, 21 F. Supp. 2d 27, 44(D.D.C 1998).

15

331731716v.1

Here, Mr. Antonacci's Count III, and related paragraphs, include only vague, conclusory allegations of conspiracy, and therefore fails to state a plausible claim for relief. Mr. Antonacci alleges only that "Defendants combined, agreed, mutually undertook, and concerted together, and with others, to effect preconceived plan and unity of design and purpose," and "[t]he purpose of this plan was unlawfully to destroy Antonacci's legal career so that he could not expose the criminal nature of this enterprise." ECF 1 ¶¶ 590-91. With respect to The So Company, Mr. Antonacci claims include only the broad, conclusory allegations that "So, Wheeler, Storij, and other Defendants conspired to knowingly, and with intent to defraud, access Antonacci's computer systems and mobile phone without authorization or exceeding authorized access, in violation of 18 U.S.C. § 1830(b)," or, "[a]lternatively, So, Wheeler, Storij, and other Defendants conspired to provide false, incomplete, and/or misleading information to U.S. government officials in order to obtain illegally a warrant allowing them to do so." *Id.* ¶¶ 612-13. These allegations fail to even articulate a clear conspiracy or purpose, let alone demonstrate any clear willful or malicious conduct by The So Company to harm Mr. Antonacci.

Those types of conclusory recitations of the elements of a claim are insufficient to allege a violation of the D.C. Antitrust Act. The Complaint does not include any facts showing how The So Company's actions "unreasonably restrain trade," which is necessary to state a claim under Section 4502; a "specific intent" to destroy or control competition in the relevant market and "a dangerous probability of success in actually monopolizing the relevant market," which is necessary to state a claim for alleged monopolization under Section 4503; or had "an effect upon an appreciable amount of commerce" in the District of Columbia and revealed a "specific intent to monopolize a designated segment of commerce," which is necessary to state a claim for conspiracy to monopolize under Section 4503.

16

331731716v.1

Absent those required factual allegations, the Complaint does not plead the type of "antitrust injury" necessary to confer on Mr. Antonacci standing to bring his antitrust claims. *Atl. Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*, 295 F. Supp. 2d 75, 88 (D.D.C. 2003). An "antitrust injury" is defined as an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489(1977). Count III makes clear, the alleged purpose of the enterprise's concerted plan "was to destroy Antonacci's legal career." ECF 1 ¶ 591. The D.C. Antitrust Act, however, was enacted to protect competition, and not an individual from those types of individual injuries asserted by Mr. Antonacci. Because Mr. Antonacci's alleged injuries do not suffice to constitute an economic injury to competition or the market, his claims in Count III must be dismissed for lack of antitrust standing. For these reasons, Mr. Antonacci's Count III should be dismissed.

4.    Count IV: Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985)

The Complaint alleges in Count IV (mislabeled "Count V" in Mr. Antonacci's Complaint) that "all Defendants" conspired to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985. Mr. Antonacci does not specify if he brings this Count under subsection 1, 2, or 3. Generally, Count IV alleges that "[Richard] Johnson and the Virginia State Bar, while acting under the color of state law, deprived Antonacci of rights, privileges and immunities guaranteed by the U.S. Constitution," by investigating him and suspending his Virginia Bar license, ECF 1 ¶¶ 652-662, 665, and that those acts are "part of the same conspiracy and all Defendants are therefore liable for the conspiratorial acts alleged herein." *Id.* at ¶ 663. Mr. Antonacci's failure to specify the specific sub-section of code of which his claim arises is further evidence that his

331731716v.1

Complaint fails to meet the requirements of Rule 8(a)(2). To the extent it is implied, Mr. Antonacci's Count IV seems to allege a deprivation of personal rights or privileges under subsection 3.

Section 1985(3) provides a cause of action against two or more persons who participate in a conspiracy motivated by class-based discriminatory animus. To state a claim under section 1985(3), Mr. Antonacci was required to allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States.

*Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (quoting *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987)). "The statute does not apply to all conspiratorial tortious interferences with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus."

Mr. Antonacci's Count IV fails because the Complaint contains only conclusory allegations of a supposed conspiracy. "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to state a cause of action under § 1985(3)." *Id.* (quoting *Iqbal*, 556 U.S. at 678). With respect to The So Company, those conclusory allegations are the exact same general allegations included in Count III. There are no factual allegations that support Mr. Antonacci's claim that The So Company and other Defendants entered into an agreement with each other, much less an agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means. Without a specific meeting of the minds for an unlawful purpose or means articulated, a claim of common law conspiracy must be dismissed. Accordingly, Count IV should be dismissed.

18

5.  Count V: Violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030)

Mr. Antonacci's Count V fails to allege any violation of the Computer Fraud and Abuse Act ("CFAA") and should be dismissed. The CFAA provides a private, civil cause of action for persons or entities harmed by a perpetrator's unauthorized access to a computer or other technology. Under the CFAA, unauthorized access to a computer can be established by showing either that an individual who had limited access to a computer exceeded the technological bounds of that access to view or alter information to which they otherwise did not have access. *United States v. Nosal*, 676 F.3d 854, 856-64 (9th Cir. 2012). In 2021, the Supreme Court clarified a longstanding circuit split and explained that "exceeding authorized access" is an "all or nothing" inquiry: in the context of the CFAA, *i.e.*, exceeding authorized access means accessing information one is not authorized to access by using a computer that he is authorized to access. *Van Buren v. United States*, 593 U.S. 374 (2021).

To state a claim under the CFAA, a plaintiff must demonstrate: (1) a defendant has accessed a protected computer; (2) the defendant did so without authorization or by exceeding such authorization as was granted; (3) the defendant acted knowingly and with intent to defraud; and (4) as a result, has furthered the intended fraud and obtained anything of value. *See* 18 U.S.C. § 1830, *et seq.*; s*ee also Scottrade, Inc. v. BroCo Invs., Inc.*, 774 F. Supp. 2d 573, 583 (S.D.N.Y. 2011). To be successful, a plaintiff must allege that he suffered harm in excess of $5,000 by the defendant's unauthorized access. *Lewis-Burke Assocs. LLC v. Widder*, 725 F. Supp. 2d 187, 192 (D.D.C. 2010).

Mr. Antonacci has not adequately alleged any violation of the CFAA. As a baseline, Mr. Antonacci fails to plausibly allege that defendants accessed his computer systems or cell phone at all, let alone without or in excess of authorization. Rather, Mr. Antonacci only alleges the

19

331731716v.1

following conclusory statements without any facts to support them: "So and Wheeler, on behalf of Storij, knowingly, and with intent to defraud, accessed Antonacci's computer systems and mobile phone without authorization or exceeding authorized access, in violation of 18 U.S.C. § 1830." ECF 1 ¶ 669. Mr. Antonacci also alleges during a Zoom videoconference between Mr. So and Mr. Antonacci, The So Company, through Mr. So, hacked into Mr. Antonacci's computer's cameras and audio, or, alternatively, that The So Company "provided false, incomplete, and/or misleading information about Antonacci to relevant authorities and/or intelligence agencies in order to obtain a warrant allowing Wheeler and So to monitor Antonacci." ECF 1 ¶¶ 369-70. There is no information about how The So Company "hacked" into Plaintiff's computer. There is no information about what sort of monitoring The So Company supposedly wanted to accomplish on Plaintiff's computer. There is also nothing about what "false, incomplete, and/or misleading information" The So Company provided to "relevant authorities," or even who those authorities might be. In fact, Plaintiff has provided no support for the allegations that The So Company accessed his computer systems and mobile phone at all. That is not sufficient to state a claim under Rule 12(b)(6), and Count V should be dismissed.

Furthermore, even if Mr. Antonacci could establish that Defendants accessed his computer systems and cell phone in excess of or without authorization—which he has not— Mr. Antonacci has not established that he was harmed by any such access, and his claim should be dismissed for that reason as well. The CFAA's private cause of action requires that a plaintiff adequately allege an injury of damage or loss of at least $5,000 to state a claim. The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or

20

information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Here, Mr. Antonacci asserts, without any factual support, that "Antonacci has suffered economic damage as a result of The So Company's intentional violations of 18 U.S.C. § 1030, including lost profits, in an amount to be proven at trial." ECF ¶ 672. This is a clear example of the type of the-defendant-harmed-me allegation that is insufficient to survive a motion to dismiss. *See Lightfoot v. Kooz, McKenney, Johnson & DePaolis LLP*, No. 22-238-JEB, 2022 U.S. Dist. LEXIS 107788, at *9-10 (D.D.C. Jun. 16, 2022); s*ee also, ACA Fin. Guar. Corp. v. City of Buena Vista, Va*., 917 F.3d 206, 211 (4th Cir. 2019) (surviving a motion to dismiss "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing *Iqbal*, 556 U.S. at 678). Mr. Antonacci does not even clearly state that the supposed harm is more than $5,000—only that some indeterminate amount will be proven at trial.

Additionally, Mr. Antonacci's CFAA claim is likely time-barred. CFAA claims must be brought "within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). The So Company retained Mr. Antonacci's law firm from 2015 to 2021. ECF 1 ¶¶ 258-59. During that time, the enterprise allegedly used Mr. Wheeler to "infiltrate and exploit Antonacci's protected computer systems and mobile phone." *Id.* at ¶ 263. Mr. Antonacci alleges that this "fraudulent scheme" continued "through May 2022." *Id.* at ¶ 409. On December 8, 2023, Mr. Antonacci's law firm formally terminated its service agreement with The So Company. *Id.* at ¶ 417. Given that Mr. Antonacci believes that acts complained of took place from 2015 to 2022, and Mr. Antonacci felt compelled to formally end the parties professional relationship in 2023, it is likely that Mr. Antonacci discovered the "damage" prior to 2023. As

21

331731716v.1

such, his current CFAA claim, filed January 23, 2026, is time-barred. For these reasons, Count V should be dismissed.

### D. The Complaint Should Be Dismissed for Insufficient Service of Process Under 12(b)(5)

Mr. Antonacci has not properly served The So Company. Rule 12(b)(5) governs motions to dismiss for insufficient service of process. "[T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provisions of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (citation omitted); *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 370 (D.C. Cir. 1997). Rule 4(m) sets forth the time limits for service and the consequences of failing to provide proper service. It states: [i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. Fed. R. Civ. P. 4(m).

As of filing this motion, Mr. Antonacci has not properly served Defendant The So Company. On February 13, 2026, Mr. Antonacci filed an affidavit of service alleging that The So Company's registered agent in the District of Columbia was served on February 9, 2026. *See* ECF 18. However, The So Company does not maintain a registered agent in the District of Columbia. As his Complaint notes, The So Company withdrew its registration in 2021. ECF ¶ 372. When an agent resigns or is withdrawn, it only takes 31 days for it to be effective. D.C. Code § 29-104.10. Having attempted service on February 9, 2026 on the CT Corporation, whom Mr. Antonacci believed to be a registered agent for The So Company, Mr. Antonacci received a letter the following day from the CT Corporation notifying him that they "are unable to forward

22

the documents to any party" because they are not an agent for The So Company. *See* Exhibit A., Notice of Rejected Service of Process.

As of this time, Mr. Antonacci has not effectuated proper service on The So Company. Pursuant to this Court's scheduling order, The So Company must respond to Mr. Antonacci's Complaint by March 16, 2026. *See* Minute Order, dated Feb. 23, 2026. Therefore, The So Company reserves the right to request dismissal pursuant to Rule 12(b)(5).

## IV.    CONCLUSION

WHEREFORE, Defendant The So Company respectfully requests that this Court grant its Motion to Dismiss, dismiss Plaintiff Louis Antonacci's claims against The So Company, and dismiss the Complaint with Prejudice.

Dated: March 16, 2026                    Respectfully submitted,

                                         WILSON, ELSER, MOSKOWITZ,
                                         EDELMAN & DICKER, LLP


                                         */s/ Jason R. Waters*
                                         Jason R. Waters, Esq. (D.C. Bar No.: 491066)
                                         Lauren E. Gilman, Esq. (D.C. Bar No.: 90008050)
                                         8444 Westpark Drive - Suite 510
                                         McLean, VA 22102-5102
                                         Telephone: (703) 245-9300
                                         Facsimile: (703) 245-9301
                                         Jason.Waters@wilsonelser.com
                                         Lauren.Gilman@wilsonelser.com
                                         *Counsel for The So Company*

331731716v.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this March 16, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ Jason R. Waters
Jason R. Waters, Esq. (D.C. Bar No.: 491066)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
8444 Westpark Drive - Suite 510
McLean, VA 22102-5102
Telephone: (703) 245-9300
Facsimile: (703) 245-9301
Jason.Waters@wilsonelser.com
*Counsel for The So Company*

24

331731716v.1