**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LOUIS B. ANTONACCI,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.: 1:26-CV-00211-LLA** |
| **RAHM ISREAL EMANUEL,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

Defendants Parrish Law Firm, PLLC ("Parrish Law") and 9208 Lee Avenue, LLC ("9208 Lee Ave.") (collectively referred to hereinafter as the "Parrish Defendants"), by and through their undersigned counsel, Justin M. Flint, and ECCLESTON & WOLF, P.C., pursuant to Rule 8, 12(b)(1) and Rule 12(b)(6) of the Fed. Rul. Of Civ. P., respectfully move this Court to dismiss Plaintiff Louis B. Antonacci's ("Plaintiff" or "Mr. Antonacci") Complaint for lack of subject matter jurisdiction, and in the alternative, failure to state a claim upon which relief can be granted, and in support thereof the Parrish Defendants respectfully state:

**I.    INTRODUCTION**

This instant matter is before this Court based on Plaintiff's frivolous and unplausible allegations that the Parrish Defendants, along with fourteen other defendants (collectively referred to hereinafter as "Defendants"), operated a "Zionist criminal enterprise" with an intent to sabotage Plaintiff's professional career and defame his reputation. *See* Compl. p. 4-5. The Parrish Defendants are implicated in this instant matter because of James Parrish's representation of Plaintiff in an Arlington County Circuit Court civil matter. James Parrish is the sole member and managing partner of Parrish Law. Also, James Parrish is the sole member and managing partner

of 9208 Lee Ave. Plaintiff's Complaint ("Complaint") alleges that the Parrish Defendants deliberately prejudiced Plaintiff's Arlington County Circuit Court civil matter as a tool to prevent Plaintiff from receiving income and to protect the criminal conduct of the "Zionist criminal enterprise." *See* Compl. ¶ 514.

Plaintiff's instant federal and state law claims against the Parrish Defendants should be denied pursuant to Rule 8, 12(b)(1), and 12(b)(6) of the Fed. R. Civ. P for (1) failure to plead a claim for relief in a short and plain statement; (2) lack of subject matter jurisdiction; and (3) failure to state a claim upon which relief could be granted. *See* Rule 8 of Fed. R. Civ. P.; Rule 12(b)(1) of Fed. R. Civ. P.; and Rule 12(b)(6) of Fed. R. of Civ. P. Primarily, the instant Complaint is Plaintiff's third federal attempt to assert frivolous, unplausible, and audacious claims, in an effort to allege the Defendants are operating a criminal enterprise to attack Plaintiff's legal career and reputation. At the outset, Plaintiff's claims are merely conclusory and untrue, and each federal and state claim should be dismissed for lack of subject matter jurisdiction, or in the alternative, failure to state a plausible claim.

## II.    RELEVANT BACKGROUND FACTS

Plaintiff, whose bar license is suspended in Maryland, the District of Columbia, and Virginia, files the instant Complaint attempting to connect isolated events that occurred between Plaintiff and each Defendant, to a "Zionist criminal enterprise." *See* Compl. ¶ 471; *see id.* p. 4. The origin of Plaintiff's claims begins during his time as an associate at Holland & Knight, LLP ("Holland & Knight"). According to Plaintiff, "[w]hile he was an associate at Holland & Knight[], [Plaintiff] filed a federal lawsuit in the U.S. District Court for the Eastern District of Virginia asserting [Racketeering Influenced and Corrupt Organizations ("RICO")] and state law fraud claims against an alleged enterprise that sought to defraud a firm client out of $4,000,000." *See Id.*

2

¶ 29. Plaintiff sought to name Gerald I. Katz ("Katz") as a Defendant in the federal RICO suit. *See Id.* ¶ 34. Upon notifying the firm of his decision, Plaintiff's executive partner, Paul J. Kiernan ("Mr. Kiernan") "indicated that naming Katz as a defendant was not legally viable because the agent immunity doctrine preclude[d] conspiracy claim[s] between attorney[s] and client[s]." *See Id.* ¶ 39. Plaintiff deferred to Mr. Kiernan's findings and removed Katz as a Defendant. *See Id.* ¶ 45. Ultimately, the matter settled. *See Id.* ¶ 46.

In 2010, Holland & Knight requested for Plaintiff to resign from his position due to an alleged inappropriate relationship with another associate. *See Id.* ¶ 53. According to Plaintiff, the firm's allegation against Plaintiff was a cover-up for their true intention to request Plaintiff's resignation. Plaintiff claims that Mr. Kiernan and Stephen B. Shapiro ("Mr. Shapiro"), a partner of Sheppard Mulling, LLP, true intentions were to retaliate against Plaintiff for "exposing the corrupt law practice of Katz, who is part of their criminal enterprise." *See Id.* ¶ 65. Throughout the Complaint, Plaintiff emphasized that both Mr. Kiernan and Mr. Shapiro were "Zionist and Jew." *See Id.* ¶ 38 and 62. Notably, Plaintiff continuously alleged that the Defendants, Mr. Keirnan, Mr. Shapiro, Rahm Emanuel ("Mr. Emanuel"), Fusion GPS, Rokk, and many others, were spreading false narratives about Plaintiff to prevent him from obtaining "gainful employment . . . so that [Plaintiff] could not promote legal theories that could implicate dubious attorneys like Kiernan, Shapiro, and Katz." *See Id.* ¶ 66-68. In fact, Plaintiff alleges Mr. Emanuel, a former White House Chief of Staff to President Barack Obama, is the leader of the enterprise. *See Id.* ¶ 87-88.

In 2010, Mr. Emanuel departed from his role as Chief of Staff to President Barack Obama to run for mayor of Chicago, Illinois. *See Id.* at ¶ 89. As a note, Mr. Emanuel was successful and became the mayor of Chicago. *See Id.* ¶ 98. Subsequently, Plaintiff moved to Chicago and accepted a position with Seyfarth Shaw, LLP ("Seyfarth"), which Plaintiff claims was "a trap set by this

enterprise, particularly through Kiernan, Seyfarth and Emanuel." *See Id.* at ¶ 92 and 93. As an associate of Seyfarth, Plaintiff was tasked with assisting Defendant Anita J. Ponder ("Ms. Ponder") on a project advising the City of Chicago on a matter. *See Id.* ¶ 96-97. Plaintiff alleged that Mr. Emanuel, as mayor of Chicago, retained Ms. Ponder's representation to compromise Plaintiff's legal career. *See Id.* ¶ 106.

In April 2012, Plaintiff alleged that he applied for admission to the Illinois Bar. *See Id.* ¶ 107-108. Subsequently, in May 2012, Plaintiff was terminated from Seyfarth. Plaintiff alleged that his termination resulted from Mr. Emanuel, Mr. Kiernan, and Mr. Shapiro underlying enterprise against Plaintiff. *See Id.* ¶ 109 and 111. According to Plaintiff, "Seyfarth nonetheless characterized [Plaintiff's] termination as a "layoff and tried to hide evidence of Ponder' s defamatory statements concerning [Plaintiff] . . ." *See Id.* ¶ 110. After Plaintiff's departure from Seyfarth, Plaintiff hired an attorney to represent him in a civil suit against Seyfarth. *See Id.* ¶ 122-127. As part of course, Plaintiff alleged that his attorney conspired with Mr. Emmanuel, Matthew J. Gehringer (Mr. Gehringer"), Seyfarth, Ms. Ponder, and others, to keep Plaintiff's complaint "under seal so that the allegations exposing the corruption and incompetence pervading Seyfarth would not remain public, breaching Major's fiduciary duty to Plaintiff." *See Id.* ¶ 142.

Following the events stated above, Plaintiff filed his first federal lawsuit against many of the named Defendants in the instant matter. Initially, Plaintiff filed a complaint in the U.S. District Court for the Northern District of Illinois, Eastern District, against Defendants Anita J. Ponder, Seyfarth Shaw, LLP, Matthew J. Gehringer, Perkins Coie, LLP, the City of Chicago, and many others. *See* Compl. p. 4; *see also Louis Antonacci v. City of Chi., et al.*, 2015 U.S. Dist. LEXIS 58490, at *4 (N.D. Ill. 2015). This complaint alleged that the Defendants engaged in fraudulent acts designed to sabotage Plaintiff's state court claims under the federal RICO Act. The District

4

Court Judge, the Honorable Milton I. Shadur ("Judge Shadur") denied Plaintiff's complaint for lack of subject matter jurisdiction.

Persistent to continue the alleged claims of a criminal enterprise, Plaintiff appealed to the U.S. Court of Appeals for the Seventh Circuit, in the matter *Louis B. Antonacci v. City of Chi., et al.*, 640 Fed. App'x. 553, 557 (7th Cir. 2016). On appeal, Plaintiff alleged that Defendants Ms. Ponder, Seyfarth, Mr. Gehringer, Perkins Coie, LLP, the City of Chicago, and many others, engaged in fraudulent acts designed to sabotage his state court claims under the federal RICO Act. The Seventh Circuit Judges, the Honorable Diane P. Wood, William J. Bauer, and Richard A. Posner ("Seventh Circuit Panel Judges"), affirmed the District Court's decision and found Plaintiff's claims lacked subject matter jurisdiction. The Court held that Plaintiff's RICO claims were legally frivolous. The Seventh Circuit noted, "[Plaintiff] has flung wild accusations at a large number of people, but the state courts of Illinois found no merit in them, and we can see no reason to permit him to resuscitate them in the form of this RICO suit." *Antonacci*, 640 F. App'x at 557. Plaintiff opposed the Seventh Circuit decision and filed a petition for leave to the Illinois Supreme Court, which was denied. *See* Compl. ¶ 271 and 274. Following the Illinois Supreme Court's ruling, Plaintiff filed a writ of certiorari to the Supreme Court of the United States, which was also denied. *See* Compl. ¶ 294.

On February 14, 2024, Plaintiff filed his second federal complaint in the U.S. District Court for the Eastern District of Virginia against many of the Defendants named in the instant matter. *See* Compl. ¶ 420; *see Louis Antonacci v. Rahm I. Emanuel, et al.*, 2024 U.S. Dist. LEXIS 107279, at *7 (E.D. Va. May 23, 2024). Similarly to the Northern District of Illinois and Seventh Circuit matter, the complaint raised federal claims under the RICO Act alleging the Defendants operated as a criminal enterprise. Subsequently, on May 9, 2024, Shaun So filed a bar complaint to the

Virginia State Bar alleging Plaintiff's complaint was frivolous and costing unnecessary attorneys' fees. *See* Compl. ¶ 421. After investigating the matter, the Virginia State Bar found that Plaintiff committed misconduct, and Plaintiff's Virginia bar license was suspended for one year. *See* Compl. ¶ 458. Plaintiff claimed, "[his] prosecution by the Virginia State Bar makes clear that this Zionist criminal enterprise is completely devoid of class, character, courage, and integrity." *See* Compl. ¶ 459. Plaintiff appealed the decision to the Supreme Court, which was eventually denied. *See* Compl. ¶ 465.

In the midst of Plaintiff's Viriginia State Bar matter, Plaintiff's U.S. District Court for the Eastern District of Virginia matter was pending. The Court issued an Order on May 23, 2024, and June 7, 2024. Similar to the Court's findings in the Northern District of Illinois and the Seventh Circuit matters, U.S. District Court Judge Michael S. Nachmanoff ("Judge Nachmanoff") dismissed Plaintiff's complaint for lack of subject matter jurisdiction, holding Plaintiff's claims were frivolous. *See* Compl. ¶ 500. After Judge Nachmanoff dismissed the complaint, Plaintiff appealed the decision on June 11, 2024. *See Antonacci*, 2024 U.S. Dist. LEXIS 107279, at *7. According to Plaintiff, one week later, Plaintiff was involved in a hit-and-run accident. Plaintiff claims that the driver, Sergio Palma ("Mr. Palma"), deliberately caused the accident because Plaintiff perfected his appeal "of the EDVA matter against the Zionist criminal enterprise . . ." *See* Compl. ¶ 514.

In June 2025, Plaintiff retained James Parrish of the Parrish Law Firm, PLLC and managing partner of 9208 Lee Ave. ("Mr. Parrish"), to represent him in the hit-and-run matter. *See* Compl. ¶ 506. Plaintiff claims that while "riding his triathlon bike twenty miles an hour, on a route he traveled regularly during his three years in Alexandria, Virginia, [] a motor vehicle raced into the crosswalk he was traversing and stopped abruptly, blocking his ingress back onto the bike trail.

[Plaintiff] swerved to avoid the vehicle, hit the curb, went over the handlebars, and broke his collarbone." *See Id.* ¶ 503. Following the accident, Plaintiff retained Mr. Parrish to file a civil complaint against Mr. Palma in Arlington County Circuit Court. *See Id.* ¶ 506. Plaintiff alleged a myriad of issues regarding Mr. Parrish's representation, such as (1) failing to properly serve Mr. Palma; (2) delaying prosecution of the case; (3) falsely claiming that he had not received the signed withdrawal order; and (4) failing to provide Plaintiff with requested information obtained during the representation. *See Id.* ¶ 507-513. As a result of the alleged conflict between Plaintiff and Mr. Parrish, Mr. Parrish requested to terminate his representation.

In the instant Complaint, Plaintiff alleged that the Parrish Defendants utilized interstate wires and mail to deliberately prejudice Plaintiff's hit-and-run case. *See Id.* ¶ 514. Plaintiff claimed that the Parrish Defendants intended to prevent Plaintiff from receiving income and protect Mr. Palma, who allegedly deliberately caused the accident under the criminal enterprise. *See Id.* Further, Plaintiff claimed that Defendants conspired with the Parrish Defendants to "to ensure Mr. Palma could not be held responsible and Plaintiff could not receive renumeration for his medical expenses." *See* Compl. ¶ 550(l). As such, Plaintiff's claims against the Parrish Defendants should be dismissed because they are frivolous and lack plausibility.

## II.   STANDARD OF REVIEW

"Federal law empowers federal district courts to hear only certain kinds of cases, and it is 'presumed that a cause lies outside this limited jurisdiction.'" *MSP Recovery Claims, Series LLC v. Pfizer, Inc.*, 2023 U.S. Dist. LEXIS 58653, at *8 (D.D.C. Apr. 4, 2023) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) of the Federal Rules of Civil Procedure "allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction." *Pfizer, Inc.*, 2023 U.S. Dist. LEXIS 58653, at *8. "[T]he plaintiff bears the burden

7

of establishing that the Court has subject-matter jurisdiction . . ." *Stallard v. Goldman Sachs Grp., Inc.*, 2024 U.S. Dist. LEXIS 215791, at *9 (D.D.C. Nov. 27, 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"When deciding a Rule 12(b)(1) motion, the court must 'assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions.'" *Id.* (citing *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (2011)) "But the court 'may undertake an independent investigation' that examines 'facts developed in the record beyond the complaint' in order to 'assure itself of its own subject matter jurisdiction.'" *Id.* (citing *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005)). The Court does not "assume the truth of legal conclusions, [] nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint[.]'" *Arpaio v. Obama*, 797 F.3d 11, 19 (2015) (citing *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)). "Thus, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [of standing] that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Moreover, pursuant to Fed. R. Civ. P. 12(b)(6), a Court must dismiss a complaint when it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D.D.C. 2020) (quoting *Iqbal*, 556 U.S. at 678; quoting *Twombly*, 550 U.S. at 570). "A facially plausible claim is one that 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Moore v. United States Dep't of State*, 351 F. Supp. 3d 76, 87 (D.D.C. 2019) (quoting *Iqbal*, 556 U.S. at 678). "This standard does not amount to a specific probability requirement, but it does require 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "A complaint need not contain 'detailed factual allegations,' but alleging facts that are 'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

While, in evaluating a Rule 12(b)(6) motion, "the court must treat the complaint's factual allegations . . . as true," a court "need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cased as factual allegations." *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 274–75 (D.D.C. 2011). Lastly, a co-party may join or incorporate the legal arguments of another co-party's motion to dismiss. *See Miango v. Democratic Republic of the Congo*, 243 F. Supp. 3d 113, 122 (D.D.C. 2017) (permitting joining a motion to dismiss); *see also United States ex rel. Landis v. Tailwind Sports Corp.,* 51 F. Supp. 3d 9, 53 (D.D.C. 2014) (stating it is common for a co-party to join or incorporate the legal arguments of another co-party); *see Grissom v. District of Columbia*, 853 F. Supp. 2d 118, 121 (D.D.C. 2012) (permitting joining a motion to dismiss).

## III.    ARGUMENT

### A. <u>Plaintiff's Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff's Lack Plausibility.</u>

At the outset of the Parrish Defendants' motion, the Parrish Defendants seek to join Defendant's Lane Construction Corporation and Seth Firmender's Motion to Dismiss, and incorporate the arguments established therein. *See Miango v. Democratic Republic of the Congo*, 243 F. Supp. 3d 113, 122 (D.D.C. 2017) (permitting joining a motion to dismiss); *see also United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 53 (D.D.C. 2014) (stating it is

common for a co-party to join or incorporate the legal arguments of another co-party); *see Grissom v. District of Columbia*, 853 F. Supp. 2d 118, 121 (D.D.C. 2012) (permitting joining a motion to dismiss). As such, as the Courts found in Plaintiff's U.S. District Court for the Northern District of Illinois, Eastern District, U.S. Court of Appeals for the Seventh Circuit, and U.S. District Court for the Eastern District of Virginia matters, Plaintiff's instant claims against the Parrish Defendants should be dismissed for a lack subject matter jurisdiction.

Plaintiff's instant claims mirror his previous federal claims that failed to state a claim for relief. Specifically, Plaintiff's allegations that the Parrish Defendants are operating a "Zionist criminal enterprise" to ruin Plaintiff's legal career and reputation are unsupported plausible claims that fail to meet the Rule 12(b)(1) and Rule 12(b)(6) standard. *See Antonacci*, 640 F. App'x at 557 (stating "[w]hile he premises his RICO claims on multiple allegations of fraud, each individual allegation is so unsupported by any plausible detail as to be preposterous"); *see also Antonacci*, 2024 U.S. Dist. LEXIS 107279, at *7 (finding that Plaintiff's claims that are "roughly identical allegations" as the Seventh Circuit matter lack subject matter because such claims are 'wholly insubstantial.").

"Dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction is justified where a claim is "'immaterial and made solely for the purpose of obtaining jurisdiction' or [it] is 'wholly insubstantial and frivolous.'" *Carmichael v. Pompeo*, 486 F. Supp. 3d 360, 367 (D.D.C. 2020) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n. 10 (2006) (quoting *Bell v. Hood*, 327 U.S. 678, (1946)); *see also Marino v. CIA*, 2012 U.S. Dist. LEXIS 139661, at *4 (D.D.C. Sep. 28, 2012) (quoting "[F]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit[]' . . . 'wholly insubstantial[]]' . . . 'plainly unsubstantial[]' . . . or 'no longer open to discussion[]' . . . "A

10

dismissal on this ground is warranted only 'where [] a claim is wholly insubstantial and frivolous.'") (internal citations omitted).

Plaintiff's allegations against the Parrish Defendants are "legally frivolous" because they are "so unsupported by any plausible detail as to be preposterous." *See Antonacci*, 2024 U.S. Dist. LEXIS 107279, at *7 (citing *Antonacci*, 640 F. App'x at 557). Plaintiff, as in his previous cases, "continues to 'fl[ing] wild accusations at a large,' and seemingly never-ending, 'number of people' who have no apparent connection other than their interactions, however tangential, to [Plaintiff]." *Id.* (quoting *Antonacci*, 640 F. App'x at 557). Plaintiff alleges that the Parrish Defendants "[u]tiliz[ed] interstate wires and mails [to] deliberately prejudiced [Plaintiff's] case in order to prevent [Plaintiff] from receiving income, and to protect the defendant Palma, who had deliberately caused the accident where Antonacci was severely injured on June 18, 2024, just one week after perfecting his appeal of the EDVA matter against the Zionist criminal enterprise alleged in the complaint." *See* Compl. ¶ 514. Also, Plaintiff claims that the Parrish Defendants alleged interference with his hit-and-run matter was to conspire with Mr. Palma in attempting to murder Plaintiff. *See* Compl. ¶ 550(l). These claims are "so attenuated and unsubstantial as to be absolutely devoid of merit," wholly unsubstantial, and plainly unsubstantial. *See Marino*, 2012 U.S. Dist. LEXIS 139661, at *4. As Judge Nachmanoff, Judge Shadur, and the Seventh Circuit Panel Judges, found in the previous matters, Plaintiff's claims lack subject matter jurisdiction and should be dismissed.

## B. Plaintiff's Complaint Should be Dismissed for Failure to Comply with Fed. R. Civ. P. 8.

In addition to lacking subject matter jurisdiction, Plaintiff's Complaint fails to meet the standard of Rule 8 of the Fed. R. of Civ. P. Rule 8(a)(2) provides "that any pleading asserting a claim for relief must include a 'short and plain statement of the claim showing that the pleader is

entitled to relief.'" *Raja v. FDIC*, 2026 U.S. Dist. LEXIS 14132, at *7 (D.D.C. Jan. 26, 2026) (citing Fed. R. Civ. P. 8(a)(2)). "Rule 8(d)(1) requires that pleadings be 'simple, concise, and direct.'" *Id.* (citing Fed. R. Civ. P. 8(d)(1)). "Taken together, Rules 8(a) and 8[(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Id.* (citing *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004)).

Rule 8(a) "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Johnson v. Dinapoli*, 2022 U.S. Dist. LEXIS 31320, at *1 (D.D.C. Feb. 18, 2022). "The Rule 8 standard ensures that defendants receive fair notice of the claim being asserted so that they can prepare a responsive answer, mount an adequate defense and determine whether the doctrine of res judicata applies." *Id.* at *1-2 (citing *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)). "The standard also assists the court in determining whether it has jurisdiction over the subject matter." *Id.* at *2.

"[T]the courts have unhesitatingly dismissed actions where the complaint: consisted of 'a labyrinthian prolixity of unrelated and vituperative charges that def[y] comprehension . . . was [] confusing, ambiguous, redundant, vague and, in some respects, unintelligible . . . So verbose, confused and redundant that its true substance, if any, is well disguised . . . contained [] a completely unintelligible statement of argumentative fact . . . with [] little more than demands, charges, and conclusions . . . represented [] circuitous diatribes far removed from the heart of the claim or set forth [] a meandering, disorganized, prolix narrative . . . .'" *Brown*, 75 F.R.D. at 499 (internal citations omitted). Additionally, pursuant to Rule 8, "[a] plaintiff flouts that rule, however, 'by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct.'" *Whaleco Inc. v. Shein Tech. LLC*, 2025 U.S. Dist. LEXIS 193394, at *19 (D.D.C. Sep. 30, 2025) "Courts in this District have thus granted motions to dismiss when the

plaintiff's 'factual allegations refer[red] to "Defendants' collectively without specifying which of" the individual defendants' allegedly took each action described in the complaint." *Id.* (internal citations omitted).

Here, this Court should unhesitatingly dismiss Plaintiff's Complaint since it directly consists of "a labyrinthian prolixity of unrelated and vituperative charges that def[y] comprehension . . . [are] confusing, ambiguous, redundant, vague and, in some respects, unintelligible . . . [s]o verbose, confused and redundant that its true substance, if any, is well disguised." *Brown*, 75 F.R.D. at 499. Plaintiff's Complaint deems to connect ambiguous, vague, and unintelligible facts that the Parrish Defendants conspired with the Defendants to support a criminal enterprise. *See* Compl. ¶ 514. Plaintiff's allegations mirror the exact allegations Rule 8 prohibits. Plaintiff's claims against the Parrish Defendants' merely state that "the-defendant-unlawfully-harmed-me accusation," *Johnson*, 2022 U.S. Dist. LEXIS 31320, at *1, instead of alleging a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *FDIC*, 2026 U.S. Dist. LEXIS 14132, at *7.

As such, the Parrish Defendants lack "fair notice of the claim[s] being asserted so that they can prepare a responsive answer, mount an adequate defense, and[/or] determine whether the doctrine of res judicata applies." *Id.* at *1-2. Plaintiff's confusing, ambiguous, redundant, vague and, in some respects, unintelligible claims against the Parrish Defendants, claiming "Parrish conspired on behalf of himself, Parrish Law, 9208 Lee, and this enterprise," or "All Defendants, including the Virginia State Bar, Johnson, Parrish, 9208 Lee and Parrish Law were fully aware of the conspiracy they agreed to join," does not provide the Parrish Defendants with adequate information to properly and diligently defend themselves against the instant claims. *See* Compl. ¶

584, 646 and 664. As such, Plaintiff's Complaint should be dismissed pursuant to Rule 8 of the Fed. R. Civ. P.

**C. Count I of the Complaint Is Barred By the Statute of Limitations and Does Not State a Plausible RICO Claim.**

**I.      Plaintiff's RICO Claims Are Barred by the Four-Year Statute of Limitations.**

The Parrish Defendants will address Plaintiff's RICO claim in two parts. First, Plaintiff's RICO claims are barred by the four-year statute of limitations. "It is well established that RICO claims are subject to a four-year statute of limitations period . . . which begins to run "when a plaintiff knew or should have known of his injury[.]" *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 226 (D.D.C. 2012) (quoting *Rotella v. Wood*, 528 U.S. 549, 553 (2000)).

Here, although Plaintiff's claims against the Parrish Defendants occurred in 2025, Plaintiff's claims of a criminal enterprise seeking to destroy his legal career and reputation began as early as his filing of the Seventh Circuit Court of Appeals complaint against Defendants Anita J. Ponder, Seyfarth Shaw, LLP, Matthew J. Gehringer, Perkins Coie, LLP, the City of Chicago, and many others. *See Antonacci*, 640 F. App'x at 554. This Court has declined to accept that the "four-year period of limitations for civil RICO actions should run from the date of the last 'predicate act' committed as part of the alleged 'pattern of racketeering activity.'" *Nihiser v. White*, 211 F. Supp. 2d 125, 129 (D.D.C. 2002) (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 179 (1997)). "The Court held that acceptance of the argument would have 'lengthened the limitations period dramatically,' "because a series of predicate acts (including acts occurring at up to 10-year intervals) can continue indefinitely."" *See Id.* (quoting *Klehr*, 521 U.S. at179). "Declining to 'create a limitations period that is longer than Congress could have contemplated,' the Court characterized the argument as one that would have 'conflicted with a basic objective—repose—that underlies limitations periods.'" *Id.* Similarly, Plaintiff's RICO claims against the Parrish

14

Defendants are also barred by the four-year statute of limitations, since Plaintiff knew or should have known of his injury as early as 2016. As such, Count I of Plaintiff's Complaint should be dismissed.

**II.      Count I of Plaintiff's Complaint Does Not State a Plausible RICO Claim Because It Does Not Allege the Existence of an "Enterprise."**

Alternatively, Plaintiff's RICO claim fails to state a plausible claim because Plaintiff failed to allege the existence of conduct of an enterprise through a pattern of racketeering activity. "In order to state a claim for a violation of the RICO statute, a plaintiff must allege the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Son Ly v. Solin*, Inc., 910 F. Supp. 2d 22, 26 (D.D.C. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Specifically, Plaintiff's Complaint fails to allege that an "enterprise" exists and a pattern of racketeering activity.

The Complaint alleges that "the enterprise is an association-in-fact among individuals and business entities designed to divert taxpayer money to members of the enterprise." *See* Compl. ¶ 517. "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). "[A]n association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* (citing *United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, 2528 (1981)). "[T]he group must function as a continuing unit and remain in existence long enough to pursue a course of conduct." *Boyle*, 556 U.S. 938, 948.

Plaintiff's Complaint fails to make such a showing. Primarily, Plaintiff alleges, the "enterprise" sought to destroy (1) the professional reputation of anyone who sought to expose them; (2) defame individuals; (3) commit murder; (4) protect members from civil liability; and (5)

defraud. *See* Compl. ¶ 517. However, Plaintiff fails to establish "a purpose [for] the relationship among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *See Boyle*, 556 U.S. at 946. Plaintiff vaguely states that the alleged enterprise sought to cause harm to others, while failing to specify a clear purpose of the enterprise, the relationship between the Defendants, and longevity. *See Id.* Plaintiff attempts to connect siloed events and individuals, with no history of a relationship, to one another to develop an enterprise. Further, Plaintiff fails to make any clear connection between the Parrish Defendants, Mr. Palma, and the other Defendants, to establish the Defendants knew one another to establish a "group" that functioned as a continuing unit. *Boyle*, 556 U.S. 938, 948.

Additionally, Plaintiff fails to show a pattern of racketeering activity as to the Parrish Defendants. "A 'pattern of racketeering' activity requires the commission, within a 10-year period, of at least two related predicate acts punishable under certain enumerated criminal statutes.'" *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 12 (D.D.C. 2014). "In addition, the Supreme Court has construed the pattern element to require a showing that the racketeering predicates are both related and continuous." *Id.* "[A]mong the factors courts should consider when evaluating whether the plaintiff has established such a pattern are 'the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity.'" *Id.*

Here, Plaintiff neglects to identify a pattern of racketeering activity, specifically on behalf of the Parrish Defendants. Plaintiff alleges one alleged unlawful act against the Parrish Defendants, which is coordinating with Mr. Palma on behalf of the enterprise to interfere with Plaintiff's hit and run matter. *See* Compl. ¶ 506-514. The alleged acts occurred approximately between June 2025 and January 2026, at the time the instant Complaint was filed, which totals to less than a

16

year. Pursuant to the standard to establish a pattern of unlawful acts, Plaintiff fails to identify "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Papageorge*, 31 F. Supp. 3d at 12. Plaintiff alleges that the Parrish Defendants committed one act; that one act involved one victim, himself; the act involved one perpetrator, Mr. Parrish; and fails to identify the character of the unlawful activity. *See Id.* As such, Plaintiff's RICO claims fail to meet the element of a pattern of racketeering activity.

Lastly, for a Plaintiff "to maintain standing to sue for a violation of § 1962(c), a plaintiff must allege that (1) he suffered an injury to his business or property, and that (2) defendant's RICO predicate acts were the cause of the injury. *Greenpeace, Inc. v. Dow Chem. Co.*, 808 F. Supp. 2d 262, 268-69 (D.D.C. 2011) (stating the "injured [party] must show that the RICO predicate offense was not only the "but for" cause of their injury, but the proximate cause as well." *Id.* at 269. "Proximate cause requires 'some direct relation between the injury asserted and the injurious conduct alleged." *Id.* (quoting *Holmes*, 503 U.S. at 268). "A link that is too remote, purely contingent, or indirect is insufficient." *Id.* (quoting Hemi Grp., 130 S. Ct. at 989).

Plaintiff's Complaint omits any "direct relation between the injury asserted and the injurious conduct alleged." *See Dow Chem. Co.,* 808 F. Supp. 2d at 269. Plaintiff merely states in the Complaint, "[a]s a proximate result of these RICO violations, Mr. Antonacci has been injured in the amount of $35,000,000 in lost earnings, exclusive of interest and costs. *See* Compl. ¶ 534. Such assertion fails to identify a specific injury suffered and does not allege a direct connection to any alleged conduct on behalf of the Parrish Defendants. As such, Plaintiff's RICO claim is barred by the four-year statute of limitations, and if such limitation does not apply, Plaintiff failed to state a plausible RICO claim. Thus, Count I should be dismissed.

17

**D. Count II of the Complaint Must be Dismissed Because It Does Not State a Plausible RICO Conspiracy Claim and Is Untimely.**

As previously stated, all of Plaintiff's RICO claims are barred by the four-year statute of limitations because Plaintiff knew or should have known of alleged injury as early as 2016. *See Youkelsone*, 910 F. Supp. 2d at 226 (D.D.C. 2012) (stating "[i]t is well established that RICO claims are subject to a four-year statute of limitations period . . . which begins to run "when a plaintiff knew or should have known of his injury[.]"); *see Antonacci*, 640 F. App'x at 554 (Plaintiff's complaint alleging Defendants Anita J. Ponder, Seyfarth Shaw, LLP, Matthew J. Gehringer, Perkins Coie, LLP, the City of Chicago, and many others developed a criminal enterprise to destroy his legal career and reputation.). Further, although the Parrish Defendant's alleged acts connected to the conspiracy occurred in June 2025, "this Court has declined to accept that the "four-year period of limitations for civil RICO actions should run from the date of the last 'predicate act' committed as part of the alleged 'pattern of racketeering activity.'" *White*, 211 F. Supp. 2d at 129 (citing *A.O. Smith Corp.*, 521 U.S. at 179). Thus, Plaintiff's RICO Conspiracy Claim is barred by the four-year statute of limitations period.

However, if the Court were to find that Plaintiff's claims against the Parrish Defendants are not barred by the statute of limitations, the Parrish Defendants assert that Plaintiff failed to make a plausible claim for RICO Conspiracy pursuant to 18 U.S.C. § 1962(d). "The elements of a RICO conspiracy claim are 'that (1) two or more people agreed to commit a [18 U.S.C. § 1962(c)] offense, and (2) a defendant agreed to further that endeavor.'" *Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 153 (D.D.C. 2016) *(*quoting *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012)). "To be liable for conspiracy, '[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the

elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.'" *Cheeks*, 216 F. Supp. 3d at 153.

Primarily, Plaintiff's RICO conspiracy claim fails because Plaintiff fails to establish two or more people agreed to commit a [18 U.S.C. § 1962(c)] offense. *See id.* Plaintiff alleges that the Parrish Defendants and the other named Defendants had a scheme that violated 18 U.S.C. § 1951, Interstate and Foreign Travel or Transportation in Aid of Racketeering Activity. To support Plaintiff's allegation, Plaintiff stated, "the Defendants conspired with Palma and Parrish in order to attempt to murder Antonacci so he could not prosecute his Fourth Circuit Appeal, and [failing] to have achieve that goal, conspired with Parrish to ensure Palma could not be held responsible and Antonacci could not receive renumeration for his medical expenses." *See* Compl. ¶ 550(l). However, nowhere in this language does Plaintiff identify an agreement developed between the Parrish Defendants and any other Defendants to murder Plaintiff. Plaintiff's accusations are merely conclusory and merely mention the terminology that Defendants "conspired" with one another, without any plausible facts as to an alleged agreement. While the Rule 12(b)(6) standard does not require "a specific probability requirement, it does require 'more than a sheer possibility that a defendant has acted unlawfully.'" *Moore*, 351 F. Supp. 3d at 87 (quoting *Iqbal*, 556 U.S. at 678). Plaintiff's allegations against the Parrish Defendants barely show a possibility that the Parrish Defendants acted unlawfully. Plaintiff merely states that the Parrish Defendants "conspired," without any further details. As such, Plaintiff's RICO conspiracy claims should be dismissed.

E. **Count III of the Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction and Failure to State a Plausible Claim**

Plaintiff attempts to assert multiple state law claims, including, D.C. Code §§ 28-4502, 4503, and 4508, against the Parrish Defendants. First, the Complaint states, "[t]he Defendants conspired with Palma and Parrish in order to attempt to murder Antonacci so he could not

19

prosecute his Fourth Circuit Appeal, and falling to have achieved that goal, conspired with Parrish to ensure Palma could not be held responsible and Antonacci could not receive renumeration for his medical expenses." *See* Compl. ¶ 619. Next, Plaintiff alleged that "Parrish conspired on behalf of Parrish Law, 9208, and this enterprise." *See* Compl. ¶ 646. Lastly, Plaintiff alleged that "Defendants willfully and maliciously combined, associated, agreed, mutually undertook and concerted to together to willfully and maliciously injure Antonacci in his reputation, business, and profession . . . [t]he damage Antonacci and his business are incurring is ongoing . . . [a]s a proximate result of these violations of D.C. Code §§4502 and 4503, Mr. Antonacci has been injured in the amount of $35,000,000 in lost earnings, exclusive of interest and costs . . . [p]ursuant to D.C. Code §§4508, Mr. Antonacci is entitled to recover treble damages, the costs of bringing this action, and his reasonable attorneys' fees." *See* Compl. ¶ 647-650.

Since the instant claims are state law claims, rather than federal, the Court has discretion to determine whether to exercise jurisdiction. Thus, this Court should decline exercising supplemental jurisdiction over Plaintiff's state law claims. "Federal district courts are given supplemental (or 'pendent') jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. *Winmar Constr., Inc. v. Iron Kingdom, Inc.*, 2024 U.S. Dist. LEXIS 119783, at *13 (D.D.C. 2024) (citing 28 U.S.C. § 1367(a)). "By the same token, they 'may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.'" *Id.* (citing 28 U.S.C. § 1367(c)(3)). "The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as 'pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.'" *Iron Kingdom, Inc.*, 2024 U.S. Dist. LEXIS 119783, at *13-14 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))

(internal citations omitted). "When deciding whether to exercise supplemental jurisdiction over state claims, federal courts should consider 'judicial economy, convenience, fairness, and comity.'" *Iron Kingdom, Inc.*, 2024 U.S. Dist. LEXIS 119783, at *13-14 (internal citations omitted). "When all federal claims are eliminated before trial, however, those factors 'will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.*

Here, as stated throughout the motion to dismiss, Plaintiff's federal RICO claims against the Parrish Defendant must be dismissed because they are barred by the four-year statute of limitations. Even if the Court declines this argument, Plaintiff's federal RICO claims fail to assert a plausible claim pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Fed. R. Civ. P. Since no federal claims are likely to pass dismissal, this Court should decline to exercise its jurisdiction over the remaining state-law claims.

However, if this Court decides to exercise its jurisdiction over the state law claims, this Court should find that Plaintiff failed to state a plausible claim pursuant to D.C. Code §§ 28-4502, 4503, and 4508. Here, Plaintiff asserted claims under three D.C. Antitrust Act provisions. The first provision is D.C. Code § 28-4502, which states, "[e]very contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce all or any part of which is within the District of Columbia is declared to be illegal." Code of the District of Columbia § 28-4502. Under this provision, "[t]o establish a claim under this section, the District must show that there is a 'concerted action' that 'unreasonably restrains trade.'" *District of Columbia v. Amazon.com*, Inc., 320 A.3d 1073, 1080 (D.C. 2024) (citing *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 186 (2010)).

The second provision asserted is D.C. Code § 28-4503, which states that "[i]t shall be unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any

other person or persons to monopolize any part of trade or commerce, all or any part of which is within the District of Columbia." Code of the District of Columbia § 28-4503. Pursuant to this provision, "an illegal monopoly claim are '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power' through anticompetitive means." *Amazon.com, Inc.*, 320 A.3d 1073, 1084. Further, to attempt to monopolize under the law, a Plaintiff must prove "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Id.* (internal citation omitted). Lastly, the third provision provides relief for private parties that were injured in their business or property "by reason of anything forbidden" under the Chapter 45 of the Code of the District of Columbia. *See* Code of the District of Columbia § 28-4508.

Plaintiff claims pursuant to the D.C. antitrust codes are "bare legal conclusions" that will not be capable of surviving a Rule 12(b)(6) motion. *See WAKA, LLC v. DC Kickball*, 517 F. Supp. 2d 245, 249 (D.D.C. 2007). "To survive a 12(b)(6) motion to dismiss a claim in an antitrust case, plaintiffs must do more than simply paraphrase the language of the antitrust laws or state in conclusory terms that the non-movant has violated those laws." *Id.* "[I]f [the plaintiff] claims an antitrust violation, but the facts he narrates do not at least outline or adumbrate such a violation, he will get nowhere merely by dressing them up in the language of antitrust." *Id.* (citing *Dial a Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 588 (D.D.C. 1995)) (internal citation omitted). As to the Parrish Defendants, Plaintiff merely states "[t]he Defendants conspired with Palma and Parrish in order to attempt to murder [Plaintiff] so he could not prosecute his Fourth Circuit Appeal, and falling to have achieved that goal, conspired with Parrish to ensure Palma could not be held responsible and [Plaintiff] could not receive renumeration for his medical expenses." *See* Compl. ¶ 619. Next, Plaintiff alleged, "Parrish conspired on behalf of Parrish Law, 9208, and this

22

enterprise." *See* Compl. ¶ 646. Nothing in Plaintiff's Complaint, specifically pertaining to the Parrish Defendants, outline or adumbrate an antitrust violation. In fact, Plaintiff fails to mention any language throughout his Complaint that outline or adumbrate an antitrust violation. As such, Count III of Plaintiff's Complaint should be dismissed.

F.  **Count IV of the Complaint Must Be Dismissed for Failure to State a Plausible Conspiracy Claim to Interfere with Civil Rights Pursuant to 42 U.S.C. § 1985(3).**

Finally, Count IV of the Complaint, which fails to allege any specific act on behalf of the Parrish Defendants, alleges that Defendant Johnson and the Virginia State Bar deprived Plaintiff of "rights, privileges, and immunities guaranteed by the U.S. Constitution." *See* Compl. ¶ 652. Specifically, Plaintiff alleges "Shaun So filed a bar complaint that did not state a basis for professional misconduct under the Virginia Rules of Professional Conduct." *Id.* at ¶ 653. As such, Plaintiff claims Defendant Johnson was required to dismiss that complaint per Plaintiff's "objection that the bar complaint did not state a basis of misconduct." *Id.* at ¶ 654. Plaintiff alleged that such actions deprived him of due process of law and derailed Plaintiff's legal career. *See Id.* at ¶ 658-662. As such, Plaintiff fails to state a plausible claim against the Parrish Defendants.

"To state a claim under § 1985(3), [Plaintiff] was required to allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 688 (2009) (citing *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987)). "The statute does not apply to all conspiratorial tortious interferences with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus." *Id.* (citing *Martin*, 830 F.2d at 258). A conspiracy requires "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or

23

a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Jones v. Ogletree, Deakins, Nash, Smoak & Stewart P.C.*, 2025 U.S. Dist. LEXIS 59302, at *15 (D.D.C. Mar. 30, 2025) (internal citations omitted).

Here, as previously stated, Plaintiff fails to identify an agreement between two or more people to participate in an unlawful act, or a lawful act in an unlawful matter. *See Jones*, 2025 U.S. Dist. LEXIS 59302, at *15. Count IV does not identify an agreement between the Parrish Defendants, the Virginia State Bar, Lane Construction, or any other Defendant, to derail Plaintiff's legal career. Plaintiff claim is not facially plausible to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Moore*, 351 F. Supp. 3d at 87 (quoting *Iqbal*, 556 U.S. at 678. Thus, Count IV should be dismissed.

24

## IV.    Conclusion

Accordingly, for the reasons contained herein, Plaintiff lacks subject matter jurisdiction, or in the alternative, failed to state a claim upon which relief could be granted. Thus, the Parrish Law Firm, PLLC and 9208 Lee Avenue, LLC hereby respectfully request that this Court grant the Motion and dismiss Plaintiff's Complaint.

Respectfully submitted,

ECCLESTON & WOLF, P.C.

/s/  Justin M. Flint
Justin M. Flint (#491782)
1629 K Street, N.W., Suite 260
Washington, D.C. 20006
Tel: (202) 857-1696
Fax: (202) 857-0762
flint@ewdc.com
*Counsel for Defendants Parrish Law Firm,*
*PLLC and 9208 Lee Avenue, LLC*

25

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of March 2026, I electronically served the

foregoing Motion to Dismiss Plaintiff's Complaint electronically via the PACER ECF.


*/s/ Justin M. Flint*
Justin M. Flint (#491782)