**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LOUIS B. ANTONACCI,

         Plaintiff,

         v.

RAHM I. EMANUEL, PERKINS COIE LLP;
MATTHEW J. GEHRINGER; STORIJ, INC.;
BEAN LLC; LANE CONSTRUCTION
CORPORATION; SETH FIRMENDER;
DESCRYBE, LLC; ROKK SOLUTIONS,
LLC; ANITA J. PONDER; HOLLAND &
KNIGHT LLP; THE VIRGINIA STATE
BAR; RICHARD W. JOHNSON, JR.;
PARRISH LAW FIRM, PLLC; 9208 LEE
AVENUE, LLC; SEYFARTH SHAW LLP,

         Defendants.

Civil Action
No. 1:26-cv-00211-LLA

**DECLARATION OF BARAK COHEN IN SUPPORT OF
MOTION TO DISMISS COMPLAINT ON BEHALF OF DEFENDANTS
SEYFARTH SHAW LLP, ANITA J. PONDER PERKINS COIE LLP, AND
MATTHEW J. GEHRINGER**

I, Barak Cohen, hereby declare as follows:

1.      I am a Partner at Perkins Coie LLP and am over the age of majority. I am competent to testify about the matters discussed in this Declaration.

2.      Attached as **Exhibit A** is a true and correct side-by-side comparison of the causes of action in the Complaint filed by Plaintiff Louis Antonacci in the Northern District of Illinois in case number 15 C 3750 compared against the Complaint filed in the Eastern District of Virginia as case number 1:24-cv-00172-MSN-LRV.

3.      Attached as **Exhibit B** is a true and correct side-by-side comparison of the causes of action in the Complaint filed in the Eastern District of Virginia as case number 1:24-cv-00172-MSN-LRV compared to the causes of action in the Complaint filed in this Court as case number 1:26-cv-00211-LLA.

- 2 -

4.      Both Seyfarth Shaw LLP and Perkins Coie LLP are limited liability partnerships. Both firms have one or more partners who reside in the District of Columbia.

*I make this declaration on penalty of perjury.*

Dated: March 16, 2026

/s/ *Barak Cohen*
Barak Cohen

## CERTIFICATE OF SERVICE

I hereby certify that I have caused to be served a copy of the foregoing document via U.S.

Mail and email on the date noted below upon the following:

Louis B. Antonacci
4126 8th Street NW, Suite 3
Washington, DC 20011
lou@antonaccilaw.com


Signed this 16th day of March, 2025.


By: */s/ Thomas J. Tobin* _____
Thomas J. Tobin, D.C. Bar No. 1049101
TTobin@perkinscoie.com
1301 Second Ave., Ste. 4200
Seattle, WA 98101
Telephone:  +1.206.359.8000
Facsimile:   +1.206.359.9000

# Exhibit A

Exhibit A

**ANTONACCI COMPLAINTS COMPARISON CHART**
*Similar Language in N.D. Illinois and E.D. Virginia Complaints – Causes of Action*

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| **Count Four: Violation of Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962 et seq.) (All Defendants)** | **Count One: Violation of Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962 et seq.) (All Defendants)** |
| All of the preceding paragraphs as if fully set forth herein. ¶ 247 | Antonacci incorporates all of the preceding paragraphs as if they were fully set forth herein. ¶ 406 |
| The association-in-fact of all Defendants named in this Complaint, together with Mulaney, Sublett, Walsh, Nereim, Bronstein, and Dolesh, as described more particularly above, constitutes an "enterprise," as that term is defined in 18 U.S.C. § 1961(4). ¶ 248 | The association-in-fact of all Defendants named in this Complaint, together with the others described more particularly above, constitutes an "enterprise," as that term is defined in 18 U.S.C. § 1961(4). ¶ 407 |
| Specifically, the enterprise is an association-in-fact among individuals, business entities, and a municipal corporation, designed to divert Chicago taxpayer money to members of the enterprise; protect the members of the enterprise from civil liability in Illinois by unlawfully influencing the outcome of civil cases, thereby keeping more money in the enterprise; defrauding litigants from monies to which they are legally entitled by unlawfully delaying and sabotaging meritorious civil cases; punishing attorneys who sue members of the enterprise by preventing them from becoming admitted in Illinois; punishing attorneys who sue members of the enterprise by putting them on the Blacklist of disfavored attorneys; and protecting the enterprise by unlawfully preventing them from obtaining evidence of the enterprise's fraudulent misconduct. ¶ 249 | Specifically, the enterprise is an association-in-fact among individuals and business entities designed to divert taxpayer money to members of the enterprise; destroy the professional reputation of anyone who seeks to expose the nature and extent of the enterprise through fraud, widespread defamation, and murder; protect the members of the enterprise from civil liability by unlawfully influencing the outcome of civil cases, thereby keeping more money in the enterprise; defrauding litigants from monies to which they are legally entitled by unlawfully delaying and sabotaging meritorious civil cases; bribing and otherwise incentivizing people associated with those deemed enemies of this enterprise to spread lies about those "enemies;" punishing attorneys who sue members of the enterprise by preventing them from becoming admitted to practice law; punishing attorneys who sue members of the enterprise by putting them on the Blacklist of disfavored attorneys; illegally infiltrating protected computers to spy on the "enemies" of the enterprise, in some cases through fraudulently obtained search warrants; and protecting the enterprise by unlawfully preventing them from |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| | obtaining evidence of the enterprise's fraudulent misconduct. ¶ 408 |
| The enterprise has been engaged in activities which affect interstate and foreign commerce. ¶ 250 | The enterprise has been engaged in activities which affect interstate and foreign commerce. ¶ 409 |
| Each Defendant is distinct from the enterprise itself but each Defendant has acted independently and in concert to commit a variety of illegal acts in furtherance of the same goal. 251 | Each Defendant is distinct from the enterprise itself but each Defendant has acted independently and in concert to commit a variety of illegal acts in furtherance of the same goal. ¶ 410 |
| Defendants engaged in "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1). ¶ 252 | Defendants engaged in "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1). ¶ 411 |
| Violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1341 (Mail Fraud) are specifically enumerated as "racketeering activity" in Section 1961(1) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). ¶ 253 | Violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1341 (Mail Fraud), 18 U.S.C. § 1503 (Obstruction of Federal Court Proceedings), 18 U.S.C. 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises) and Murder are specifically enumerated as "racketeering activity" in Section 1961(1) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). ¶ 412 |
| Defendants violated 18 U.S.C. § 1343 (Wire Fraud) as follows: a. Defendants knowingly, and with specific intent, participated in a scheme or artifice designed to defraud Mr. Antonacci. b. In furtherance of this scheme, as more particularly described above, Defendants sought to sabotage the Circuit Court Case so that Seyfarth and Ponder would avoid paying any potential judgment, or larger settlement, against them and in favor of Mr. Antonacci, thereby allowing the enterprise to keep the money. c. In furtherance of this scheme, as more particularly described above, Defendants unnecessarily delayed the Circuit Court Case as long as possible and deliberately imposed unnecessary legal fees on Mr. Antonacci. | Defendants violated 18 U.S.C. § 1343 (Wire Fraud) as follows: a. Defendants knowingly, and with specific intent, participated in a scheme or artifice designed to defraud Mr. Antonacci. b. In furtherance of this scheme, as more particularly described above, Defendants sought to sabotage the Circuit Court Case so that Seyfarth and Ponder would avoid paying any potential judgment, or larger settlement, against them and in favor of Mr. Antonacci, thereby allowing the enterprise to keep the money. c. In furtherance of this scheme, as more particularly described above, Defendants unnecessarily delayed the Circuit Court Case as long as possible and deliberately imposed unnecessary legal fees on Mr. Antonacci. |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| d. In furtherance of this scheme, as more particularly described above, Defendants conspired with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed to practice law in the State of Illinois, which damaged his professional reputation and prevented him from earning a living.<br><br>e. In furtherance of this scheme, as more particularly described above, Defendants falsified official documents and took official action without legal authority.<br><br>f. As more particularly described above, Defendants transmitted, and caused others to transmit, wire communications in interstate commerce for the purpose of executing this scheme. ¶ 254 | d. In furtherance of this scheme, as more particularly described above, Defendants conspired with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed to practice law in the State of Illinois, which damaged his professional reputation and prevented him from earning a living.<br><br>e. In furtherance of this scheme, as more particularly described above, Defendants falsified official documents and took official action without legal authority.   . . .<br><br>j. In furtherance of this scheme, as more particularly described above, Defendants transmitted, and caused others to transmit, wire communications in interstate commerce for the purpose of executing this scheme  ¶ 413 |
| Defendants violated 18 U.S.C. § 1341 (Mail Fraud) as follows:<br><br>a. Defendants knowingly, and with specific intent, participated in a scheme or artifice designed to defraud Mr. Antonacci.<br><br>b. In furtherance of this scheme, as more particularly described above, Defendants sought to sabotage the Circuit Court Case so that Seyfarth and Ponder would avoid paying any potential judgment, or larger settlement, against them and in favor of Mr. Antonacci, thereby allowing the enterprise to keep the money.<br><br>c. In furtherance of this scheme, as more particularly described above, Defendants unnecessarily delayed the Circuit Court Case as long as possible and deliberately imposed unnecessary legal fees on Mr. Antonacci. | Defendants violated 18 U.S.C. § 1341 (Mail Fraud) as follows:<br><br> a. Defendants knowingly, and with specific intent, participated in a scheme or artifice designed to defraud Mr. Antonacci.<br><br>b. In furtherance of this scheme, as more particularly described above, Defendants sought to sabotage the Circuit Court Case so that Seyfarth and Ponder would avoid paying any potential judgment, or larger settlement, against them and in favor of Mr. Antonacci, thereby allowing the enterprise to keep the money.<br><br>c. In furtherance of this scheme, as more particularly described above, Defendants unnecessarily delayed the Circuit Court Case as long as possible and deliberately imposed unnecessary legal fees on Mr. Antonacci. |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| d. In furtherance of this scheme, as more particularly described above, Defendants conspired with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed to practice law in the State of Illinois, which damaged his professional reputation and prevented him from earning a living.<br><br>e. In furtherance of this scheme, as more particularly described above, Defendants falsified official documents and took official action without legal authority.<br><br>f. As more particularly described above, Defendants used, and caused others to use, the U.S. mail for the purpose of executing this scheme.<br><br>¶ 255 | d. In furtherance of this scheme, as more particularly described above, Defendants conspired with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed to practice law in the State of Illinois, which damaged his professional reputation and prevented him from earning a living.<br><br>e. In furtherance of this scheme, as more particularly described above, Defendants falsified official documents and took official action without legal authority.<br><br>f. In furtherance of this scheme, as more particularly described above, the Defendants, through the AECOM Fraud, attempted to set up Antonacci for a False Claims Act violation. To that end, the Firmender orchestrated a legally dubious settlement with the Owner on the 395 Express Lanes Project, caused the destruction of relevant documents with litigation imminent and/or pending, and attempted to create a paper trail leading to Antonacci.<br><br>g. As more particularly described above, Defendants used, and caused others to use, the U.S. mail for the purpose of executing this scheme.<br><br>¶ 414 |
| Defendants' multiple violations of 18 USC§ 1341 and 18 USC§ 1343 constitute a "pattern" of racketeering activity. ¶ 256 | Defendants' multiple violations of 18 USC § 1341, 18 USC § 1343, 18 USC § 1503, and constitute a "pattern" of racketeering activity. ¶ 418 |
| In light of the pattern of racketeering activity more particularly described above, Defendants' enterprise presents a clear threat of continued racketeering activity. ¶ 257 | In light of the pattern of racketeering activity more particularly described above, Defendants' enterprise presents a clear threat of continued racketeering activity. ¶ 419 |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| Defendants maintained their interest in this enterprise by means of this pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b). ¶ 258 | Defendants maintained their interest in this enterprise by means of this pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b). ¶ 420 |
| Defendants have been directly participating in and conducting the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). ¶ 259 | Defendants have been directly participating in and conducting the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). ¶ 421 |
| The enterprise is separate and distinct from the pattern of racketeering activity. ¶ 260 | The enterprise is separate and distinct from the pattern of racketeering Activity. ¶ 422 |
| As a proximate result of these RICO violations, Mr. Antonacci has been injured in an amount that exceeds $75,000, exclusive of interest and costs.    ¶ 261 | As a proximate result of these RICO violations, Mr. Antonacci has been injured in the amount of $35,000,000 in lost earnings, exclusive of interest and costs. ¶ 423 |
| Mr. Antonacci is entitled to recover treble damages, and the costs of bringing this action and the Circuit Court Case. ¶ 262 | Mr. Antonacci is entitled to recover treble damages, and the costs of bringing this action and the Circuit Court Case. ¶ 424 |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| **Count Five: Violation of Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962 (d) - RICO Conspiracy) (All Defendants)** | **Count Two: Violation of Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962 (d) - RICO Conspiracy) (All Defendants)** |
| All of the preceding paragraphs are hereby incorporated as if fully set forth herein. ¶ 263 | All of the preceding paragraphs are hereby incorporated as if fully set forth herein. ¶ 427 |
| The association-in-fact of all Defendants named in this Complaint, together with Mulaney, Sublett, Walsh, Nereim, Bronstein, Brewer, and Dolesh, as described more particularly above, constitutes an "enterprise," as that term is defined in 18 u.s.c. § 1961(4). ¶ 264 | The association-in-fact of all Defendants named in this Complaint, together with the others described more particularly above, constitutes an "enterprise," as that term is defined in 18 U.S.C. § 1961(4). ¶ 428 |
| Specifically, the enterprise is an association-in-fact among individuals, business entities, and a municipal corporation, designed to divert Chicago taxpayer money to members of the enterprise; protect the members of the enterprise from civil liability in Illinois by unlawfully influencing the outcome of civil cases, thereby keeping more money in the enterprise; defrauding litigants from monies to which they are legally entitled by unlawfully delaying and sabotaging meritorious civil cases; punishing attorneys who sue members of the enterprise by preventing them from becoming admitted in Illinois; punishing attorneys who sue members of the enterprise by putting them on the Blacklist of disfavored attorneys; and protecting the enterprise by unlawfully preventing them from obtaining evidence of the enterprise's fraudulent misconduct. ¶ 265 | Specifically, the enterprise is an association-in-fact among individuals and business entities designed to divert taxpayer money to members of the enterprise; destroy the professional reputation of anyone who seeks to expose the nature and extent of the enterprise through fraud, widespread defamation, and murder; protect the members of the enterprise from civil liability by unlawfully influencing the outcome of civil cases, thereby keeping more money in the enterprise; defrauding litigants from monies to which they are legally entitled by unlawfully delaying and sabotaging meritorious civil cases; bribing and otherwise incentivizing people associated with those deemed enemies of this enterprise to spread lies about those "enemies;" punishing attorneys who sue members of the enterprise by preventing them from becoming admitted to practice law; punishing attorneys who sue members of the enterprise by putting them on the Blacklist of disfavored attorneys; illegally infiltrating protected computers to spy on the "enemies" of the enterprise, in some cases through fraudulently obtained search warrants; and protecting the enterprise by unlawfully preventing them from obtaining evidence of the enterprise's fraudulent misconduct. ¶ 429 |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| The enterprise has been engaged in activities which affect interstate and foreign commerce. ¶ 266 | The enterprise has been engaged in activities which affect interstate and foreign commerce. ¶ 430 |
| Each Defendant is distinct from the enterprise itself but each Defendant, together with Kaplan, Mulaney, Sublett, Walsh, Nereim, Brewer, and Dolesh, has acted independently and in concert to commit a variety of illegal acts in furtherance of the same goal. ¶ 267 | Each Defendant is distinct from the enterprise itself but each Defendant, together with the others more particularly described above, has acted independently and in concert to commit a variety of illegal acts in furtherance of the same goal. ¶ 431 |
| Violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1341 (Mail Fraud), 18 U.S.C. § 1951 (Hobbs Act Extortion), 18 U.S.C. § 1951 (Interstate and Foreign Travel or Transportation in Aid of Racketeering Activity), and 720 ILCS 5/12-6 (Illinois Intimidation, "extortion" under Illinois law and punishable by imprisonment for more than one year), are specifically enumerated as "racketeering activity" in Section 1961(1) of RICO. ¶ 268 | Violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1341 (Mail Fraud), 18 U.S.C. § 1503 (Obstruction of Federal Court Proceedings), 18 U.S.C. 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises) and Murder are specifically enumerated as "racketeering activity" in Section 1961(1) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). ¶ 432 |
| The agreed-upon scheme involves knowing and intentional violations of 18 U.S.C. § 1951 (Hobbs Act Extortion) as follows:<br><br>a. Defendants knowingly, and with specific intent, conspired with Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel to interfere with interstate commerce by extortion.<br><br>b. Specifically, Defendants knowingly, and with specific intent, conspired with Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel to prevent Mr. Antonacci from becoming licensed to practice law in Illinois until he resolved the Circuit Court Case.<br><br>c. In furtherance of this scheme, as more particularly described above, Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel utilized wrongful means to achieve wrongful objectives. | The agreed-upon scheme involves knowing and intentional violations of 18 U.S.C. § 1951 (Hobbs Act Extortion) as follows:<br><br>a. Defendants knowingly, and with specific intent, conspired with Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel to interfere with interstate commerce by extortion.<br><br>b. Specifically, Defendants knowingly, and with specific intent, conspired with Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel to prevent Mr. Antonacci from becoming licensed to practice law in Illinois until he resolved the Circuit Court Case.<br><br>c. In furtherance of this scheme, as more particularly described above, Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel utilized wrongful means to achieve wrongful objectives. |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| d. In furtherance of this scheme, as more particularly described above, Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel harassed and intimidated Mr. Antonacci in an attempt to force him to resolve the Circuit Court Case.<br><br>e. In furtherance of this scheme, as more particularly described above, when Mr. Antonacci asked for communications demonstrating that Mulaney, Walsh, and Sublett had conspired with Defendants to use wrongful means to achieve a wrongful objective, Mulaney, Walsh, and Sublett declined to certify Mr. Antonacci for admission to the Illinois Bar without lawful justification.<br><br>f. In furtherance of this scheme, as more particularly described above, Bronstein and the Hearing Panel harassed and intimidated Mr. Antonacci in an attempt to force him to withdraw the Rule 9.3 Subpoenas.<br><br>g. When Mr. Antonacci refused to withdraw the Rule 9.3 Subpoenas, Bronstein and the Hearing Panel quashed the Rule 9.3 Subpoenas without lawful justification.<br><br>h. Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel are public officials.<br><br>i. Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel wrongfully utilized their official power, as set forth above, for private personal gain. ¶ 269 | d. In furtherance of this scheme, as more particularly described above, Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel harassed and intimidated Mr. Antonacci in an attempt to force him to resolve the Circuit Court Case.<br><br>e. In furtherance of this scheme, as more particularly described above, when Mr. Antonacci asked for communications demonstrating that Mulaney, Walsh, and Sublett had conspired with Defendants to use wrongful means to achieve a wrongful objective, Mulaney, Walsh, and Sublett declined to certify Mr. Antonacci for admission to the Illinois Bar without lawful justification.<br><br>f. In furtherance of this scheme, as more particularly described above, Bronstein and the Hearing Panel harassed and intimidated Mr. Antonacci in an attempt to force him to withdraw the Rule 9.3 Subpoenas.<br><br>g. When Mr. Antonacci refused to withdraw the Rule 9.3 Subpoenas, Bronstein and the Hearing Panel quashed the Rule 9.3 Subpoenas without lawful justification.<br><br>h. Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel are public officials.<br><br>i. Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel wrongfully utilized their official power, as set forth above, for private personal gain. ¶ 433 |
| The agreed-upon scheme involves knowing and intentional violations of 720 ILCS 5/12-6 (Illinois Intimidation/Extortion) as follows: | The agreed-upon scheme involves knowing and intentional violations of 720 ILCS 5/12-6 (Illinois Intimidation/Extortion) as follows: |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| a. Defendants knowingly, and with specific intent, conspired with Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel, to communicate to Mr. Antonacci, threats to take action as public officials, or withhold official action, without lawful authority, with intent to cause Mr. Antonacci to resolve the Circuit Court Case.<br><br>b. Specifically, Mulaney, Walsh, and Sublett, threatened to prevent, without lawful authority, Mr. Antonacci from becoming licensed to practice law in Illinois until he resolved the Circuit Court Case.<br><br>c. In furtherance of this scheme, as more particularly described above, when Mr. Antonacci asked for communications demonstrating that Mulaney, Walsh, and Sublett had conspired with Defendants to threaten delaying Mr. Antonacci's  bar application until the Circuit Court Case was resolved, without lawful authority, Mulaney, Walsh, and Sublett declined to certify Mr. Antonacci for admission to the Illinois Bar without lawful authority.<br><br>d. In furtherance of this scheme, as more particularly described above, Bronstein and the Hearing Panel threatened to deny his application to the Illinois Bar, without lawful authority, if he did not withdraw the Rule 9.3 Subpoenas.<br><br>e. When Mr. Antonacci refused to withdraw the Rule 9.3 Subpoenas, Bronstein and the Hearing Panel quashed the Rule 9.3 Subpoenas without lawful authority. | a. Defendants knowingly, and with specific intent, conspired with Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel, to communicate to Mr. Antonacci, threats to take action as public officials, or withhold official action, without lawful authority, with intent to cause Mr. Antonacci to resolve the Circuit Court Case.<br><br>b. Specifically, Mulaney, Walsh, and Sublett, threatened to prevent, without lawful authority, Mr. Antonacci from becoming licensed to practice law in Illinois until he resolved the Circuit Court Case.<br><br>c. In furtherance of this scheme, as more particularly described above, when Mr. Antonacci asked for communications demonstrating that Mulaney, Walsh, and Sublett had conspired with Defendants to threaten delaying Mr. Antonacci's bar application until the Circuit Court Case was resolved, without lawful authority, Mulaney, Walsh, and Sublett declined to certify Mr. Antonacci for admission to the Illinois Bar without lawful authority.<br><br>d. In furtherance of this scheme, as more particularly described above, Bronstein and the Hearing Panel threatened to deny his application to the Illinois Bar, without lawful authority, if he did not withdraw the Rule 9.3 Subpoenas.<br><br>e. When Mr. Antonacci refused to withdraw the Rule 9.3 Subpoenas, Bronstein and the Hearing Panel quashed the Rule 9.3 Subpoenas without lawful authority. |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| f. Mt. Antonacci subsequently withdrew his Illinois Bar Application before the Hearing Panel could deny it.<br><br>g. Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel are public officials. h. Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel wrongfully utilized their official power, as set forth above, for private personal gain. ¶ 270 | f. Mr. Antonacci subsequently withdrew his Illinois Bar Application before the Hearing Panel could deny it.<br><br>g. Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel are public officials. h. Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel wrongfully utilized their official power, as set forth above, for private personal gain. ¶ 434 |
| The agreed-upon scheme involves knowing and intentional violations of 18 U.S.C. § 1951 (Interstate and Foreign Travel or Transportation in Aid of Racketeering Activity) as follows:<br><br>a. Defendants knowingly, and with specific intent, participated in a scheme or artifice designed to defraud, extort, and intimidate Mr. Antonacci.<br><br>b. In furtherance of this scheme, as more particularly described above, Defendants conspired with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed to practice law in the State of Illinois, which damaged his professional reputation and prevented him from earning a living.<br><br>c. In furtherance of this scheme, as more particularly described above, Defendants knowingly, and with specific intent, conspired with Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel to interfere with interstate commerce by extortion.<br><br>d. In furtherance of this scheme, as more particularly described above, Defendants knowingly, and with specific intent, conspired with Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel, to communicate to Mr. Antonacci, threats to take action as public officials, or withhold official action, without | The agreed-upon scheme involves knowing and intentional violations of 18 U.S.C. § 1951 (Interstate and Foreign Travel or Transportation in Aid of Racketeering Activity) as follows:<br><br>a. Defendants knowingly, and with specific intent, participated in a scheme or artifice designed to defraud, extort, and intimidate Mr. Antonacci.<br><br>b. In furtherance of this scheme, as more particularly described above, Defendants conspired with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed to practice law in the State of Illinois, which damaged his professional reputation and prevented him from earning a living.<br><br>c. In furtherance of this scheme, as more particularly described above, Defendants knowingly, and with specific intent, conspired with Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel to interfere with interstate commerce by extortion.<br><br>d. In furtherance of this scheme, as more particularly described above, Defendants knowingly, and with specific intent, conspired with Mulaney, Walsh, Sublett, Bronstein, and the Hearing Panel, to communicate to Mr. Antonacci, threats to take action as public officials, or withhold official action, without |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| lawful authority, with intent to cause Mr. Antonacci to resolve the Circuit Court Case.<br><br>e. In furtherance of this scheme, as more particularly described above, Defendants knowingly, and with specific intent, used, or caused to be used, the mail and other facilities, including interstate wires, with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the scheme to defraud, extort, and intimidate Mr. Antonacci. ¶ 271 | lawful authority, with intent to cause Mr. Antonacci to resolve the Circuit Court Case.<br><br>e. In furtherance of this scheme, as more particularly described above, Defendants knowingly, and with specific intent, used, or caused to be used, the mail and other facilities, including interstate wires, with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the scheme to defraud, extort, and intimidate Mr. Antonacci.<br><br>f. In furtherance of this scheme, as more particularly described above, Defendants knowingly, and with specific intent, traveled between New York, California, North Carolina, Illinois, Virginia, Connecticut, Maryland, and Washington, DC numerous times to collaborate with one another and present Antonacci with material misrepresentations of fact and material omissions.<br><br>g. In furtherance of this scheme, as more particularly described above, Defendants knowingly, and with specific intent, set up Antonacci Law to do business with a front company, Storij, which is organized in Delaware and has its principal place of business in New York, whereby Storij obtained fraudulent U.S. government subcontracts for the sole purposes of gathering intelligence data on Antonacci.<br><br>h. Firmender specifically orchestrated the AECOM Fraud and interstate travel between Connecticut, Virginia, the District of Columbia, and North Carolina in order to damage Antonacci's career. |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| | i. Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence the outcome of Antonacci's federal case in Chicago, both at the district court level and in the Seventh Circuit Appeal. ¶ 435 |
| The agreed-upon scheme specifically involves knowing and intentional violations of 18 U.S.C. § 1341 (mail fraud), as more particularly described above. ¶ 272 | The agreed-upon scheme specifically involves knowing and intentional violations of 18 U.S.C. § 1341 (mail fraud), as more particularly described above. ¶ 437 |
| The agreed-upon scheme specifically involves knowing and intentional violations of 18 U.S.C. § 1343 (wire fraud), as more particularly described above. ¶ 273 | The agreed-upon scheme specifically involves knowing and intentional violations of 18 U.S.C. § 1343 (wire fraud), as more particularly described above. ¶ 438 |
| Defendants thus conspired to engage in a "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1). ¶ 274 | Defendants thus conspired to engage in a "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1). ¶ 439 |
| Defendants thus conspired to engage in a pattern of racketeering activity. ¶ 275 | Defendants thus conspired to engage in a pattern of racketeering activity. ¶ 440 |
| Defendants thus conspired to violate 18 U.S.C. §§ 1962(b) and (c) in violation of 18 U.S.C. § 1962 (d). ¶ 276 | Defendants thus conspired to violate 18 U.S.C. §§ 1962(b) and (c) in violation of 18 U.S.C. § 1962 (d). ¶ 441 |
| Major conspired on behalf of herself and on behalf of Major Law. ¶ 277 | Major conspired on behalf of herself and on behalf of Major Law. ¶ 442 |
| Dolesh, Nereim, and Patton conspired on behalf of the City of Chicago. ¶ 278 | Dolesh, Nereim, and Patton conspired on behalf of the City of Chicago and this enterprise. ¶ 443 |
| Sublett and Asaro conspired on behalf of Neal & Leroy. ¶ 279 | Sublett and Asaro conspired on behalf of Neal & Leroy and this enterprise. ¶ 444 |
| Gehringer conspired on behalf of himself, Perkins Coie, Seyfarth, and Ponder. ¶ 280 | Gehringer conspired on behalf of himself, Perkins Coie, Seyfarth, Ponder, and this enterprise. ¶ 445 |
| Kaplan conspired on behalf of himself, Seyfarth, and Ponder. ¶ 281 | Kaplan conspired on behalf of himself, Seyfarth, Ponder and this enterprise. ¶ 446 |
| Ponder conspired on behalf of herself and on behalf of Seyfarth. ¶ 282 | Ponder conspired on behalf of herself, Seyfarth, and this enterprise. ¶ 447 |
| Arnold conspired on behalf of himself, Sosin & Arnold, and Toomey. ¶ 283 | Arnold conspired on behalf of himself, Sosin & Arnold, Toomey, and this enterprise. ¶ 448 |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| Kruse conspired on behalf of herself and on behalf of Kruse International. ¶ 284 | Kruse conspired on behalf of herself, on behalf of Kruse International, and this enterprise. ¶ 450 |
| Sandy Toomey and Anderson conspired on behalf of Toomey. 2¶ 85 | Sandy Toomey and Anderson conspired on behalf of Toomey and this enterprise. ¶ 451 |
| As a proximate result of these RICO violations, Mr. Antonacci has been injured in an amount in excess of $75,000, exclusive of interest and costs. ¶ 286 | As a proximate result of these RICO violations, Mr. Antonacci has been injured in the amount of $35,000,000 in lost earnings, exclusive of interest and costs. ¶ 462 |
| Mr. Antonacci is entitled to recover treble damages, and the costs of bringing this action and the Circuit Court Case. ¶ 287 | Mr. Antonacci is entitled to recover treble damages, the costs of bringing this action, and his reasonable attorneys' fees. ¶ 463 |

| N.D. Illinois Complaint Language (Paragraph No.) | E.D. Virginia Complaint Language (Paragraph No.) |
|---|---|
| **Count Three: Common Law Civil Conspiracy (All Defendants)** | **Count Four: Common Law Civil Conspiracy (All Defendants)** |
| All of the preceding paragraphs are hereby incorporated as if fully set forth herein. ¶ 222 | All the preceding paragraphs are incorporated as if fully set forth herein. ¶ 518 |
| Defendants combined, agreed, mutually undertook, and concerted together to effect preconceived plan and unity of design and purpose. ¶ 223 | Defendants combined, agreed, mutually undertook, and concerted together to effect a preconceived plan of unity of design and purpose. ¶ 519 |
| The purpose of this plan was unlawfully to

a. prevent Mr. Antonacci from prosecuting the Circuit Court Case, which is a breach of Major and Major Law's fiduciary duty to Mr. Antonacci;

b. coerce and intimidate Mr. Antonacci into withdrawing the Circuit Court Case or accepting Seyfarth's initial settlement offer, by delaying his Illinois Bar Application and putting him on the Blacklist of attorneys disfavored by Cook County Circuit Court judges such that Mr. Antonacci could not earn a living practicing law in Chicago, in violation of 720 ILCS 5/12-6 and 18 USC§ 1951; and

c. coerce and intimidate Mr. Antonacci into withdrawing subpoenas lawfully served in Cook County, such that the Defendants would not have to quash those subpoenas without authority, in violation of 720 ILCS 5/12-6 and 18 USC§ 1951. ¶ 224 | The purpose of this plan was unlawfully to . . . ¶ 521

d. prevent Mr. Antonacci from prosecuting the Circuit Court Case, which is a breach of Major and Major Law's fiduciary duty to Mr. Antonacci;

e. coerce and intimidate Mr. Antonacci into withdrawing the Circuit Court Case or accepting Seyfarth's initial settlement offer, by delaying his Illinois Bar Application and putting him on the Blacklist of attorneys disfavored by Cook County Circuit Court judges such that Mr. Antonacci could not earn a living practicing law in Chicago, in violation of 720 ILCS 5/12-6 and 18 USC § 1951; and

f. coerce and intimidate Mr. Antonacci into withdrawing subpoenas lawfully served in Cook County, such that the Defendants would not have to quash those subpoenas without authority, in violation of 720 ILCS 5/12-6 and 18 USC § 1951; ¶ ¶ 525 |
| Gehringer was and is the architect of this conspiracy. Shortly after Mr. Antonacci rejected Seyfarth's initial settlement offer, Gerhinger, Seyfarth, Ponder, and Kaplan conspired with Major to
        a. keep Mr. Antonacci's Verified Complaint under seal so that the allegations exposing the corruption and incompetence | Gehringer was and is the architect of this conspiracy. Shortly after Mr. Antonacci rejected Seyfarth's initial settlement offer, Gerhinger, Seyfarth, Ponder, and Kaplan conspired with Major to
        j. keep Mr. Antonacci's Verified Complaint under seal so that the allegations exposing the corruption and incompetence |

pervading Seyfarth would not remain public, breaching Major's fiduciary duty to Mr. Antonacci;

b. file an Amended Complaint that would be far weaker than the Verified Complaint because it would contain less relevant, factual allegations, and omit the exhibits substantiating those allegations, breaching Major's fiduciary duty to Mr. Antonacci;

c. include the Ponder Slander Email as an exhibit to the Amended Verified Complaint, breaching Major's fiduciary duty to Mr. Antonacci, so that Seyfarth and Ponder could argue (incorrectly) that the Ponder Slander Email solely embodied Ponder's defamatory statements concerning Mr. Antonacci and therefore controlled over Mr. Antonacci's allegations;

d. unnecessarily delay the proceedings as long as possible, breaching Major's fiduciary duty to Mr. Antonacci, while Gehringer utilized U.S. mail and interstate communications to conspire with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed to practice law in the State of Illinois, which would damage his professional reputation and prevent him from earning a living, in violation of 720 ILCS 5/12-6, and 18 USC§§ 1341, 1343, 1951, 1952.

e. deliberately incur unnecessary legal fees such that financial pressure would force Mr. Antonacci to accept a low settlement, breaching Major's fiduciary duty to Mr. Antonacci;

f. if Mr. Antonacci refused to settle his case, then Major would withdraw her representation of Mr. Antonacci, in order to

pervading Seyfarth would not remain public, breaching Major's fiduciary duty to Mr. Antonacci;

k. file an Amended Complaint that would be far weaker than the Verified Complaint because it would contain less relevant, factual allegations, and omit the exhibits substantiating those allegations, breaching Major's fiduciary duty to Mr. Antonacci;

l. include the Ponder Slander Email as an exhibit to the Amended Verified Complaint, breaching Major's fiduciary duty to Mr. Antonacci, so that Seyfarth and Ponder could argue (incorrectly) that the Ponder Slander Email solely embodied Ponder's defamatory statements concerning Mr. Antonacci and therefore controlled over Mr. Antonacci's allegations;

m. unnecessarily delay the proceedings as long as possible, breaching Major's fiduciary duty to Mr. Antonacci, while Gehringer utilized U.S. mail and interstate communications to conspire with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed to practice law in the State of Illinois, which would damage his professional reputation and prevent him from earning a living, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952.

n. deliberately incur unnecessary legal fees such that financial pressure would force Mr. Antonacci to accept a low settlement, breaching Major's fiduciary duty to Mr. Antonacci;

o. if Mr. Antonacci refused to settle his case, then Major would withdraw her representation of Mr. Antonacci, in order to

| | |
|---|---|
| further pressure Mr. Antonacci into dropping his case, breaching Major's fiduciary duty to Mr. Antonacci;<br><br>g. Gehringer agreed to coordinate with Gran, Brewer, and any other Cook County Circuit Court judges, as necessary, to pass instructions concerning the Defendants' case strategy, how to rule on particular issues, and how to harass and intimidate Mr. Antonacci when he appeared in court, in violation of 720 ILCS 5/12-6, and 18 USC§§ 1341, 1343, 1951, 1952;<br><br>h. Major agreed to write a letter to Neriem, and Ponder and Gehringer agreed to conspire with Neriem to coordinate her response such that it could be used to harass and intimidate Mr. Antonacci, in violation of 720 ILCS 5/12-6, and 18 USC§§ 1341, 1343, 1951, 1952; and<br><br>i. Gehringer agreed to conspire with others as needed moving forward.  ¶ 225 | further pressure Mr. Antonacci into dropping his case, breaching Major's fiduciary duty to Mr. Antonacci;<br><br>p. Gehringer agreed to coordinate with Gran, Brewer, and any other Cook County Circuit Court judges, as necessary, to pass instructions concerning the Defendants' case strategy, how to rule on particular issues, and how to harass and intimidate Mr. Antonacci when he appeared in court, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952;<br><br>q. Major agreed to write a letter to Neriem, and Ponder and Gehringer agreed to conspire with Neriem to coordinate her response such that it could be used to harass and intimidate Mr. Antonacci, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952; and<br><br>r. Gehringer agreed to conspire with others as needed moving forward.  ¶ 526 |
| Gehringer conspired with Bronstein and Mulaney to have Storino removed from the Inquiry Panel and substituted with Sublett. ¶ 226 | Gehringer conspired with Bronstein and Mulaney to have Storino removed from the Inquiry Panel and substituted with Sublett. ¶ 527 |
| Gehringer conspired with Mulaney, Sublett, and Walsh and instructed them on how to harass and intimidate Mr. Antonacci such that he would withdraw and/or settle the Circuit Court Case, in violation of 720 ILCS 5/12-6, and 18 USC§§ 1341, 1343, 1951, 1952. ¶ 227 | Gehringer conspired with Mulaney, Sublett, and Walsh and instructed them on how to harass and intimidate Mr. Antonacci such that he would withdraw and/or settle the Circuit Court Case, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952. ¶ 528 |
| When, on April 23, 2013, Mr. Antonacci requested that the Inquiry Panel disclose any communications with Seyfarth or Ponder relating to Mr. Antonacci, Ponder, Seyfarth, and Gehringer conspired with Mulaney, Walsh, and Sublett and instructed them, utilizing interstate communications and U.S. Mail, to deny Mr. Antonacci's certification to the Illinois Bar on | When, on April 23, 2013, Mr. Antonacci requested that the Inquiry Panel disclose any communications with Seyfarth or Ponder relating to Mr. Antonacci, Ponder, Seyfarth, and Gehringer conspired with Mulaney, Walsh, and Sublett and instructed them, utilizing interstate communications and U.S. Mail, to deny Mr. Antonacci's certification to the Illinois Bar on |

| | |
|---|---|
| April 24, 2013, in violation of 720 ILCS 5/12-6, and 18 USC§§ 1341, 1343, 1951, 1952. ¶ 228 | April 24, 2013, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952. ¶ 529 |
| Gehringer conspired with Bronstein, Fedo, and Asaro to unlawfully quash Mr. Antonacci's Rule 9.3 Subpoenas. ¶ 229 | Gehringer conspired with Bronstein, Fedo, and Asaro to unlawfully quash Mr. Antonacci's Rule 9.3 Subpoenas. ¶ 530 |
| Gehringer conspired with Patton, Nereim, and Dolesh to delay execution of the Chicago Subpoenas to ensure that evidence of Ponder's fraudulent misconduct would never be discovered. These individuals further conspired to make material, factual misrepresentations, utilizing the U.S. Mails and interstate wires, on numerous occasions in order to accomplish this goal, in violation of 720 ILCS 5/12-6, and 18 USC§§ 1341, 1343, 1951, 1952. ¶ 230 | Gehringer conspired with Patton, Nereim, and Dolesh to delay execution of the Chicago Subpoenas to ensure that evidence of Ponder's fraudulent misconduct would never be discovered. These individuals further conspired to make material, factual misrepresentations, utilizing the U.S. Mails and interstate wires, on numerous occasions in order to accomplish this goal, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952. ¶ 531 |
| From December 2013 through March 2014, Dolesh, Gehringer, and Brewer conspired, via electronic mail and telephone, utilizing interstate communications, to knowingly conceal the City's evidence of Ponder's fraudulent misconduct, in violation of 720 ILCS 5/12-6, and 18 USC§§ 1341, 1343, 1951, 1952. ¶ 231 | From December 2013 through March 2014, Dolesh, Gehringer, and Brewer conspired, via electronic mail and telephone, utilizing interstate communications, to knowingly conceal the City's evidence of Ponder's fraudulent misconduct, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952. ¶ 532 |
| Arnold conspired with Gehringer to conceal evidence that Toomey had falsified the December 5, 2013 hearing transcript to delete Brewer's erratic, hostile outbursts and her refusal to review affidavits that Mr. Antonacci submitted to the Court. These individuals further conspired to make material, factual misrepresentations, utilizing the U.S. Mails and interstate wires, on numerous occasions in order to accomplish this goal, in violation of 18 USC§§ 1341, 1343, 1952. ¶ 232 | Arnold conspired with Gehringer to conceal evidence that Toomey had falsified the December 5, 2013 hearing transcript to delete Brewer's erratic, hostile outbursts and her refusal to review affidavits that Mr. Antonacci submitted to the Court. These individuals further conspired to make material, factual misrepresentations, utilizing the U.S. Mails and interstate wires, on numerous occasions in order to accomplish this goal, in violation of 18 USC§§ 1341, 1343, 1952. ¶ 533 |
| From January 2014 through April 2014, Arnold sent numerous emails to Gehringer, Toomey, and Mr. Antonacci in furtherance of this conspiracy, and further sent Mr. Antonacci numerous documents, via U.S. Mail, to his address in Washington, D.C., also in furtherance of this conspiracy, in violation of 18 USC§§ 1341, 1343, 1952. ¶ 233 | From January 2014 through April 2014, Arnold sent numerous emails to Gehringer, Toomey, and Mr. Antonacci in furtherance of this conspiracy, and further sent Mr. Antonacci numerous documents, via U.S. Mail, to his address in Washington, D.C., also in furtherance of this conspiracy, in violation of 18 USC §§ 1341, 1343, 1952. ¶ 534 |

| | |
|---|---|
| Kruse and Kruse International conspired with Gehringer and Arnold to falsely indicate to Mr. Antonacci that Kruse had filed the April 23, 2014 hearing transcript with the Circuit Court so that Mr. Antonacci would not file that transcript, and thus the transcript would not be in the Record on Appeal. On September 2, 2014, Kruse falsely stated, via electronic mail utilizing interstate communications, that she had filed the April 23, 2014 hearing transcript with Cook County Circuit Court, in violation of 18 USC§§ 1341, 1343, 1952. ¶ 234 | Kruse and Kruse International conspired with Gehringer and Arnold to falsely indicate to Mr. Antonacci that Kruse had filed the April 23, 2014 hearing transcript with the Circuit Court so that Mr. Antonacci would not file that transcript, and thus the transcript would not be in the Record on Appeal. On September 2, 2014, Kruse falsely stated, via electronic mail utilizing interstate communications, that she had filed the April 23, 2014 hearing transcript with Cook County Circuit Court, in violation of 18 USC §§ 1341, 1343, 1952. ¶ 535 |
| Sandy Toomey and Anderson conspired on behalf of Toomey. ¶ 245 | Sandy Toomey and Anderson conspired on behalf of Toomey and this criminal enterprise. ¶ 556 |

# Exhibit B

**ANTONACCI COMPLAINTS: CLAIMS COMPARISON CHART**
*Similar Language in E.D. Virginia and D.D.C. Complaints - Causes of Action*

| E.D. Virginia Complaint Language (Paragraph No.) | D.D.C. Complaint Language (Paragraph No.) |
|---|---|
| **Count One: RICO** ||
| Specifically, the enterprise is an association-in-fact among individuals and business entities designed to divert taxpayer money to members of the enterprise; destroy the professional reputation of anyone who seeks to expose the nature and extent of the enterprise through fraud, widespread defamation, and murder; protect the members of the enterprise from civil liability by unlawfully influencing the outcome of civil cases, thereby keeping more money in the enterprise; defrauding litigants from monies to which they are legally entitled by unlawfully delaying and sabotaging meritorious civil cases; bribing and otherwise incentivizing people associated with those deemed enemies of this enterprise to spread lies about those "enemies;" punishing attorneys who sue members of the enterprise by preventing them from becoming admitted to practice law; punishing attorneys who sue members of the enterprise by putting them on the Blacklist of disfavored attorneys; illegally infiltrating protected computers to spy on the "enemies" of the enterprise, in some cases through fraudulently obtained search warrants; and protecting the enterprise by unlawfully preventing them from obtaining evidence of the enterprise's fraudulent misconduct. ¶ 408. | Specifically, the enterprise is an association-in-fact among individuals and business entities designed to divert taxpayer money to members of the enterprise; destroy the professional reputation of anyone who seeks to expose the nature and extent of the enterprise through fraud, widespread defamation, and murder; protect the members of the enterprise from civil liability by unlawfully influencing the outcome of civil cases, thereby keeping more money in the enterprise; defrauding litigants from monies to which they are legally entitled by unlawfully delaying and sabotaging meritorious civil cases; bribing and otherwise incentivizing people associated with those deemed enemies of this enterprise to spread lies about those "enemies;" punishing attorneys who sue members of the enterprise by preventing them from becoming admitted to practice law; punishing attorneys who sue members of the enterprise by putting them on the Blacklist of disfavored attorneys; illegally infiltrating protected computers to spy on the "enemies" of the enterprise, in some cases through fraudulently obtained search warrants; and protecting the enterprise by unlawfully preventing them from obtaining evidence of the enterprise's fraudulent misconduct. ¶ 517. |
| In furtherance of this scheme, as more particularly described above, Defendants sought to sabotage the Circuit Court Case so that Seyfarth and Ponder would avoid paying any potential judgment, or larger settlement, against them and in favor of Mr. Antonacci, thereby allowing the enterprise to keep the money. ¶ 413(b); ¶ 414(b). | In furtherance of this scheme, as more particularly described above, Defendants sought to sabotage the Circuit Court Case so that Seyfarth and Ponder would avoid paying any potential judgment, or larger settlement, against them and in favor of Mr. Antonacci, thereby allowing the enterprise to keep the money. ¶ 523(b); ¶ 524(b). |

| E.D. Virginia Complaint Language (Paragraph No.) | D.D.C. Complaint Language (Paragraph No.) |
|---|---|
| In furtherance of this scheme, as more particularly described above, Defendants unnecessarily delayed the Circuit Court Case as long as possible and deliberately imposed unnecessary legal fees on Mr. Antonacci.<br><br>In furtherance of this scheme, as more particularly described above, Defendants conspired with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed to practice law in the State of Illinois, which damaged his professional reputation and prevented him from earning a living.<br> In furtherance of this scheme, as more particularly described above, Defendants falsified official documents and took official action without legal authority. ¶ 413(c) – (e); ¶ 414(c) – (e). | In furtherance of this scheme, as more particularly described above, Defendants unnecessarily delayed the Circuit Court Case as long as possible and deliberately imposed unnecessary legal fees on Mr. Antonacci.<br><br>In furtherance of this scheme, as more particularly described above, Defendants conspired with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed to practice law in the State of Illinois, which damaged his professional reputation and prevented him from earning a living.<br><br> In furtherance of this scheme, as more particularly described above, Defendants falsified official documents and took official action without legal authority. ¶ 523(c) – (e); ¶ 524(c) – (e). |
| Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence the outcome of Antonacci's federal case in Chicago, both at the district court level and in the Seventh Circuit Appeal.<br><br>Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence District Judge Milton Shadur to dismiss sua sponte Antonacci's complaint for want of subject matter jurisdiction less than a week after he filed it.<br><br>Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence the Seventh Circuit's Clerk's office to inexplicably deny Antonacci electronic filing privileges in an attempt to have his appeal dismissed. | Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence the outcome of Antonacci's federal case in Chicago, both at the district court level and in the Seventh Circuit Appeal.<br><br>Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence District Judge Milton Shadur to dismiss sua sponte Antonacci's complaint for want of subject matter jurisdiction less than a week after he filed it.<br><br>Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence the Seventh Circuit's Clerk's office to |

| E.D. Virginia Complaint Language (Paragraph No.) | D.D.C. Complaint Language (Paragraph No.) |
|---|---|
| Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence the Seventh Circuit to grant the respondent's motion for a 35-day extension of time to file their brief of appellee – one day after filing – in order to allow the Illinois Appellate Court to issue its opinion 11 days later, such that the appellees could rely on that fraudulent opinion.<br><br>Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence Judge Wood to draft and orchestrate its unfounded and deliberately defamatory opinion.<br><br>Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully utilized Fusion GPS and FTI to spread false narratives about Antonacci to ensure that he received no relief from the federal courts, and to ensure that his SCOTUS petition was denied. ¶ 415(a) – (f). | inexplicably deny Antonacci electronic filing privileges in an attempt to have his appeal dismissed.<br><br>Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence the Seventh Circuit to grant the respondent's motion for a 35-day extension of time to file their brief of appellee – one day after filing – in order to allow the Illinois Appellate Court to issue its opinion 11 days later, such that the appellees could rely on that fraudulent opinion.<br><br>Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence Judge Wood to draft and orchestrate its unfounded and deliberately defamatory opinion.<br><br>Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully utilized Fusion GPS and FTI to spread false narratives about Antonacci to ensure that he received no relief from the federal courts, and to ensure that his SCOTUS petition was denied. ¶ 525. |
| **Count Two: RICO Conspiracy** | |
| Specifically, the enterprise is an association-in-fact among individuals and business entities designed to divert taxpayer money to members of the enterprise; destroy the professional reputation of anyone who seeks to expose the nature and extent of the enterprise through fraud, widespread defamation, and murder; protect the members of the enterprise from civil liability by unlawfully influencing the outcome of civil cases, thereby keeping more money in the enterprise; defrauding litigants from monies to which they are legally entitled by unlawfully delaying and sabotaging meritorious | Specifically, the enterprise is an association-in-fact among individuals and business entities designed to divert taxpayer money to members of the enterprise; destroy the professional reputation of anyone who seeks to expose the nature and extent of the enterprise through fraud, widespread defamation, and murder; protect the members of the enterprise from civil liability by unlawfully influencing the outcome of civil cases, thereby keeping more money in the enterprise; defrauding litigants from monies to which |

- 3 -

| E.D. Virginia Complaint Language (Paragraph No.) | D.D.C. Complaint Language (Paragraph No.) |
|---|---|
| civil cases; bribing and otherwise incentivizing people associated with those deemed enemies of this enterprise to spread lies about those "enemies;" punishing attorneys who sue members of the enterprise by preventing them from becoming admitted to practice law; punishing attorneys who sue members of the enterprise by putting them on the Blacklist of disfavored attorneys; illegally infiltrating protected computers to spy on the "enemies" of the enterprise, in some cases through fraudulently obtained search warrants; and protecting the enterprise by unlawfully preventing them from obtaining evidence of the enterprise's fraudulent misconduct. ¶ 429. | they are legally entitled by unlawfully delaying and sabotaging meritorious civil cases; bribing and otherwise incentivizing people associated with those deemed enemies of this enterprise to spread lies about those "enemies;" punishing attorneys who sue members of the enterprise by preventing them from becoming admitted to practice law; punishing attorneys who sue members of the enterprise by putting them on the Blacklist of disfavored attorneys; illegally infiltrating protected computers to spy on the "enemies" of the enterprise, in some cases through fraudulently obtained search warrants; and protecting the enterprise by unlawfully preventing them from obtaining evidence of the enterprise's fraudulent misconduct. ¶ 540. |
| Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence the outcome of Antonacci's federal case in Chicago, both at the district court level and in the Seventh Circuit Appeal. ¶ 435(i). | Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, and Gehringer corruptly and successfully endeavored to influence the outcome of Antonacci's federal case in Chicago, both at the district court level and in the Seventh Circuit Appeal. ¶ 550(i). |
| Gehringer conspired on behalf of himself, Perkins Coie, Seyfarth, Ponder, and this enterprise. ¶ 445. | Gehringer conspired on behalf of himself, Perkins Coie, Seyfarth, Ponder, and this enterprise. ¶ 565. |
| Ponder conspired on behalf of herself, Seyfarth, and this enterprise. ¶ 447. | Ponder conspired on behalf of herself, Seyfarth, and this enterprise. ¶ 567. |
| **Count Three: Statutory Business Conspiracy (Virginia Law)** | **Count Three: D.D.C. Antitrust Law** |
| Defendants combined, agreed, mutually undertook, and concerted together, and with others, to effect preconceived plan and unity of design and purpose. The purpose of this plan was unlawfully to destroy Antonacci's legal career so that he could not expose the criminal nature of this enterprise. ¶¶ 467, 468. | Defendants combined, agreed, mutually undertook, and concerted together, and with others, to effect preconceived plan and unity of design and purpose. The purpose of this plan was unlawfully to destroy Antonacci's legal career so that he could not expose the criminal nature of this enterprise. ¶¶ 590, 591 |

| E.D. Virginia Complaint Language (Paragraph No.) | D.D.C. Complaint Language (Paragraph No.) |
|---|---|
| Shapiro, Kiernan, and Emanuel conspired to prevent Antonacci from getting another job until he applied for a position with Seyfarth Shaw and Anita Ponder after Emanuel had been elected Mayor of Chicago.<br><br>Once he was in Chicago, Defendants conspired to have Ponder baselessly slander Antonacci to firm management, terminate him despite his generating his own business and receiving overwhelmingly positive performance evaluations from everyone but Ponder, and ensure the Ponder Slander Email was in his personnel file so that it would appear that he was incapable of doing his job. ¶¶ 470, 471. | Shapiro, Kiernan, and Emanuel conspired to prevent Antonacci from getting another job until he applied for a position with Seyfarth Shaw and Anita Ponder after Emanuel had been elected Mayor of Chicago.<br><br>Once he was in Chicago, Defendants conspired to have Ponder baselessly slander Antonacci to firm management, terminate him despite his generating his own business and receiving overwhelmingly positive performance evaluations from everyone but Ponder, and ensure the Ponder Slander Email was in his personnel file so that it would appear that he was incapable of doing his job. ¶¶ 595, 596. |
| Once he was terminated from Seyfarth, the purpose of the plan was to:<br><br>prevent Mr. Antonacci from prosecuting the Circuit Court Case, which is a breach of Major and Major Law's fiduciary duty to Mr. Antonacci;<br><br>coerce and intimidate Mr. Antonacci into withdrawing the Circuit Court Case or accepting Seyfarth's initial settlement offer, by delaying his Illinois Bar Application and putting him on the Blacklist of attorneys disfavored by Cook County Circuit Court judges such that Mr. Antonacci could not earn a living practicing law in Chicago, in violation of 720 ILCS 5/12-6 and 18 USC § 1951; and<br><br>coerce and intimidate Mr. Antonacci into withdrawing subpoenas lawfully served in Cook County, such that the Defendants would not have to quash those subpoenas without authority, in violation of 720 ILCS 5/12-6 and 18 USC § 1951. ¶ 472(a)-(c). | Once he was terminated from Seyfarth, the purpose of the plan was to:<br><br>prevent Mr. Antonacci from prosecuting the Circuit Court Case, which is a breach of Major and Major Law's fiduciary duty to Mr. Antonacci;<br><br>coerce and intimidate Mr. Antonacci into withdrawing the Circuit Court Case or accepting Seyfarth's initial settlement offer, by delaying his Illinois Bar Application and putting him on the Blacklist of attorneys disfavored by Cook County Circuit Court judges such that Mr. Antonacci could not earn a living practicing law in Chicago, in violation of 720 ILCS 5/12-6 and 18 USC § 1951; and<br><br>coerce and intimidate Mr. Antonacci into withdrawing subpoenas lawfully served in Cook County, such that the Defendants would not have to quash those subpoenas without authority, in violation of 720 ILCS 5/12-6 and 18 USC § 1951. ¶ 596(a)-(c). |

| E.D. Virginia Complaint Language (Paragraph No.) | D.D.C. Complaint Language (Paragraph No.) |
|---|---|
| Gehringer was and is the architect of this conspiracy. Shortly after Mr. Antonacci rejected Seyfarth's initial settlement offer, Gerhinger,[1] Seyfarth, Ponder, and Kaplan conspired with Major to<br><br>keep Mr. Antonacci's Verified Complaint under seal so that the allegations exposing the corruption and incompetence pervading Seyfarth would not remain public, breaching Major's fiduciary duty to Mr. Antonacci;<br><br>file an Amended Complaint that would be far weaker than the Verified Complaint because it would contain less relevant, factual allegations, and omit the exhibits substantiating those allegations, breaching Major's fiduciary duty to Mr. Antonacci;<br><br>include the Ponder Slander Email as an exhibit to the Amended Verified Complaint, breaching Major's fiduciary duty to Mr. Antonacci, so that Seyfarth and Ponder could argue (incorrectly) that the Ponder Slander Email solely embodied Ponder's defamatory statements concerning Mr. Antonacci and therefore controlled over Mr. Antonacci's allegations;<br><br>unnecessarily delay the proceedings as long as possible, breaching Major's fiduciary duty to Mr. Antonacci, while Gehringer utilized U.S. mail and interstate communications to conspire with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed to practice law in the State of Illinois, which would damage his professional reputation and prevent him from earning a living, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, | Gehringer was and is the architect of this conspiracy. Shortly after Mr. Antonacci rejected Seyfarth's initial settlement offer, Gerhinger,[2] Seyfarth, Ponder, and Kaplan conspired with Major to<br><br>keep Mr. Antonacci's Verified Complaint under seal so that the allegations exposing the corruption and incompetence pervading Seyfarth would not remain public, breaching Major's fiduciary duty to Mr. Antonacci;<br><br>file an Amended Complaint that would be far weaker than the Verified Complaint because it would contain less relevant, factual allegations, and omit the exhibits substantiating those allegations, breaching Major's fiduciary duty to Mr. Antonacci;<br><br>include the Ponder Slander Email as an exhibit to the Amended Verified Complaint, breaching Major's fiduciary duty to Mr. Antonacci, so that Seyfarth and Ponder could argue (incorrectly) that the Ponder Slander Email solely embodied Ponder's defamatory statements concerning Mr. Antonacci and therefore controlled over Mr. Antonacci's allegations;<br><br>unnecessarily delay the proceedings as long as possible, breaching Major's fiduciary duty to Mr. Antonacci, while Gehringer utilized U.S. mail and interstate communications to conspire with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, to prevent Mr. Antonacci from becoming licensed |

[1] The two complaints have the same misspelling of Gehringer's name.
[2] The two complaints have the same misspelling of Gehringer's name.

| E.D. Virginia Complaint Language (Paragraph No.) | D.D.C. Complaint Language (Paragraph No.) |
|---|---|
| 1952.<br><br>deliberately incur unnecessary legal fees such that financial pressure would force Mr. Antonacci to accept a low settlement, breaching Major's fiduciary duty to Mr. Antonacci;<br><br>if Mr. Antonacci refused to settle his case, then Major would withdraw her representation of Mr. Antonacci, in order to further pressure Mr. Antonacci into dropping his case, breaching Major's fiduciary duty to Mr. Antonacci;<br><br>Gehringer agreed to coordinate with Gran, Brewer, and any other Cook County Circuit Court judges, as necessary, to pass instructions concerning the Defendants' case strategy, how to rule on particular issues, and how to harass and intimidate Mr. Antonacci when he appeared in court, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952;<br><br>Major agreed to write a letter to Neriem, and Ponder and Gehringer agreed to conspire with Neriem to coordinate her response such that it could be used to harass and intimidate Mr. Antonacci, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952; and<br><br>Gehringer agreed to conspire with others as needed moving forward. ¶ 473(a)-(i). | to practice law in the State of Illinois, which would damage his professional reputation and prevent him from earning a living, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952.<br><br>deliberately incur unnecessary legal fees such that financial pressure would force Mr. Antonacci to accept a low settlement, breaching Major's fiduciary duty to Mr. Antonacci;<br><br>if Mr. Antonacci refused to settle his case, then Major would withdraw her representation of Mr. Antonacci, in order to further pressure Mr. Antonacci into dropping his case, breaching Major's fiduciary duty to Mr. Antonacci;<br><br>Gehringer agreed to coordinate with Gran, Brewer, and any other Cook County Circuit Court judges, as necessary, to pass instructions concerning the Defendants' case strategy, how to rule on particular issues, and how to harass and intimidate Mr. Antonacci when he appeared in court, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952;<br><br>Major agreed to write a letter to Neriem, and Ponder and Gehringer agreed to conspire with Neriem to coordinate her response such that it could be used to harass and intimidate Mr. Antonacci, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952; and<br><br>Gehringer agreed to conspire with others as needed moving forward. ¶ 597(a)-(i). |

| E.D. Virginia Complaint Language (Paragraph No.) | D.D.C. Complaint Language (Paragraph No.) |
|---|---|
| Gehringer conspired with Bronstein and Mulaney to have Storino removed from the Inquiry Panel and substituted with Sublett. ¶ 474. | Gehringer conspired with Bronstein and Mulaney to have Storino removed from the Inquiry Panel and substituted with Sublett. ¶ 598. |
| Gehringer conspired with Mulaney, Sublett, and Walsh and instructed them on how to harass and intimidate Mr. Antonacci such that he would withdraw and/or settle the Circuit Court Case, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952. ¶ 475. | Gehringer conspired with Mulaney, Sublett, and Walsh and instructed them on how to harass and intimidate Mr. Antonacci such that he would withdraw and/or settle the Circuit Court Case, in violation of 720 ILCS 5/12-6, and 18 USC§§ 1341, 1343, 1951, 1952. ¶ 599. |
| When, on April 23, 2013, Mr. Antonacci requested that the Inquiry Panel disclose any communications with Seyfarth or Ponder relating to Mr. Antonacci, Ponder, Seyfarth, and Gehringer conspired with Mulaney, Walsh, and Sublett and instructed them, utilizing interstate communications and U.S. Mail, to deny Mr. Antonacci's certification to the Illinois Bar on April 24, 2013, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952. ¶ 476. | When, on April 23, 2013, Mr. Antonacci requested that the Inquiry Panel disclose any communications with Seyfarth or Ponder relating to Mr. Antonacci, Ponder, Seyfarth, and Gehringer conspired with Mulaney, Walsh, and Sublett and instructed them, utilizing interstate communications and U.S. Mail, to deny Mr. Antonacci's certification to the Illinois Bar on April 24, 2013, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952. ¶ 600. |
| Gehringer conspired with Bronstein, Fedo, and Asaro to unlawfully quash Mr. Antonacci's Rule 9.3 Subpoenas. ¶ 477. | Gehringer conspired with Bronstein, Fedo, and Asaro to unlawfully quash Mr. Antonacci's Rule 9.3 Subpoenas. ¶ 601. |
| Gehringer conspired with Patton, Nereim, and Dolesh to delay execution of the Chicago Subpoenas to ensure that evidence of Ponder's fraudulent misconduct would never be discovered. These individuals further conspired to make material, factual misrepresentations, utilizing the U.S. Mails and interstate wires, on numerous occasions in order to accomplish this goal, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952. ¶ 478. | Gehringer conspired with Patton, Nereim, and Dolesh to delay execution of the Chicago Subpoenas to ensure that evidence of Ponder's fraudulent misconduct would never be discovered. These individuals further conspired to make material, factual misrepresentations, utilizing the U.S. Mails and interstate wires, on numerous occasions in order to accomplish this goal, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952. ¶ 602. |
| From December 2013 through March 2014, Dolesh, Gehringer, and Brewer conspired, via electronic mail and telephone, utilizing | From December 2013 through March 2014, Dolesh, Gehringer, and Brewer conspired, via electronic mail and telephone, utilizing interstate communications, to |

| E.D. Virginia Complaint Language (Paragraph No.) | D.D.C. Complaint Language (Paragraph No.) |
|---|---|
| interstate communications, to knowingly conceal the City's evidence of Ponder's fraudulent misconduct, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952. ¶ 479. | knowingly conceal the City's evidence of Ponder's fraudulent misconduct, in violation of 720 ILCS 5/12-6, and 18 USC §§ 1341, 1343, 1951, 1952. ¶ 603. |
| Arnold conspired with Gehringer to conceal evidence that Toomey had falsified the December 5, 2013 hearing transcript to delete Brewer's erratic, hostile outbursts and her refusal to review affidavits that Mr. Antonacci submitted to the Court. These individuals further conspired to make material, factual misrepresentations, utilizing the U.S. Mails and interstate wires, on numerous occasions in order to accomplish this goal, in violation of 18 USC §§ 1341, 1343, 1952. ¶ 480. | Arnold conspired with Gehringer to conceal evidence that Toomey had falsified the December 5, 2013 hearing transcript to delete Brewer's erratic, hostile outbursts and her refusal to review affidavits that Mr. Antonacci submitted to the Court. These individuals further conspired to make material, factual misrepresentations, utilizing the U.S. Mails and interstate wires, on numerous occasions in order to accomplish this goal, in violation of 18 USC §§ 1341, 1343, 1952. ¶ 604. |
| From January 2014 through April 2014, Arnold sent numerous emails to Gehringer, Toomey, and Mr. Antonacci in furtherance of this conspiracy, and further sent Mr. Antonacci numerous documents, via U.S. Mail, to his address in Washington, D.C., also in furtherance of this conspiracy, in violation of 18 USC §§ 1341, 1343, 1952. ¶ 481. | From January 2014 through April 2014, Arnold sent numerous emails to Gehringer, Toomey, and Mr. Antonacci in furtherance of this conspiracy, and further sent Mr. Antonacci numerous documents, via U.S. Mail, to his address in Washington, D.C., also in furtherance of this conspiracy, in violation of 18 USC §§ 1341, 1343, 1952. ¶ 605. |
| Kruse and Kruse International conspired with Gehringer and Arnold to falsely indicate to Mr. Antonacci that Kruse had filed the April 23, 2014 hearing transcript with the Circuit Court so that Mr. Antonacci would not file that transcript, and thus the transcript would not be in the Record on Appeal. On September 2, 2014, Kruse falsely stated, via electronic mail utilizing interstate communications, that she had filed the April 23, 2014 hearing transcript with Cook County Circuit Court, in violation of 18 USC §§ 1341, 1343, 1952. ¶ 482. | Kruse and Kruse International conspired with Gehringer and Arnold to falsely indicate to Mr. Antonacci that Kruse had filed the April 23, 2014 hearing transcript with the Circuit Court so that Mr. Antonacci would not file that transcript, and thus the transcript would not be in the Record on Appeal. On September 2, 2014, Kruse falsely stated, via electronic mail utilizing interstate communications, that she had filed the April 23, 2014 hearing transcript with Cook County Circuit Court, in violation of 18 USC §§ 1341, 1343, 1952. ¶ 606. |
| Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, Gehringer, FTI and Fusion GPS conspired to influence the outcome of Antonacci's | Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, Gehringer, FTI and Fusion GPS conspired to influence the |

| E.D. Virginia Complaint Language (Paragraph No.) | D.D.C. Complaint Language (Paragraph No.) |
|---|---|
| federal case in Chicago, both at the district court level and in the Seventh Circuit Appeal, in violation of 18 U.S.C. § 1503. ¶ 483. | outcome of Antonacci's federal case in Chicago, both at the district court level and in the Seventh Circuit Appeal, in violation of 18 U.S.C. § 1503. ¶ 607. |
| Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, Gehringer, FTI and Fusion GPS conspired to influence the outcome of Antonacci's SCOTUS Petition, in violation of 18 U.S.C. § 1503. ¶ 484. | Leslie Kiernan, Paul Kiernan, Emanuel, Seyfarth, Gehringer, FTI and Fusion GPS conspired to influence the outcome of Antonacci's SCOTUS Petition, in violation of 18 U.S.C. § 1503. ¶ 608. |
| Gehringer conspired on behalf of himself, Perkins Coie, Seyfarth, Ponder, and this enterprise. ¶ 497. | Gehringer conspired on behalf of himself, Perkins Coie, Seyfarth, Ponder, and this enterprise. ¶ 627. |
| Ponder conspired on behalf of herself, Seyfarth, and this enterprise. ¶ 499. | Ponder conspired on behalf of herself, Ponder Diversity, Seyfarth, and this enterprise. ¶ 629. |
| **Count Four: Common Law Civil Conspiracy** | **Count Four: Conspiracy to Interfere with Civil Rights** |
| Allegations largely repeat those listed above in Count Three. | No allegations expressly against Ponder, Gehringer, Perkins Coie, or Seyfarth Shaw. |
| **Count Five: Computer Fraud and Abuse Act** | |
| No allegations against Ponder, Gehringer, Perkins Coie, or Seyfarth Shaw. | No allegations against Ponder, Gehringer, Perkins Coie, or Seyfarth Shaw. |

- 10 -