No: ________

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**In the Matter of:**

**Louis B. Antonacci,**

**Plaintiff-Petitioner.**

From the United States District Court
for the District of Columbia,
*Louis B. Antonacci v. Rahm Israel Emanuel, et. al.*,
1:26-cv-00211 (filed January 23, 2026)

# APPENDIX TO PETITION FOR WRITS OF MANDAMUS AND PROHIBITION

Louis B. Antonacci
ANTONACCI PLLC
4126 8th Street NW #3
Washington, DC 20011
703-300-4635
lou@antonaccilaw.com

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
OCT 09 2026
RECEIVED

# APPENDIX
# TABLE OF CONTENTS

MINUTE ORDER of District Judge AliKhan
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
GRANTING Plaintiff's Motion to Lift Stay.
ORDERING Defendants to file Motions to Dismiss
no later than March 16, 2026.
ORDERING Plaintiff to file Oppositions to Motions to
Dismiss no later than March 30, 2026.
ORDERING Defendants to file their Replies
in Support no later than April 6, 2026.
Entered February 23, 2026 .................................................. LBA0001

Clerk's Entry of DEFAULT as to
Defendant BEAN LLC d/b/a Fusion GPS
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.,*
D.D.C. No. 1:26-cv-00211
Entered March 23, 2026 ...................................................... LBA0002

Plaintiff's First MOTION to Take Judicial Notice
of Adjudicative Facts and Documents (Exhibits Omitted)
Filed March 30, 2026 ......................................................... LBA0003

Plaintiff's Memorandum in Opposition to Certain Defendants'
Motions to Dismiss the Complaint pursuant to
Rules 12(b)(1), 12(b)(5), and 12(b)(6)
Filed March 30, 2026 ......................................................... LBA0009

Plaintiff's Memorandum in Opposition to Certain Defendants'
Motions to Dismiss the Complaint pursuant to
Rules 12(b)(1), 12(b)(2), and 12(b)(3)
Filed March 30, 2026 ......................................................... LBA0055

Plaintiff's First MOTION to Expedite Proceedings
Filed July 28, 2026 .............................................................. LBA0065

# APPENDIX
# TABLE OF CONTENTS


ORDER of District Judge Rudolph Contreras,
Chair, Calendar and Case Management Committee
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
Reassigning case from District Judge Loren L. AliKhan
to District Judge Ana C. Reyes
Entered July 29, 2026 .......... LBA0068

STANDING ORDER of District Judge Reyes (revised May 11, 2026)
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
Entered July 29, 2026 .......... LBA0069

MINUTE ORDER of District Judge Reyes
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
DENYING WITHOUT PREJUDICE
Defendants' Motions to Dismiss the Complaint.
ORDERING the parties to comply with its pre-motion conference
process set forth in Section 7(f) of Judge Reyes's
Standing Order.
ORDERING all Defendants that wish to file a motion to
dismiss to jointly file one notice of their
forthcoming joint motion to dismiss.
ORDERING Defendants to file any such joint pre-motion notice on or
before September 2, 2026.
ORDERING the parties to contact the courtroom deputy,
Chashawn White (chashawn_white@dcd.uscourts.gov),
to schedule a pre-motion conference (PMC) no earlier
than September 9, 2026.
FURTHER STATING the Court will take up the parties' other
pending motions at PMC.
Entered July 29, 2026 .......... LBA0084

MINUTE ORDER of District Judge Reyes
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
SETTING Deadlines: Pre-Motion Notice due Sept. 2, 2026.
Entered July 31, 2026 .......... LBA0086

APPENDIX
TABLE OF CONTENTS

Plaintiff's FIRST MOTION for Reconsideration of
Judge Reyes's Orders of July 29 and 31, 2026
Filed August 3, 2026 .......... LBA0088

Plaintiff's MOTION to Amend Complaint to
Add Parties/Allegations re Attempted Murder
Filed August 31, 2026 .......... LBA0092

Plaintiff's SECOND MOTION for Reconsideration of
Judge Reyes's Orders of July 29 and 31, 2026
Filed August 31, 2026 .......... LBA0100

Defendants' Joint Pre-Motion Notice of Intent to File
a Joint Motion to Dismiss, or Whatever
Filed September 2, 2026 .......... LBA0102

Plaintiff's Response in Opposition to
Defendants' Joint Pre-Motion Notice of Intent to File
a Joint Motion to Dismiss, or Whatever
Filed September 8, 2026 .......... LBA0112

Parties Correspondence with courtroom deputy,
Chashawn White (chashawn_white@dcd.uscourts.gov),
concerning Judge Reyes's proposed
pre-motion conference (PMC)
From September 14 to 23, 2026.......... LBA0119

MINUTE ORDER of District Judge Reyes
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
ORDERING the parties to appear at a pre-motion
conference on October 14, 2026, at 3:45 PM.
Entered September 25, 2026 .......... LBA0128

# APPENDIX
# CORRESPONDING DOCKET ENTRIES

MINUTE ORDER of District Judge AliKhan
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
GRANTING Plaintiff's Motion to Lift Stay.
ORDERING Defendants to file Motions to Dismiss no later than March 16, 2026.
ORDERING Plaintiff to file Oppositions to Motions to Dismiss no later than March 30, 2026.
ORDERING Defendants to file their Replies in Support no later than April 6, 2026.
Entered February 23, 2026 .......... N/A

Clerk's Entry of DEFAULT as to Defendant BEAN LLC d/b/a Fusion GPS
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.,*
D.D.C. No. 1:26-cv-00211
Entered March 23, 2026 .......... Dkt. 63

Plaintiff's First MOTION to Take Judicial Notice of Adjudicative Facts and Documents (Exhibits Omitted)
Filed March 30, 2026 .......... Dkt. 68

Plaintiff's Memorandum in Opposition to Certain Defendants' Motions to Dismiss the Complaint pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6)
Filed March 30, 2026 .......... Dkt. 69

Plaintiff's Memorandum in Opposition to Certain Defendants' Motions to Dismiss the Complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(3)
Filed March 30, 2026 .......... Dkt. 70

Plaintiff's First MOTION to Expedite Proceedings
Filed July 28, 2026 .......... Dkt. 108

## APPENDIX
## CORRESPONDING DOCKET ENTRIES

ORDER of District Judge Rudolph Contreras,
Chair, Calendar and Case Management Committee
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
Reassigning case from Judge Loren L. AliKhan
to Judge Ana C. Reyes
Entered July 29, 2026 .......... Dkt.109

STANDING ORDER of District Judge Reyes (revised May 11, 2026)
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
Entered July 29, 2026 .......... Dkt.110

MINUTE ORDER of District Judge Reyes
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
DENYING WITHOUT PREJUDICE
Defendants' Motions to Dismiss the Complaint.
ORDERING the parties to comply with its pre-motion conference process set forth in Section 7(f) of Judge Reyes's Standing Order.
ORDERING all Defendants that wish to file a motion to dismiss to jointly file one notice of their forthcoming joint motion to dismiss.
ORDERING Defendants to file any such joint pre-motion notice on or before September 2, 2026.
ORDERING the parties to contact the courtroom deputy, Chashawn White (chashawn_white@dcd.uscourts.gov), to schedule a pre-motion conference (PMC) no earlier than September 9, 2026.
FURTHER STATING the Court will take up the parties' other pending motions at PMC.
Entered July 29, 2026 .......... N/A

# APPENDIX
# CORRESPONDING DOCKET ENTRIES


MINUTE ORDER of District Judge Reyes
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
SETTING Deadlines: Pre-Motion Notice due Sept. 2, 2026.
Entered July 31, 2026 .......... N/A

Plaintiff's FIRST MOTION for Reconsideration of
Judge Reyes's Orders of July 29 and 31, 2026
Filed August 3, 2026 .......... Dkt. 111

Plaintiff's MOTION to Amend Complaint to
Add Parties/Allegations re Attempted Murder
Filed August 31, 2026 .......... Dkt.112

Plaintiff's SECOND MOTION for Reconsideration of
Judge Reyes's Orders of July 29 and 31, 2026
Filed August 31, 2026 .......... Dkt.113

Defendants' Joint Pre-Motion Notice of Intent to File
a Joint Motion to Dismiss, or Whatever
Filed September 2, 2026 .......... Dkt.115

Plaintiff's Response in Opposition to
Defendants' Joint Pre-Motion Notice of Intent to File
a Joint Motion to Dismiss, or Whatever
Filed September 8, 2026 .......... Dkt. 119

Parties Correspondence with courtroom deputy,
Chashawn White (chashawn_white@dcd.uscourts.gov),
concerning Judge Reyes's proposed
pre-motion conference (PMC)
From September 14 to 23, 2026 .......... N/A

APPENDIX
CORRESPONDING DOCKET ENTRIES

MINUTE ORDER of District Judge Reyes
*Louis B. Antonacci v. Rahm I. Emanuel, et. al.*,
D.D.C. No. 1:26-cv-00211
ORDERING the parties to appear at a pre-motion conference on October 14, 2026, at 3:45 PM.
Entered September 25, 2026 .......................................................... N/A

Louis Antonacci <lou@antonaccilaw.com>

## Activity in Case 1:26-cv-00211-LLA ANTONACCI v. EMANUEL et al Order

**DCD_ECFNotice@dcd.uscourts.gov** <DCD_ECFNotice@dcd.uscourts.gov> Mon, Feb 23, 2026 at 11:29 AM
To: DCD_ECFNotice@dcd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Columbia**

### Notice of Electronic Filing

The following transaction was entered on 2/23/2026 at 11:29 AM EDT and filed on 2/23/2026

| | |
|---|---|
| **Case Name:** | ANTONACCI v. EMANUEL et al |
| **Case Number:** | 1:26-cv-00211-LLA |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**MINUTE ORDER: Upon consideration of Plaintiff's Motion to Lift Stay and Order Defendants Respond to Complaint [20], it is hereby ORDERED that the motion is GRANTED, and Defendants shall respond to Plaintiff's Complaint [1] on or before March 16, 2026. To the extent any Defendant files a motion to dismiss, Plaintiff shall file an opposition on or before March 30, 2026, and Defendants shall file their replies on or before April 6, 2026. Signed by Judge Loren L. AliKhan on 2/23/2026. (lclla1)**

**1:26-cv-00211-LLA Notice has been electronically mailed to:**

Barak Cohen bcohen@perkinscoie.com, DWDC@perkinscoie.com, DocketWDC@PerkinsCoie.com, HMullin@perkinscoie.com, TTobin@perkinscoie.com, nvargas@perkinscoie.com, syarborough@perkinscoie.com

Thomas J. Tobin ttobin@perkinscoie.com, jstarr@perkinscoie.com

Ethan P. Fallon efallon@oag.state.va.us

LOUIS B. ANTONACCI lou@antonaccilaw.com

**1:26-cv-00211-LLA Notice will be delivered by other means to::**

Default - Rule 55A (CO 40 Revised-6/2019)

# UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

LOUIS B. ANTONACCI
Plaintiff(s)

Civil Action: 26-cv-00211-LLA

v.

RAHM ISRAEL EMANUEL et al
Defendant(s)

**RE:** BEAN LLC a limited liability company doing business as FUSION GPS

## DEFAULT

It appearing that the above-named defendant(s) failed to plead or otherwise defend this action though duly served with summons and copy of the complaint on February 12, 2026, and an affidavit on behalf of the plaintiff having been filed, it is this 23rd day of March, 2026 declared that defendant(s) is/are in default.

ANGELA D. CAESAR, Clerk

By: /s/ N. Wilkens
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LOUIS B. ANTONACCI,**<br>Plaintiff<br>**v.**<br>**RAHM ISRAEL EMANUEL et. al.**<br>Defendants. | **Case No. 1:26-cv-00211** |

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT**

Pursuant to Federal Rule of Evidence 201 and related authorities below, Plaintiff Louis B. Antonacci ("Antonacci") hereby requests, in consideration of Antonacci's Oppositions to the Defendants' Motions to Dismiss (dkt. 22, 28, 38, 40, 41, 44, 46, 49, 51, 55), filed contemporaneously herewith, that this Court take judicial notice of adjudicative facts generally known within this court's territorial jurisdiction, further described below, and that this Court take judicial notice of the authenticity of the documents attached hereto, which can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Rule 201(a) authorizes this Court to take judicial notice of facts "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction." Rule 201(b) authorizes this Court to take judicial notice of facts "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 201(c) mandates that judicial notice be taken "if a party requests it and the court is supplied with the necessary information." Rule 201(d) authorizes judicial notice "at any stage of the proceeding." Public records, including court documents and agency records,

are proper subjects of judicial notice. *Manuel Mejia-Cortez v. District of Columbia*, 256 A.3d 210, 215 (D.C. 2021).

Pursuant to Rule 201(a), Antonacci requests this Court take judicial notice of the following facts not subject to reasonable dispute because they are generally known within this Court's territorial jurisdiction:

1. The territorial line demarcating the District of Columbia's boundary with the Commonwealth of Virginia is less than five miles from this Courthouse.
2. The Circuit Court for the City of Alexandria, located at 520 King Street, Alexandria, Virginia 22314, is less than 10 miles from this Courthouse.
3. Many attorneys licensed in the District of Columbia are also licensed in the Commonwealth of Virginia.
4. Many attorneys licensed in the Commonwealth of Virginia are also licensed in the District of Columbia.
5. An attorney licensed in the Commonwealth of Virginia can waive into the District of Columbia's Bar Association with five years of qualifying practice, regardless of their score on the Virginia bar examination, assuming they pass the character and fitness requirements.
6. If an attorney in the Commonwealth of Virginia accepts a position as Assistant Bar Counsel for the Virginia State Bar, in its Richmond, Virginia headquarters, where they will be investigating and prosecuting allegations of misconduct against Virginia attorneys, then the attorney accepting the position as Assistant Bar Counsel should reasonably expect to investigate and prosecute allegations of misconduct against Virginia attorneys who are also licensed in the District of

Columbia, reside in the District of Columbia, and/or practice in the District of Columbia.

7. A Virginia attorney employed as Assistant Bar Counsel for the Virginia State Bar, in its Richmond, Virginia headquarters, investigating and prosecuting allegations of misconduct against Virginia attorneys, cannot reasonably expect to avoid availing him or herself of the laws, court rules, rules of professional conduct, and/or regulations promulgated by the District of Columbia's City Council, its Bar Association, and its numerous courts, in performance of his or her duties.
8. A Virginia attorney employed as Assistant Bar Counsel for the Virginia State Bar, in its Richmond, Virginia headquarters, investigating and prosecuting allegations of misconduct against Virginia attorneys, should reasonably expect to interact not infrequently with the District of Columbia's Office of Disciplinary Counsel and/or its Bar Association.
9. The District of Columbia's Bar Association is the largest unified bar association in the country.
10. The Virginia State Bar transacts business with the neighboring District of Columbia's Bar Association.
11. The Virginia State Bar transacts business with the neighboring District of Columbia's Bar Association on an ongoing basis.
12. The Virginia State Bar has reciprocity with the District of Columbia Bar.

Pursuant to Rule 201(b), Antonacci requests this Court take judicial notice of the following documents, whose authenticity is not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned:

1. **Exhibit 1:** The Hearing Transcript of the June 11, 2025 disciplinary trial in *Virginia State Bar v. Louis B. Antonacci*, case no. CL25000531-00, at the Circuit Court for the City of Alexandria, submitted contemporaneously herewith, which Antonacci specifically references in the complaint (dkt. 1, ¶23).

2. **Exhibit 2:** The complete complaint, with exhibits, filed by Antonacci in *Louis B. Antonacci v. Rahm Israel Emanue*l, EDVA No. 1:24-cv-00172-MSN-LRV (2024), which Antonacci specifically references throughout the instant complaint, and that was entered into evidence at the disciplinary trial of June 11, 2025 (Hr'g Tr. 204:13 – 205:10), submitted contemporaneously herewith.

3. **Exhibit 3:** Civil Docket Report for Case #: 1:25-cv-01093-CFC-EGT, *Louis B. Antonacci v. Descrybe, LLC,* U.S. District Court, District of Delaware (Wilmington), dated March 29, 2026, submitted contemporaneously herewith.

4. **Exhibit 4:** Withdrawal of Foreign Registration Statement, filed by Defendant Storij Inc., with the District of Columbia's Department of Consumer and Regulatory Affairs on February 22, 2021, submitted contemporaneously herewith and expressly referenced in the complaint (dkt. 1, ¶372).

5. **Exhibit 5:** Entity Information for Defendant Storij Inc., maintained by the District of Columbia's Department of Licensing and Consumer Protection, as of February 18, 2026, showing C T Corporation System as their "Active" commercial registered agent, submitted contemporaneously herewith and relevant to Storij's disputed service of process (dkt. 38-1, pp. 22-23).

6. **Exhibit 6:** The 2026 Law Firm Rates Report generated by the Thompson Reuters Institute, demonstrating the astronomical rise in law firm billing rates across the

country, with law firm revenues rising from two to three times the rate of inflation over the past 20 years, despite the hours worked and demand remaining flat, submitted contemporaneously herewith and relevant to Antonacci's alleged D.C. Antitrust violations.

7. **Exhibit 7:** December 17, 2024 Gallup Report: "Americans Pass Judgment on the Courts: Sharp decline in confidence in judiciary is among the largest Gallup has ever measured." From 2020 to 2024, reported confidence in the U.S. judicial system dropped 24 percentage points, from 59% to 35%. "The decline in confidence in the U.S. judicial system not only means the U.S. ranks below other rich nations, it is also among the steepest declines Gallup has measured globally on this metric," submitted contemporaneously herewith and relevant to Antonacci's alleged D.C. Antitrust violations.

8. **Exhibit 8:** Entity Information for Antonacci PLLC, the law firm owned and operated solely by Antonacci, which was organized in the District of Columbia on July 30, 2014, and was domesticated in Virginia on June 28, 2022, and has remained registered to do business in the District of Columbia since July 30, 2014, maintained by the District of Columbia's Department of Licensing and Consumer Protection, as of March 29, 2026, submitted contemporaneously herewith and relevant to the Antonacci's Opposition to Defendants' Rule 12(b)(2) motions.

**WHEREFORE**, for the reasons stated herein, Plaintiff Louis B. Antonacci hereby requests this Court take judicial notice, pursuant to Rule 201(a) of the foregoing facts 1-12 not subject to reasonable dispute, and this Court take further notice, pursuant to Rule 201(b), of the foregoing **Exhibits 1-8**, the authenticity of which is not subject to reasonable dispute.

**(765P<#07Q@G#JA3#=A=>(#** ( ( 2*,H*5&'.""D(,.:J$&&*+(

],]( Louis Antonacci ( (

=! UIS B. ANTONACCI

*** ! "#! $ %%&#B//,**

N86O(L([&/**&(ch(eM(

h#,9$%T&0%<()R(67788(

^7MaM77aNOMQ(

"0.j#%&0%#55$"#;-50J

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LOUIS B. ANTONACCI,**<br>Plaintiff<br>**v.**<br>**RAHM ISRAEL EMANUEL et. al.**<br>Defendants. | **Case No. 1:26-cv-00211** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' RULES 12(B)(6) AND 12(B)(1) MOTIONS TO DISMISS**

## TABLE OF CONTENTS

INTODUCTION ..... 1

SELECTED CORRECTIONS OF DEFENDANTS' FACTUAL MISSTATEMENTS ..... 1

ARGUMENT ..... 2

I. ANTONACCI'S CLAIMS ARE NEITHER INSUBSTANTIAL NOR FRIVOLOUS ..... 2

II. ANTONACCI HAS ALLEGED A 15-YEAR CRIMINAL CONSPIRACY, PERPETRATED BY ZIONIST LAWYERS, IN A MANNER THAT IS SHORT, PLAIN, AND SUFFICIENTLY DETAILED, WHILE ESTABLISHING PLAUSIBILITY BY CONNECTING THE DEFENDANTS AND SHOWING QUID PRO QUOS WHERE POSSIBLE ..... 7

III. THERE IS NO CLAIM PRECLUSION OR RES JUDICATA BECAUSE THERE HAS NEVER BEEN ANY ADJUDICATION ON THE MERITS ..... 10

IV. THE COURT SHOULD NOT DISMISS THIS CASE SUA SPONTE ..... 11

V. PERKINS COIE IS NOT ENTITLED TO ANY "LITIGATION PRIVILEGE" BECAUSE SUCH PRIVILEGE ONLY APPLIES TO COMMON LAW DEFAMATION, UNDER DC LAW, AND ILLINOIS'S LITIGATION PRIVILEGE DOES NOT APPLY TO GEHRINGER'S CRIMINAL CONDUCT ..... 11

VI. STORIJ WAS SERVED ..... 13

VII. ANTONACCI HAS STATED PLAUSIBLE AND TIMELY RICO CLAIMS ..... 14

a. All Defendants Are Liable for Every Overt Act of Every Co-Conspirator in Furtherance of the Conspiracy, Which They Continue to Demonstrate Is an Open-Ended Pattern of Racketeering Activity, As Shown By the Evolving Nature of the Complaints ..... 14

b. Neither RICO Count Is Time-Barred Because the Defendants' Predicate Acts and Antonacci's Injuries Are Both Ongoing, and Because the Defendants' Fraudulent Concealment Prevented Antonacci's Apprehension of His Injuries Until 2022 ..... 19

c. Every Defendant Conspicuously Ignores the Express Definition of the "Enterprise" Set Forth in the Complaint, Conceding That It Is Adequately Alleged ....27

d. The Predicate Acts Are Set Forth Specifically in Each Count, While Some Are Referenced from Incorporated Factual Allegations for Sake of Brevity, and Antonacci Has Alleged Numerous Schemes to Defraud, Extort and Murder Him ....28

VIII. ANTONACCI HAS STATED A CLAIM UNDER DC'S ANTITRUST ACT BECAUSE THIS CRIMINAL ENTERPRISE HAS MONOPOLIZED THE DC LEGAL MARKET, WHICH CAN BE EASILY PROVED BY DC'S METEORIC BILLING RATE INCREASES, AND ALL DEFENDANTS ARE LIABLE FOR EVERY ACT OF THEIR CO-CONSPIRATORS SO THE CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS ....35

IX. ANTONACCI HAS STATED A CLAIM UNDER 28 USC §1985(3) BECAUSE JOHNSON'S UNCONSTITUTIONAL PERSECUTION OF ANTONACCI IS A NATURAL CONSEQUENCE OF THE CONSPIRACY TO DESTROY ANTONACCI'S CAREER, WHICH ALL DEFENDANTS JOINED WILLFULLY, AND ANTONACCI WAS DENIED EQUAL PROTECTION FOR THOSE SIMILARLY SITUATED, SO HE IS A PROTECTED CLASS OF ONE ....37

X. ANTONACCI HAS STATED A CLAIM UNDER 10 U.S.C. §1030 BECAUSE HE NEVER GAVE STORIJ ANY ACCESS TO HIS PROTECTED COMPUTERS, AND THE CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS BECAUSE THE INFILTRATION MAY BE ONGOING AND THE LIMITATIONS PERIOD SHOULD BE EQUITABLY TOLLED IN ANY CASE ....41

STATEMENT REQUESTING ORAL ARGUMENT ....42

CONCLUSION ....43

## INTRODUCTION

Plaintiff Louis B. Antonacci ("Antonacci") hereby files this Memorandum in Opposition to the Motions to Dismiss the Complaint, pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6), filed by Defendants Lane Construction Corp. ("Lane") and Seth T. Firmender's ("Firmender") (together "Lane Defendants") (dkt. 28), Perkins Coie LLP ("Perkins Coie"), Matthew J. Gehringer ("Gehringer"), Anita J. Ponder ("Ponder"), and Seyfarth Shaw LLP (together "Perkins Defendants") (dkt. 51), Storij, Inc. d/b/a Driggs Research International d/b/a STOR Technologies d/b/a The So Company ("Storij") (dkt. 38), Holland & Knight LLP ("Holland & Knight") (dkt. 46), Rokk Solutions LLC ("Rokk") (dkt. 49), Descrybe, LLC ("Descrybe") (dkt. 44)[1], and 9208 Lee Avenue, LLC and Parrish Law Firm, PLLC (together "Parrish") ( dkt. 41). Defendant Rahm Israel Emanuel ("Emanuel") did not file his own motion to dismiss, but instead opted to file joinder. (Dkt. 55).

While this Opposition endeavors to address all arguments made by the defendants in their respective motions, Antonacci expressly disputes all arguments made by the defendants that are inconsistent with Antonacci's arguments set forth herein. Antonacci will not address every case, statute, rule and regulation cited by the Defendants, because many simply do not merit discussion, but Antonacci seeks to address all their arguments in this Opposition.

## SELECTED CORRECTIONS OF DEFENDANTS' FACTUAL MISSTATEMENTS

For the sake of brevity, and because Antonacci needs to file a combined response in light of the time constraints imposed, Antonacci will not recite his allegations in narrative format here. Antonacci's allegations are discrete and well organized and can be easily understood by any court of competent jurisdiction. Defendants entertain us with theatrics that ignore Antonacci's clearest

[1] Descrybe also disputes personal jurisdiction and venue under Rules 12(b)(2) and 12(b)(3), which Antonacci addresses in a separate opposition.

allegations and muddle the rest. Antonacci endeavors to rebut and dismantle their arguments as quickly and cleanly as possible, so he will address the allegations as needed throughout this opposition.

That said, there are some factual misstatements that must be clarified. The Lane Defendants claim that Antonacci began work for Holland & Knight in 2018. That is incorrect; Antonacci worked for Holland & Knight from 2008 to 2010. The Katz Fraud Case took place in 2009.

Descrybe claims that Antonacci is a lawyer from Virginia who moved from Newark, Delaware, after filing his complaint for defamation against Descrybe in August 2025. Antonacci currently lives in the District of Columbia and has never lived in Delaware.

Parrish claims that Antonacci's law license is suspended in Maryland. That is not true. Parrish claims that Stephen B. Shapiro works or worked at Sheppard Mullin LLP. That is not true. Stephen Shapiro is a partner in the Washington, DC office of Holland & Knight who has presided over the decline and likely imminent disappearance of that firm's DC construction law practice. Parrish further claims that Antonacci was asked to resign from Holland & Knight because he was engaged in an inappropriate relationship with his colleague and ex-wife. Parrish is again incorrect, but we need not dither here.

## ARGUMENT

### I. ANTONACCI'S FEDERAL CLAIMS ARE NEITHER INSUBSTANTIAL NOR FRIVOLOUS

Defendants argue, yet again, that this Court does not have subject matter jurisdiction over this case, under 28 U.S.C. §1331, because Antonacci's claims under federal law are insubstantial and frivolous, and thus Antonacci should be denied access to this federal court pursuant to Rule 12(b)(1). The analysis for whether Antonacci has stated claims under federal law follows essentially the same analysis as defendants' motions under Rule 12(b)(6) for failure to state a

claim, so Antonacci will only briefly discuss this issue here because it is a waste of everyone's time, which is the entire legal strategy employed by this Zionist criminal enterprise.

At the outset, Antonacci must point out here, and he will repeat this throughout this Opposition, that Antonacci has testified as to the truth of almost all the allegations set forth in this complaint:

> 23. It must be noted now, and will be emphasized later, that in the disciplinary trial that took place in Circuit Court for the City of Alexandria on June 11, 2025, Antonacci testified on his own behalf as to the truth of everything alleged in his complaint in *Antonacci v. Rahm Israel Emanuel*. He entered his EDVA complaint into evidence in his case, together with all eleven exhibits, his briefs and affidavits in the Fourth Circuit Appeal, his petition for writ of certiorari in *Antonacci v. City of Chicago*, and additional incriminating email correspondence with Johnson, Storij, and Shaun So. As such, there are literally reams of evidence supporting Antonacci's claims, including the transcript of the disciplinary trial that he filed with the Circuit Court for the City of Alexandria on September 29, 2025.

(Dkt. 1 ¶23.) Antonacci has separately requested this Court take judicial notice of the June 11, 2025 hearing transcript, which was a public hearing and became a matter of public record when Antonacci filed it on September 29, 2025. (*See* Dkt. 68-1.) And as Lane's counsel submitted in her affidavit to this Court, "[o]f the 672 numbered paragraphs contained in the Complaint in this action, 462 are identical to paragraphs in the EDVA Complaint including typographical or grammatical errors." (Dkt. 28-4 ¶5.) Of course, all of these counsel's self-serving affidavits ignore the eleven exhibits Antonacci attached to the EDVA complaint (dkt. 68-2), as well as the Declaration Antonacci attached to the instant complaint. (Dkt. 1-1.) In any event, there is already substantial evidence supporting Antonacci's claims, as alleged in this complaint, and therefore must be accepted as true.

Antonacci raises this issue because it completely eliminates the Zionists' most treasured, albeit specious argument, both in these proceedings and in response to the public's sharply rising

awareness of their toxic impact on U.S. and global institutions: That somehow there is no evidence supporting the allegations against them. In this case, there are already reams of evidence against them. And while the Zionist defendants and their Zionist lawyers will surely continue pretending that they cannot read, this Court can read and it understands the allegations.

Antonacci is not asking for any special treatment. He is asking this Court to fulfill its role, envisioned by Article III of the U.S. Constitution, Title 28 of the U.S. Code, and nine centuries of common law, to accept all of Antonacci's well-pleaded allegations and their reasonable inferences as true, to which Antonacci himself has already testified under oath.

Antonacci's RICO claims are not frivolous because he has plainly alleged that the defendants are part of an enterprise that engaged in a pattern of racketeering activity, through innumerable predicate acts, that has caused, and continues to cause, Antonacci both economic and physical injuries. Antonacci has also quite plainly alleged that all defendants knowingly and willingly agreed to join this conspiracy to attack Antonacci because his contempt for corruption and incompetence is a distinct threat to Zionist totalitarianism.

Defendants' reliance on this Court's recent decision in *Andreski v. Dep't of Just.*, No. CV 25-2977 (LLA), 2026 WL 445648, at *1 (D.D.C. Feb. 17, 2026) is misplaced. In *Andreski*, the plaintiff alleged a conspiracy of "various unnamed individuals engaged in 'harmful terrorizing racketeering retaliation attacks,' including, among other things, spying on Mr. Andreksi with drones, impeding his rehabilitation and medical treatment, and subjecting him to searches by women apparently wearing the uniforms of court security officers and working in federal courthouses as a 'ruse.'" *Id*. (internal citations omitted). Not only was this Court unable to determine whether, if true, the plaintiff's allegations entitled him to relief, but the defendants were not put on fair notice of the claims against them. *Id*.

In stark contrast, Antonacci has alleged, in detail, the who, what, when, where, why and how of the defendants' scheme against him, which began with Antonacci's successful identification and prosecution of civil RICO claims against another criminal Zionist attorney in 2009. (Dkt. 1 ¶¶29-72.) Indeed, if the Defendants admit the factual allegations against them, then there is no question concerning their liability for the claims alleged.

Relatedly, Antonacci served discrete requests for admission on a few of the key defendants, simply asking them to admit or deny a few of the key allegations. (Dkt. 34.) This Court granted their request for a protective order, as did the Eastern District of Virginia, although Antonacci filed a motion for reconsideration here. (Dkt. 35.) If this Court is genuinely interested in the truth of Antonacci's allegations, then it should require them to answer those discrete requests for admission. The documents Antonacci asked to be authenticated with respect to Lane and Firmender, were attached to Antonacci's 2024 complaint in the EDVA, and Antonacci entered them in to evidence in his Disciplinary Trial on June 11, 2025. (*See* Dkt. 68-2 (Exs. F, G, H, J).)

The Defendants' reliance on *Carmichael v. Pompeo*, 486 F. Supp. 3d 360 (D.D.C. 2020), aff'd in part, appeal dismissed in part sub nom. *Carmichael v. Blinken*, No. 23-5111, 2024 WL 2768384 (D.C. Cir. May 30, 2024) is laughable. There the Plaintiffs made a RICO claim based solely on the requirement that they provide their social security numbers to renew their passports. Not exactly an apt comparison.

*Jean-Baptiste v. U.S. Dep't of Just.*, No. 1:23-CV-02298 (TNM), 2023 WL 8600569 (D.D.C. Dec. 12, 2023) is not a RICO case and the Court's brief discussion of the allegations certainly make them seem crazy. Antonacci's allegations are reasonable, plausible, and well organized, which is further demonstrated by the defendants' desperate and pathetic pleas for protective orders. But at least the plaintiff in Jean-Baptiste was allowed to file an amended

complaint, something Antonacci has been denied by both previous district courts. Maybe it is just time to stop pretending that Zionists could ever been involved in a bona fide system of justice. And the Defendants' reliance on *McBrien v. U.S.*, 2010 WL 9498618 (D.D.C. 2010) is just pointless–the unpublished opinion, two paragraphs in length, speaks only in categorical terms that the allegations are fantastic and incredible. Antonacci's allegations are not only plausible, but true, as demonstrated by the vitriol of the Jewish judges who previously dismissed his complaints with prejudice. Antonacci just hits too close to home.

It is not clear to which of its rambling and mindless arguments Descrybe applies its contention that its entire website is incorporated into the complaint, but that argument falls under its own weight. Is the entire internet incorporated into Antonacci's complaint as well? Do we know when the content Descrybe argues should be incorporated into the complaint was published on its website? Of course not, but little of what Descrybe has to say makes any sense. Descrybe has not requested that this Court take judicial notice of their website because Antonacci does not contend that everything posted on Descrybe's website is true.

In fact, Antonacci specifically contends that the defamatory material posted concerning Antonacci was not generated by artificial intelligence, as Descrybe's website contends, but rather was written and published deliberately by principals or employees of Descrybe, and with malicious intent. (Dkt. 1, ¶¶492-6, 523.k-l, 550.j, 614, *inter alia*.) Indeed, the case relied upon by Descrybe expressly cautions against allowing defendants to pile on extrajudicial documents because it can led to "premature dismissal of plausible claims," but was inclined to do so nonetheless because "the [complaint] survives [defendant's] motion to dismiss whether or not these materials are considered." *Real World Media LLC v. Daily Caller, Inc.*, 744 F. Supp. 3d 24, 31–32 (D.D.C. 2024)

Antonacci further stated a claim for conspiracy against his civil rights, under 18 U.S.C. §1985(3), because he was deprived of his constitutional right to substantive due process of law by being subject to forfeiture of his bar license for conduct that no reasonable attorney or layperson could have been on notice violated the Virginia rules of professional conduct. Because no other Virginia attorney had ever been subject to such an absurd prosecution, Antonacci was uniquely denied equal protection of his constitutional rights and is therefore a protected class of one, like Perkins Coie. *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 166 (D.D.C. 2025); *see* Section IX *infra*. This unconstitutional attack by these Zionist fanatics is consistent with the goals of this criminal conspiracy, and all defendants are therefore liable for the damages Antonacci incurred.

Antonacci has also alleged repeated and ongoing violations of 18 U.S.C. §1030, which cannot be time-barred at this pleading stage. Antonacci's federal claims are therefore neither insubstantial nor frivolous so this Court has subject matter jurisdiction under 28 U.S.C. §1331.

This Court may exercise supplemental jurisdiction over Antonacci's state law claim regardless. *Ajenifuja v. Dangote*, 485 F. Supp. 3d 120, 128–29 (D.D.C. 2020), aff'd, No. 20-7082, 2021 WL 11560308 (D.C. Cir. Feb. 5, 2021).

## II. ANTONACCI HAS COMPLIED WITH RULES 8(A) AND 9(B) WHILE ALLEGING A 15-YEAR CRIMINAL CONSPIRACY PERPETRATED BY ZIONIST LAWYERS, IN A MANNER THAT IS SHORT, PLAIN, AND SUFFICIENTLY DETAILED, WHILE ESTABLISHING PLAUSIBILITY BY CONNECTING THE DEFENDANTS AND SHOWING QUID PRO QUOS WHERE POSSIBLE

This is always a fun one. Like Goldilocks, the defendants and three previous federal courts either find Antonacci's allegations too detailed, and therefore violating Rule 8(a), or not detailed enough, and therefore violating Rule 9(b). According to them, Antonacci cannot get it just right.

The Zionists are trying to create an impossible standard for pleading civil RICO. It is important to reiterate that Antonacci specifically pleads this as part of his definition of this criminal Zionist enterprise:

> 517. Specifically, the enterprise is an association-in-fact among individuals and business entities designed to divert taxpayer money to members of the enterprise; destroy the professional reputation of anyone who seeks to expose the nature and extent of the enterprise through fraud, widespread defamation, and murder; protect the members of the enterprise from civil liability by unlawfully influencing the outcome of civil cases, thereby keeping more money in the enterprise; defrauding litigants from monies to which they are legally entitled by unlawfully delaying and sabotaging meritorious civil cases; bribing and otherwise incentivizing people associated with those deemed enemies of this enterprise to spread lies about those "enemies;" punishing attorneys who sue members of the enterprise by preventing them from becoming admitted to practice law; punishing attorneys who sue members of the enterprise by putting them on the Blacklist of disfavored attorneys; illegally infiltrating protected computers to spy on the "enemies" of the enterprise, in some cases through fraudulently obtained search warrants; and protecting the enterprise by unlawfully preventing them from obtaining evidence of the enterprise's fraudulent misconduct.
>
> 518. The enterprise is administered and funded primarily by Zionists and Jews, but they will utilize anyone they can bribe or extort to accomplish their goals.

(*See. e.g.*, Dkt. 1 ¶¶517-18, 540-41.) The Zionists have captured enormous wealth through fraud and racketeering, and now they seek judicially imposed tort reform to prevent civil plaintiffs from recovering damages, through civil RICO, resulting from the Zionists' racketeering activity. This will be discussed further below, but it runs directly counter to the express purpose of civil RICO, which is meant to encourage RICO enforcement by private citizens, as recognized by the U.S. Supreme Court. *Sedima, S.P.R.L. v. Imrex Co.*, 105 S.Ct. 3275, 3280–81(1985).

Relatedly, and not surprisingly, Defendant BEAN LLC d/b/a Fusion GPS, the geniuses behind the Steele Dossier and Russia Collusion Hoax, have again taken a default in this case. (Dkt.

63.) Clearly their records on Antonacci, a private citizen, would send their principals and co-conspirators to federal prison where they belong. And those files will be subpoenaed.

And as Antonacci alleged in the Complaint (dkt. 1 ¶¶497-98), Antonacci filed a civil suit for defamation against Descrybe on August 29, 2025. Seventh months later, and five months after Descrybe's motion to dismiss was fully briefed, that case has not progressed in any way except to be referred to a magistrate judge, who lacks statutory authority to rule on Descrybe's motion to dismiss. 28 U.S.C. §636(b). (*See* Dkt. 68-3.) Antonacci has filed a motion to expedite the case, a motion for electronic filing privileges, and has called chambers every week, but to no avail. As Antonacci alleged in the complaint, his case against Descrybe in Delaware further demonstrates that this Zionist criminal enterprise is just that: a Zionist criminal enterprise that has undo influence on the American justice system. (Dkt. 1 ¶¶474-75, 517-18, 540-41.) But we digress.

Antonacci's complaint complies with Rules 8(a) and 9(b) because he has struck the proper balance of providing sufficient detail to demonstrate the plausibility of his allegations, the relationships between the defendants, and the benefits gained from their participation in the criminal enterprise, where possible. Antonacci has further provided as much detail as possible, at this stage of the proceeding, with respect to his allegations of mail and wire fraud, as further discussed below. *See* Section VII.d. *infra*. Recall that, as alleged in the complaint, Antonacci provided eleven substantiating exhibits, much of which were copies of correspondence related to the AECOM Fraud, yet District Judge Mike Nachmanoff nonetheless claimed those allegations were preposterous.

Antonacci's allegations all have evidentiary support through either direct evidence or reasonable inferences based on direct evidence. *See also* Section VI.a., *infra*. The allegations made on upon reasonable inference will likely have direct evidentiary support after a reasonable

opportunity for further investigation and discovery, pursuant to Rule 11(b)(3). To that end, Antonacci promptly served upon a few key defendants discrete requests for admission that are neither burdensome nor prejudicial. (dkt. 34.) Indeed, when the U.S. Supreme Court clarified accrual of the statute of limitations period for civil RICO, it expressly relied upon established jurisprudence for "relaxing particularity requirements of Rule 9(b) where RICO plaintiff lacks access to all facts necessary to detail claim." *Rotella v. Wood*, 528 U.S. 549, 560 (2000) (citing, e.g., *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1050–1051 (C.A.7 1998)).

In short, Antonacci's allegations are neither too long nor insufficiently detailed. They are just right for a private citizen alleging the heinous misconduct perpetrated by the insidious criminal enterprise alleged in the complaint.

## III. There Is No Claim Preclusion or Res Judicata Because There Has Never Been Any Adjudication on the Merits

"At common law dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim." *Costello v. United States*, 365 U.S. 265, 285 (1961). A dismissal for lack of subject-matter jurisdiction is not a judgment on the merits, and thus res judicata does not apply. *Hughes v. United States*, 71 U.S. 232, 237 (1866) ("In order that a judgment may constitute a bar to another suit, it… must be determined on its merits. If the first suit was dismissed for… the want of jurisdiction, … the judgment rendered will prove no bar to another suit.")[2]

---

[2] This is still the rule. *See, e.g.*, *Prakash v. Am. Univ.*, 727 F.2d 1174, 1182 (D.C. Cir. 1984) ("A dismissal for lack of subject-matter jurisdiction . . . is not a disposition on the merits and consequently does not have res judicata effect." (footnotes omitted)); *see generally* Restatement (Second) of Judgments § 20 (1982) ("A personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim . . . When the judgment is one of dismissal for lack of jurisdiction."). The principle that dismissal for lack of jurisdiction is not a judgment on the merits entitled to claim preclusion is also embodied in Federal Rule of Civil Procedure 41(b), which provides: "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19— operates as an adjudication on the merits." Fed. R. Civ. P. 41(b) (emphasis added)); *see Costello*, 365 U.S. at 286 ("We do not

Counsel for defendants were not only absent the day they taught law at law school, but they also failed to read the cases cited for the proposition that this case is barred by claim preclusion and/or res judicata. Each of those cases stands for the very simple and well accepted proposition that res judicata and claim preclusion only apply to adjudications on the merits. As alleged in the complaint, and as set forth in the unpublished vitriol relied upon and parroted by the defendants, this case has never been adjudicated on the merits because both of Antonacci's previous federal cases were dismissed for want of subject matter jurisdiction. (Dkt. 1, ¶¶264, 275, 500, p.5.)

## IV. THIS COURT SHOULD NOT DISMISS THIS CASE *SUA SPONTE*

In its motion to dismiss the case, Defendant Holland & Knight curiously asks this Court to dismiss the case *sua sponte*. Antonacci is only addressing this, and many other of the Defendants' mindless arguments, because this Court's Fox/Neal Orders admonish Antonacci from ignoring any of the Defendants' arguments. So Antonacci will say that this Court should not dismiss the case for all the reasons set forth herein; but it is unclear to Antonacci how this Court could dismiss the case *sua sponte* after the defendants already moved to dismiss it. Antonacci will leave that lofty riddle to the powerful minds at Jackson Lewis, P.C.

## V. PERKINS COIE IS NOT ENTITLED TO ANY "LITIGATION PRIVILEGE" BECAUSE SUCH PRIVILEGE ONLY APPLIES TO COMMON LAW DEFAMATION CLAIMS UNDER DC LAW, AND ILLINOIS'S LITIGATION PRIVILEGE DOES NOT APPLY TO GEHRINGER'S CRIMINAL CONDUCT

Perkins Coie waxes lyrical why an absolute litigation privilege protects their innocence from liability for their criminal conduct, and particularly the criminal conduct of their murine general counsel, Gehringer, who Antonacci will remind this Court fled Perkins Coie and ran home

discern in Rule 41(b) a purpose to change this common-law principle with respect to dismissals in which the merits could not be reached for failure of the plaintiff to satisfy a precondition.").

to his mommy the second Antonacci filed his 2024 complaint in the Eastern District of Virginia. (Dkt. 1 ¶¶3, 418.) No litigation privilege could apply to this case.

"[T]he litigation privilege doctrine has been applied in the District of Columbia only in the common law defamation context." *Osinubepi-Alao v. Plainview Fin. Servs., Ltd.*, 44 F. Supp. 3d 84, 91–92 (D.D.C. 2014) (declining to expand litigation privilege to protect attorneys from liability, under the D.C. Debt Collection Practices Act, for false statements related to a judicial proceeding where the attorneys participated as counsel). Antonacci is not suing these defendants for common law defamation–he is suing them for fraud, racketeering, extortion, attempted murder, public corruption, conspiracy to violate RICO, conspiracy to monopolize the DC legal market to raise attorney billing rates while lowering their bona fide competitiveness, conspiracy to deprive Antonacci of his constitutional right to substantive due process and equal protection, and illegally hacking his protected computer systems. D.C.'s absolute litigation privilege is inapplicable to these causes of action.

In the Eastern District of Virginia, the Perkins Defendants argued that they were shielded from liability by Illinois's absolute litigation privilege, because that is where most of Gehringer's crimes took place. Illinois law also fails to protect the Perkins Defendants from liability here because 1) it does not protect attorneys from liability for their illegal or unlawful acts, as alleged here; and 2) the expansion of the doctrine is a recent development in the First Appellate District, and thus does not even cover the time period when Antonacci was in Chicago and the Perkins Defendants were attacking him there. *See generally*, Amanda J. Hamilton, *It's Okay, I'm a Lawyer! How the Expansion of the Attorney-Litigation Privilege Is Changing the Game*, 107 Ill. B.J. 38 (March 2019) (noting that the 2018 case the Perkins Defendants rely upon, *Scarpelli v.*

*McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶ 18, 117 N.E.3d 238, is a "significant expansion of the attorney litigation privilege").

The recent expansion of the doctrine in one Illinois Appellate District simply has no bearing on the Perkins Defendants' criminal activities directed at Antonacci in the District of Columbia or the Commonwealth of Virginia. Tellingly, Gehringer never once raised the issue of absolute privilege in his 75-page screed before the Seventh Circuit, which is a matter of public record, but Antonacci will not ask this Court to take judicial notice of that garbage. Furthermore, nothing in the *Scarpelli* decision suggests that it intends to protect attorneys like Gehringer "from the consequences of his participation in an unlawful or illegal conspiracy":

> Illinois courts recognize that claims for conspiracy may be maintained against attorneys where there is evidence that the attorneys participated in a conspiracy with their clients. Accordingly, we see no reason to impose a per se bar that prevents imposing liability upon attorneys who knowingly and substantially assist their clients in causing another party's injury. As we have recognized, **'[o]ne may not use his license to practice law as a shield to protect himself from the consequences of his participation in an unlawful or illegal conspiracy.'** *Celano v. Frederick*, 54 Ill. App. 2d 393, 400 (1964), quoting *Wahlgren v. Bausch Lomb Optical Co.*, 68 F.2d 660, 664 (7th Cir. 1934). The same policy should prevent an attorney from escaping liability for knowingly and substantially assisting a client in the commission of a tort.

*Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 28 (1st Dist. 2003) (emphasis added). That is still good law. The legal profession would be well served if the Perkins Defendants gained some self-respect.

## VI. Storij Was Served

Storij's active registered agent was served in Washington, DC, on February 9, 2026. (Dkt. 18.) This Court may take judicial notice of their Withdrawal of Foreign Registration Statement, filed with the District of Columbia's Department of Consumer and Regulatory Affairs on February 22, 2021, one month after Richard Wheeler began hacking Antonacci's protected computer

systems, as alleged in the Complaint. (Dkt. 1, ¶372; *see also* (*See* Dkt. 68-4.) This Court may also take judicial notice of their public listing with the District of Columbia's Department of Licensing and Consumer Protection, which identifies CT Corporation System as their "Active" commercial registered agent in DC, as many corporations are required, or choose, to retain a registered agent in jurisdictions where they actively conducted business but have since withdrawn their registration, as Storij has done. (*See* Dkt. 68-5.)

Antonacci filed an affidavit providing evidence that Storij's active registered agent was served on February 9, 2026, at the same time that another defendant (Lane) with the same person acting for the same commercial registered agent was served. (Dkt. 18.) Storij has not submitted any evidence rebutting the evidence that Storij has been served; and there is no authority for the proposition that a commercial registered agent may reject service after they have already accepted it in any case. Storij has been served in accordance with this Court's rules and District of Columbia law.

## VII. Antonacci Has Stated Plausible and Timely RICO Claims

### a. All Defendants Are Liable for Every Overt Act of Every Co-Conspirator in Furtherance of the Conspiracy to Which They Each Agreed, And Which They Continue to Demonstrate Is an Open-Ended Pattern of Racketeering Activity, As Shown By the Evolving Nature of the Complaints

It has been well settled for at least three decades that each conspirator in a RICO conspiracy is liable for the overt acts of every other conspirator in a criminal enterprise:

> The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators…. The RICO conspiracy statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the Government

> to prove each conspirator agreed that he would be the one to commit two predicate acts.

*Salinas v. United States,* 522 U.S. 52, 63–64 (1997). Furthermore, because few people are inept enough to agree explicitly to criminal conduct, "conspiracy can be inferred from a combination of close relationships or knowing presence and other supporting circumstantial evidence." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1130 (D.C. Cir. 2009) (quoting *United States v. Mellen*, 393 F.3d 175, 191 (D.C.Cir.2004)). Antonacci has alleged the existence of a single conspiracy because the conspirators at the top of this Zionist criminal enterprise, Holland & Knight, Kiernan, Emanuel, Perkins Coie, Gehringer, and Seyfarth Shaw, identified Antonacci as a target in the 2009-2012 time frame, and they have been enlisting and managing others to continue their attempts to destroy Antonacci over the years. (*See, e.g.*, Dkt. 1 ¶¶2-8, 44, 64-5, 70, 79-89, 96-101, 106, 114-16, 140-42, 163-4, 173-76, 252, 261, 275-79, 305-16, 345-47, 366-72, 420-27, 455, 474-75, 500-03, 517-18, 525-27, 540-41.)

The goal of the conspiracy is to destroy Antonacci's legal career to ensure he cannot effectively prosecute criminal Zionist attorneys engaged in widespread fraud, racketeering, extortion, murder, and countless other criminal acts with legal protection and under the color of law, which further grants impunity to Zionist tools such as Emanuel. All acts alleged in the complaint are in furtherance of this conspiracy, and they are managed at the top by Holland & Knight, Kiernan, Emanuel, Perkins Coie, Gehringer, and Seyfarth Shaw.

The Defendants' continued and related acts against Antonacci demonstrate the open-ended nature of this criminal enterprise. When the Seventh Circuit affirmed the Northern District of Illinois's dismissal, albeit on different grounds, of Antonacci's 2015 complaint against this criminal enterprise, it erroneously ruled that Antonacci had alleged a closed-ended pattern of racketeering activity, and that an open-ended pattern was not possible due to "sheer speculation:"

> First, even though his RICO allegations describe specific actions undertaken by specific defendants on certain dates, it takes more than that to allege a plausible conspiracy. The allegations fall far short of meeting the stringent pleading requirements of a civil RICO claim, which requires among other things an allegation of a pattern of racketeering activity that shows either closed-ended or open-ended continuity. *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472-73 (7th Cir. 2007). Antonacci's complaint comes nowhere close to meeting this standard. **He seems to be thinking of a closed-ended pattern, because by now the alleged racketeers have succeeded in both sabotaging his state-court lawsuit and his bar application.** But the entire scheme lasted only 21 months, giving Antonacci the benefit of the doubt, and we have repeatedly found that the combination of such a short period with only a single victim of a single scheme is insufficient as a matter of law. *Gamboa v. Velez*, 457 F.3d 703, 709-10 (7th Cir. 2006) (collecting cases). **Nothing but sheer speculation would support the hypothesis of open-ended continuity, either.**

(Dkt. 68-2, pet. app. 7a-8a); *Antonacci v. City of Chicago*, 640 F. App'x 553 at *5 (7th Cir., March 18, 2016). That did not age well. And Antonacci did, in fact, allege in his 2015 complaint that this enterprise presents a clear threat of continued racketeering activity, and argued as much in his Seventh Circuit Briefs and his SCOTUS Petition: "In light of the pattern of racketeering activity more particularly described above, Defendants enterprise presents a clear threat of continued racketeering activity." (Dkt. 51-2 Decl. of B. Cohen p. 8 (¶257 of 2015 complaint, ¶419 of 2024 complaint); *see also* Dkt. 68-2, p. 75, pet. app. 251a.)

And as set forth in the Complaint, the Defendants then felt emboldened by our federal courts to come after Antonacci again with the AECOM Fraud and Storij's illegal computer hacking. After Antonacci got some space from the situation and visited Chicago[3], he started to see

[3] As an aside, but further demonstrating this enterprise's comical lack of credibility, Antonacci took a surprise trip to Chicago earlier this month to confront Tony Antonacci about his false statements to the Virginia State Bar's investigator, Robert Graves. Tony Antonacci admitted that he did the telephone interview with Graves, but denied ever saying to Graves that Louis Antonacci had accused him of having an affair with his ex-wife. Even more amusing, however, is the fact that Tony Antonacci's statement to Graves falsely claims that Louis Antonacci was having personal problems due to his divorce. That does not make any sense because Louis Antonacci had planned to divorce his ex-wife for years, as both Shaun So and Tony Antonacci were well aware, and did it as quickly as possible after he separated from her. It makes more sense in light of the fact that Louis Antonacci learned through others in Chicago that Tony Antonacci's ex-wife, who had been trying to throw him out of her father's house for years, had finished

that this was bigger than his initial case in Chicago. And so he filed his subsequent complaint in the EDVA showing how this started with Holland & Knight, when Antonacci successfully prosecuted his first RICO case against a Zionist criminal lawyer while Emanuel was here as Chief of Staff for President Obama, and how the Zionists orchestrated and administered the AECOM Fraud. Through what Antonacci learned during and after that case, particularly with respect to the Virginia State Bar's unconstitutional persecution, Antonacci now sees clearly that this criminal enterprise is administered by Zionists and Jews who seek to flip the American legal order on its head, just as the Nazis did in the Weimar Republic.[4]

As Antonacci alleged in his 2015 complaint in Chicago, if they could do this to Antonacci, then they can do it to anyone. Despite the self-serving affidavits filed by the defendants, which laughably purport to do this Court's job of reading for it, the three complaints differ in that each successive complaint further demonstrates the open-ended nature of the pattern of racketeering activity perpetrated by this Zionist criminal enterprise. And both Halliburton and Cohen fail to identify or address the 500 pages of exhibits Antonacci attached to his 2024 complaint in the EDVA, which included his 2016 SCOTUS petition and his 2015 complaint in the Northern District of Illinois. (*See* Dkt. 68-2.) What Antonacci continues demonstrating to the federal courts is how these Zionist fanatics continue their racketeering activity through an ever-growing list of

---

divorcing Tony Antonacci shortly before he gave his statement to Investigator Graves. In the words of a famous Jew: Blessed are the meek, because you can buy them for cheap.

[4] In the words of the late Hannah Arendt, who renounced Zionism, and Amos Elon, an Israeli journalist:

> The Nazis had succeeded in turning the legal order on its head, making the wrong and the malevolent the foundation of a new righteousness. In the Third Reich evil lost its distinctive characteristic by which until then most people had recognized it. The Nazis redefined it as a civil norm… When Hitler said that a day would come in Germany when it would be considered a disgrace to be a jurist, he was speaking with utter consistency of his dream of a perfect bureaucracy.

HANNAH ARENDT, EICHMANN IN JERUSALEM: A REPORT ON THE BANALITY OF EVIL, Penguin Books, N.Y., N.Y. (1963).

opportunists, and how they are connected to the Zionist leadership alleged in the complaint. Maybe this Court will finally require the Defendants to answer the allegations against them, because the impunity of these Zionist fanatics is about to start a civil war in this country.

The defendants do not rely on any cases with any meaningful comparison to the case at bar. For instance, in *DC2NY, Inc. v. Acad. Bus, LLC*, No. CV 18-2127 (RC), 2019 WL 3779571 (D.D.C. Aug. 12, 2019), the this Court found no pattern of racketeering activity because the plaintiff tried to transform "ordinary commercial fraud… into a federal RICO claim." Antonacci's allegations, to include attempted murder, illegal computer hacking, obstruction of federal court proceedings, extortion, and much more being perpetrated by the officers of our courts charged with protecting against such crimes, is anything but "ordinary commercial fraud."

Similarly, Defendants argue that, because a threat to file a non-frivolous lawsuit cannot be extortion under federal law, Antonacci's claims are barred under RICO. E. *Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 14 (D.D.C. 2014), aff'd, 629 F. App'x 1 (D.C. Cir. 2015). Antonacci never argued that any threat to sue him civilly was extortionist. Antonacci correctly argues that the Illinois State Bar's threat to withhold his Illinois bar admission, unless he dropped his lawsuit against Seyfarth Shaw and Anita Ponder, is extortion under Illinois law and the Hobbs Act, because that is a threat to perform or withhold state action unless Antonacci gave up his legal rights in that litigation. Similarly, the VSB and Richard Johnson attempted to extort Antonacci, under Virginia law and the Hobbs Act, by threatening to institute unconstitutional disciplinary proceedings against Antonacci, in retaliation for his protected speech, if he continued his lawsuit in the EDVA. That is all public extortion under federal, Virginia, and Illinois law, punishable by more than one year in prison, and therefore predicate acts under RICO that the defendants conspired to commit. (Dkt. 1, ¶¶547-9.) Unlike *Papageorge*, Antonacci is not complaining that the defendants sent him letters

threatening to sue him or even moving to sanction him.[5] Antonacci alleges extortion only in relation to conspiracy because all the extortionist threats were committed by state actors. (Dkt. 1, ¶¶547-9.)

#### b. Neither RICO Count Is Time-Barred Because the Defendants' Predicate Acts and Antonacci's Injuries Are Both Ongoing, and Because the Defendants' Fraudulent Concealment Prevented Antonacci's Apprehension of His Injuries Until 2022

In *Rotella v. Wood*, 528 U.S. 549, 560–61, (2000), the U.S. Supreme Court resolved the three-way split among the federal circuits as to when RICO claims accrue for the purpose of the four-year statute of limitations. There the Court clarified its position in *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997*),* that the injury-discovery rule applies when the plaintiff knew or should have known of his injury, regardless of whether the plaintiff was aware of the pattern of racketeering activity, subject to principles of equitable tolling. This accrual rule is consistent with the caselaw relied upon by Defendants in *Youkelsone v. F.D.I.C.*, 910 F. Supp. 2d 213, 224 (D.D.C. 2012), aff'd, 560 F. App'x 4 (D.C. Cir. 2014), holding that "[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Id*. (quoting *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C.1994) (en banc ).)

---

[5] Indeed, Barak Cohen, counsel for Perkins Coie, threatened to file a motion for sanctions in the EDVA, even writing a letter with a draft of the motion, telling Antonacci he had been "served" with it. It was adorable. Antonacci invited him to file the motion, but he never did. Cohen has "served" Antonacci with another draft motion for sanctions he threatens to file in this case, which of course he will not do until after Antonacci has filed his oppositions, so that Antonacci will not have timely opportunity for discovery. In any case, Antonacci did not include Barak Cohen's threats to move for sanctions against Antonacci, or Gehringer's similar threats in Cook County and the Seventh Circuit, as a predicate act in this case, because that is not extortion, wire fraud, or mail fraud under Title 18 or relevant state law.

Relatedly, Rokk states this Court should consider sanctions against Antonacci. What Rokk should consider is reading the Federal Rules of Civil Procedure, which require a separate motion for sanctions. Rule 11(c)(2). And in any event, Antonacci has reams of evidentiary support for his claims, so there is no basis for this Court to impose sanctions.

Both *Rotella* and *Youkelsone* recognize that the plaintiff must reasonably be aware of all elements of the claim before it will accrue for the purposes of the statute of limitations: "If the existence of an injury is not readily apparent, however, the claim does not accrue until the plaintiff, exercising due diligence, has 'discovered or reasonably should have discovered all of the essential elements of her possible cause of action, i.e., duty, breach, causation and damages.'" *Id.* (citing *Farris v. Compton*, 652 A.2d 49, 54 (D.C.1994) (quoting *Colbert*, 641 A.2d at 473).) With regard to RICO specifically, "[i]n rejecting pattern discovery as a basic rule, we do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling, and where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty, complementing Federal Rule of Civil Procedure 11(b)(3). The virtue of relying on equitable tolling lies in the very nature of such tolling as the exception, not the rule." *Rotella*, 526 U.S. at 561.

"[E]ven after a claim has accrued upon discovery of an injury, RICO is 'subject to equitable principles of tolling.' *Rotella*, 528 U.S. at 560. 'Fraudulent concealment ... tolls the running of the statute of limitations' when '(1) defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and (2) the plaintiffs were not on actual or constructive notice of that evidence, despite (3) their exercise of diligence.'" *Solomon v. Dechert LLP,* No. CV 22-3137 (JEB), 2023 WL 6065025, at *6 (D.D.C. Sept. 18, 2023) (finding RICO and CFAA claims equitably tolled but dismissing on different grounds) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

"The notice required to defeat a tolling argument is 'something closer to actual notice than the merest inquiry notice that would be sufficient to set the statute of limitations running in a situation untainted by fraudulent concealment.' *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480,

1491 (D.C. Cir. 1989). In addition, the Court 'must probe a plaintiff's knowledge to determine whether he was on notice of all possible defendants, and not just a subgroup, as well as the particular cause of action.' *Hobson v. Wilson*, 737 F.2d 1, 36 (D.C. Cir. 1984), overruled in part on other grounds by *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993). '[S]imply because a person knows he has been injured by one person cannot reasonably mean he should be held to know of every other participant.'" *Id*. at *. 6-7 (final quote *Hobson,* 737 F.2d at 36).

Furthermore, as discussed above, "[c]onspiracy is an inchoate [violation]' separate from a violation of § 1962. *Boyle v. United States*, 556 U.S. 938, 950, 129 S.Ct. 237 (2009); *see also Salinas,* 552 U.S. at 64 ("[t]he RICO conspiracy statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the Government to prove each conspirator agreed that he would be the one to commit two predicate acts.") As such, a RICO conspiracy violation arises from the mere agreement to violate one of the substantive RICO provisions; it does not require the completion of a substantive violation or predicate offense.

The difference between the statute of limitations for substantive RICO offenses (§ 1962(a), (b), and (c)) and RICO conspiracy (§ 1962(d)) lies in the distinction between overt and predicate acts. In both cases, the statute begins to run from the date the plaintiff discovers the injury, of which the RICO violation was a proximate cause, unless he was prevented from understanding the source of the injury through fraudulent concealment. And in substantive RICO cases, the relevant injuries must arise from the commission of predicate acts under § 1962. But in RICO conspiracy cases, the relevant injuries may arise from the commission of any overt act in furtherance of the conspiracy.

On a 12(b)(6) motion or even a motion for summary judgment in the District of Columbia, the burden is on the defendant to prove that no set of facts consistent with the allegations could show that the claim is barred by the statute of limitations. *Doe v. Medlantic Healthcare Group, Inc.*, 753 A.2d 939, 945-46 (D.C. 2000). In cases such as this one:

> where the relationship between the fact of injury and the alleged tortious conduct [is] obscure, this court determines when the claim accrues through the discovery rule… [i]n all cases to which the discovery rule applies the inquiry is highly fact-hound and requires an evaluation of all the plaintiff's circumstances. The relevant circumstances include, but are not limited to, the conduct and misrepresentations of the defendant, and the reasonableness of the plaintiff's reliance on the defendant's conduct and misrepresentations.

*Id.* (internal citations omitted). As such, even "summary judgment is improper when there is a disputed question about plaintiff's diligence in investigating a cause of action." *Id.* (*citing Ezra Co. v. Psychiatric Inst. of Washington, D.C.*, 687 A.2d 587, 593 (D.C.1996).)

Antonacci's injuries in this case are the loss of income to both his law firm, Antonacci PLLC f/k/a Antonacci Law PLLC, which was organized in June of 2014, and from loss of employment opportunities that he earned through professional success, as well as personal injury resulting from the enterprise's attempts to murder Antonacci in 2016 and 2024, and loss of income from his personal injury case as a result of the Parrish Defendant's intentional botching and delay of the case. And unlike the plaintiff in *Greenpeace, Inc. v. Dow Chem. Co.*, 808 F. Supp. 2d 262, 269 (D.D.C. 2011), the injuries alleged here were incurred by Antonacci directly, not some third-party trucking company, so they are in no way "attenuated."

Those injuries have been ongoing for some time, but it was impossible for Antonacci to discover that this enterprise's predicate acts, and the resulting injuries, were ongoing. As Antonacci alleged in the complaint: "After Antonacci's petition for writ of certiorari was denied, he believed that the enterprise alleged in his federal case was done with their campaign to destroy

him. He was wrong, and has since realized the extent and nature of this criminal enterprise." (Dkt. 1 ¶294.).

As this Court held in *Medlantic Healthcare*, this a fact-intensive inquiry that must be done after discovery in this case. 753 A.2d at 945-46. The enterprise's predicate acts, and many overt acts in further of their conspiratorial conduct, are deliberately hidden from Antonacci in a way that he could not possibly ascertain, despite his due diligence. One of this enterprise's best ploys for avoiding accountability is that its acts are so egregious, and represent such a departure from Americans' understanding of how their government and legal institutions are supposed to work, that it is easy to label these facts as the crazy ramblings of a conspiracy theorist. Although that is changing; and Americans' resulting distrust in their government sows a bitter harvest we all have to reap.

The Defendants' timeliness arguments have no merit in general because it is simply not reasonable to assume that 1) your former employer is going to do everything in their power to ensure you never have a successful career just because they feel threatened by you and everyone else they encounter; 2) because you file a lawsuit for textbook defamation against a law firm that mistreated you, and later a RICO claim against the lawyers who would not allow you to be admitted to the bar because of it, those lawyers, and political actors like Rahm Emanuel and the Perkins Defendants, would set an enterprise in motion that for years would limit your mobility so it could (unsuccessfully) set you up for a criminal fraud investigation; 3) that a friend's friend would hire you, in a fiduciary capacity, just to spy on you, for years, even after you helped save his life and dined with his children; 4) that a heavy construction firm would hire you, again in a fiduciary capacity, just to set you up for a criminal fraud investigation and legal malpractice, putting a multi-

billion dollar enterprise at risk[6]; 5) that a state agency would prosecute professional misconduct claims against you, with no basis under the Rules of Professional Conduct, in some sort of Old Testament vendetta for exposing a criminal Zionist lawyer, who are a dime a dozen in this town. And the list goes on.

It is not reasonable to expect someone to assume these things are happening to them, because that is not how this country is supposed to work. And based on the precipitous decline in Americans' trust in our judiciary, it seems to be a relatively new phenomenon here. (Dkt. 68-7.)

As Antonacci alleged in his complaint, he thought his fight with this enterprise was over when SCOTUS denied his petition in 2016. (Dkt. 1 ¶294.) His lack of career mobility was surprising to him, but he kept at it and focused his extra energy on raising a family. When the AECOM Fraud unfolded, Antonacci became more suspicious, but it was not until his ex-wife (and former colleague at Holland & Knight) faked a kidney stone, trying to prevent him from sending the KPMG audit response letter (dkt. 1 ¶¶398-408), that Antonacci realized this was not over. But even then, it took some time to put the pieces together. (*See* Dkt. 68-2 (Exs. H-J).) As alleged in the Complaint, Antonacci traveled to Chicago in June of 2022 to do some due diligence, which further confirmed his suspicions. (Dkt. 1 ¶410.) Antonacci's subsequent inability to find work for his firm, or employment, even before he filed his complaint in the EDVA, are the injuries that Antonacci was not aware of until 2024. Antonacci had assumed he would be able to find work or a job, which he has aggressively pursued after the AECOM Fraud. As alleged in the complaint, Antonacci has not received an employment offer, despite literally hundreds of job application, in

[6] The Lane Defendants argue that Antonacci's RICO claim against them accrued in July 2021 because that is when Firmender ordered work stopped on the case. That was not the injury – Antonacci did not want to work with the Lane Defendants any longer because they were clearly engaged in unethical and fraudulent misconduct that Antonacci did not wish to be associated with, as evidenced by Firmender's subsequent departure from Lane. (*See* Dkt. 68-2.) It was not until he did not have any work a year later that he realized there had been long-term economic injury as a result of his work with Lane.

15 years. (Dkt. 1 ¶339.) He has had no work or employment opportunities, but he always thought that could change because he has always been a very productive employee and, save the orchestrated AECOM Fraud that he could not win no matter what he did, a very successful advocate for his clients.

This enterprise has committed innumerable predicate acts against Antonacci over the years, and they are ongoing, but it cannot be said that Antonacci discovered the source of his injuries until the summer of 2022. And even now the extent of the enterprise's predicate and overt acts cannot be ascertained without discovery because they are surreptitious by design. If the enterprise's targets were aware of the enterprise's activities, they simply would not work.

Antonacci has been more than diligent in investigating his claims and pursuing his rights. In 2015, he saw how the Perkins Defendants and Emanuel bought his lawyer and others to sabotage his initial defamation case against Ponder and Seyfarth and block his admission to the Illinois Bar, and because he had prosecuted a civil RICO in the EDVA previously, he saw it plainly as a pattern of racketeering activity and filed a RICO suit right away. The contradictory and baseless decisions of the Northern District of Illinois and the Seventh Circuit demonstrate that point.

And according to the Seventh Circuit's own opinion, Antonacci sufficiently pleaded the predicate acts, he just did not properly plead an open-ended pattern of racketeering activity (but he did, as this Court can see in the Defendants' affidavits, discussed above), which it deemed impossible because that would require "sheer speculation." So after the AECOM Fraud, he filed another complaint showing how this started in 2009 and continues to this day.

The opinion dismissing that case is four pages of inaccurate vitriol, and the district court even refused to enter default against Fusion GPS there, despite there being no dispute they were in default. (Dkt. 1 ¶¶500-01.) Antonacci appealed the dismissal, was nearly killed a week later

(dkt. 1 ¶¶500-03), and the Virginia State Bar instituted a disciplinary action against him in a show trial that put Cook County's disregard for the rule of law to shame. (Dkt. 1 ¶¶420-22.) Antonacci got the license plate number of the person who tried to kill him, but so far no Virginia lawyer or court will allow him any justice. (Dkt. 1 ¶¶510-14.)

And so here we are again. What more could Antonacci do to diligently pursue his rights against this Zionist enterprise? If the answer is that this Zionist enterprise simply owns these Courts and they get to decide who gets justice, regardless of the U.S. Constitution, the U.S. Code, the Federal Rules of Civil Procedure, and 900 years of common law, then you can expect violence from the overwhelming majority of Americans who feel they no longer have realistic options to thrive in their country. Because you will have given the people who played by the rules no other choice.

The injuries arising from the AECOM Fraud and later are within the four-year statute of limitations because Antonacci was not aware of his injuries until summer of 2022 at the earliest. *Rotella*, 528 U.S. at 560-61. The statute of limitations for earlier injuries should be tolled because of the surreptitious and self-destructive nature of this criminal Zionist enterprise, and because Antonacci has diligently investigated his claims and pursued his rights over the years, all while the defendants continually misrepresented their true intentions and intentionally created and exploited fiduciary relationships with Antonacci in order to deceive him. *Id., Solomon,* 2023 WL 6065025, at *6, *Riddell*, 866 F.2d 1491, *Hobson,* 737 F.2d at 36. Indeed, these defendants should be precluded from asserting the statute of limitations defense because their motions to dismiss are premised on their position that they have never done any of the things that Antonacci alleges. And they will not even answer the requests for admission Antonacci served here and in the EDVA. At

a minimum it is a question fact that cannot be addressed until after discovery, consistent with the District of Columbia's long-held discovery rule. *Medlantic Healthcare*, 753 A.2d at 945-46.

#### c. Every Defendant Conspicuously Ignores the Express Definition of the "Enterprise" Set Forth in the Complaint, Conceding That It Is Adequately Alleged

Like teenage boys on prom night, the defendants clumsily fumble around trying find the elusive definition of their Zionist criminal enterprise. This is again an "argument" that Antonacci would have ignored save this Court's Fox/Neal Orders, but since the defendants seem incapable of unsnapping the treasure chest, Antonacci will again quote the definition directly:

> 517. Specifically, the enterprise is an association-in-fact among individuals and business entities designed to divert taxpayer money to members of the enterprise; destroy the professional reputation of anyone who seeks to expose the nature and extent of the enterprise through fraud, widespread defamation, and murder; protect the members of the enterprise from civil liability by unlawfully influencing the outcome of civil cases, thereby keeping more money in the enterprise; defrauding litigants from monies to which they are legally entitled by unlawfully delaying and sabotaging meritorious civil cases; bribing and otherwise incentivizing people associated with those deemed enemies of this enterprise to spread lies about those "enemies;" punishing attorneys who sue members of the enterprise by preventing them from becoming admitted to practice law; punishing attorneys who sue members of the enterprise by putting them on the Blacklist of disfavored attorneys; illegally infiltrating protected computers to spy on the "enemies" of the enterprise, in some cases through fraudulently obtained search warrants; and protecting the enterprise by unlawfully preventing them from obtaining evidence of the enterprise's fraudulent misconduct.
>
> 518. The enterprise is administered and funded primarily by Zionists and Jews, but they will utilize anyone they can bribe or extort to accomplish their goals.

(*See. e.g.*, Dkt. 1 ¶¶517-18, 540-41.) In addition, as set forth throughout the complaint, this particular faction of this Zionist enterprise has continuous leadership in Emanuel, Kiernan, Gehringer, Perkins Coie, Holland & Knight, and Seyfarth. (Dkt. 1, 81, 82, 88, 93, 98, 106, 111,

126-27, 140, 227-29, 306, 362.) That is how this enterprise has been able to continue its racketeering activity against Antonacci, as alleged in the complaint.

**d. The Predicate Acts Are Set Forth Specifically in Each Count, While Some Are Referenced from Incorporated Factual Allegations for Sake of Brevity, and Antonacci Has Alleged Numerous Schemes to Defraud, Extort and Murder Him**

The defendants decidedly ignore much of the complaint when discussing the alleged predicate acts and the schemes to defraud, extort, and murder Antonacci, as well as their schemes to obstruct federal court proceedings. In furtherance of these schemes, the defendants utilized interstate mails and wires and they engaged in interstate travel. The defendants committed these predicate acts innumerable times with ten-year periods, all in violation of 18 U.S.C. §1962(a), (b), and (c). The defendants also conspired to commit these predicate acts, in violation of 18 U.S.C. §1962(d).

Antonacci discusses the facts common to all counts in mostly chronological order, further separating the allegations by category relative to the criminal enterprise's fraudulent, extortionist, and murderous schemes:

1) Holland & Knight's DC office where Antonacci filed his first RICO complaint against a Zionist attorney who was later convicted of tax evasion and disbarred and Antonacci's termination from Holland & Knight after successfully prosecuting that RICO case against a Zionist attorney, unable to find a job for 16 months despite winning every case he touched (dkt. 1, ¶¶22-117);

2) Sabotage of his state court case against Anita Ponder and Seyfarth Shaw and extortion by the Illinois State Bar (dkt. 1, ¶¶118-252);

3) Antonacci's introduction to Shaun So and Richard Wheeler, setting him for human intelligence gathering and illegal computer hacking, immediately after he

filed his RICO complaint against Perkins Coie and the City of Chicago in the Norther District of Illinois (dkt. 1, ¶¶252-263);

4) Antonacci's federal case in Illinois and how the leadership of this Zionist criminal enterprise obstructed justice and Perkins Coie engaged Fusion GPS and Rokk to collect intelligence and provide a disinformation campaign concerning Antonacci (dkt. 1, ¶¶264-281);

5) Immediately before Antonacci's SCOTUS petition to the Seventh Circuit is denied, and the evening before he has an international flight, Antonacci is assaulted by middle-aged, African-American lobbyist for the Department of Veterans Affairs contractors, one of Defendant Storij's biggest clients, who threatens to kill Antonacci and calls him a "privileged white piece of shit" (dkt. 1, ¶¶281-93);

6) the enterprise's enlistment of Antonacci's family and friends in Chicago, providing funding to his degenerate brother in exchange for his brother's defamation of Antonacci, and setting up The Gibsons Restaurant Group with a partnership with the Think Food Group, Holland & Knight's client, in exchange for Stephen Lombardo's arrangement with his Georgetown classmate, Firmender, to implement the AECOM Fraud (dkt. 1, ¶¶294-336);

7) Lane Construction, the AECOM Fraud, Storij's violations of the Computer Fraud and Abuse Act, and Antonacci's 2022 due diligence trip to Chicago (dkt. 1, ¶¶337-420);

8) the Virginia State Bar's unconstitutional persecution of Antonacci and its ties to organized crime (dkt. 1, ¶¶420-73);

9) Descrybe.ai conspires to publish materially false caselaw concerning Antonacci in preparation for Rahm Emanuel's presidential run (dkt. 1, ¶¶474-99);

10) the defendants' attempted murder of Antonacci, while he was cycling, exactly one week after he filed his notice of appeal of the EDVA dismissals, and Parrish joins the conspiracy, through a referral from Virginia State Bar Board Member, Bradley Marshall, and attempts to protect the driver and prevent Antonacci from recouping his damages. (Dkt. 1, ¶¶500-14.)

Antonacci cannot make it much easier to comprehend.

The Defendants do not really dispute the predicate acts of extortion, obstruction and attempted murder, they mostly just claim it was not each individual defendant who performed the act, which is irrelevant to their collective liability. And Antonacci does not engage in improper "group pleading" because he describes the individual acts of the defendants, but alleges their collective liability with respect to the enterprise's predicate acts and his conspiracy claims. Notably, Defendant Johnson did not file a 12(b)(6) motion, but rather is hiding in his basement while the Virginia State Bar disputes personal jurisdiction on his behalf, because he is too scared to go to his office and accept service of process. (Dkt. 22, 37.) Johnson's actions are plainly indefensible.

The Defendants dispute the specificity with which Antonacci alleged the predicate acts of mail and wire fraud, and his allegations of interstate travel. The defendants cite no authority in support of their proposition that interstate travel in support of their schemes require further detail. The interstate travel Antonacci alleges is set forth specifically in his complaint, and that the travel occurred is a natural consequence of the specific acts alleged.

For example, Antonacci alleges that Shaun So lives in Brooklyn, NY, and that Richard Wheeler lives in Glendale, California, and that Storij maintained offices in Brooklyn, NY, and Washington, DC. Antonacci alleges that he personally met Shaun So and Richard Wheeler in Washington, DC, and that Shaun So frequently visited Washington, DC during his six years working with Antonacci. Antonacci further alleges that Leslie Kiernan is married to Paul Kiernan, who is a partner at Holland & Knight's DC office so it may be inferred they live in the DC area. Antonacci alleges that Leslie Kiernan traveled to Chicago, Illinois to obstruct Antonacci's case before the Seventh Circuit when she interviewed Diane Wood for an available SCOTUS position. Antonacci specifically alleged that Stephen Lombardo traveled from Chicago, Illinois to Chevy Chase, Maryland to meet with Jose Andres in furtherance of this scheme.[7] Antonacci has alleged the places these people traveled, how it facilitated their fraudulent, obstructionist, and extortionist schemes, and the general time frames. He need not provide copies of their plane tickets.

As for mail and wire fraud, the elements of these predicate acts is very simple, as established in the caselaw relied upon by defendants:

> The elements of federal mail and wire fraud are "(1) a scheme to defraud, and (2) use of the mails or wires for the purpose of executing the scheme." *United States v. Alston*, 609 F.2d 531, 536 (D.C. Cir. 1979); *see also Johnson v. Computer Tech. Servs., Inc.*, 670 F. Supp. 1036, 1039 (D.D.C. 1987) (applying Alston to a civil RICO claim).
>
> **The first prong reaches "any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises."** *Carpenter v. United States*, 484 U.S. 19, 27, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). "The scheme to defraud must threaten some cognizable harm to its target." *United States v. Lemire*, 720 F.2d 1327, 1336 (D.C. Cir. 1983) (citing cases). Cash and in-kind bribery are tangible harms. N'west'n Bell Tel. Co., 492 U.S. at 234, 109 S.Ct. 2893. So are threats. *Fed. Info. Sys., Corp. v. Boyd*, 753 F. Supp. 971, 975 (D.D.C. 1990). **Intangible harm can take the form of favors exchanged for false promises, or invasion**

[7] Jose Andres resigned as CEO of Think Food Group in May of 2024, shortly after Antonacci filed the EDVA complaint.

> **of privacy through confidential information.** *Lemire*, 720 F.2d at 1336.
>
> **Of course, there must also be a use of the mail or wires, where mail involves any delivery by the Postal Service or any other "private or commercial interstate carrier," and wire means transmittal "by means of wire, radio, or television communication in interstate or foreign commerce."** 18 U.S.C. §§ 1341, 1343. Mailing and e-sending fraudulent tax returns involves use of the mail or wires. Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 454 (2006). **Even mailings between conspirators "in furtherance of the overarching scheme to defraud" may qualify.** *Id.*

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 77–78 (D.D.C. 2019), aff'd sub nom. *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam Ethiopian Orthodox Tewhado Religion Church*, No. 19-7124, 2020 WL 873574 (D.C. Cir. Feb. 14, 2020) (emphasis added). The Defendants incorrectly rely on *Ambellu* for the proposition that Antonacci's mail and wire fraud allegations are not adequately pled, but in *Ambellu* this Court found that plaintiffs mail and wire fraud allegations were, in fact, pleaded with sufficient particularity. *Ambellu*, 406 F. Supp. 3d at 79 ("[plaintiff's] failure is not a lack of particularity, it is that the facts they particularly allege do not constitute a RICO claim.").

In *Ambellu*, the schemes involved assault rather than attempted murder, threats to take corporate actions that were both untimely and did not involve the use of mails or wires, soliciting new members of the church in ways that were neither fraudulent or nefarious, and failing to hold a vote on corporate action. *Id*. at 79-80. The Court held that those actions not only independently failed to establish RICO allegations, but also did so collectively. *Id*. at 80. *Ambellu* is similar to *DC2NY*, 2019 WL 377957, discussed above, in that the schemes complained of were either "ordinary commercial fraud" or not fraud at all. Similarly, while Antonacci zealously advocates for his clients, the tortious and criminal conduct he alleges in his complaint is anything but "the provision of normal legal services." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 (D.C. Cir. 2012).

As discussed above with respect to the statute of limitations, maybe the clearest indication, besides the plain language of the complaint, that the Defendants' actions are anything but ordinary commercial fraud or ordinary legal services, is the vehemence with which they proclaim that the truth of Antonacci's allegations is beyond belief. Indeed, rather than simply deny the truth of key allegations in response to Antonacci's requests for admission, these defendants are fighting tooth and nail to resist having to answer them. Antonacci spelled out at least ten separate but interrelated schemes above, none of which are ordinary, as illustrated by the defendants specious and hysterical denials.

With respect to the allegations of mail and wire fraud, Antonacci has pleaded those innumerable predicate acts with sufficient particularity, giving dates and context where available. The volume of these predicate acts is also compelling: Antonacci has alleged at least one hundred instances of wire and mail fraud in this case. (Dkt. 1, ¶¶136, 140-42, 164, 200-02, 207, 213, 220-39, 259-61, 316, 337, 351, 377, 437, 466, 471-477, 493-94, 510-14, 523-24.) And Antonacci could plead with further particularity as to the communications to which he is a party, which are many, but to do so would lose the forest for the trees, as it would be mind-numbingly boring to follow. Antonacci has pleaded mail and wire fraud with sufficiently particularity to allow the Court to see when, why, and between and among whom these interstate wires and mails were used, in furtherance of the racketeering activity described in the Complaint, to manage the production and admission of evidence in this case.

In *Philip Morris*, 566 F.3d at 1118, this Circuit found 108 instances of mail and wire fraud, regardless of whether the transmissions themselves were fraudulent, were sufficient, standing alone, to constitute a pattern of racketeering of racketeering activity under RICO: "The 108 enumerated acts give us ample basis to review the district court's finding. Although the district

court may have concluded other racketeering acts were proven as well, we need look no further…. A mailing or wire transmission need not itself be fraudulent…". Antonacci has alleged multiple schemes to defraud and extort him out of money and property, and kill him, all of which utilized interstate mails and wires in furtherance of that scheme, which Antonacci has pled with sufficient particularity.

Finally, Defendants claim it is impossible to state a RICO claim, in this Circuit, where there is "only a single scheme, a single injury, and few victims." *Adler v. Loyd*, 496 F. Supp. 3d 269, 278 (D.D.C. 2020) (single scheme involving twelve predicate acts over a four-month period). But Antonacci is not alleging a single scheme and a single injury and predicate acts occurring over a short period of time. Antonacci is alleging a Zionist conspiracy–arising out of some twisted vendetta against Antonacci because he does his job well–that spans 16 years and at least three states and the District of Columbia, involves at least ten fraudulent and extortionist schemes, as well as two attempts at murder, obstruction of justice in at least two federal cases, and the evisceration of any semblance of integrity from the American legal profession. RICO was signed into law to prevent misguided lawyers and politicians, like these defendants, from metastasizing their cancerous criminality into the marrow of this nation. Defendants' motions to dismiss must be denied.

## VIII. ANTONACCI HAS STATED A CLAIM UNDER DC'S ANTITRUST ACT BECAUSE THIS THIS CRIMINAL ENTERPRISE HAS MONOPOLIZED THE DC LEGAL MARKET, WHICH CAN BE EASILY PROVED BY DC'S METEORIC BILLING RATE INCREASES, AND ALL DEFENDANTS ARE LIABLE FOR EVERY ACT OF THEIR CO-CONSPIRATORS SO THE CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS

"Most antitrust claims are analyzed under a 'rule of reason,' according to which the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition…. *State Oil Co. v. Khan*, 522 U.S. 3, 10, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997). The

general issue is ‘whether the restraint's anticompetitive effects substantially outweigh the procompetitive effects for which the restraint is reasonably necessary.’” *Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*, 295 F.Supp.2d 75, 94-95 (D.D.C. 2026) (quoting ABA Section of Antitrust Law, Antitrust Law Developments 53 (4th ed.1997).) Here, as alleged in the complaint, this Zionist criminal enterprise seeks to impose counterproductive restraints on trade that make the legal profession less competitive and more expensive. The national impact of this Zionist criminal enterprise has been to utterly destroy America’s confidence in its legal institutions. (Dkt. 68-7.)

As stated above, because DC conspiracy law allows a conspiracy to be established through circumstantial evidence, the defendants’ agreement, administered by the principles at the top of their criminal enterprise, to destroy Antonacci’s legal career so that Zionist criminals may monopolize the legal markets in DC, Northern Virginia, and Chicago is plainly alleged in the complaint and Antonacci will refer the Court back to Section I, II, and VII *supra*. Antonacci asks this Court to take judicial notice of two publicly available documents:

1) The 2026 Law Firm Rates Report generated by the Thompson Reuters Institute, demonstrating the astronomical rise in law firm billing rates across the country, with law firm revenues rising from two to three times the rate of inflation over the past 20 years, despite the hours worked and demand remaining flat. (Dkt. 68-6.)

2) December 17, 2024 Gallup Report: “Americans Pass Judgment on the Courts: Sharp decline in confidence in judiciary is among the largest Gallup has ever measured.” From 2020 to 2024, reported confidence in the U.S. judicial system dropped 24 percentage points, from 59% to 35%. “The decline in confidence in the U.S. judicial system not only means the U.S. ranks below other rich nations, it is also among the steepest declines Gallup has measured globally on this metric.” (Dkt. 68-7.)

The results are in: The Zionists’ impact on the legal system has profound anticompetitive impacts and no procompetitive impacts.

Americans should be proud of their justice system. These Zionists are destroying it. Their most recent attacks on Antonacci coincide with the steepest drop in perceived judicial fairness in Gallup's *global* reporting history. And shortly after Antonacci was sidelined from law firm legal practice, the industry saw a sustained rise in revenue that is many multiples of inflation, despite "working" the same number of hours. These defendants have created a racket administered by unscrupulous Zionists with an unacceptable percentage of compliant judges. This is exactly what the DC Antitrust Act was enacted to prevent and this Court should hold these defendants accountable.

Because all these defendants are accountable for the acts of their co-conspirators, none of the defendants is outside the four-year statute of limitations.[8]

Defendants do not cite any controlling precedent supporting their position. Their reliance on *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) is misplaced because that case, arising out of the merger of bowling equipment manufacturers in New Jersey, implicated the federal Clayton Act, rather than D.C. Antitrust law. And unlike the plaintiff's in *Brunswick Corp.*, Antonacci's damages flow directly from the defendant's anticompetitive behavior as they seek to eliminate ethical attorneys who expose Zionist criminals masquerading as lawyers. And in *Atlantic Coast Airlines.*, 295 F.Supp.2d at 96 (D.D.C. 2020), cited above, this Court granted the plaintiff's preliminary injunction preventing the anticompetitive merger because "the public interest is served by ensuring no unreasonable restraints on competition." In this case, the public has spoken, and the result of the Zionists's anticompetitive racketeering is making the legal system inaccessible and perceptibly unfair, undermining the rule of law and putting our civil society at grave risk.

[8] The Lane Defendants incorrectly state that the applicable statute of limitations is three years. They are wrong.

## IX. ANTONACCI HAS STATED A CLAIM UNDER 28 USC §1985(3) BECAUSE JOHNSON'S UNCONSTITUTIONAL PERSECUTION OF ANTONACCI IS A NATURAL CONSEQUENCE OF THE CONSPIRACY TO DESTROY ANTONACCI'S CAREER, WHICH ALL DEFENDANTS JOINED WILLFULLY, AND ANTONACCI WAS DENIED EQUAL PROTECTION FOR THOSE SIMILARLY SITUATED, SO HE IS A PROTECTED CLASS OF ONE

"The Constitution's guarantee of equal protection under the law is violated when government action treats someone 'differently from others similarly situated and ... there is no rational basis for the difference in treatment.' This type of so-called "class of one" claim may be brought under the Fourteenth Amendment when the alleged violation is committed by a state government actor…." *Perkins Coie,* 783 F. Supp. 3d at 166 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).) The plaintiff need not literally be the only one in the class because "the key is that the differential treatment is not based on 'membership in a protected class' but on arbitrary mistreatment or animus." *Id*. at 167 (quoting Perkins Coie's memorandum of law.)

An attorney's lawsuit against his or her former client, alleging the client's tortious misconduct directed at that attorney, cannot be deemed misconduct by the attorney. Va. Rule Prof. Cond. Rule 1.6(b)(2). If a bar complaint against an attorney "does not present an issue under the Disciplinary Rules, Bar Counsel must not open an Investigation, and **the Complaint must be dismissed**." Va. R. Sup. Ct. 13-10. Courts must use their own judgment to interpret laws, not defer to agencies' interpretation. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2263 (2024) (overruling *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)).

The constitutions of both the United States and Virginia guarantee due process of law for each of its citizens, which is intertwined with the right to free expression. U.S. Const. Amends. I, V and XIV; Va. Const. Art. I, Sections 11 and 12. Although the requirements of procedural due process are fluid and fact dependent, the point of procedural due process is to require procedural fairness and to prohibit the state from conducting unfair or arbitrary proceedings. *Johnson v.*

*Morales*, 946 F.3d 911 (6th Cir. 2020); U.S. Const. Amend. XIV; *see also* 16C C.J.S. Constitutional Law § 1884. "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

"On several levels, Article I, Section 11 parallels the procedural due-process protections in the Fifth and Fourteenth Amendments to the United States Constitution.… In this respect, we hold that the protections of Article I, Section 11 are at least as strong as the existing understanding of procedural due-process rights secured by the United States Constitution." *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 573–76, 895 S.E.2d 705, 743 (2023). "Under settled procedural due-process principles, a government requirement "is unconstitutionally vague if persons of 'common intelligence must necessarily guess at [the] meaning [of the language] and differ as to its application.'" *Id*. at 743-44. (quoting *Tanner v. City of Va. Beach*, 277 Va. 432, 439, 674 S.E.2d 848 (2009).

If a provision of law does not have "ascertainable standards," then it does not give its citizens the "fair notice" required by the due process clause. *Id*. at 744. "This principle is particularly important when "vague language" implicates free-speech concerns because of the risk that individuals will self-censor "based on a fear that they may be violating an unclear law.'" *Id*. (quoting *Tanner*, 277 Va. at 439); *see also FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012) (recognizing that the "requirement of clarity in regulation is essential to the protections provided by the Due Process Clause" and that "[w]hen speech is involved, rigorous adherence to [due-process] requirements is necessary to ensure that ambiguity does not chill protected speech").

"The constitutional prohibition against vagueness also protects citizens from the arbitrary and discriminatory enforcement of laws. A vague law invites such disparate treatment by impermissibly delegating policy considerations 'to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.'" *Tanner*, 277 Va. at 439 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-9 (1972).

As alleged in the complaint, Johnson and the Virginia State Bar brought a complaint against Antonacci for conduct that no reasonable attorney or layperson could deem professional misconduct under the Virginia rules. (Dkt. 1, ¶¶420-63, 547, 549, 651-66.) As alleged in the complaint, Antonacci was subject to this differential treatment based on arbitrary resentment or animus because he had exposed a criminal Zionist attorney early in his career, and further exercised his protected speech in identifying this criminal Zionist attorney in his 2024 complaint in the EDVA, and thus Antonacci has been denied equal protection under the law. *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. at 166-67; *Olech*, 528 U.S. at 564; *Morales*, 946 F.3d 911; *Mathews*, 424 U.S. at 334; *Vlaming*, 302 Va. at 573–76; *Tanner*, 277 Va. at 439; *Fox,* 567 U.S. at 253-54; *Grayned*, 408 U.S. at 108-9. As a result of this denial of due process and equal protection of law, Antonacci was subject to forfeiture by this Zionist criminal enterprise. (Dkt. 1, ¶¶420-63, 547, 549, 651-66.)

As alleged in he complaint, all the defendants knowingly and willfully joined the conspiracy to destroy Antonacci's legal career, of which the Virginia State Bar and Johnson's unconstitutional persecution was expressly or impliedly agreed as a foreseeable consequence of such an agreement:

> 462. This again demonstrates that this Zionist criminal enterprise has no regard for the rule of law, but rather seeks to weaponize courts of law in

> order to attack and discredit anyone who criticizes their criminal conduct and irredeemable nature.
>
> 463. The Virginia State Bar's persecution of Antonacci violated the due process and free speech protections of the U.S. Constitution because no reasonably intelligent lawyer could deem disclosing client information in a lawsuit against that client to be a violation of the Virginia Rules of Professional Conduct, and because it was clearly retaliation for Antonacci's protected speech against the Zionist criminal enterprise associated with the Democratic National Committee and Rahm Israel Emanuel.
>
> 590. Defendants combined, agreed, mutually undertook, and concerted together, and with others, to effect preconceived plan and unity of design and purpose.
>
> 591. The purpose of this plan was unlawfully to destroy Antonacci's legal career so that he could not expose the criminal nature of this enterprise
>
> 663. All of these actions by the Virginia State Bar, Johnson, and Shaun So, were part of the ongoing conspiracy, detailed above and incorporated herein, to derail Antonacci's legal career ever since he exercised his free speech, on behalf of his client in the Eastern District of Virginia in 2009, where he alleged that the fraudulent scheme of a Zionist attorney, Gerald I. Katz, violated RICO. All acts leading up to the Virginia State Bar's blatant denial of Antonacci's constitutional rights are all part of the same conspiracy and all Defendants are therefore liable for the conspiratorial acts alleged herein.
>
> 664. All Defendants, including the Virginia State Bar, Johnson, Parrish, 9208 Lee and Parrish Law were fully aware of the conspiracy they agreed to join.
>
> 665. As a proximate result of these denials of due process of law, Antonacci has suffered professional injuries, to include suspension of his bar license, and the disgrace of being associated with a bar association, for over 20 years, that would deprive its member of right and privileges guaranteed under the U.S. Constitution, at the behest and for the benefit of, a Zionist criminal enterprise.

(Dkt. 1, as noted.) These defendants are liable for this unconstitutional persecution because it is a natural and foreseeable consequence of the criminal conspiracy they agreed to join. Similarly, the statute of limitations does not bar this claim against any member of this conspiracy because the forfeiture in question occurred less than one year ago.

## X. ANTONACCI HAS STATED A CLAIM UNDER 10 U.S.C. §1030 BECAUSE HE NEVER GAVE STORIJ ANY ACCESS TO HIS PROTECTED COMPUTERS, AND THE CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS BECAUSE THE INFILTRATION MAY BE ONGOING AND THE LIMITATIONS PERIOD SHOULD BE EQUITABLY TOLLED IN ANY CASE

Richard Wheeler hacked Antonacci's protected computer systems so the enterprise could monitor Antonacci to determine his plans, strategy, and outlook on Lane's case throughout the AECOM Fraud. (Compl. ¶¶366-72, 523.h-j., 550.g., 612-13, 668-72.) Wheeler was not interviewed by VSB Investigator Graves, or called as a witness by Johnson, because he lives outside Antonacci's subpoena power and he is the only witness with personal knowledge of the illegal hacking he performed. (Compl. ¶¶440-44.)

This information gained from this illegal infiltration was disseminated to Firmender and David Mancini, counsel for AECOM, possibly through intermediaries in the enterprise. (Compl. ¶¶ 366-72, 523.h-j., 550.g., 612-13, 668-72.) Essentially the enterprise wanted to determine whether Antonacci knew he was being set up, and once he brought the damaging evidence to Firmender's attention, how he would proceed so that, having failed in getting an indictment or basis for legal malpractice, the enterprise could nonetheless defame Antonacci PLLC in order to prevent him from getting additional work. (Compl. ¶¶523.h-j.) Those are the injuries.

As for access, Storij has again made its circular argument that Antonacci's allegations are conclusory because they are conclusory, which does not merit discussion. Storij further argues that Antonacci's CFAA must fail because Antonacci does not allege the details of how Storij hacked into his computers. Antonacci is under no obligation to do so. Antonacci has alleged that Richard Wheeler has such expertise and the circumstances surrounding their hacks, which Storij will not even deny. Antonacci is not a hacker.

The caselaw on this issue is not helpful for Storij. The Supreme Court in *Van Buren* held that the threshold inquiry for CFAA cases is simply whether the defendant had lawful access to the data, irrespective of their motives. *Van Buren v. United States*, 593 U.S. 374, 381, 141 S. Ct. 1648, 1653–54 (2021) (holding that the "[l]iability under both clauses stems from a gates-up-or-down inquiry—one either can or cannot access a computer system, and one either can or cannot access certain areas within that system.").

Storij was never granted any access to Antonacci's computers, so its access was plainly without any authorization: the "gate" was always "down." There are no allegations even suggesting that Antonacci granted Storij any such access. And Storij's intent to defraud is well established throughout the complaint. Storij is therefore liable to Antonacci for damages resulting from its unauthorized access, pursuant to 18 U.S.C. §1030.

Finally, this claim is not time-barred because Antonacci has alleged that the infiltration is ongoing. As this Court has long held, discussed above, "because statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Firestone*, 76 F.3d at 1209; *see also Medlantic Healthcare*, 753 A.2d at 945-46. In addition, the applicable limitations period should tolled as a result of Storij's fraudulent concealment of its nefarious activities. *Solomon,* 2023 WL 6065025, at *6. Finally, as the Supreme Court held in *Rotella*, 528 U.S. at 560-61, equitable tolling applies to all federal statutes where appropriate. To the extent this Court believes the limitations period has lapsed from the time Antonacci discovered the injury, Antonacci requests this Court equitably toll that period.

**STATEMENT REQUESTING ORAL ARGUMENT**

Antonacci requests oral argument.

**,-",/')!-"#**

**I%&+&.-+&** C(RP(&X*I(*#,R%,,(&#&*X(*P*$%#C(+$%(X$,(1VVR,$&$R%R(*'*%+#%&,;(
4>dQed>eR&$R%&(R)$,Y$,,C(!"#$%&$7RW$F(-(:%&R%#UX*$P*QT(*`W*,&&(X$3RWP(&(**"K** (&X*(
<R&$R%&(R)$,Y$,,( &X*3RYV"#$%'&'(*+QT()*'*%+#%&7(#%*3R%,&PWU&3RP%(#%+5*&X0(-(
9$PY*%+*Pd(+Z&>aeC!(*PZ$%3R$*(77!C(<#&&X*I(-(=*XP$%[*P%$&#(!R%+*P€%+5*T'#P&X(
5X#\( 77!( (d+Z&@4eC&RP$]%U+(gQg#P$[[,( 8*,*#PUX(%&*P%#&$R%Q#50 18( 0*UX%R"R[$*,(
+gQg#X*5R3RYV#%T(+Z&N(aeC(R""#%+h( i%$[X&77!( d+Z&O(eC(RZZ5R"W&$R%73( d+Z&O(^eC(
)*,UPTQ*C(73( d+Z&O(Oe€%+(>Ja(7**(:S*%W*C(73( #%+!(#PP$,X7#\( 9$PYC(73( d(+Z&O(4eC€%+(
**-+(&+** (&X*()*'*%+#%&,("&R&+** (&X*(3RYV"#$%&$%$&RWP&**%(d4Oe(+#T,-(

**(765^<#07\@Y#iA3#=A=>#** ( ( ( 8*,V*U&'W""T(,WQY$&&*+(

g,g/Louis Antonacci/ ( (
7#UIS B. ANTONACCI
*** ! "#! $ %%&#B//,**
O4>f(a#$(5&P**&(/E(yN(
E#,X$%[&R%C()3(>JJ44(
HJNANJJAOfN@(
"RWz#%&R%#UU$"#\-URY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LOUIS B. ANTONACCI,**<br><br>Plaintiff<br><br>**v.**<br><br>**RAHM ISRAEL EMANUEL et. al.**<br><br>Defendants. | **Case No. 1:26-cv-00211** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND SOVEREIGN IMMUNITY**

Plaintiff Louis B. Antonacci ("Antonacci") hereby files this Memorandum in Opposition to the Motions to Dismiss the Complaint, pursuant to Rules 12(b)(2) and 12(b)(3), filed by Defendants the Virginia State Bar (the "Virginia State Bar" or "VSB") (dkt. 40), Richard W. Johnson, Jr. ("Johnson") (dkt. 22), and Descrybe, LLC ("Descrybe"). (Dkt. 44.)[1] In support of this Opposition, Antonacci states as follows:

We are going to keep this brief. First, there is no authority for the proposition that the Virginia State Bar is entitled to sovereign immunity, pursuant to the Eleventh Amendment of the U.S. Constitution, for antitrust claims implicating compelled action by the VSB, claims arising under Title 18 U.S.C. §1962, and claims arising under 28 U.S.C. §1985. The only case upon which the Virginia State Bar relies, *Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975), expressly held that it was expressing no view on the issue of the VSB's Eleventh Amendment immunity from civil suit: "The State Bar also contends that it is protected by the Eleventh Amendment.

[1] Antonacci responded to Descrybe's 12(b)(6) motion in a separate response.

Petitioners dispute this contention, and the District Court had no occasion to reach it in view of its holding. Given the record before us, we intimate no view on the issue, leaving it for the District Court on remand." *Id*. at n.22 (internal citation omitted); *Kaul v. Federation of State Medical Boards*, 2020 WL 7042821 at *12 (D.D.C. 2020) (citing *Goldfarb* for the proposition that "the Virginia State Bar was not entitled to Parker state-action immunity, but noting that the issue of Eleventh Amendment sovereign immunity was to be decided by the district court on remand.").

More importantly, the high court in *Goldfarb* expressly ruled that the Virginia State Bar was not entitled to Parker state-action immunity precisely because, as here, the VSB played a significant role in the anticompetitive and fraudulent scheme alleged:

> The District Court stated that the State Bar acted in only a "minor role" as far as the price-fixing was concerned, and one member of the Court of Appeals panel was prepared to exonerate the State Bar because its participation was so minimal as to be insufficient to impose Sherman Act liability. Of course, an alleged participant in a restraint of trade may have so insubstantial a connection with the restraint that liability under the Sherman Act would not be found, however, that is not the case here. The State Bar's fee schedule reports provided the impetus for the County Bar, on two occasions, to adopt minimum fee schedules. More important, the State Bar's ethical opinions provided substantial reason for lawyers to comply with the minimum fee schedules. Those opinions threatened professional discipline for habitual disregard of fee schedules, and thus attorneys knew their livelihood was in jeopardy if they did so. Even without that threat, the opinions would have constituted substantial reason to adhere to the schedules because attorneys could be expected to comply in order to assure that they did not discredit themselves by departing from professional norms, and perhaps betraying their professional oaths.

*Id*. at n.21 (internal citations omitted). The VSB cites no other cases for its plea of immunity, and the U.S. Supreme Court has expressly held that they are not entitled to immunity for Antonacci's antitrust claim in light of the willful and malicious acts alleged in the complaint.

Given that the U.S. Supreme Court has expressly ruled that it is an open question whether the VSB has sovereign immunity, under the Eleventh Amendment, for the claims of racketeering and civil rights violations set forth in the complaint, Antonacci submits that this Court should not extend such immunity because Johnson and the VSB's conduct reflects poorly on the legal profession and further diminishes Americans' confidence in our judicial system. (Dkt. 68-7.) A grant of immunity in this case is really a grant of impunity, and what our legal system sorely needs is some accountability. (Dkt. 68-7.)

Second, the issues of personal jurisdiction and venue can be disposed of summarily with 18 U.S.C. §1965(b), which grants personal jurisdiction over defendants who reside in any judicial district other than where the action was brought, when the ends of justice so require, provided that any other RICO defendant resides, is found, has an agent, or transacts his affairs in the judicial district where the action is brought, which makes it a proper venue. 18 U.S.C. §1965(a). Several of the other defendants reside, have an agent and/or transact business here. (Dkt. 11, 13, 14-16, 18.)

The ends of justice require that Johnson, the Virginia State Bar, and Descrybe be brought before this Court because Antonacci has alleged a nefarious, nationwide criminal enterprise that has repeatedly attacked him in successive racketeering schemes involving extensive fraud, extortion under color of state law, attempted murder, obstruction of federal court proceedings, and denial of substantive due process and equal protection of law by state actors, specifically the VSB and Johnson. And Descrybe, specifically, is charged with publishing false information about Antonacci, masquerading as caselaw, in a nationwide legal research platform, both to discredit Antonacci and to mislead the public in its perception of Defendant Rahm Israel Emanuel, who claims to be considering a campaign for president of these United States. The

ends of justice are compelling not just for Antonacci, but also for Americans' perception of our legal system and their informed opinions when they cast their votes in 2028. (Dkt. 68-7.) This Court should deny the Defendants' Motions for these first two reasons alone.

Third, Defendants incorrectly state that Antonacci has the burden of proving personal jurisdiction by a preponderance of the evidence. At this stage of the proceeding, where the defendant's motion to dismiss for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie or "threshold" showing of jurisdiction, then the burden is shifted to the defendant to rebut this showing of jurisdiction. *Xie v. Sklover & Company*, LLC, 260 F.Supp.3d 30, 37-38 (D.D.C. 2017); *see also* Wright and Miller et al., Federal Practice and Procedure, Civil § 1351 (3d ed.). To the extent there are "material factual discrepancies in the record," they "must be resolved in favor of the plaintiff." *Id*. (quoting *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990) (citing *Reuber v. United States*, 750 F.2d 1039, 1052 (D.C. Cir. 1984))).

Fourth, Antonacci has made a prima facie showing that this Court has specific personal jurisdiction over the Virginia State Bar and Johnson, an agent of the Virginia State Bar, because they necessarily transact business with the District of Columbia by virtue of their respective functions, and the function of the District of Columbia's Bar Association. Antonacci has separately requested (dkt. 68) that this Court take judicial notice of ten facts, pursuant to Federal Rule of Evidence 201(a), not subject to reasonable because they are generally known within this Court's territorial jurisdiction:

1. The territorial line demarcating the District of Columbia's boundary with the Commonwealth of Virginia is less than five miles from this Courthouse.

2. The Circuit Court for the City of Alexandria, located at 520 King Street, Alexandria, Virginia 22314, is less than 10 miles from this Courthouse.

3. Many attorneys licensed in the District of Columbia are also licensed in the Commonwealth of Virginia.

4. Many attorneys licensed in the Commonwealth of Virginia are also licensed in the District of Columbia.

5. An attorney licensed in the Commonwealth of Virginia can waive into the District of Columbia's Bar Association with five years of qualifying practice, regardless of their score on the Virginia bar examination, assuming they pass the character and fitness requirements.

6. The District of Columbia's Bar Association is the largest unified bar association in the country.

7. If an attorney in the Commonwealth of Virginia accepts a position as Assistant Bar Counsel for the Virginia State Bar, in its Richmond, Virginia headquarters, where they will be investigating and prosecuting allegations of misconduct against Virginia attorneys, then the attorney accepting the position as Assistant Bar Counsel should reasonably expect to investigate and prosecute allegations of misconduct against Virginia attorneys who are also licensed in the District of Columbia, reside in the District of Columbia, and/or practice in the District of Columbia.

8. A Virginia attorney employed as Assistant Bar Counsel for the Virginia State Bar, in its Richmond, Virginia headquarters, investigating and prosecuting allegations of misconduct against Virginia attorneys, cannot

reasonably expect to avoid availing him or herself of the laws, court rules, rules of professional conduct, and/or regulations promulgated by the District of Columbia's City Council, its Bar Association, and its numerous courts, in performance of his or her duties as Assistant Bar Counsel.

9. A Virginia attorney employed as Assistant Bar Counsel for the Virginia State Bar, in its Richmond, Virginia headquarters, investigating and prosecuting allegations of misconduct against Virginia attorneys, should reasonably expect to interact regularly with the District of Columbia's Office of Disciplinary Counsel and/or its Bar Association.

10. The Virginia State Bar transacts business with the neighboring District of Columbia's Bar Association.

11. The Virginia State Bar transacts business with the neighboring District of Columbia's Bar Association on an ongoing basis.

12. The Virginia State Bar has reciprocity with the District of Columbia Bar.

"In resolving a motion to dismiss for lack of personal jurisdiction, the Court is not limited to the four corners of the operative complaint, but rather 'may receive and weigh affidavits and other relevant matter to assist in determining jurisdictional facts.'" *Xie*, 260 F.Supp.3d at 37 (citing *Khatib v. All. Bankshares Corp.*, 846 F.Supp.2d 18, 26 (D.D.C. 2012) (quoting *D'Onofrio v. SFX Sports Grp., Inc.*, 534 F.Supp.2d 86, 89 (D.D.C. 2008))). In addition to the requests for judicial notice, Antonacci has requested leave to perform jurisdictional discovery on Johnson (dkt. 26), and has further moved to reconsider this Court's denial of that motion. (Dkt. 33.)

Because of their territorial proximity and reciprocal relationships for admission and discipline, the Virginia and DC bar associations must work together to coordinate myriad cross-

jurisdictional matters, as alleged in the complaint. Under DC's long-arm statute, this Court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's ... transacting any business in the District of Columbia." D.C. Code § 13–423(a)(1). Section 13–423(a)(1)'s 'transacting any business clause 'is given an expansive interpretation' that is 'coextensive with the due process clause.'" *Xie*, 260 F.Supp.3d at 39 (citing *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (quoting *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981))). The Court in *Xie* held that this Court had jurisdiction over the non-resident defendant, despite the non-resident never stepping foot in the District, because its business activities had "cause[d] a consequence" here. *Xie*, 260 F.Supp.3d at 41.

The VSB and Johnson because the VSB necessarily and purposefully "transacts any business" in the District for the purposes of reciprocity, admission, and discipline of their respective attorneys. There is no dispute that Johnson is an agent of the VSB, in a position that he took of his own free will, and all allegations in the complaint relate to Johnson as an agent of the VSB. The business activities of Johnson and the VSB have caused a jurisdictional consequence in this case, and that is the suspension of Antonacci's law license in the District of Columbia, through the VSB's business agreement of reciprocity with the District of Columbia. (Dkt 1, ¶523.p; Dkt. 49-3.) This Court therefore has personal jurisdiction over the VSB and Johnson pursuant to D.C. Code § 13–423(a)(1). *Xie*, 260 F.Supp.3d at 39-42.

Sixth, this Court has specific personal jurisdiction over Descrybe, Johnson, and the Virginia State Bar, pursuant to DC's long arm statute, based on their tortious and conspiratorial acts that caused tortious injury in the District. D.C. Code § 13–423(a)(3). The U.S. Supreme Court has long held that physical presence in the District is not required for this Court to exercise personal jurisdiction:

> Jurisdiction ... may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). In addition, each conspirator in a RICO conspiracy is liable for the overt acts of every other conspirator in a criminal enterprise:

> The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators…. The RICO conspiracy statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the Government to prove each conspirator agreed that he would be the one to commit two predicate acts.

*Salinas v. United States,* 522 U.S. 52, 63–64 (1997). Furthermore, because few people are inept enough to agree explicitly to criminal conduct, "conspiracy can be inferred from a combination of close relationships or knowing presence and other supporting circumstantial evidence." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1130 (D.C. Cir. 2009) (quoting *United States v. Mellen*, 393 F.3d 175, 191 (D.C.Cir.2004)).

Antonacci has alleged the existence of a single conspiracy because the conspirators at the top of this Zionist criminal enterprise, Holland & Knight, Kiernan, Emanuel, Perkins Coie, Gehringer, and Seyfarth Shaw, identified Antonacci as a target in the 2009-2012 time frame, and they have been enlisting and managing others to continue their attempts to destroy Antonacci over the years. (*See, e.g.*, Dkt. 1 ¶¶2-8, 44, 64-5, 70, 79-89, 96-101, 106, 114-16, 140-42, 163-4,

173-76, 252, 261, 275-79, 305-16, 345-47, 366-72, 420-27, 455, 474-75, 500-03, 517-18, 525-27, 540-41.) Descrybe, Johnson, and the Virginia State Bar agreed to join in a criminal enterprise that attacked Antonacci for years in the District of Columbia, and thus they are liable for all acts of their co-conspirators and are subject to this Court's personal jurisdiction by virtue of their co-conspirators tortious actions in the District, and the tortious injuries Antonacci incurred in the District. D.C. Code § 13-423. And because the defendants

And Defendants' reliance on *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F.Supp.2d 1 (D.D.C. 2009), which was an exceptional case where a Delaware corporation, with its principal place of business in Virginia, brought suit against a Dutch law firm in the District of Columbia, is misplaced. There, the international defendant's services were all performed in the Netherlands, consistent with its services agreement with the Virginia-based company. *Id*. at 9. As such, this Court held that the defendant had insufficient contacts and no reasonable expectation of being hauled into DC court. *Id*. at 9-10.

Antonacci has asked this Court take judicial notice of the District of Columbia's entity information concerning the law firm that he has solely owned and operated since July 30, 2014, when he organized the firm in the District. (Dkt. 68-8.) Antonacci PLLC was domesticated in Virginia on June 28, 2022, and has remained registered to do business in the District of Columbia since July 30, 2014. As such, when Descrybe published its defamatory caselaw in April of 2025 or earlier, it necessarily caused tortious injury to a business registered in the District of Columbia. Furthermore, because the case in question specifically discusses Antonacci's licensure in DC, and the fact that he had relocated to DC during some of the relevant

litigation, Descrybe was aware, or should have been aware, of the impact its tortious acts would have in the District.[2]

**WHEREFORE**, for the reasons stated herein, Antonacci hereby requests this Court **DENY** the Rule 12(b)(2) and 12(b)(3) Motions filed by Defendants the Virginia State Bar (dkt. 40), Richard W. Johnson, Jr. (dkt. 22) and Descrybe, LLC (dkt. 44), and **ORDER** the instant Defendants **ANSWER** the Complaint. Alternatively, Antonacci requests jurisdictional discovery and an evidentiary hearing to determine whether this Court has personal jurisdiction over the instant Defendants. Finally, Antonacci reiterates its request that this Court order service on Defendant Richard W. Johnson, Jr. by U.S. Marshal. (Dkt. 37.)

**Dated: March 30, 2026**

Respectfully submitted,

/s/ Louis Antonacci

Louis B. Antonacci
**ANTONACCI PLLC**
4126 8th Street NW #3
Washington, DC 20011
703-300-4635
lou@antonaccilaw.com

[2] It is unclear why Descrybe claims that Antonacci lived in Newark, Delaware, last year, and discovered the defamatory case summary when he lived there. (Dkt. 44-1, p. 3.) Antonacci has never lived in Delaware.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LOUIS B. ANTONACCI,**<br><br>Plaintiff<br><br>**v.**<br><br>**RAHM ISRAEL EMANUEL et. al.**<br><br>Defendants. | **Case No. 1:26-cv-00211** |

**PLAINTIFF'S MOTION TO EXPEDITE CASE**

Plaintiff Louis B. Antonacci ("Antonacci") hereby files this Motion to Expedite this Case, and states as follows:

Antonacci filed the instant complaint n January 23, 2026. Antonacci will reiterate that this is his third complaint alleging decades-long schemes of fraud, racketeering, attempted murder, illegal cyberespionage, obstruction of justice, and conspiracy to violate civil rights by state bar associations, against the Zionist criminal enterprise identified in the complaint. And in none of those cases has this Zionist criminal enterprise been required to file an answer or submit any evidence whatsoever, while Antonacci has testified as to the truth of all his allegations and provided exhaustive substantiating exhibits. (Dkt. 68, 72, 92.)

There is no serious dispute that everything Antonacci alleges is true. The only question is whether this Zionist criminal enterprise is beyond reproach. Because if they are beyond reproach, then that means we no longer live in a constitutional democracy and are effectively under martial law.

Notably, Virginia State Bar's Assistant Bar Counsel, Richard Johnson, deliberately evaded service of process here (dkt. 37), like Rahm Emanuel and Fusion GPS's Glenn Simpson did in

Antonacci's 2024 EDVA case. (Dkt. 97-1, 102-1.) Fortunately, Emanuel's braver half was available to accept service of process in this case. (Dkt. 7.) And because Little Johnson evaded service of process by both Antonacci's private process server, and later the Richmond City Sheriff, Antonacci has requested this Court order service on Johnson by U.S. Marshals. (Dkt. 37.)

The Virginia State Bar and Johnson's Motions to Dismiss for Lack of Personal Jurisdiction were an insult to the rule of law. (Dkt. 70.) The Defendants' 12(b)(6) motions did not fare much better. (Dkt. 69.)

Fusion GPS has again taken a default in this case (dkt. 63) and, like Defendant Emanuel, did not even file a substantive response to the complaint, because they have nothing to say for themselves, but rather filed for joinder with the other defendants. (Dkt. 55, 67.) Antonacci has asked this Court to impose sanctions on Fusion GPS's counsel, Josh Levy, for his deliberate misrepresentations to this Court that Fusion GPS was unaware of this lawsuit until March 2026. (Dkt. 102.) Levy should be required to pay Antonacci's costs of serving Fusion GPS here and in the 2024 EDVA case, as well as Antonacci's costs of separately appealing the EDVA's refusal to enter default against Fusion GPS, despite there being no dispute those trash collectors were in default.

Finally, Antonacci will reiterate that he accurately predicted, in his 2016 SCOTUS petition and subsequent filings, that the impunity granted to these Zionist fanatics would result in a catastrophic decline in confidence of the American legal profession and our public institutions. (Dkt. 72-1, pet. cert. pp. 31-2.) The purpose of courts of law is to restrain and punish bad actors, not to protect and encourage them. Antonacci requests that this Court move this case forward so that justice may finally be served. It has been over six months since Antonacci filed the instant complaint.

**E%&+&.-+&** A/9(&8*9(*#,/%,(&#&*8*9(*$%'A#$%&$/0($,( 1-(2%&/%#33$9(*:;(9*P0*,&,(
&8$@/09&(**&DB&(!$&#**&8$3(#,*(:;( *%&*9$%J(*9,((**&"F!"G** ()*'*%+#%&,X(&$/%,(&/($,D$,,(
4+L&(EFAFQAGQAHAIAJA(\\A(\IA(\SA(_]7A<(/&$/%,(/9( W#%3&$/4R(GQF7A#%+<(/&$/%&/(W*&($+*(
)*'#0"&(4+L&SG7A#%+(**G+*"$!"G** (!"#$%&$"X(/&$/%,(/9( Y*3/%,$+*9#&$4%(&GGG(_7A(&$/%(
'/9( .*#N*(&/(W*9NY(*P0*,&,'(9( 2+D$,,$/%(4+L&G(7A<(/&$/%(/9( W*9N$3;*((^-W-<(#9,8#",( 4+L&-(
GR7A(&$/%,(&/(T#L*(E0+$3$#U(&$3#(%+2D*%+b@/99*4&L&Q(AFSQAH(_7A<(&$/%&/(@/D?*"(
Z0,$/%([!W( &/(2%,B*9(a%&*99/J#&/9$*L(&SI(7A#%+<(/&$/%&/(aD?/,*( W#%3&$/%(Z0,$/%([!W(
3/0%,*"(E/,8(.*N;(4+L&-(]HF7-(

**(765H<#IJ8K#=L3#=(A=>#** ( ( ( Y*,?*3&'0"";(,0:D$&&*+(

b,b( Louis Antonacci ( 
. ! " #$ B Antonacci
*** ! "#! $ %%#B//,**
\]FI(Q !"(W&9**&(Uc(dG(
c#,8$%J&/%A()@(FHH]](
RHGKGHHK\IG_(
"/0e#%&/%#33$"#B-3/D

Rev. 11/2020

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

LOUIS B. ANTONACCI

Plaintiff

vs.

RAHM ISRAEL EMANUEL, ET AL

Defendant

Civil No. 26-211 (ACR)

Category F

## REASSIGNMENT OF CIVIL CASE

The above-entitled case was reassigned on 7/29/2026 from Judge Loren L. AliKhan to Judge Ana C. Reyes by direction of the Calendar Committee.

(Case Transferred by Consent)

JUDGE RUDOLPH CONTRERAS
Chair, Calendar and Case Management Committee

cc: Judge Loren L. AliKhan & Courtroom Deputy
Judge Ana C. Reyes & Courtroom Deputy
Liaison, Calendar and Case Management Committee

Louis Antonacci <lou@antonaccilaw.com>

## Activity in Case 1:26-cv-00211-ACR ANTONACCI v. EMANUEL et al Order

**DCD_ECFNotice@dcd.uscourts.gov** <DCD_ECFNotice@dcd.uscourts.gov> Wed, Jul 29, 2026 at 4:40 PM
To: DCD_ECFNotice@dcd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Columbia**

### Notice of Electronic Filing

The following transaction was entered on 7/29/2026 at 4:40 PM and filed on 7/29/2026
**Case Name:** ANTONACCI v. EMANUEL et al
**Case Number:** 1:26-cv-00211-ACR
**Filer:**
**Document Number:** 110

**Docket Text:**
**STANDING ORDER. The Court ORDERS the parties to comply with its Standing Order. See Order for details. Signed by Judge Ana C. Reyes on 7/29/2026. (lcacr1)**

**1:26-cv-00211-ACR Notice has been electronically mailed to:**

Christopher W. Mahoney cmahoney@barclaydamon.com, rrwhite@barclaydamon.com

Justin M. Flint flint@ewdc.com, sussman@ewdc.com

David A. Vogel dvogel@cooley.com, efiling-notice@ecf.pacerpro.com, efilingnotice@cooley.com, hlaing@cooley.com, pmckinstry@cooley.com

Jason R Waters Jason.Waters@wilsonelser.com, karen.dillinger@wilsonelser.com

Joshua Aaron Levy jal@levyfirestone.com

Barak Cohen barak.cohen@ashurstperkins.com, DWDC@perkinscoie.com, DocketWDC@PerkinsCoie.com, HMullin@perkinscoie.com, TTobin@perkinscoie.com, nvargas@perkinscoie.com, syarborough@perkinscoie.com

Jonathan Su jonathan.su@lw.com, DCECFNotificationsDC@lw.com, jonathan-su-2554@ecf.pacerpro.com, washington-dc-litigation-services-5378@ecf.pacerpro.com

Jason Alexander Ross jason.ross@jacksonlewis.com, Karrie.Barbaro@jacksonlewis.com, Mary.Irwin@jacksonlewis.com, dcregiondocketing@jacksonlewis.com, jason-ross-6765@ecf.pacerpro.com

Thomas J. Tobin ttobin@perkinscoie.com, SRampolo@perkinscoie.com, jstarr@perkinscoie.com

Ethan P. Fallon efallon@oag.state.va.us

Paul-Kalvin Collins pcollins@baileyglasser.com, gdossantos@baileyglasser.com

Lauren Gilman lauren.gilman@wilsonelser.com, kathrina.lim@wilsonelser.com

Edward Siskel ed.siskel@lw.com

Jeanne Louise Heiser jeannelouise.heiser@jacksonlewis.com, dcregiondocketing@jacksonlewis.com, jeanne-heiser-9549@ecf.pacerpro.com, mary.irwin@jacksonlewis.com

LOUIS B. ANTONACCI lou@antonaccilaw.com

**1:26-cv-00211-ACR Notice will be delivered by other means to::**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**suppressed
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=7/29/2026] [FileNumber=10251050-0
] [29377c85a4e047a83581012e3eb47721db5b6a80a948b831643e60a9277cdc5cb70
65eab5c04f32c73a7c451192b1cf6d5dc0a8c73c19a5ae328973599dfd5ca]]

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

# STANDING ORDER IN CIVIL CASES

## THIS ORDER CONTROLS THIS CASE

To help "secure the just, speedy, and inexpensive determination of" this action, FED. R. CIV. P. 1, the parties are hereby **ORDERED** to comply with the following directions:

### 1. REMOVED ACTIONS

a. A defendant removing an action to this Court must refile any answer filed before removal and promptly ensure that all parties receive a copy of this Standing Order.

b. Any motion pending in the court from which the case is removed at the time of removal must be refiled in this Court by the party seeking relief. *See* FED. R. CIV. P. 81(c)(2). Motions that are not refiled will be deemed withdrawn and not considered.

### 2. TRANSFERRED ACTIONS

a. Any motion pending and unresolved in the court from which the case is transferred at the time of transfer must be refiled in this Court by the party seeking relief ***within seven days*** after the transfer order is filed in this Court's docket. Motions that are not refiled will be deemed withdrawn and not considered.

b. A defendant who did not answer the complaint before transfer must answer or make any motion otherwise authorized under Federal Rule of Civil Procedure 12 ***within twenty-one days*** after the transfer order is filed in this Court's docket.

### 3. COMMUNICATIONS WITH CHAMBERS

Except as authorized in this Order, the parties may not contact Chambers by telephone.

Where a party files an emergency motion after business hours, the party shall notify the Court via email (reyes_chambers@dcd.uscourts.gov) and telephone. If extraordinary circumstances or other emergencies require, counsel may contact Chambers jointly via telephone conference. Chambers will not provide legal advice of any kind.

## 4. INITIAL STATUS CONFERENCE AND ISSUANCE OF SCHEDULING ORDER

a. After an answer is filed, for those cases covered by Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3, the Court will set an Initial Scheduling Conference and order the parties to meet and confer to discuss the matters set forth in Local Civil Rule 16.3(c), and to jointly file a report addressing them.[1] Following the Initial Scheduling Conference, the Court will issue a Scheduling Order governing further proceedings in the case.

b. As part of the joint report, the parties shall propose three alternative dates for a trial in the matter. The Court will set a trial date as part of its Scheduling Order. The trial date *will not be extended* absent extraordinary cause, i.e., the legal equivalent of Armageddon. Counsel should plan accordingly.

## 5. FILING GUIDELINES

a. Courtesy Copies. Counsel for the moving party shall provide Chambers, not the Clerk's Office, with **two** printed courtesy copies, with ECF headers, of any electronic submission that, along with exhibits, numbers fifty (50) pages or more in total length.

i. Briefs:

A. Chambers' copies should not be submitted until briefing is complete and should include any oppositions, replies, or sur-replies. For dispositive motions, the operative complaint should be included.

B. Briefs and exhibits shall be indexed and tabbed for ease of reference. Pages should be **double-sided** and in either black and white or greyscale, unless color would aid the Court's review (e.g., charts and photographs).

C. The Court prefers A5 coil-bound courtesy copies; however, the Court will also accept three-ring binders (no larger than two-inch). *See* Exhibit A for sample images. Before providing any courtesy copy that would exceed three coil-bound copies or three two-inch binders, counsel shall contact Chambers for instruction.

D. *Pro se*, *in forma pauperis*, and incarcerated plaintiffs are excused from providing courtesy copies.

ii. Key Cases: The moving party shall also provide **one** jointly-prepared, three-ring binder comprised of key cases. The cases should be tabbed and in alphabetical order, and the binder should include an index. Pages should be **single-sided**.

[1] The Local Civil Rules are available at http://www.dcd.uscourts.gov/court-info/local-rules-and-orders/local-rules.

b. Exhibit Index. Each submission that attaches more than one exhibit shall contain an index of exhibits. Exhibits shall be edited properly to exclude irrelevant material and to direct the Court's attention to the pertinent portions.

c. Attachments. Each attachment to a filing (e.g., supporting memorandum, statement of material facts, exhibit, affidavit, and proposed order) must be filed as a separate PDF and appropriately labeled in ECF. If the document has its own pagination, it should be a separate attachment.

d. Joint Status Reports. In FOIA cases, if the parties agree on providing updated status reports to the Court, the parties should inform the Court of their schedule. If the Court does not enter an order to the contrary, the parties should proceed to provide status reports per the agreed-upon schedule.

## 6. APPEARANCES BEFORE THE COURT

a. Attorneys are expected to treat ***all*** courtroom staff, opposing counsel, and parties with civility and respect.

b. Absent leave of Court, the attorney who will serve as principal trial counsel must appear at all conferences with the Court. Any attorney appearing before the Court must enter a notice of appearance on ECF.

c. All attorneys appearing before the Court must have authority to bind the party they represent consistent with the proceeding (for example, by agreeing to a discovery or briefing schedule), and should be prepared to address any matters likely to arise at the proceeding.

d. The Court encourages the participation of less experienced attorneys in all proceedings—including pretrial conferences, hearings on discovery disputes, oral arguments, and examinations of witnesses at trial—particularly where that attorney played a substantial role in drafting the underlying filing or in preparing the relevant witness. The Court will be more likely to grant a request for oral argument if doing so would afford the opportunity for a junior attorney to gain courtroom experience.

## 7. MOTIONS – GENERALLY

The parties shall comply with the following instructions when briefing any motion. Motions filed not in compliance with this Standing Order may be rejected by the Court.

a. Format. Motions and submissions should be double-spaced, in 12-point, Times New Roman font, with page numbers and margins of no less than 1 inch, and two spaces between sentences.[2] All citations must include exact page references (pin citations).

[2] The Court is mindful of the raging debate spaces between sentences engenders. *See* James Hamblin, *The Scientific Case for Two Spaces After a Period*, The Atlantic (May 11, 2018). Team Two Spaces champions improved readability and processing speed. *See* Rebecca L. Johnson, et al., *Are two spaces better than one? The effect of spacing following periods and commas during*

Absent leave of the Court, memoranda of points and authorities in support of, and in opposition to, motions may not exceed 45 pages, and reply memoranda may not exceed 25 pages. *See* LCvR 7(e). All electronically filed documents are to be in text-searchable Portable Data Format ("PDF"). Likewise, exhibits that must be scanned because they exist only in paper format should, if possible, be submitted as text-searchable files using Optical Character Recognition ("OCR") technology, available in Adobe Acrobat.

b. Tables. Every memorandum of points and authorities that is ten pages or longer in length must contain a Table of Contents and Table of Authorities, regardless of whether it is filed in support of or in opposition to a motion.

c. Sur-Replies. A party may not file a sur-reply without first obtaining leave of the Court and may do so only upon a specific showing of good cause. Any motion for leave to file a sur-reply shall ***not*** be accompanied by a copy of the sur-reply that the party wishes to file.

d. Supplemental Authorities. A party may bring supplemental authorities to the Court's attention without seeking prior leave of the Court but should refrain from using the submission of supplemental authorities as an opportunity to reargue issues or to respond to arguments made in an opposing brief. Although the submission of supplemental authorities should not be made by letter to the Clerk, but rather in a pleading filed in the usual manner, the parties are otherwise directed to follow the procedures set forth in Federal Rule of Appellate Procedure 28(j).

e. Proposed Orders. A proposed order should be submitted whenever a party requests relief from the Court, including for matters as routine as proposing a new date for a joint status report (with an exception for FOIA cases, as noted above, *supra* Section 5.d). Proposed orders should be filed on the docket as a PDF attachment to the corresponding motion, and counsel must also submit proposed orders to the Court by emailing a **Microsoft Word version of the draft** to reyes_proposedorders@dcd.uscourts.gov. The subject line of the email must include (1) the case name; (2) the case number; (3) the docket number of the corresponding motion; and (4) the title of the order that is proposed as indicated on the Notice of Electronic Filing. Counsel must serve a copy of a proposed order on all other parties by copying them on the email to the Court. Unless the Court directs otherwise, a party must file a motion asking the Court to enter the proposed order. Submitting a draft to the Court's proposed order inbox is not a substitute for a motion. The Court will consider proposed orders when ruling on motions, but will modify (or disregard altogether) such proposed orders as it deems appropriate, even if all parties agree on the proposed order. Proposed orders (such as stipulated protective orders) require Court approval before they are in effect.

---

*reading*, 80:6 ATTENTION, PERCEPTION, & PSYCHOPHYSICS, 1504–11 (2018). Team One Space questions the science and notes that two space use is the monospaced font relic of a bygone era. *See* Angela Chen, *Please don't use this study to justify your horrible habit of using two spaces after periods*, The Verge (Apr. 28, 2018). Personally finding that one space use makes documents impenetrable, the Court sides squarely with Team Two Spaces.

f. Pre-Motion Conference. If a party wishes to file a dispositive motion, it must request that the Court schedule a pre-motion conference. To so request, the moving party shall submit a short notice via ECF, not to exceed **four** double-spaced pages in length, setting forth the basis for the anticipated motion, including the legal standards and the claims at issue. This notice shall not take the form of a letter. Other parties shall respond by filing, within one week, a document of similar length setting forth their anticipated responses to the proposed motion. The Court will review and discuss with counsel the anticipated motion at the pre-motion conference**,** which will take place in-person unless the Court grants permission to hold the conference by video. The parties should contact Judge Reyes' Courtroom Deputy to schedule the conference for a date 1-2 weeks after the response is filed. This requirement shall not apply to incarcerated *pro se* litigants or immigration mandamus cases.

For motions to dismiss under Federal Rule of Civil Procedure 12(b), the filing date of the notice will serve as the operative date for determining compliance with Rule 12's timing requirement.

g. Oral Argument.

i. A party may include a request for oral argument in its motion, opposition, or reply papers and, if this request is granted, counsel will be advised of the argument date. *See* LCvR 7(f). ***See supra ¶ 6(d) for further information concerning oral argument.***

ii. The Court understands that, for reasons passing understanding, not all counsel are fans of the Boston Red Sox. Counsel should be aware, however, that the Court may reference key moments in Red Sox history during oral argument. References may include: (a) Dave Roberts's steal; (b) Carlton Fisk's walk-off homerun; (c) Ted Williams's final at-bat;[3] and, *inter alia*, (d) David Ortiz's "this is our [bleep] city" speech. Any reference to Game 6 of the 1986 World Series is strictly prohibited.

iii. Upon arrival to the courtroom, counsel may share their preferred pronouns with the Courtroom Deputy.

h. Duty to Confer Regarding Non-Dispositive Motions. Local Civil Rule 7(m), which requires counsel to confer before filing a non-dispositive motion and to include in the motion confirmation that such conferral occurred and a statement whether the motion is opposed, will be strictly enforced. *See* LCvR 7(m). The Court expects counsel to exhaust efforts to confer before bringing before it any such dispute. An adequate certificate of conference almost always requires at least two personal communications between counsel. Un-responded to emails are not enough to satisfy counsel's obligations under this Rule. Failure to comply fully with Local Civil Rule 7(m) when

[3] The Court recommends to the reader John Updike's classic, *Hub Fans Bid Kid Adieu*. As Garrison Keillor has highlighted, "No sportswriter ever wrote anything better."

filing a non-dispositive motion will result in the motion being stricken and may also result in further sanctions.

i. Motions to Amend Pleadings. Any amended pleading shall be accompanied by a redline comparison between the original and the amended or proposed amended pleading.

j. Motions for Summary Judgment. This Court strictly enforces Local Civil Rule 7(h) when resolving motions for summary judgment and will "assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h); *see also* FED. R. CIV. P. 56(e).

  i. Pursuant to Local Civil Rule 7(h)(1), the moving party shall include a separate document entitled **Statement of Material Facts Not in Dispute.** This document shall be formatted as a two-column table. In the left column, the moving party shall list in separately numbered rows concise statements of each material fact it contends is not in dispute, supported by appropriate citations to the record. The statement must contain only one undisputed factual assertion per numbered row.

  ii. Following the filing of this document with the Court, the moving party shall promptly provide an electronic copy in editable format to the opposing party.

  iii. In response, the opposing party shall file a separate document entitled **Counter-Statement of Disputed Facts**. The opposing party shall indicate in the right column whether each corresponding fact in the left column is admitted or denied, and for those denied, provide appropriate citations to the record. If the fact is admitted in part and denied in part, the opposing party shall specifically identify which parts are admitted and which are denied, with appropriate citations to the record.

  iv. If the opposing party has additional facts that are not directly relevant to its response to a specific paragraph, it must identify such facts in consecutively numbered rows in the right-hand column at the end of its responsive statement of facts.

  v. At the end of the **Counter-Statement of Disputed Facts**, the opposing party shall list the material facts as to which the opposing party contends there is a genuine issue of material fact for trial in the right column in consecutively numbered rows.

  vi. Following the filing of this document with the Court, the opposing party shall promptly provide an electronic copy in editable format to the moving party.

  vii. In response, the moving party shall file a separate document entitled **Reply to Counter-Statement of Disputed Facts**, responding with appropriate citations in the left column to the additional facts.

viii. The parties are cautioned that failure to comply with this requirement may result in the denial of the motion without prejudice or may result in the Court concluding that facts are not properly controverted and thus undisputed.

k. Motions to Seal. A party must submit a redacted version, suitable for filing on the public docket, of any document that it proposes to seal at the same time the party files a motion to seal. If a party believes that all portions of a sealed document must remain sealed, the party must specifically notify the Court of that belief at the time of filing the motion to seal.

l. Motions to Seal Relying on Protective Orders. Parties may not rely solely on designation under a protective order to file documents under seal. Even when a protective order has been issued in a case, the Court cannot abdicate its responsibility to determine whether filings should be made available to the public, applying the test articulated in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). Before moving to file under seal materials subject to a protective order, the moving party must confer with the opposing party and provide the results of that conferral process in the motion to seal, as well as analysis of the relevant *Hubbard* factors warranting sealing, to ensure that any requested sealing is appropriate under *Hubbard*.

m. *Pro Se* Parties. In a case involving a *pro se* party, electronic filing procedures will be followed by parties represented by counsel only. Absent separate order of the Court, the party appearing *pro se* shall continue to file documents in paper form with the Clerk's Office. Parties represented by counsel must serve documents upon *pro se* parties in paper form.

n. Requests Other Than Ultimate Relief Referenced in Complaint. Requests other than for ultimate relief that are referenced in the Complaint, such as requests for an extension of time to seek class certification or for a temporary restraining order, shall be made in a motion separate from the Complaint. *See, e.g.*, LCvR 75.1(a). Such motions shall be accompanied by a statement of the specific points of law and authority that support the motion, including, where appropriate, a concise statement of facts. LCvR 7(a).

## 8. MOTIONS FOR RECONSIDERATION

Motions for reconsideration are strongly discouraged. The Court will not entertain a motion that (a) reasserts arguments previously raised and rejected by the Court or (b) raises for the first time arguments that should have been advanced in the original motion.

## 9. MOTIONS FOR EXTENSION OF TIME OR RESCHEDULING HEARING

a. Motion Required. Extensions or enlargements of time will be granted only upon motion, ***and not upon stipulation by the parties***. Motions for extensions of time or for continuances of court proceedings are strongly discouraged. Counsel and parties should work within the time frames set by the Scheduling Order.

b. Timing and Content. When good cause is shown, the Court will consider a motion for time extension or continuance of a proceeding that is filed ***at least 4 days prior*** to the deadline and states:

i. the original date of the deadline the motion is seeking to extend or the date of the scheduled hearing the motion is seeking to continue;
ii. the number of previous extensions of time or continuances granted to each party;
iii. the good cause supporting the motion;
iv. the effect, if any, that the granting of the motion will have on existing deadlines;
v. for motions, suggested deadlines (reached in consultation with the opposing party) for the filing of any opposition and reply papers; for continuances, three alternative dates and times that are convenient to all parties; and
vi. the opposing party's position on the motion, including any reasons given for refusing to consent, *see* LCvR 7(m).

c. Opposition. A party opposing a motion for an extension of time or continuance of a scheduled hearing date must file, **by 5:00 PM of the business day after the motion is filed, the party's reasons for opposing the motion**. If no such explanation is provided to the Court within this time frame, the motion shall be deemed conceded. Informing the opposing party that the motion for an extension or continuance is opposed **does not constitute an explanation to the Court**.

d. Untimely motions. Untimely motions for an extension must contain an explanation for the failure to comply with the four-day rule. Untimely motions will be denied absent compelling cause.

## 10. DISCOVERY DISPUTES

a. Telephone Conference. The Court expects the parties to follow the requirements of Federal Rule of Civil Procedure 26 and Local Civil Rule 26.2. Before bringing a discovery dispute to the Court's attention, the parties must confer in good faith in an attempt to resolve the dispute informally. If unable to resolve the dispute informally, the parties shall jointly prepare a ***short*** email to send to the Court, at Reyes_Chambers@dcd.uscourts.gov, requesting a teleconference with the Court and including a clear, concise description of the issues in dispute, an explanation of the parties' positions with citations, and responses to opposing arguments.

b. Leave of Court Required. Before filing a motion relating to a discovery dispute, a party must obtain leave of the Court. Failure to comply with this requirement may result in any such motion being stricken.

## 11. SETTLEMENT

The Court expects the parties to evaluate the case for purposes of settlement. Toward that end, the parties may, by motion, request referral for mediation to a Magistrate Judge or the Court's mediation program. The parties may also seek relief, by motion, from a Scheduling Order for arbitration, early neutral evaluation, or any other form of alternative dispute resolution that may be tailored to the needs of the case. If the case settles, in whole or in part, plaintiff's counsel must promptly file a notice with the Court.

## 12. JOINT PRETRIAL STATEMENT

a. Timing. The parties must file with the Court a Joint Pretrial Statement ***at least 14 days before the final pretrial conference unless the Court sets another filing date***. *See* LCvR 16.5(a).

b. Contents. In accordance with Local Civil Rule 16.5(b), (d), and (e), the Joint Pretrial Statement must include:

i. a one-paragraph joint statement of the case that is appropriate to be read to the jury and describes the nature of the case and the identities of the parties;

ii. the estimated length of the evidentiary portion of the trial;

iii. a statement of claims setting forth each claim a party has against any other party and the statutory basis of the Court's jurisdiction for all causes of action;

iv. a statement of defenses setting forth each defense raised by a party to a claim asserted against it;

v. a list of witnesses (including expert and potential rebuttal witnesses) anticipated to be called by each party, accompanied by a brief description of each witness's expected testimony and the anticipated time for such testimony on direct, followed by specific objections (if any) to each witness;

vi. a list of exhibits that each party intends to offer during trial and separately identifying exhibits that may be offered if the need arises, followed by specific objections (if any) to each exhibit, which exhibit list shall be in a format with six columns, with separate headings for: (1) exhibit number, (2) description of exhibit, (3) marked for identification, (4) admitted in evidence, (5) objection, and (6) witness/date;

vii. a designation of depositions, or portions thereof, to be offered into evidence by each party. To facilitate the Court's review and ensure clarity of the record regarding the Court's ruling on each objection posed by any party to the opposing party's transcript designation or cross-designation, any objections to a designation shall be set out in a chart for each deposition, which chart shall be in a format with eight columns that identifies, for each transcript designation to which objections are lodged, IN TRANSCRIPT PAGE NUMBER ORDER: (1) the sequential number to be associated with the objection; (2) identification of the page and line of the transcript designations offered; (3) the party offering the transcript designation; (4) the party objecting to the transcript designation; (5) the Federal Rule of Evidence relied upon for the objection and a brief explanation by the objecting party; (6) a brief rebuttal by the proponent of the transcript designation; (7) a column, which the parties shall leave blank, with the heading "Sustained"; and (8) a second column, which the parties shall leave blank, with the heading "Overruled";

viii. an itemization of damages setting forth each element of damages and the monetary amount thereof (including prejudgment interest, punitive damages, and attorney's fees) sought;

ix. a description of other relief sought by each party;

x. stipulations concerning authenticity of documents, admissibility of exhibits or testimony, or undisputed facts;

xi. a description of each specific item of demonstrative evidence, physical evidence, or videotape evidence that will be offered at trial and any objections; and

xii. a list of any motions *in limine* that are pending to address issues the parties reasonably anticipate will arise at trial. ***See infra* ¶ 14 regarding the timing for briefing on motions *in limine*.**

c. Jury Cases. In jury cases, the parties must submit as part of the Joint Pretrial Statement:

i. proposed *voir dire* questions that indicate:
   I. the *voir dire* questions on which the parties agree; and
   II. the *voir dire* questions on which the parties disagree, with specific objections noted below each disputed question and supporting legal authority (if any);

ii. a document of joint proposed jury instructions that indicates:
   I. the instructions on which the parties agree;
   II. the instructions on which the parties disagree, with specific objections noted below each disputed instruction in track changes or redline and supporting legal authority (if any); and
   III. the proposed instruction's source (*e.g.*, Standardized Civil Jury Instructions for the District of Columbia) or, for modified or new instructions, the supporting legal authority.

iii. a proposed verdict form, as well as proposed special interrogatories (if any), that includes date and signature lines for the jury foreperson.

d. Non-Jury Cases. In non-jury cases, the plaintiff, or plaintiffs jointly, shall file proposed findings of fact and conclusions of law within one week of the close of evidence, and the defendant, or defendants jointly, shall file proposed findings of fact, which include specification of any facts proposed by the plaintiff that are admitted or controverted, and conclusions of law within one week of the close of evidence, unless otherwise ordered by the Court upon request of the parties.

**13. PRETRIAL CONFERENCE**

a. Attendance. In addition to parties' counsel, all parties or party representatives must be present at the Pretrial Conference.

**14. MOTIONS IN LIMINE.**

a. Timing. Motions *in limine* shall be ***fully briefed at the time of filing of the parties' Joint Pretrial Statement***. Accordingly, the moving party's motion *in limine* and supporting memorandum shall be filed and served upon the opposing party ***at least 21 days*** before the Joint Pretrial Statement is due. The opposition shall be filed and served upon the moving party ***within 14 days*** of service of the motion *in limine*. Any reply shall be due ***within 7 days*** of service of the opposition. Oral argument on motions *in limine*, if necessary, shall occur at the Pretrial Conference.

b. Format. The Court does not accept omnibus motions *in limine*. Parties should file separate motions *in limine* for each discrete issue. The motions should be numbered in sequential order.

## 15. JURORS

a. Confidentiality. The names and personal information of prospective and sitting jurors in any trial of this matter shall be kept confidential and not disclosed outside of open court, except upon order of the Court. *See* D.D.C. JURY SELECTION PLAN ¶ 18.1, available at https://www.dcd.uscourts.gov/jury-selections. Counsel and parties are cautioned that violation of this directive may result in contempt proceedings.

**SO ORDERED**.

*/s/ Ana C. Reyes*
ANA C. REYES
United States District Judge

# Exhibit A

Three-Ring Binder for Key Cases

A5 Coil-Bound for Briefs and Exhibits





Louis Antonacci <lou@antonaccilaw.com>

# Activity in Case 1:26-cv-00211-ACR ANTONACCI v. EMANUEL et al Order on Motion to Dismiss

**DCD_ECFNotice@dcd.uscourts.gov** <DCD_ECFNotice@dcd.uscourts.gov> Wed, Jul 29, 2026 at 4:57 PM
To: DCD_ECFNotice@dcd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Columbia**

## Notice of Electronic Filing

The following transaction was entered on 7/29/2026 at 4:57 PM and filed on 7/29/2026

**Case Name:** ANTONACCI v. EMANUEL et al
**Case Number:** 1:26-cv-00211-ACR
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**MINUTE ORDER denying WITHOUT PREJUDICE Defendants' [22], [28], [38], [41], [44], [46], [49], [51] Motions to Dismiss. The Court ORDERS the parties to comply with its pre-motion conference process set forth in Section 7(f) of the Court's Standing Order. Due to the nature of this case, the Court ORDERS that all Defendants that wish to file a motion to dismiss shall jointly file one notice of their forthcoming joint motion to dismiss. The joint pre-motion notice shall not exceed 8 total pages. To be clear, the Court expects all Defendants that intend to refile a motion to dismiss in this action to confer in submitting one joint pre-motion notice. The Court ORDERS that Defendants shall file any such joint pre-motion notice on or before September 2, 2026.**

**If Plaintiff wishes to respond to Defendants' joint pre-motion notice, he must do so on or before September 9, 2026. Plaintiff's response must not exceed 8 total pages.**

**The parties shall contact the courtroom deputy, Chashawn White (chashawn_white@dcd.uscourts.gov), to schedule a pre-motion conference (PMC) no earlier than September 9, 2026. The Court will take up the parties' other pending motions at PMC. Signed by Judge Ana C. Reyes on 7/29/2026. (lcacr1)**

**1:26-cv-00211-ACR Notice has been electronically mailed to:**

Christopher W. Mahoney cmahoney@barclaydamon.com, rrwhite@barclaydamon.com

Justin M. Flint flint@ewdc.com, sussman@ewdc.com

David A. Vogel dvogel@cooley.com, efiling-notice@ecf.pacerpro.com, efilingnotice@cooley.com, hlaing@cooley.com,

pmckinstry@cooley.com

Jason R Waters Jason.Waters@wilsonelser.com, karen.dillinger@wilsonelser.com

Joshua Aaron Levy jal@levyfirestone.com

Barak Cohen barak.cohen@ashurstperkins.com, DWDC@perkinscoie.com, DocketWDC@PerkinsCoie.com, HMullin@perkinscoie.com, TTobin@perkinscoie.com, nvargas@perkinscoie.com, syarborough@perkinscoie.com

Jonathan Su jonathan.su@lw.com, DCECFNotificationsDC@lw.com, jonathan-su-2554@ecf.pacerpro.com, washington-dc-litigation-services-5378@ecf.pacerpro.com

Jason Alexander Ross jason.ross@jacksonlewis.com, Karrie.Barbaro@jacksonlewis.com, Mary.Irwin@jacksonlewis.com, dcregiondocketing@jacksonlewis.com, jason-ross-6765@ecf.pacerpro.com

Thomas J. Tobin ttobin@perkinscoie.com, SRampolo@perkinscoie.com, jstarr@perkinscoie.com

Ethan P. Fallon efallon@oag.state.va.us

Paul-Kalvin Collins pcollins@baileyglasser.com, gdossantos@baileyglasser.com

Lauren Gilman lauren.gilman@wilsonelser.com, kathrina.lim@wilsonelser.com

Edward Siskel ed.siskel@lw.com

Jeanne Louise Heiser jeannelouise.heiser@jacksonlewis.com, dcregiondocketing@jacksonlewis.com, jeanne-heiser-9549@ecf.pacerpro.com, mary.irwin@jacksonlewis.com

LOUIS B. ANTONACCI lou@antonaccilaw.com

**1:26-cv-00211-ACR Notice will be delivered by other means to::**

Louis Antonacci <lou@antonaccilaw.com>

# Activity in Case 1:26-cv-00211-ACR ANTONACCI v. EMANUEL et al Set/Reset Deadlines/Hearings

**DCD_ECFNotice@dcd.uscourts.gov** <DCD_ECFNotice@dcd.uscourts.gov> Fri, Jul 31, 2026 at 10:46 AM
To: DCD_ECFNotice@dcd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Columbia**

## Notice of Electronic Filing

The following transaction was entered on 7/31/2026 at 10:46 AM and filed on 7/31/2026

| | |
|---|---|
| **Case Name:** | ANTONACCI v. EMANUEL et al |
| **Case Number:** | 1:26-cv-00211-ACR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Set/Reset Deadlines/Hearings: Joint pre-motion notice due by 9/2/2026. (zcdw)**

**1:26-cv-00211-ACR Notice has been electronically mailed to:**

Christopher W. Mahoney cmahoney@barclaydamon.com, rrwhite@barclaydamon.com

Justin M. Flint flint@ewdc.com, sussman@ewdc.com

David A. Vogel dvogel@cooley.com, efiling-notice@ecf.pacerpro.com, efilingnotice@cooley.com, hlaing@cooley.com, pmckinstry@cooley.com

Jason R Waters Jason.Waters@wilsonelser.com, karen.dillinger@wilsonelser.com

Joshua Aaron Levy jal@levyfirestone.com

Barak Cohen barak.cohen@ashurstperkins.com, DWDC@perkinscoie.com, DocketWDC@PerkinsCoie.com, HMullin@perkinscoie.com, TTobin@perkinscoie.com, nvargas@perkinscoie.com, syarborough@perkinscoie.com

Jonathan Su jonathan.su@lw.com, DCECFNotificationsDC@lw.com, jonathan-su-2554@ecf.pacerpro.com, washington-dc-litigation-services-5378@ecf.pacerpro.com

Jason Alexander Ross jason.ross@jacksonlewis.com, Karrie.Barbaro@jacksonlewis.com, Mary.Irwin@jacksonlewis.com, dcregiondocketing@jacksonlewis.com, jason-ross-6765@ecf.pacerpro.com

Thomas J. Tobin ttobin@perkinscoie.com, SRampolo@perkinscoie.com, jstarr@perkinscoie.com

Ethan P. Fallon efallon@oag.state.va.us

Paul-Kalvin Collins pcollins@baileyglasser.com, gdossantos@baileyglasser.com

Lauren Gilman lauren.gilman@wilsonelser.com, kathrina.lim@wilsonelser.com

Edward Siskel ed.siskel@lw.com

Jeanne Louise Heiser jeannelouise.heiser@jacksonlewis.com, dcregiondocketing@jacksonlewis.com, jeanne-heiser-9549@ecf.pacerpro.com, mary.irwin@jacksonlewis.com

LOUIS B. ANTONACCI lou@antonaccilaw.com

**1:26-cv-00211-ACR Notice will be delivered by other means to::**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LOUIS B. ANTONACCI,**<br>Plaintiff<br>**v.**<br>**RAHM ISRAEL EMANUEL et. al.**<br>Defendants. | **Case No. 1:26-cv-00211-ACR** |

**PLAINTIFF'S MOTION FOR RECONSIDERATION**

Plaintiff Louis B. Antonacci ("Antonacci") hereby files this Motion to Reconsider this Court's Orders denying without prejudice defendants' motions to dismiss this case, ordering the defendants' to file a join pre-motion notice, and setting deadlines, and states as follows:

Antonacci respectfully requests this Court reconsider its orders asking the parties to reargue the motions that were fully briefed four months ago. First, it causes an unnecessary and duplicative delay that unfairly prejudices the plaintiff. Second, it would allow some defendants to bring motions they should no longer be allowed to bring under Rule 12(b), such as the Virginia State Bar and Richard Johnson, who moved to dismiss based on lack of personal jurisdiction and sovereign immunity alone. Third, it would allow a party in default, BEAN LLC d/b/a Fusion GPS, to participate in such a motion, which it has no right to do. And finally, this Court's requirement that the defendants' move jointly to dismiss Antonacci's complaint expressly concedes the thrust of his allegations: These Zionist defendants and their Zionist lawyers, many of whom lamely claim in their respective motions that they do not even know each other, are, in fact, unified in their fanatical interest to destroy the plaintiff.

This Court's standing order states that it seeks "[t]o help 'secure the just, speedy, and inexpensive determination of' this action." (Dkt. 110, p. 1, citing Fed. R. Civ. P. 1.) This Court's orders of July 29 and 31, 2026, could hinder those laudable goals.

Antonacci filed his complaint on January 23, 2026. In her minute order of February 18, 2026, District Judge AliKhan relieved the defendants of any obligation to answer the complaint until all defendants were served. On February 23, 2026, District Judge AliKhan lifted her stay and ordered the defendants to file any motions to dismiss by March 16, 2026, with Antonacci's responses due by March 30, 2026. All motions to dismiss were fully briefed on April 6, 2026. And Antonacci must also point out that it was no small feat for a solo practitioner to respond to eight motions to dismiss, brought under five federal rules, in just two weeks. But he did so thankfully.

Having heard nothing from the Court, on July 28, 2026, Antonacci filed a motion to expedite the proceedings. (Dkt. 108.) On July 29, 2026, this case was transferred from Judge AliKhan to this Court. (Dkt. 109.) In its minute order of July 29, 2026, this Court denied each of the defendants' motions to dismiss, without prejudice, ordering them to file a joint pre-motion notice by September 2, 2026. Presumably that will precipitate a duplicative round of briefing on motions that have already been fully briefed. The undersigned cannot see how that could facilitate the just, speedy, and inexpensive determination of this action.

This is not an academic exercise for the plaintiff. Like this Court, Antonacci is an attorney committed to the rule of law who, through hard work, integrity, and demonstrated competence, has earned his right to practice law in this country. These defendants are actively disenfranchising him of that right. Their primary tactics are duress through endless delay. This Court's orders are helping them employ those tactics.

Second, the Virginia State Bar and Richard Johnson have not moved to dismiss based on Antonacci's failure to state a claim against them. They should not be allowed to join such a motion now. This is particularly true here because, like the Parrish Defendants and Storij, they could not possibly argue that Antonacci's claims are time-barred, as many of the other defendants have.

Thirdly, Fusion GPS is presumably allowed to participate in the joint notice, despite their being in default. Antonacci objects to any such participation, and reiterates his request that sanctions be imposed on their counsel for his express misrepresentations to this Court.

Finally, while it is no secret that the defendants are operating under a joint defense agreement, as they have in every case Antonacci has brought against them, this Court's orders expressly recognize these defendants' unified interests, as a criminal enterprise, against this plaintiff. If it is really that obvious, then Antonacci respectfully submits this Court should deny their motions and move this case forward so that justice may be served and Americans could regain some confidence in their judiciary. (Dkt. 68-7.)

**WHEREFORE**, for the reasons stated herein, Plaintiff Louis B. Antonacci hereby requests this Court **RECONSIDER AND VACATE** its Minute Orders of July 29 and 31, 2026, and enter orders **DENYING WITH PREJUDICE** Defendants' Motions to Dismiss (dkt 22, 28, 38, 40, 41, 44, 46, 49, 51), Motions for Sanctions (73, 82), and Motion to Set Aside Default (dkt. 93), and **GRANTING** Plaintiff's Motions for Reconsideration (dkt. 33, 35), Motion for Leave to Serve Requests for Admission (dkt. 34), Motion for Service by U.S. Marshals (dkt. 37), Motions to Take Judicial Notice and Amend/Correct (dkt. 68, 72, 98, 105), Motion to Compel Fusion GPS to Answer Interrogatories (dkt. 96), and Motion to Impose Sanctions on Fusion GPS counsel Josh Levy (dkt. 102).

**(765I<#*JKJ96#L3#=A=># (** ( ( =*,C*3&'0"";(,0:E$&&*+(

U,U Louis Antonacci ( (
. ! " IS B. ANTONACCI
*** ! "#! $ %%&#B//,**
fNO_(a"(M&9**&(Ti(j^(
i#,8$%A&/%F()>(O\\NN(
e\^G^\\Gf_^g(
"/0k#%&/%#33$"#B-3/E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LOUIS B. ANTONACCI,**<br>Plaintiff<br>**v.**<br>**RAHM ISRAEL EMANUEL et. al.**<br>Defendants. | **Case No. 1:26-cv-00211-ACR** |

**PLAINTIFF'S MOTION TO AMEND COMPLAINT AND ADD DEFENDANTS**

Plaintiff Louis B. Antonacci ("Antonacci"), pursuant to Rules 15(a)(2) and 21, and Local Rule 15.1, hereby files this Motion to Amend Complaint and Add Parties (dkt. 112-1), and states as follows:

This Motion seeks to add parties and allegations arising out of facts Antonacci has learned through his litigation in Alexandria and Arlington County Circuit Courts against the hit-and-run driver who tried to kill him on June 18, 2024, one week after he perfected his appeal of the Eastern District of Virginia's dismissal of his 2024 case against this criminal enterprise. (Dkt. 1 ¶¶500-14.) Through the repeated criminal acts of fraud perpetrated by the defendants in that case (identified below), and their attorney, Jeremy Tishler, Antonacci believes that Sergio Palma's wife, Sonia E. Vides, a Guatemalan immigrant, was driving the vehicle on June 18, 2024. (Dkt. 112-1 ¶¶511-50.) Both Tishler and the insurer of the vehicle, National General Insurance Company, have been working on behalf of this criminal enterprise to prevent Antonacci from identifying and obtaining jurisdiction over Vides. *Id*.

At the outset, Antonacci will state plainly that he saw the older, thin, blonde or white-haired woman driving the car on June 18, 2024. (Dkt. 112-1 ¶512.) Her car was stopped behind the

crosswalk at the red light, and when Antonacci entered the intersection at 20mph, she immediately raced into the crosswalk and stopped again, forcing Antonacci to crash into her vehicle or the curb. When Antonacci arose from the crash, she looked at him, threw her hands up, and drove away. (Dkt. 112-1 ¶¶511-13.) Antonacci has a witness who will corroborate both his version of the events and that there was a woman driving the car. (Dkt. 112-1 ¶513.)

Sergio Palma and Alicia Martinez are the registered co-owners of the vehicle. (Dkt. 112-1 ¶527.) National General Insurance Company produced a liability policy for the vehicle during the period in question. (Dkt. 112-1 ¶528.)

Antonacci traveled this bike route two or three times a week while living at Carlyle Square in Alexandria, Virginia, so he believes that some Defendants, likely Richard Wheeler on behalf of Storij, who is still with Army Intelligence, were monitoring Antonacci's route through drone surveillance, and coordinated the attack with Vides. (Dkt. 112-1 ¶¶511-15.) As Antonacci further points out in the Amended Complaint, in an interview with the Wall Street Journal published on June 3, 2026, Amaryllis Fox Kennedy resigned from the federal Office of Management and Budget over her concerns about the lack of oversight over the U.S. Intelligence Community. She expressly stated that the Intelligence Community's access to effectively unlimited funding and no oversight results in "domestic political activities that no American would condone." Philip Wegman, *The Kennedy Who Says She Left the White House Over Concerns About CIA Spending*, Wall St. J., June 3, 2026, available at https://www.wsj.com/politics/national-security/the-kennedy-who-says-she-left-the-white-house-over-concerns-about-cia-spending-1d49ffe9?msockid=0c5fbcd7e21f62f91b96ab12e3b3633d. (Dkt. 112-1 ¶515.)

It is also illuminating to note that National General is a wholly-owned subsidiary of Allstate Insurance Company ("Allstate"), where James Parrish's father worked for 30 years as in-house

counsel. (Dkt. 112-1 ¶¶18, 19, 547.) National General and Allstate are both Illinois for-profit corporations. James Parrish was a summer associate in the Northern Virginia office of Watt Tieder Hoffar & Fitzgerald LLP in the mid-nineties, and because his performance did not merit an employment offer, he has spent his career as a personal injury lawyer who puts insurers' interests before his clients'. Like Doughboy Baker said: "Ho's gotta eat, too." *Boyz n the Hood* (1991).

Besides conspiring to attempt Antonacci's murder as perpetrators and accomplices after-the-fact, in seeking to hide Vides the new defendants have perpetrated witness tampering, perjury, and falsification of court documents in violation of 18 U.S.C. §1512, as well as innumerable acts of wire fraud. (Dkt. 112-1 ¶¶557.r-w, 562, 579, 593, 620-25, 660-61.) Specifically, Sergio Palma gave a false statement, utilizing interstate wires, to National General stating that he was driving the vehicle on June 18, 2024. (Dkt. 112-1 ¶535.) He denied fault and claimed that Antonacci somehow "mistreated him" after he was nearly paralyzed and killed and the driver immediately fled the scene of the crime. (Dkt. 112-1 ¶¶535-36.)

In addition, Tishler moved to Quash service of process on Vides, who lives with her husband, Sergio Palma, and daughter, Heidi Palma Vides, and grandson, Nahun Aleman Palma, in Alexandria, Virginia, on the basis that she has moved back to Guatemala. (Dkt. 112-1 ¶543.) Tishler provided no evidence with that Motion, and when Antonacci requested evidence, none was provided. *Id*. Tishler delayed the hearing on his Motion to Quash, which Antonacci had to notice for hearing. (Dkt. 112-1 ¶544.)

On the day of the hearing, August 21, 2026, Tishler presented Antonacci and Arlington County Circuit Court Judge Louise DiMatteo with a forged affidavit, that Tishler had signed, that purported to be a sworn statement, by Sergio Palma, that his wife had moved back to Guatemala on September 17, 2024. *Id.* When Antonacci pointed out that the affidavit was neither dated nor

notarized, and that Tishler clearly had signed it rather than the attestor, Judge DiMatteo agreed there was no evidence that service on Vides should be quashed. (Dkt. 112-1 ¶545.) Antonacci offered to allow Palma to testify at a later hearing, as Antonacci had suggested for that hearing, but Tishler instead withdrew Vides's motion. *Id*.

Nonetheless, Tishler had the audacity and myopia to later serve Antonacci with interrogatory responses, signed by Tishler, that still claim Sonia Vides lives in Guatemala. Yet he did not provide her address. (Dkt. 112-1 ¶546.) Tellingly, Tishler also claims, on behalf of Sergio Palma, the alleged driver, that Palma's employment history for the past five years is not relevant. (Dkt. 112-1 ¶546.) They clearly do not want Antonacci to be able to prove that Palma was probably at work at 2:14pm on Tuesday, June 18, 2024. *Id*.

And that's not all. Defendant Alicia Martinez, who Antonacci deposed mostly to see whether she was the driver, which she is not, perjured herself numerous times, at the direction of Tishler, during her deposition of June 4, 2026. (Dkt. 112-1 ¶¶538-41.) Specifically, she repeatedly denied ever filing a claim under the National General policy until Antonacci finally played an audio recording of her claim statement to National General. *Id*. Her testimony as to her residence over the past five years was similarly contradictory, as she seemed to try to distance herself from the Palma family, despite having been married to Sergio Palma's son, Julio Palma, whom she claimed she had divorced just the month prior. *Id*. And despite not living at the address where the Alexandria sheriff posted service on her – the same address where Sergio, Heidi, and Sonia Palma-Vides reside – Martinez was allegedly made aware of the lawsuit because Heidi Palma forwarded her a copy of the complaint. *Id*. And yet Tishler never moved to quash service on Martinez. *Id*.

Martinez nonetheless claims she knows nothing about the lives of her recently-divorced in-laws, except that maybe Sonia Vides left her husband, daughter, and grandson in Alexandria to

relocate back to Guatemala alone for some reason. *Id*. Stay tuned next week for more *La Casa de Mentiras*, only on Telemundo.

On May 19, 2026, Antonacci filed his own claim under National General's policy and substantiated his damages. (Dkt. 112-1 ¶538.) Antonacci further notified National General that Sergio Palma's statement that he was driving the vehicle is false, and he further notified them of Martinez's perjury and forwarded a copy of the transcript. *Id*. Antonacci has received no response from National General. *Id*.

On August 3, 2026, Antonacci served a subpoena duces tecum on National General seeking documents related to the crash, the complaints, and the defendants' claims under the policy. (Dkt. 112-1 ¶549.) On August 17, 2026, Tishler moved to quash that subpoena with nothing but mindless drivel. *Id*. While Tishler was appointed by National General, he does not represent them and had previously indicated that if Antonacci served them with a subpoena, then he would not move to quash it. *Id*.

It is clearer now more than ever that Parrish, who was referred to Antonacci by a Board Member of the Virginia State Bar, Bradley Marshall (dkt. 1 ¶506), was aware, through his connections both to Marshall and to Allstate and National General, that Sonia Vides tried to murder Antonacci on June 18, 2024, and was referred to Antonacci by the VSB to delay Antonacci's state court suit against Vides's husband, a registered owner of the vehicle, as long as possible, so as to prevent the identification of Sonia Vides. (Dkt. 112-1 ¶¶511-52.)

After Antonacci fired Parrish, he had default judgment in the amount of $499,000 entered against Sergio Palma. One week later, because Parrish waited six months to request records from the Virginia DMV, Antonacci learned both that Palma's registered address is in Alexandria, which

was not where service was posted on Palma, and that there is a registered owner of the vehicle who is female. (Dkt. 112-1 ¶527.)

Antonacci vacated the judgment against Palma because the complaint lacked of effective service of process, despite Antonacci telling Parrish that he should serve Palma personally because his address in Arlington had not been confirmed current. (Dkt. 112-1 ¶529.) Antonacci then moved for leave to amend the complaint to add Martinez, the other registered co-owner the Virginia DMV identified at the same address as Palma, but Arlington Circuit Court Judge Daniel T. Lopez struck out the provision in Antonacci's order granting leave to add her as a party. (Dkt. 112-1 ¶¶529-30.) So Antonacci pursued Martinez separately in Alexandria, where the sheriff posted service at the same address as Palma. (Dkt. 112-1 ¶531.) Tishler was appointed as defense counsel and entered his appearance on behalf of Martinez, despite service not being effective according to her testimony. (Dkt. 112-1 ¶534.)

After Antonacci deposed Martinez and determined she was not the driver based on her physical appearance, he transferred that case to Arlington, served Palma with an amended complaint, and filed and served complaints on Sonia Vides and her daughter, Heidi. Those cases were consolidated on July 31, 2026. (Dkt. 112-1 ¶¶539-43.)

So now that Parrish is out of the picture, Tishler has stepped in on behalf of Allstate, National General, and this criminal enterprise to prevent Antonacci from obtaining testimony from Vides. He went so far as to forge an affidavit with information he knew to be false to that end. He tampered with a witness by advising Sergio Palma to implicate himself in a false statement to National General, and by advising Martinez to deny under oath that she had ever filed a claim with them.

W/&#@"W#&$/%V"*%*:#"S(+Y0,&*M*%%$)*;8( ?#,(%*L*:(*#3?*+(0&&/2%&/%#33$(

*L#"0#&&(?*C*:$&/(( B#:&$%*]%+e/:(#"C#S,(3"#$C,-2%+(G?*%2%&/%#33$#3?*+(0&&/(?*:8(

,?*(G#,(3/C9"*&*"A($,$%&*:*,&$*%&(?*C*:$&/(( 2%&/%#33$S(0,*(#%+(&?*(#3&&?#2%&/%#33$S,(

+#C#J*,( #:*(,0@,&#%&$#&/*08(*%&*+8%+(C#&&*/( 90@"$3(3/:+( L$,(#(L$,(&?*(+*'#0"&(

Y0+JC*%&(&*:*M#%0#:A8(>O>`-2%+(*L*%#'&*:2%&/%#33$('/G*+( 09(G$&?G%(3"#$C(%+(

/"*:*+( *L$+*%3*( &?*$3"#$C#%&'$S(,*( ,&#&*C*%#&(+0*:Y0:A(8%+(#:+( *L$+*%3*( ?$,(

+#C#J*,8(W#&$/%V"*%*:#"(#,(C#+*(%/(*"/:&(&/(3/CC0%$3#&*$&2%&/%#33$(9*:'/:C( #(@/%#(

'$+*($%L*,&$J#&$/%($%&/(&?$,(C#&&*:-

2%&/%#33&(?*:*'/:*(,**E,( &/(#C*%+(?$,(3/C9"#$%&(%+(#++(R$+*,8(#"C#8(B#:&$%*]8(

W#&$/%V"*%*:#"&("",&#&*8(%+($,?"*:S,( "#G('$:C8(.*L$%*D#:$&&8(&?$,#3&$/%-(( *#,*(/'(

:*'*:*%3*8(2%&/%#33$(?#,($%3"0+*+(#(@"#'$(9%9(/*+(#C*%+*+(3/C9"#$%&-(4)E&-(<<>F>-7(

**D%&+&.-+&** 8(:( &?*(#,/%,(,&#&*?*(*$%8(#$%&$/0$,( 1-(2%&/%#33$(*@A(_0*,&,(

&?$D/0:&( **E+*"$#** &?$C/&$/%&#**0&"(#** **,-0B/*!"$#** #%+*(**(#** **(&.&"(*"$)#** **)-"!*#**

**&2F!(&)3#)&+E!-#** **+2#B*/0*3#** **/!,!*#** **0*+$!"&G** **?E'*,%!3#** **"*$!-"*/#** **E&"&+*/#**

**!")'+*",&#** **,-0B*"H3#** **//)$*$&#** **!")'+*",&#** **,-0B*"H3#** **7IJ#/&F!"&,*+!$*#**

**B//,#** &/(&?$,(#3&$/%8(#,(,*&('/:&?($%(&?*(2C*%+*+(3/C9"#$%&8($%3"0+*+(?*:*G$&?-

**(765J<#*KLK96#M;3#=A=>#** ( ( ;*,9*3&'0""A(,0@C$&&*+(

e,( *Louis Antonacci* ( (

. ! "IJS B. ANTONACCI

*** ! "#! $ %%&#B//,**

P<>`(N"(U&:**&(W[(o\(

[#,?$%J&/%8()D(>OO<<(

^O\F\OOFP`\=(

"/0p#%&/%#33$"#G-3/C

**/-,*/#+'/&#NOPQ#,&+$!.!,*$!-"**

( X(?*:*@A3(*:&$'A&?#&X(3/%'*::*+( G$&?#(""()*'*%+#%&&/(+*&*:C$%G(?*&?*:(&?*:*$,( /99/,$&$/%&/(&?*(*"$*'(/0J?&-(X(0:&?*:3(*:&$'A&?#&("(*'*%+#%&&?#L*$(%+$3#&&*?*(A99/,*( &?$,( B/&$/%-(

**(765J<#*KLK96#M;3#=A=>(#** ( ( ;*,9*3&'0""A(,0@C$&&*+(

e,e( Louis Antonacci ( (
. ! "#$%- 2 &"!"&( ( (#
*** ! "#! $ %%&#B//,**
P<>`(N"(U&:**&(W[(o\(
[#,?$%J&/%8()D(>OO<<(
^O\F\OOFP`\=(
"/0p#%&/%#33$"#G-3/C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LOUIS B. ANTONACCI,**<br>Plaintiff<br>**v.**<br>**RAHM ISRAEL EMANUEL et. al.**<br>Defendants. | **Case No. 1:26-cv-00211-ACR** |

**PLAINTIFF'S SECOND MOTION FOR RECONSIDERATION OF COURT'S MINUTE ORDERS AND OBJECTIONS TO THIS COURT'S STANDING ORDER AND MOTION TO MODIFY**

Plaintiff Louis B. Antonacci ("Antonacci") hereby files this Second Motion for Reconsideration and Objections to District Judge Ana C. Reyes's Standing Order and Motion to Modify, and states as follows:

On August 3, 2026, Antonacci moved to reconsider this Court's orders minute orders of July 29 and 31, 2026, whereby this Court ordered the defendants to file notices of their intent to file motions that have already were fully briefed five months ago. (Dkt. 111.) The Defendants did not respond to that motion and this Court has not ruled on it. This Court's Standing Order imposes requirements on the parties that are inconsistent with the Federal Rules of Civil Procedure because it imposes a private conference, i.e., the "pre-motion conference" or "PMC", that appears nowhere in the federal rules. The PMC is to take place after the defendants file their notice of intent to file a motion to dismiss, but before the actual motions are filed.

In addition, this Court's Minute Order of July 29, 2026, indicates this Court will rule on the parties' other pending motions at the PMC, a private, closed-door meeting that will take place

,/L*&$L*(#'&*9(*R&*L:*9(NEIJIK-(2%&/%#33$(*P,(&/(#M#$8$L,*""(&/(8$,(9$B8&(R0:"$3(8*#9$%B,(

$%(&8$L(#&&*9(2%&/%#33$(@*3&&/(#%;(R9$M#&0*($%B,(%+(,P,(&8$(C/09&(&/(9*3/%,$+*9(&/(9+*9(

,**P$%B(&/($LR/,*(,038(R9$M#&*(8*#9$%B,-(Q8$,($,(#(R0:"$3(L#&&*9(/'(R0:"$3(3/%3*9%-(

2%&/%#33$(*,(%/&(3/%,*%&(&/(L*+$#&$/%(#%;(*&&"*L*%&(*9*%3*F($&#(@0+B*(2%;(

L**&$%B(&8*(R#9&$*,(/9*( &8$(C/09&E(,$+*,(#(,38*+0"$%B(/%'*9*%3*(,8/0"+(:*(#&(R0:"$3(

8*#9$%B(E(&8$%+(3"/,*+(+//9,-( Q8$,(8/0"+(%/&(90"*(/%(&8*(R#9&$*,(L/&$/%,($%(#(3"/,*+U+//9(

8*#9$%B(2%&/%#33$(F$,8*,(&/(#M#$8$L,*""(/'( 8$,(9$B8&(#(R0:"$3(8*#9$%B(2%&/%#33$(R*3$'$3#"";(

/:@*3&,(&/(&8*,*(9*S0$9*L*%&,(#(8#M$%B(:#,$,(0%+*9(&8*(+*9#"(90"*,(#%+(*%;$%B(8$L(8$,(9$B8&(

&/(R0:"$3(8*#9$%B,(:*'/9*(&8$,(C/09&-((

**G%&+&.-+&** E(9(&8*(*#,/%,(&#&*+(9*$%(E(#$%&$/0$,( 1-(2%&/%#33$(9*:;(9*S0*,&,(

&8#&(&8$(C/09&(=(?)VTW( $&,(&#%+$%B(*9(4+P&(-OJ7E(%+$&,(=($%0&*9(+*9('( A0";(INEIJIKE(&/(

#""/F(&8*(R#9&$*,(R0:"$3(8*#9$%B,(&8*(&$%/&$3*,(( $%&*&(&$"*(L/&$/%,(&/(+$,L$,,(E(F8$38(

2%&/%#33$(3/%&$%0*,(&/(/:@*3&(&/(9*#,&";(R9*@0+$3$#"(&/((R"#$%&$''(8$,(&/(:#(&$,(+*9(&8*(

T*+*9#"(>0"*,(/'(C$M$"(!9/3*+09*E(#%+(#(R0:"$3(8*#9$%B(/%(&8*(L/&$/%,(R*%+$%B(:*'/9*(&8$,(C/0

**(765H<#*IJI96#K;3#=A=>##** ( ( >*,R*3&'0"";(,0:L$&&*+(

X,(X *Louis Antonacci* (

. ! "JIS B. ANTONACCI
*** ! "#! $ %%&#B//,**
YOIK(Z(<&9**&([\(]H(
\#,8$%B&/%E()C(IJJOO(
^JHUHJJUYKH_(
"/0`#%&/%#33$"#F-3/L

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LOUIS B. ANTONACCI,**<br><br>***Plaintiff*,**<br><br>**v.**<br><br>**RAHM ISRAEL EMANUEL, et al.,**<br><br>***Defendants*.** | **Civil Action No.: 1:26-CV-00211-ACR** |

**<u>DEFENDANTS' JOINT PRE-MOTION NOTICE TO FILE A MOTION TO DISMISS</u>**

Defendants, by and through undersigned counsel, and pursuant to § 7(f) of this Court's Standing Order in Civil Cases and its July 29, 2026, Minute Order, hereby file this Joint Pre-Motion Notice to File their Joint Motion to Dismiss.

This notice sets forth the bases for the anticipated motion to dismiss, including the legal standards and arguments at issue. Defendants anticipate making several arguments, many of which are shared in common.[1]

## I. Defendants Anticipate Arguing Lack of Jurisdiction and Improper Venue Pursuant to Rule 12(b)(1).

### A. Defendants Anticipate Arguing Lack of Subject Matter Jurisdiction.

Multiple Defendants anticipate arguing that Plaintiff's Complaint is wholly insubstantial and frivolous and should, therefore, be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Plaintiff's Complaint alleges that Defendants conspired as a "criminal Zionist enterprise," to destroy Plaintiff and his livelihood. Plaintiff's Complaint mirrors two earlier complaints he filed in Illinois and Virginia, which the Seventh Circuit and the Eastern District of

[1] In addition to joining the parties' forthcoming Joint Motion, Defendant Bean LLC d/b/a Fusion GPS has moved to set aside the Clerk's Entry of Default as to Bean LLC, on grounds that the default was not willful, that Plaintiff would not be prejudiced by a set aside of the default, and that Bean LLC has meritorious defenses that it will be raising in the Joint Motion. *See* ECF No. 93 (moving to set aside entry of default at ECF No. 63).

Virginia concluded were "legally frivolous" and "wholly insubstantial" because "they are so unsupported by any plausible detail as to be preposterous" and, thus, deprived the court of subject matter jurisdiction. *Antonacci v. City of Chicago*, 640 F. App'x 553, 555-557 (7th Cir. 2016); *Antonacci v. Emanuel*, 2024 U.S. Dist. LEXIS 107279, *7 (E.D. Va. May 23, 2024). Plaintiff's frivolous Complaint presents no federal question suitable for decision and should be dismissed under Fed. R. Civ. P. 12 (b)(1) for lack of subject matter jurisdiction.[2] *See Page v. Raimondo,* 2024 U.S. Dist. LEXIS 129362, *6 (D.D.C. July 23, 2024); *Carmichael v. Pompeo*, 486 F. Supp. 3d 360, 367 (D.D.C. 2020).

As to the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, Courts have emphasized that federal question jurisdiction requires well-reasoned, non-frivolous pleading. *Republic of Kazakhstan, v. Stati*, 380 F. Supp. 3d 55, 61-62 (D.D.C. 2019), a*ff'd sub nom. Republic of Kazakhstan, Ministry of Just. v. Stati*, 801 F. App'x 780 (D.C. Cir. 2020) (holding that "far-fetched theory of RICO liability lack[ed] legal support" and noting that RICO claims based on mail and wire fraud must be "particularly scrutinized").

**B. Descrybe, LLC and the VSB Defendants Anticipate Arguing Lack of Personal Jurisdiction and Improper Venue.**

As to Defendants the Virginia State Bar ("VSB") and Richard W. Johnson, Jr., Assistant Bar Counsel ("Johnson"), (collectively "VSB Defendants") and Descrybe, the Complaint identifies no basis to assert personal jurisdiction. The VSB Defendants have no alleged contacts with D.C. sufficient to invoke specific or general personal jurisdiction. The only contact alleged is that the VSB Defendants allegedly transmitted a notice of Plaintiff's law license suspension in Virginia to the D.C. Bar Association.

[2] Federal subject matter jurisdiction rests on federal question jurisdiction. Diversity jurisdiction is not alleged in the Complaint.

Descrybe is a Delaware LLC headquartered in Massachusetts with no offices, targeted advertising, contracts, or other purposeful contacts in the District of Columbia, so neither D.C.'s domicile-based general jurisdiction statute (D.C. Code § 13-422) nor its long-arm statute (D.C. Code § 13-423) is satisfied as to Descrybe. The Complaint also fails to establish the "minimum contacts" that federal due process requires, and so exercising jurisdiction also fails constitutionally for these defendants. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

Further, venue is improper. Neither Descrybe nor the VSB Defendants reside or have offices in D.C., and the Complaint does not allege that any substantial part of the events giving rise to the claim occurred in D.C. Further, neither Descrybe nor the VSB Defendants have been served or found in D.C., have an agent there, or transact business there. *See Nader v. Sec'y of the Air Force*, 648 F. Supp. 3d 64, 68 (D.D.C. 2022) (where "[t]he complaint simply states that venue is proper . . . without any additional supporting factual allegations," a "bare assertion is insufficient to . . . establish that venue is proper").

### C. The VSB Defendants Anticipate Arguing Immunity

As an agency of the Commonwealth of Virginia, the VSB and their agent, Johnson, who was at all times acting in his official capacity, are immune from suit in the federal district courts on the basis of sovereign immunity, as codified in the Eleventh Amendment. Furthermore, Defendant Johnson has immunity based on the doctrine of prosecutorial immunity. Thus the Complaint should be dismissed pursuant to Rule 12(b)(1).

## II. Defendants Anticipate Arguing That the Complaint Fails to Comply With Rule 8 of the Federal Rules of Civil Procedure.

Multiple Defendants anticipate arguing that Plaintiff's Complaint violates Rule 8 because it is excessively long, rambling, and disjointed and impermissibly lumps all Defendants

collectively together without distinguishing each Defendant's actions. *See Whaleco Inc. v. Shein Tech. LLC*, 2025 U.S. Dist. LEXIS 193394, *19 (D.D.C. 2025) (plaintiff flouts Rule 8 "by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct");*Cai v. United States*, No. CV 23-2235 (LLA), 2025 WL 2758985, at *1 (D.D.C. Sept. 26, 2025) (citation modified) (explaining "[a] complaint that is 'excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material,' or one that 'contains an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments,' fails to meet Rule 8's pleading standards[]").

## III. Defendants Anticipate Arguing That the Complaint Fails Rule 9(b)'s Pleading Standard.

Defendants anticipate arguing that Plaintiff has failed to plead with particularity, as required for his claims sounding in fraud under Rule 9(b). For example, Plaintiff asserts, among other things, that wire fraud and mail fraud were predicate acts for the application of RICO. *See* Compl. ¶¶ 523–524; *see also* Compl. at 4 (claiming the alleged "criminal enterprise" had committed "innumerable predicate acts."). Plaintiff was therefore required to allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Instead, Plaintiff has provided no facts, but only conclusory allegations.

## IV. Defendants Anticipate Arguing That Plaintiff Failed to State a Claim Upon Which Relief Could be Granted Pursuant to Rule 12(b)(6).

Plaintiff's Complaint alleges five Counts including, (i) violation of the Racketeer Influenced and Corrupt Organizations Act, (18 U.S.C. §§ 1962 (a), (b) & (c)), (ii) conspiracy to violate RICO (18 U.S.C. § 1962(d)), (iii) conspiracy to violate the D.C. Antitrust Act (D.C. Code

§§ 28-4502 & 4503), (iv) conspiracy to interfere with civil rights (42 U.S.C. § 1985), and (v) violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) by Defendant Storij, Inc.

**A. Count One: Racketeer Influenced and Corrupt Organizations Act and Count Two: Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act Against All Defendants.**

Defendants anticipate arguing that Count One and Count Two of Plaintiff's Complaint are barred by RICO's four-year statute of limitations. *Youkelsone v. FDIC,* 910 F. Supp. 2d 213, 226 (D.D.C. 2012). For example, Plaintiff filed his initial complaint in April 2015 against the Perkins/Seyfarth Defendants, alleging a global conspiracy virtually identical to the conspiracy later described in the Eastern District of Virginia case and the present matter. *See* Compl. ¶¶ 251, 264-280. Additionally, the Complaint alleges that Plaintiff knew in June 2021 of the purported "AECOM Fraud," the RICO predicate act allegedly perpetrated by the Lane Defendants. *See* Compl. ¶¶ 337-419. Because these actions took place more than four years ago, any allegations related thereto are time-barred.

Plaintiff's RICO claim should also be dismissed because he fails to plead a cognizable enterprise distinct from its members, fails to plead Defendants were each part of an enterprise, fails to plead with the requisite particularity predicate acts, let alone the requisite two predicate acts for each Defendant, or a pattern of racketeering activity, and fails to allege facts showing that Plaintiff's damages were proximately caused by any alleged predicate acts. *Cent. Am. Bank for Econ. Integration v. Mossi*, 2025 U.S. Dist. LEXIS 189018, *36 (D.D.C. Sept. 25, 2025); *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 77-8 (D.D.C. 2019); *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 12 (D.D.C. 2014).

Since Plaintiff failed to plead a RICO violation under 18 U.SC. §§ 1962(a)-(c), his RICO conspiracy claim under Section 1962(d) must also fail because there was no violation in which any

Defendant could have conspired. *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 16. Further, Defendants anticipate arguing that Plaintiff failed to plausibly allege that Defendants knew of a RICO conspiracy, agreed to join or, further a RICO conspiracy, or participated in any kind of illegal agreement. *Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 163 (D.D.C. 2016).

**B. Count Three: D.C. Antitrust Act Against all Defendants.**

Defendants anticipate arguing that the D.C. Antitrust claims are time-barred under the applicable four-year statute of limitations. D.C. Code § 28-4511(b). By his own account, Antonacci claims to have suffered damage as a result of a conspiracy that was, according to Antonacci, directed at him long before he filed suit in the Northern District of Illinois in 2015. The Complaint here is replete with allegations of purported harm suffered many years ago. See, e.g., Compl. ¶¶ 109-117 (detailing harm purportedly suffered in 2012); ¶¶ 118-251 (detailing allegations between 2012 and 2015). Antonacci's D.C. antitrust claim is time-barred.

Defendants also anticipate arguing that Plaintiff's claim for conspiracy to violate the D.C. Antitrust Act should be dismissed because Plaintiff fails to plausibly allege any facts showing that Defendants' conduct unreasonably restrained trade, reflected a specific intent to monopolize, or affected an appreciable amount of intrastate commerce, or that Defendants entered into the necessary agreement to do so. Plaintiff alleges injury to his legal career, not an injury to competition or the market. The D.C. Antitrust Act, however, protects competition, not an individual from purported injuries to his legal career, so Plaintiff also lacks antitrust standing to bring a claim. *WAKA LLC v. DC Kickball*, 517 F. Supp. 2d 245, 249 (D.D.C. 2007); *Atl. Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*, 295 F. Supp. 2d 75, 88 (D.D.C. 2003).

**C. Count Four: Conspiracy to Interfere with Civil Rights as to all Defendants.**

Defendants anticipate arguing that Plaintiff's claim for conspiracy to interfere with civil rights must fail because that claim does not – as it must – identify an agreement between any of

the Defendants to investigate Plaintiff and seek the suspension of his Virginia Bar license, or plausibly allege that the Defendants were motivated by "class-based, invidiously discriminatory animus" to enter into any such agreement. *Jones v. Ogletree, Deakins, Nash, Smoak & Stewart P.C.*, 2025 U.S. Dist. LEXIS 59302, *17-18 (D.D.C. Mar. 30, 2025). Further, Defendant Holland & Knight, joined by Defendant Bean LLC, expects to argue that Plaintiff's conspiracy to interfere with civil rights claim is barred by the three-year statute of limitations.

### D. Count Five: Violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030) as to Defendant Storij, Inc.

Defendant Storij Inc. anticipates arguing that Plaintiff fails to allege any violation of the Computer Fraud and Abuse Act ("CFAA"). Plaintiff fails to plausibly allege that Storij, Inc. accessed his computer systems or cell phone at all, let alone without or in excess of authorization. *See* 18 U.S.C. § 1030, *et seq*. Plaintiff also does not allege facts satisfying the CFAA's $5,000 damage threshold. *Lewis-Burke Assocs. LLC v. Widder*, 725 F. Supp. 2d 187, 192 (D.D.C. 2010). Finally, Storij, Inc. anticipates arguing that Plaintiff's CFAA claim is time-barred under the applicable two-year statute of limitations. 18 U.S.C. § 1030(g).

## V. The Perkins/Seyfarth Defendants, Bean LLC, Rahm Emanuel, and ROKK Solutions, LLC Anticipate Arguing That Plaintiff's Claims Are Barred by Applicable Preclusion Principles.

Multiple Defendants anticipate arguing that the doctrine of claim preclusion bars Plaintiff's claims against the Perkins/Seyfarth Defendants, Bean LLC, Rahm Emanuel, and ROKK Solutions, LLC ("ROKK") because such claims (1) involve the same claims or cause of action, (2) are between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction. *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009). Here, each prong is satisfied, given dismissals of Antonacci's original claims—materially the same as those alleged here—against those

Defendants or their privies in Illinois state court and federal courts in the Seventh and Fourth Circuits. ROKK likewise expects to argue that applicable preclusion principles bar Plaintiff from relitigating substantially the same allegations against ROKK that were previously rejected by the Eastern District of Virginia and affirmed by the Fourth Circuit.

## VI. The Perkins/Seyfarth Defendants Anticipate Asserting Litigation Privilege.

The Perkins/Seyfarth Defendants further anticipate arguing that D.C. law bars any allegation based on defamation. Plaintiff alleges, in conclusory fashion, that Defendants have joined forces with many others to defame Antonacci. Compl. ¶¶ 4, 336, 339. To the extent that this conspiracy is premised on purported defamation, any "defamatory" statements made by Perkins and Seyfarth—or their attorneys—are absolutely privileged under D.C.'s litigation privilege rules because they were made in the course of a judicial proceeding and were related to the underlying proceeding. *See Marsh v. Hollander*, 339 F. Supp. 2d 1, 8 (D.D.C. 2004); *Arneja v. Gildar*, 541 A.2d 621, 623 (D.C. 1988). The application of D.C.'s litigation privilege results in immunity from suit against the Perkins/Seyfarth Defendants.

## VII. Insufficient Service of Process Pursuant to Rule 12(b)(5).

Defendant Storij, Inc. anticipates arguing that Plaintiff has not effectuated proper service on it pursuant to Rule 4(m). Storij, Inc. withdrew its D.C. registration in 2021, expressly revoking CT Corporation's authority to accept service. CT Corporation confirmed it could not forward documents. Service on a former registered agent is ineffective, and outdated government website information cannot unilaterally confer authority.

## CONCLUSION

For the foregoing reasons, Defendants request that this Court authorize them to file their anticipated motion to dismiss.

Respectfully submitted,

*/s/ Justin M. Flint*
Justin M. Flint (#491782)
ECCLESTON & WOLF, P.C.
1629 K Street, N.W., Suite 260
Washington, D.C. 20006
Tel: (202) 857-1696
Fax: (202) 857-0762
flint@ewdc.com
*Counsel for Defendants Parrish Law Firm, PLLC and 9208 Lee Avenue, LLC*

*/s/ Jason R. Waters*
Jason R. Waters, Esq. (D.C. Br No.: 491066)
Lauren Gilman, Esq. (D.C. Bar No.:90008050)
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
8444 Westpark Drive - Suite 510
McLean, VA 22102-5102
Telephone: (703) 245-9300
Facsimile: (703) 245-9301
Jason.Waters@wilsonelser.com
Lauren.Gilman@wilsonelser.com
*Counsel for Storij Inc., d/b/a The So Company*

*/s/ Edward N. Siskel*
Jonathan Su (DC Bar No. 478171)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200
jonathan.su@lw.com

Edward N. Siskel (pro hac vice)
LATHAM & WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
(312) 876-7700
ed.siskel@lw.com
*Attorneys for Defendant Rahm I. Emanuel*

*/s/ Jason A. Ross*
Jason A. Ross (D.C. Bar 1047909)
Jeanne Louise Heiser (D.C. Bar 219176)
JACKSON LEWIS P.C.
11790 Sunrise Valley Drive, Suite 400
Reston, Virginia 20191
(703) 483-8300 – Telephone
(703) 483-8301 – Facsimile
Jason.Ross@jacksonlewis.com
JeanneLouise.Heiser@jacksonlewis.com
*Counsel for Holland & Knight, LLP*

*/s/ Paul-Kalvin Collins*
Paul-Kalvin Collins (DC Bar# 1741865)
Bailey & Glasser, LLP
1055 Thomas Jefferson, Suite 510
Washington, DC 20007
Phone: (202) 463-2101
Fax: (202) 463-2103
pcollins@baileyglasser.com
*Attorney for Defendant ROKK*

*/s/ Joshua A. Levy*
Joshua A. Levy
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Ste. 605
Washington, D.C. 20006
Tel: 202-845-3215
Jal@levyfirestone.com
*Attorney for Defendant Bean LLC*

*/s/ Christopher W. Mahoney*
Christopher W. Mahoney, Esquire
BARCLAY DAMON LLP
1742 N Street, NW
Washington, DC 20036

*/s/ David Vogel*
David A. Vogel (DDC # 442289)
COOLEY LLP
One Freedom Sq. | Reston Town Center
11951 Freedom Dr.

(202) 689-1900
cmahoney@barclaydamon.com
*Counsel for Defendants*
*The Lane Construction Corporation and*
*Seth Firmender*

Reston, VA 20190-5656
dvogel@cooley.com
*Attorney for Defendant Descrybe LLC*

/s/ *Ethan P. Fallon*
Ethan P. Fallon* (Bar No. 1029705)
Deputy Solicitor General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-9527
Facsimile: (804) 786-0991
Email: efallon@oag.state.va.us
**Counsel of Record for Defendants,*
*The Virginia State Bar and*
*Richard W. Johnson, Jr.,*
*Assistant Bar Counsel for*
*the Virginia State Bar, by*
*special appearance*

*/s/ Barak Cohen*
Barak Cohen, Bar No. 485945
Barak.Cohen@ashurstperkins.com
**ASHURST PERKINS COIE US LLP**
700 13th Street, NW, Suite 800
Washington, D.C. 20005-3960
Telephone: 202-654-6200
Facsimile: 202-654-9000

Thomas J. Tobin, Bar No. 1049101
Tommy.Tobin@ashurstperkins.com
**ASHURST PERKINS COIE US LLP**
1301 Second Ave., Ste. 4200
Seattle, WA 98101
Telephone: 206-359-8000
Facsimile: 206-359-9000

*Attorneys for Anita Ponder, Matthew Gehringer, Perkins Coie LLP, and Seyfarth Shaw LLP*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of September, 2026, I electronically served the foregoing Joint Pre-Motion Notice to File a Motion to Dismiss via the PACER ECF/electronic filing system on all counsel of record.

*/s/Justin M. Flint*
Justin M. Flint (#491782)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LOUIS B. ANTONACCI,**<br><br>Plaintiff<br><br>**v.**<br><br>**RAHM ISRAEL EMANUEL et. al.**<br><br>Defendants. | **Case No. 1:26-cv-00211-ACR** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**PRE-MOTION NOTICE TO FILE A MOTION TO DISMISS**

Plaintiff Louis B. Antonacci ("Antonacci"), pursuant to the procedures imposed by the District Judge to whom this case was reassigned, hereby files this Response in Opposition to Defendants' Pre-Motion Notice to File a Motion to Dismiss (dkt. 115) the Complaint that Antonacci filed eight months ago (dkt. 1), and states as follows:

The Defendants' Notice makes the case for Antonacci's Motion for Reconsideration (dkt. 111): The Defendants already made those same arguments, which this Court denied in its Minute Order of July 29, 2026, and which Antonacci addressed in his consolidated responses. (Dkt. 68, 69, 70.) Antonacci has already done this work for the Court. And he did it in two weeks, while he was litigating in three other courts seeking to identify the woman who tried to kill him at the behest of this Zionist criminal enterprise (dkt. 112); and trying to hold Defendant Descrybe, LLC accountable for its defamatory publication projecting Defendants Rahm Israel Emanuel and Anita J. Ponder's feckless incompetence, and their shameless willingness to use public funds as their personal piggy bank, onto Antonacci. (Dkt. 1/112 ¶¶483-507.)

Antonacci is not going to spend more time dismantling the Defendants' bevy of strawman arguments yet again. He simply refers this Court to the oppositions he already filed, which aptly demonstrate why these Defendants are wrong on all counts. (Dkt. 68, 69, 70.) What Antonacci will do here is offer some broader perspective.

Over the past fifteen years, numerous state and federal courts have discredited themselves protecting the murderous criminal enterprise described in Antonacci's complaint. In so doing, as Antonacci has repeatedly predicted and warned against, the perceived credibility of the American judiciary has gone down the toilet. (Dkt. 68-7.) And now American judges complain they are coming under threat. *See* Beckford, Jalen, *Federal judges say they're facing intensified threats since start of Trump's second term, Politico* (Sept. 7, 2026), https://www.politico.com/news/2026/09/02/federal-judges-threats-trump-second-term-01062696. But that should not come as a surprise. Our Courts are a law-abiding citizens' only recourse against criminals. When law-abiding citizens are denied meaningful access to the courts, they are left with no lawful recourse. That is the whirlwind you reap from the injustice you sow. And it is nothing more than accountability born out of necessity.

And while Politico, which is arm of the Zionist propaganda complex formerly funded by the defunct USAID, disingenuously tries to lay the blame on Trump with its biased headline, such correlation does not withstand scrutiny. First, the Gallup study Antonacci cited in his Oppositions and his Motion for Judicial Notice shows that the catastrophic drop in Americans' confidence in our judiciary pre-dates Trump's second term, and indeed saw the steepest decline during the Biden Administration. (Dkt. 69-7.) Second, Trump's approval rating is polling around the same as the American judiciary, so Americans are as displeased with his second administration as they are with these courts. This is not a Trump problem; it is a justice problem.

Arlington County Circuit Court has provided an excellent recent example of a court ignoring established legal principles to protect this murderous criminal enterprise from accountability. On September 4, 2026, proposed Defendant LevineCarita's (dkt. 112) Motion to Quash the Subpoena Duces Tecum, that Antonacci served on National General Insurance Company, was heard before Arlington Circuit Court Judge Louise DiMatteo. While Judge DiMatteo conceded that Antonacci's subpoena plainly sought documents relevant to the incident on June 18, 2024, she nonetheless ignored decades of Virginia caselaw and legal ethics opinions to rule that, despite National General not being a party to Antonacci's state court case, and the fact that LevineCarita does not represent National General in any legal capacity, National General's communication with LevineCarita's lawyer, Jeremy Tishler, could be properly withheld as attorney work product prepared in anticipation of litigation. That ruling is wrong in every material way.

But that is not even the most troubling part. At the end of the hearing, Judge DiMatteo tried to quickly rule that Tishler would produce National General's responsive documents directly to her chambers, and further that Tishler would generate National General's privilege log. Antonacci promptly objected that was improper because 1) under Virginia procedure, National General, who never lodged any objection before the August 28, 2026 return date of the subpoena it was served on August 11, 2026, is required to produce documents directly to the clerk's office, which is to file the documents as part of the case record; 2) **neither Tishler nor LevineCarita has an attorney-client relationship with National General, who is not even a party to Antonacci's state court case, yet they are going receive the documents that Antonacci subpoenaed before he does, when they will be able to filter out any documents they do not want Antonacci or the Court to see**; and 3) Tishler, who is an insurance defense lawyer that lies every day of his life, is

responsible for creating the privilege log on behalf of an entity who is neither his client nor a party to the case. **(Exhibit 1.)** Judge DiMatteo's response to Antonacci's objections was to state repeatedly "I have made my ruling."

And to be clear, during the hearing of September 4, 2026, Antonacci explained in no uncertain terms that Tishler is clearly trying to protect Sonia Vides from accountability because she tried to kill Antonacci on June 18, 2024. He explained how he saw the driver of the vehicle, that there is a corroborating witness, how he has eliminated the other defendants as possible drivers, how incredibly unlikely it is that Sonia Vides actually relocated to Guatemala and that Tishler has yet to produce any evidence even suggesting that she did. (Dkt. 112-1 ¶¶511-50.) So when Judge DiMatteo made her baseless ruling allowing Tishler to obtain and filter out the documents Antonacci subpoenaed, before Antonacci is even able to see them, she was a Circuit Court judge knowingly flipping the established legal order on its head to protect a would-be murderer. When judges knowingly and willfully protect violent criminals to the detriment of their victims, what lawful recourse do Americans have?

And it is not just the judiciary. The only reason Antonacci has had to jump through all these legal hoops these past two years is because the Arlington County Police Department failed to investigate the matter when Antonacci reported it. (Dkt. 112-1 ¶517.) And Arlington's Commonwealth Attorney similarly told Antonacci to go pound sand when he raised the matter with them. (*Id.*)

And that's not all. In other coincidental and unrelated legal developments of the past two weeks, on Friday, August 28, 2026, Antonacci served the instant Defendants, in accordance with Local Rule 7(m), with his draft motion to amend the complaint. (Dkt. 112). On Monday, August 31, 2026, the Wisconsin State Bar notified Antonacci it intends to serve him with a complaint

seeking to impose reciprocal discipline for the Virginia State Bar's legal and political disgrace of last year. The District's Bar Counsel, Hamilton Fox, who is known for retaliating against whistleblowers for the benefit of the crooked lawyers they expose, had notified the Wisconsin State Bar of DC's reciprocal discipline on February 28, 2026.

Also on that eventful Monday, August 31, 2026, the Fourth Circuit removed the hearing on Antonacci's reciprocal discipline before that Court, previously calendared for its October 27-30, 2026 term, and continued it to December. Antonacci invites readers to review the record on appeal in that case, most notably the esteemed Richard Johnson's brief showing off his sixth-grade reading level and failure to even mention Virginia Rule of Professional Conduct 1.6(b)(2), which provides the exception for client confidentiality in lawsuits by the attorney against the client. *In re Louis Bernardo Antonacci*, Docket No. 25-9526, USCA4, docketed March 27, 2026 (ECF 10.)

And speaking of Little Johnson, let us not forget that the Richmond City Sheriff clearly collaborated with the Virginia State Bar to help Johnson evade service of process. (Dkt. 37.) Antonacci filed his motion to serve Johnson by U.S. Marshal on March 15, 2026. *Id*. That was six months ago.

Antonacci understands that this matter was recently reassigned to this district judge (dkt. 109), but as he pointed out in his motion for reconsideration (dkt. 111), there is simply no need for a duplicative round of briefing here. That is plainly demonstrated by the Defendants' Notice, which simply summarizes and regurgitates the arguments these Defendants have already made in the motions this Court has already denied. (Dkt. 115.) And this chamber's novel requirement that all defendants file a pre-motion notice, before filing the motions to dismiss required under Rule 12, prejudices and disempowers all plaintiffs whose cases are assigned to this district judge. (Dkt. 110 §7(f).) It delays all litigation brought before you by months at least, thereby taking leverage away

from the plaintiffs this Court was constitutionally designed to serve. This Notice requirement finds no basis under the federal rules and Antonacci objects to this requirement as imposing a prejudicial delay that denies plaintiffs due process of law as established by the Federal Rules of Civil Procedure.

Antonacci also objects to this requirement as applied to him because it imposes a duplicative round of briefing with no probative value whatsoever, while unfairly prejudicing the plaintiff with more needless delay that serves only the Defendants' childlike interests in avoiding accountability for their actions. The Defendants have left no room to debate that point in their Notice (dkt. 115) because this Court can see that the Defendants have separately addressed each and every one of those arguments in their motions this Court already denied in its Minute Order of July 29, 2026. (Dkt. 22, 28, 38, 41, 44, 46, 49, 51.) Moreover, Antonacci already addressed each of those arguments in his consolidated responses in opposition thereto. (Dkt. 68, 69, 70.) And as Antonacci maintained in his Motion for Reconsideration, these Defendants have no right now to raise new arguments they failed to raise in their initial motions to dismiss regardless. (Dkt. 111.)

Finally, as Antonacci stated in his Second Motion for Reconsideration (dkt. 113), he further objects to this Court's Minute Order setting a private hearing when it will rule on the other pending motions. Antonacci requests all hearings in this matter be accessible to the public, and he does not consent to mediation or any settlement conference before a judge. No defendant has shown any overriding interest that would be prejudiced by public access to hearings in this matter. Moreover, with his own sweat and blood, Antonacci has earned the right to publicly confront these cowardly parasites.

**WHEREFORE**, for the reasons stated herein, Plaintiff Louis B. Antonacci hereby requests this Court **RECONSIDER AND VACATE** its Minute Orders of July 29 and 31, 2026, and enter

/:+*:,( **(&"W!"K U!$%#B+&X'(!,&** ()*'*%+#%&,D/&$/%,(&/($,<$,,( 4+I&QO8(S8(S8(Q8(J8(

\\8( \R8(P8(KJ78(F/&$/%,(/:( a#%3&$/%4,T]8(SO78(#%+(F/&$/%(&/(a*&2,$+*()*'#0"&(4+I&-P]78(#%+(

**K+*"$!"K** (!"#$%&$"D/&$/%,(/:( B*3/%,$+*:#&$/%(4+I&-]8(]K8(JJ8(JJ]78(F/&$/%(/:( .*#^*( &/(

a*:^*(B*h0*,&,(/:( 2+<$,,$/%(4+I&-(78(F/&$/%(/:( a*:^$3*(=>(d-a-( F#:,;#",( 4+I&-T78(F/&$/%,(

&/(N#I*(?0+$3$#G/&$3#(#%+(2<*%+ZL/::*3&(4+I&R(S8(TO8(R(S8(QK78(F(&$/%(&/(L/<9*"( H0,$/%(!a(

&/(2%,A*:(X%&*::/@#&/4$*I&PR78(F(&$/%(&/(K<9/,*(a#%3&$/%(H0,$/%(!a( 3/0%,*"(2/,;( .*^>(

4+I&-(JQO78(#%+(F/&$/%(&/(2<*%+(&;*(L/<9"#$%&(&/(2++(G(*AI&#:(&FO,7(

**(765N<#)5I65OP5G#Y3#=A=>#** B*,9*3&'0"">(,0=<$&&*+(

Z,Z Louis Antonacci

. ! "#$%&- 2&T"&(*))#

*** ! "#! $%&#B//,**

\JOR(S"(a&:**&(G`(k](

`#,;$%@&/%8()L(OQQJJ(

TQ]E]QQE\R]K

"/0l#%&/%#33$"#A-3/<

Louis Antonacci <lou@antonaccilaw.com>

## RE: 26-cv-00211-ACR ANTONACCI v. EMANUEL et al. pre-motion conference [IMAN-ACTIVE.FID8008156]

5 messages

**Chashawn White** <Chashawn_White@dcd.uscourts.gov> Tue, Sep 22, 2026 at 3:03 PM
To: Louis Antonacci <lou@antonaccilaw.com>, "Mahoney, Christopher W." <CMahoney@barclaydamon.com>, "Gilman, Lauren" <Lauren.Gilman@wilsonelser.com>, "Waters, Jason" <Jason.Waters@wilsonelser.com>, "Dillinger, Karen" <Karen.Dillinger@wilsonelser.com>, "Cohen, Barak" <barak.cohen@ashurstperkins.com>, Thomas Tobin <ttobin@perkinscoie.com>, "Vogel, David (dvogel@cooley.com)" <dvogel@cooley.com>, "Laing, Hilarie" <hlaing@cooley.com>, "pmckinstry@cooley.com" <pmckinstry@cooley.com>, "Siskel, Ed (Ed.Siskel@lw.com)" <Ed.Siskel@lw.com>, "Fallon, Ethan P." <efallon@oag.state.va.us>, "Ross, Jason (Jason.Ross@jacksonlewis.com)" <Jason.Ross@jacksonlewis.com>, "Barbaro, Karrie L. (DC)" <karrie.barbaro@jacksonlewis.com>, "Irwin, Mary (DC)" <mary.irwin@jacksonlewis.com>, "Heiser, Jeanne Louise L. (DC)" <jeannelouise.heiser@jacksonlewis.com>, "Jonathan Su (DC)" <jonathan.su@lw.com>, "jal@levyfirestone.com" <jal@levyfirestone.com>, "flint@ewdc.com" <flint@ewdc.com>, "Kang, Katelyn L" <kkang@cooley.com>, "Collins, Paul-Kalvin (PCollins@baileyglasser.com)" <PCollins@baileyglasser.com>, "kathrina.lim@wilsonelser.com" <kathrina.lim@wilsonelser.com>

Good afternoon,

I am reaching out to assist with scheduling an in-person hearing before Judge Reyes, pursuant to her order issued on 7/29/2026. Please advise your availability for 9/29/26 or 10/1/26 at 9:45 AM.

If neither of these dates work, we can look into the week of October 5th or October 12th.

Best regards,

Chashawn D. White (she/her)

Courtroom Deputy to the Honorable Ana C. Reyes

U.S. District & Bankruptcy Courts for the District of Columbia

333 Constitution Avenue, NW

Washington, DC 20001

202-354-3176 (Direct)

---

**From:** Louis Antonacci <lou@antonaccilaw.com>
**Sent:** Tuesday, September 15, 2026 9:58 AM
**To:** Mahoney, Christopher W. <CMahoney@barclaydamon.com>; Chashawn White <Chashawn_White@dcd.uscourts.gov>; Gilman, Lauren <Lauren.Gilman@wilsonelser.com>; Waters, Jason <Jason.Waters@wilsonelser.com>; Dillinger, Karen <Karen.Dillinger@wilsonelser.com>; Cohen, Barak <barak.cohen@ashurstperkins.com>; Thomas Tobin <ttobin@perkinscoie.com>; Vogel, David

(dvogel@cooley.com) <dvogel@cooley.com>; Laing, Hilarie <hlaing@cooley.com>; pmckinstry@cooley.com; Siskel, Ed (Ed.Siskel@lw.com) <Ed.Siskel@lw.com>; Fallon, Ethan P. <efallon@oag.state.va.us>; Ross, Jason (Jason.Ross@jacksonlewis.com) <Jason.Ross@jacksonlewis.com>; Barbaro, Karrie L. (DC) <karrie.barbaro@jacksonlewis.com>; Irwin, Mary (DC) <mary.irwin@jacksonlewis.com>; Heiser, Jeanne Louise L. (DC) <jeannelouise.heiser@jacksonlewis.com>; Jonathan Su (DC) <jonathan.su@lw.com>; jal@levyfirestone.com; flint@ewdc.com; Kang, Katelyn L <kkang@cooley.com>; Collins, Paul-Kalvin (PCollins@baileyglasser.com) <PCollins@baileyglasser.com>; kathrina.lim@wilsonelser.com
**Subject:** Re: FW: Case 1:26-cv-00211-ACR ANTONACCI v. EMANUEL et al. pre-motion conference [IMAN-ACTIVE.FID8008156]

**CAUTION - EXTERNAL:**

All:

As maintained in my filings since Judge Reyes's July Minute Orders, I object to this novel process and request the Court conduct these proceedings in accordance with the Federal Rules of Civil Procedure. The Pre-Motion Notice requirement denies me due process of law because these motions have already been fully briefed in accordance with the FRCP. The Defendants' Pre-Motion Notice proves this point unequivocally.

I filed this complaint eight months ago, served all fifteen defendants within weeks (save Richard Johnson who is evading service), and the United States District Court for the District of Columbia has done nothing but delay any meaningful action.

I further object to any private rulings. If a ruling is to be made during a meeting of the parties, then I request such meetings be at a public hearing.

The Court should deny the motions to dismiss with prejudice and either issue rulings on the other pending motions or hold a public hearing on those motions.

I do not consent to mediation or any settlement conference before a judge.

Louis B. Antonacci

**Managing Principal**

**Antonacci PLLC**

703-300-4635

lou@antonaccilaw.com

**Visit us on the web:** www.antonaccilaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

On Tue, Sep 15, 2026 at 9:27 AM Mahoney, Christopher W. <CMahoney@barclaydamon.com> wrote:

> Mr. Antonacci:
>
> I am forwarding to you the email sent yesterday to Judge Reyes' courtroom deputy Chashawn White.

**Christopher W. Mahoney**

Partner

1742 N Street, NW • Washington, DC 20036

D: (202) 689-1909 • E: CMahoney@barclaydamon.com

**www.barclaydamon.com • vCard • Profile**

---

This electronic mail transmission is intended only for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender which is protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.

---

**From:** Mahoney, Christopher W.
**Sent:** Monday, September 14, 2026 2:34 PM
**To:** Chashawn White <Chashawn_White@dcd.uscourts.gov>
**Subject:** Case 1:26-cv-00211-ACR ANTONACCI v. EMANUEL et al. pre-motion conference [IMAN-ACTIVE.FID8008156]

Per the Court's July 29, 2026 Minute Order, I am contacting you on behalf of the Defendants in the above matter. Please advise which dates and times this month and next month are available for a pre-motion conference regarding the Defendants' motion to dismiss with Judge Reyes so I can circulate those dates and times for the Defendants' consideration. Thank you.

Chris Mahoney, Counsel for Defendants The Lane Construction Corporation and Seth Firmender

---

**From:** DCD_ECFNotice@dcd.uscourts.gov <DCD_ECFNotice@dcd.uscourts.gov>
**Sent:** Wednesday, September 2, 2026 5:00 PM
**To:** DCD_ECFNotice@dcd.uscourts.gov
**Subject:** Activity in Case 1:26-cv-00211-ACR ANTONACCI v. EMANUEL et al Notice (Other)

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Columbia**

**Notice of Electronic Filing**

The following transaction was entered by Flint, Justin on 9/2/2026 at 5:00 PM and filed on 9/2/2026

| | |
|---|---|
| **Case Name:** | ANTONACCI v. EMANUEL et al |
| **Case Number:** | 1:26-cv-00211-ACR |
| **Filer:** | 9208 LEE AVENUE, LLC |
| | BEAN LLC |
| | DESCRYBE, LLC |
| | RAHM ISRAEL EMANUEL |
| | SETH FIRMENDER |

MATTHEW J. GEHRINGER

HOLLAND & KNIGHT LLP.

RICHARD W. JOHNSON, JR

LANE CONSTRUCTION CORPORATION

PARRISH LAW FIRM, PLLC

PERKINS COIE LLP

ANITA J. PONDER

ROKK SOLUTIONS, LLC

SEYFARTH SHAW LLP

STORIJ, INC.

VIRGINIA STATE BAR

**Document Number:** 115

**Docket Text:**
**NOTICE *JOINT PRE-MOTION* by 9208 LEE AVENUE, LLC, BEAN LLC, DESCRYBE, LLC, RAHM ISRAEL EMANUEL, SETH FIRMENDER, MATTHEW J. GEHRINGER, HOLLAND & KNIGHT LLP., RICHARD W. JOHNSON, JR, LANE CONSTRUCTION CORPORATION, PARRISH LAW FIRM, PLLC, PERKINS COIE LLP, ANITA J. PONDER, ROKK SOLUTIONS, LLC, SEYFARTH SHAW LLP, STORIJ, INC., VIRGINIA STATE BAR (Flint, Justin)**

**1:26-cv-00211-ACR Notice has been electronically mailed to:**

Barak Cohen barak.cohen@ashurstperkins.com, DocketWDC@PerkinsCoie.com, DWDC@perkinscoie.com, HMullin@perkinscoie.com, nvargas@perkinscoie.com, syarborough@perkinscoie.com, TTobin@perkinscoie.com

Christopher W. Mahoney cmahoney@barclaydamon.com, rrwhite@barclaydamon.com

David A. Vogel dvogel@cooley.com, efiling-notice@ecf.pacerpro.com, efilingnotice@cooley.com, hlaing@cooley.com, pmckinstry@cooley.com

Edward Siskel ed.siskel@lw.com

Ethan P. Fallon efallon@oag.state.va.us

Jason Alexander Ross jason.ross@jacksonlewis.com, dcregiondocketing@jacksonlewis.com, jason-ross-6765@ecf.pacerpro.com, Karrie.Barbaro@jacksonlewis.com, Mary.Irwin@jacksonlewis.com

Jason R Waters Jason.Waters@wilsonelser.com, karen.dillinger@wilsonelser.com

Jeanne Louise Heiser jeannelouise.heiser@jacksonlewis.com, dcregiondocketing@jacksonlewis.com, jeanne-heiser-9549@ecf.pacerpro.com, mary.irwin@jacksonlewis.com

Jonathan Su jonathan.su@lw.com, DCECFNotificationsDC@lw.com, jonathan-su-2554@ecf.pacerpro.com,

washington-dc-litigation-services-5378@ecf.pacerpro.com

Joshua Aaron Levy jal@levyfirestone.com

Justin M. Flint flint@ewdc.com, sussman@ewdc.com

LOUIS B. ANTONACCI lou@antonaccilaw.com

Lauren Gilman lauren.gilman@wilsonelser.com, kathrina.lim@wilsonelser.com

Paul-Kalvin Collins pcollins@baileyglasser.com, gdossantos@baileyglasser.com

Thomas J. Tobin ttobin@perkinscoie.com, jstarr@perkinscoie.com, SRampolo@perkinscoie.com

**1:26-cv-00211-ACR Notice will be delivered by other means to::**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**suppressed
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=9/2/2026] [FileNumber=10311552-0]
[08b9b5bdc1e4376a1b79edede33f65b37ba59a73fea5f43123ae42a7479eb0fd4fc9
d88d02ea189d513f0c5f6189ecac5b207cba525a7fe9b5000706e040babb]]

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

---

**Louis Antonacci** <lou@antonaccilaw.com> Tue, Sep 22, 2026 at 3:31 PM
To: Chashawn White <Chashawn_White@dcd.uscourts.gov>
Cc: "Mahoney, Christopher W." <CMahoney@barclaydamon.com>, "Gilman, Lauren" <Lauren.Gilman@wilsonelser.com>, "Waters, Jason" <Jason.Waters@wilsonelser.com>, "Dillinger, Karen" <Karen.Dillinger@wilsonelser.com>, "Cohen, Barak" <barak.cohen@ashurstperkins.com>, Thomas Tobin <ttobin@perkinscoie.com>, "Vogel, David (dvogel@cooley.com)" <dvogel@cooley.com>, "Laing, Hilarie" <hlaing@cooley.com>, "pmckinstry@cooley.com" <pmckinstry@cooley.com>, "Siskel, Ed (Ed.Siskel@lw.com)" <Ed.Siskel@lw.com>, "Fallon, Ethan P." <efallon@oag.state.va.us>, "Ross, Jason (Jason.Ross@jacksonlewis.com)" <Jason.Ross@jacksonlewis.com>, "Barbaro, Karrie L. (DC)" <karrie.barbaro@jacksonlewis.com>, "Irwin, Mary (DC)" <mary.irwin@jacksonlewis.com>, "Heiser, Jeanne Louise L. (DC)" <jeannelouise.heiser@jacksonlewis.com>, "Jonathan Su (DC)" <jonathan.su@lw.com>, "jal@levyfirestone.com" <jal@levyfirestone.com>, "flint@ewdc.com" <flint@ewdc.com>, "Kang, Katelyn L" <kkang@cooley.com>, "Collins, Paul-Kalvin (PCollins@baileyglasser.com)" <PCollins@baileyglasser.com>, "kathrina.lim@wilsonelser.com" <kathrina.lim@wilsonelser.com>

I maintain my objections to the unconstitutional process set forth in the Court's July 29, 2026 minute order and its Standing Order at Docket 110. I filed two motions for reconsideration that the Court has not yet ruled on.

This novel process denies me due process of law.

**Managing Principal**
**Antonacci PLLC**
703-300-4635
lou@antonaccilaw.com

**Visit us on the web:** www.antonaccilaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

[Quoted text hidden]

---

**Gilman, Lauren** <Lauren.Gilman@wilsonelser.com> Tue, Sep 22, 2026 at 4:01 PM
To: Chashawn White <Chashawn_White@dcd.uscourts.gov>, Louis Antonacci <lou@antonaccilaw.com>, "Mahoney, Christopher W." <CMahoney@barclaydamon.com>, "Waters, Jason" <Jason.Waters@wilsonelser.com>, "Dillinger, Karen" <Karen.Dillinger@wilsonelser.com>, "Cohen, Barak" <barak.cohen@ashurstperkins.com>, Thomas Tobin <ttobin@perkinscoie.com>, "Vogel, David (dvogel@cooley.com)" <dvogel@cooley.com>, "Laing, Hilarie" <hlaing@cooley.com>, "pmckinstry@cooley.com" <pmckinstry@cooley.com>, "Siskel, Ed (Ed.Siskel@lw.com)" <Ed.Siskel@lw.com>, "Fallon, Ethan P." <efallon@oag.state.va.us>, "Ross, Jason (Jason.Ross@jacksonlewis.com)" <Jason.Ross@jacksonlewis.com>, "Barbaro, Karrie L. (DC)" <karrie.barbaro@jacksonlewis.com>, "Irwin, Mary (DC)" <mary.irwin@jacksonlewis.com>, "Heiser, Jeanne Louise L. (DC)" <jeannelouise.heiser@jacksonlewis.com>, "Jonathan Su (DC)" <jonathan.su@lw.com>, "jal@levyfirestone.com" <jal@levyfirestone.com>, "flint@ewdc.com" <flint@ewdc.com>, "Kang, Katelyn L" <kkang@cooley.com>, "Collins, Paul-Kalvin (PCollins@baileyglasser.com)" <PCollins@baileyglasser.com>, "Lim, Kathrina" <Kathrina.Lim@wilsonelser.com>

Good afternoon Ms. White,

Counsel for Defendant Storij Inc. are available on 10/1, but not 9/29.

Thank you,

Lauren

Lauren Gilman
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
8444 Westpark Drive - Suite 510
McLean, VA 22102
703.852.7873 (Direct)
830.643.4587 (Cell)
703.245.9300 (Main)
703.245.9301 (Fax)
lauren.gilman@wilsonelser.com

---

**From:** Chashawn White <Chashawn_White@dcd.uscourts.gov>
**Sent:** Tuesday, September 22, 2026 3:03 PM
**To:** Louis Antonacci <lou@antonaccilaw.com>; Mahoney, Christopher W. <CMahoney@barclaydamon.com>; Gilman, Lauren <Lauren.Gilman@wilsonelser.com>; Waters, Jason <Jason.Waters@wilsonelser.com>; Dillinger, Karen <Karen.Dillinger@wilsonelser.com>; Cohen, Barak <barak.cohen@ashurstperkins.com>; Thomas Tobin <ttobin@perkinscoie.com>; Vogel, David (dvogel@cooley.com) <dvogel@cooley.com>; Laing, Hilarie

<hlaing@cooley.com>; pmckinstry@cooley.com; Siskel, Ed (Ed.Siskel@lw.com) <Ed.Siskel@lw.com>; Fallon, Ethan P. <efallon@oag.state.va.us>; Ross, Jason (Jason.Ross@jacksonlewis.com) <Jason.Ross@jacksonlewis.com>; Barbaro, Karrie L. (DC) <karrie.barbaro@jacksonlewis.com>; Irwin, Mary (DC) <mary.irwin@jacksonlewis.com>; Heiser, Jeanne Louise L. (DC) <jeannelouise.heiser@jacksonlewis.com>; Jonathan Su (DC) <jonathan.su@lw.com>; jal@levyfirestone.com; flint@ewdc.com; Kang, Katelyn L <kkang@cooley.com>; Collins, Paul-Kalvin (PCollins@baileyglasser.com) <PCollins@baileyglasser.com>; Lim, Kathrina <Kathrina.Lim@wilsonelser.com>
**Subject:** RE: 26-cv-00211-ACR ANTONACCI v. EMANUEL et al. pre-motion conference [IMAN-ACTIVE.FID8008156]

EXTERNAL EMAIL - This email originated from outside the organization.

[Quoted text hidden]

IMPORTANT NOTICE: Beware of Cyber Fraud.
You should NEVER wire money to any bank account that Wilson Elser Moskowitz Edelman & Dicker LLP provides to you either in the body of this or any email or in an attachment without first speaking with the attorney in our office who is handling your transaction.
Further, DO NOT accept emailed wire instructions from anyone else without voice verification. Even if an email looks like it has come from this office or someone involved in your transaction,
CALL US FIRST AT A NUMBER YOU KNOW TO BE CORRECT FOR THIS OFFICE to verify the information before wiring any money.
Failure to do so is at your own risk.
Be particularly wary of any request to change wire instructions you have already received.

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman & Dicker LLP, please see our website at www.wilsonelser.com or refer to any of our offices.

Thank you.

---

**Mahoney, Christopher W.** <CMahoney@barclaydamon.com> Wed, Sep 23, 2026 at 1:32 PM
To: Chashawn White <Chashawn_White@dcd.uscourts.gov>, Louis Antonacci <lou@antonaccilaw.com>, "Gilman, Lauren" <Lauren.Gilman@wilsonelser.com>, "Waters, Jason" <Jason.Waters@wilsonelser.com>, "Dillinger, Karen" <Karen.Dillinger@wilsonelser.com>, "Cohen, Barak" <barak.cohen@ashurstperkins.com>, Thomas Tobin <ttobin@perkinscoie.com>, "Vogel, David (dvogel@cooley.com)" <dvogel@cooley.com>, "Laing, Hilarie" <hlaing@cooley.com>, "pmckinstry@cooley.com" <pmckinstry@cooley.com>, "Siskel, Ed (Ed.Siskel@lw.com)" <Ed.Siskel@lw.com>, "Fallon, Ethan P." <efallon@oag.state.va.us>, "Ross, Jason (Jason.Ross@jacksonlewis.com)" <Jason.Ross@jacksonlewis.com>, "Barbaro, Karrie L. (DC)" <karrie.barbaro@jacksonlewis.com>, "Irwin, Mary (DC)" <mary.irwin@jacksonlewis.com>, "Heiser, Jeanne Louise L. (DC)" <jeannelouise.heiser@jacksonlewis.com>, "Jonathan Su (DC)" <jonathan.su@lw.com>, "jal@levyfirestone.com" <jal@levyfirestone.com>, "flint@ewdc.com" <flint@ewdc.com>, "Kang, Katelyn L" <kkang@cooley.com>, "Collins, Paul-Kalvin (PCollins@baileyglasser.com)" <PCollins@baileyglasser.com>, "kathrina.lim@wilsonelser.com" <kathrina.lim@wilsonelser.com>, "EMcneill@oag.state.va.us" <EMcneill@oag.state.va.us>

Ms. White:

Not all Defendants are available on 9/29/26 or 10/1/26, but all Defendants are available on 10/14/26 or 10/15/26. Thank you.

---

**From:** Chashawn White <Chashawn_White@dcd.uscourts.gov>
**Sent:** Tuesday, September 22, 2026 3:03 PM

[Quoted text hidden]

[Quoted text hidden]

---

**Louis Antonacci** <lou@antonaccilaw.com> Wed, Sep 23, 2026 at 1:39 PM
To: "Mahoney, Christopher W." <CMahoney@barclaydamon.com>
Cc: Chashawn White <Chashawn_White@dcd.uscourts.gov>, "Gilman, Lauren" <Lauren.Gilman@wilsonelser.com>, "Waters, Jason" <Jason.Waters@wilsonelser.com>, "Dillinger, Karen" <Karen.Dillinger@wilsonelser.com>, "Cohen, Barak" <barak.cohen@ashurstperkins.com>, Thomas Tobin <ttobin@perkinscoie.com>, "Vogel, David (dvogel@cooley.com)" <dvogel@cooley.com>, "Laing, Hilarie" <hlaing@cooley.com>, "pmckinstry@cooley.com" <pmckinstry@cooley.com>, "Siskel, Ed (Ed.Siskel@lw.com)" <Ed.Siskel@lw.com>, "Fallon, Ethan P." <efallon@oag.state.va.us>, "Ross, Jason (Jason.Ross@jacksonlewis.com)" <Jason.Ross@jacksonlewis.com>, "Barbaro, Karrie L. (DC)" <karrie.barbaro@jacksonlewis.com>, "Irwin, Mary (DC)" <mary.irwin@jacksonlewis.com>, "Heiser, Jeanne Louise L. (DC)" <jeannelouise.heiser@jacksonlewis.com>, "Jonathan Su (DC)" <jonathan.su@lw.com>, "jal@levyfirestone.com" <jal@levyfirestone.com>, "flint@ewdc.com" <flint@ewdc.com>, "Kang, Katelyn L" <kkang@cooley.com>, "Collins, Paul-Kalvin (PCollins@baileyglasser.com)" <PCollins@baileyglasser.com>, "kathrina.lim@wilsonelser.com" <kathrina.lim@wilsonelser.com>, "EMcneill@oag.state.va.us" <EMcneill@oag.state.va.us>

I maintain my objections to the unconstitutional process set forth in the Court's July 29, 2026 minute order and its Standing Order at Docket 110.

I filed two motions for reconsideration that the Court has not yet ruled on.

This novel process denies me due process of law.

**Managing Principal**
**Antonacci PLLC**
703-300-4635
lou@antonaccilaw.com

ANTONACCI LAW

**Visit us on the web:** www.antonaccilaw.com

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

[Quoted text hidden]

Louis Antonacci <lou@antonaccilaw.com>

## Activity in Case 1:26-cv-00211-ACR ANTONACCI v. EMANUEL et al Order

**DCD_ECFNotice@dcd.uscourts.gov** <DCD_ECFNotice@dcd.uscourts.gov> Fri, Sep 25, 2026 at 4:41 PM
To: DCD_ECFNotice@dcd.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Columbia**

### Notice of Electronic Filing

The following transaction was entered on 9/25/2026 at 4:41 PM and filed on 9/25/2026

**Case Name:** ANTONACCI v. EMANUEL et al
**Case Number:** 1:26-cv-00211-ACR
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**MINUTE ORDER. The Court ORDERS the parties to appear at a pre-motion conference on October 14, 2026, at 3:45 PM. Signed by Judge Ana C. Reyes on 9/25/2026. (lcacr1)**

**1:26-cv-00211-ACR Notice has been electronically mailed to:**

Christopher W. Mahoney cmahoney@barclaydamon.com, rrwhite@barclaydamon.com

Justin M. Flint flint@ewdc.com, sussman@ewdc.com

David A. Vogel dvogel@cooley.com, efiling-notice@ecf.pacerpro.com, efilingnotice@cooley.com, hlaing@cooley.com, pmckinstry@cooley.com

Jason R Waters Jason.Waters@wilsonelser.com, karen.dillinger@wilsonelser.com

Joshua Aaron Levy jal@levyfirestone.com

Barak Cohen barak.cohen@ashurstperkins.com, DWDC@perkinscoie.com, DocketWDC@PerkinsCoie.com, HMullin@perkinscoie.com, TTobin@perkinscoie.com, nvargas@perkinscoie.com, syarborough@perkinscoie.com

Jonathan Su jonathan.su@lw.com, DCECFNotificationsDC@lw.com, jonathan-su-2554@ecf.pacerpro.com, washington-dc-litigation-services-5378@ecf.pacerpro.com

Jason Alexander Ross jason.ross@jacksonlewis.com, Karrie.Barbaro@jacksonlewis.com, Mary.Irwin@jacksonlewis.com, dcregiondocketing@jacksonlewis.com, jason-ross-6765@ecf.pacerpro.com

Thomas J. Tobin ttobin@perkinscoie.com, SRampolo@perkinscoie.com, jstarr@perkinscoie.com

Ethan P. Fallon efallon@oag.state.va.us

Paul-Kalvin Collins pcollins@baileyglasser.com, gdossantos@baileyglasser.com

Lauren Gilman lauren.gilman@wilsonelser.com, kathrina.lim@wilsonelser.com

Katelyn Kang kkang@cooley.com, eFilingNotice@cooley.com, efiling-notice@ecf.pacerpro.com

Edward Siskel ed.siskel@lw.com

Jeanne Louise Heiser jeannelouise.heiser@jacksonlewis.com, dcregiondocketing@jacksonlewis.com, jeanne-heiser-9549@ecf.pacerpro.com, mary.irwin@jacksonlewis.com

LOUIS B. ANTONACCI lou@antonaccilaw.com

**1:26-cv-00211-ACR Notice will be delivered by other means to::**