**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Louis B. Antonacci<br><br>Plaintiff,<br><br>v.<br><br>Rahm Israel Emanuel, *et al*.<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) | Civil Action No. 1:26-cv-00211-ACR |

# MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS

## Table of Contents


INTRODUCTION ........ 2

STATEMENT OF RELEVANT ALLEGED FACTS ........ 5

LEGAL STANDARD ........ 13

ARGUMENT ........ 17

- **A.** Plaintiff's Complaint Should Be Dismissed For Lack of Subject-Matter Jurisdiction Because It is Wholly Insubstantial and Frivolous ........ 17
  1. Federal Courts Lack Jurisdiction To Adjudicate Frivolous Claims ........ 18
  2. RICO Claims Require Non-Frivolous Pleading ........ 19
- **B.** Claim Preclusion Bars Antonacci's Allegations Against the Seyfarth/Perkins Defendants, Rahm Emanuel, and Bean LLC ........ 21
- **C.** Absolute Litigation Immunity Shields the Seyfarth/Perkins Defendants From Antonacci's Claims ........ 23
- **D.** The VSB is Immune From Suit, and the Court Lacks Personal Jurisdiction Over the VSB Defendants and Descrybe ........ 24
- **E.** Plaintiff's Complaint Should Be Dismissed as to Descrybe and the VSB Defendants Because Venue is Improper ........ 27
- **F.** Plaintiff's Complaint Should Be Dismissed for Failure to Comply with Fed. R. Civ. P. 8 ........ 28
- **G.** Antonacci's Claims Fail Under Rule 9(b) ........ 32
- **H.** Count I of the Complaint Must Be Dismissed Because It is Untimely and Does Not State a Plausible RICO Claim ........ 33
  1. Count I Must Be Dismissed Because It is Untimely ........ 33
  2. Count I Must Be Dismissed for Failure to State a Plausible RICO Claim Because It Does Not Sufficiently Allege The Existence of an "Enterprise," Necessary Predicate Acts or a "Pattern of Racketeering Activity" That Caused Plaintiff Injury ........ 36
- **I.** Count II of the Complaint Must Be Dismissed Because It Does Not State a Plausible RICO Conspiracy Claim and is Untimely ........ 45
- **J.** Count III of the Complaint Must Be Dismissed for Lack of Subject-Matter Jurisdiction and Failure to State a Plausible and Timely Antitrust Conspiracy Claim ........ 47
- **K.** Count IV of the Complaint Must Be Dismissed for Failure to State a Plausible Conspiracy Claim to Interfere with Civil Rights ........ 54
- **L.** The CFAA Claim Must Be Dismissed for Failure to State a Plausible Claim ........ 56

**M.** Ineffective Service Upon Storij Pursuant To Rule 12(b)(5) .............................................. 57
CONCLUSION .......................................................................................................................... 58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta Orellana v. CropLife Intern.*,
711 F. Supp. 2d 81 (D.D.C. 2010) ........46, 48, 49

*Agudas Chasidei Chabad v. Russian Fed'n*,
528 F.3d 934 (D.C. Cir. 2008) ........17

*Alec L. v. Jackson*,
863 F. Supp. 2d 11 (D.D.C. 2012) ........17

*Alemu v. Dep't of For-Hire Vehicles*,
327 F. Supp. 3d 29 (D.D.C. 2018) ........50, 51

*Am. Needle, Inc. v. Nat'l Football League*,
560 U.S. 183 (2010) ........50

*Ambellu v. Re'Ese Adbarat Debre Selam Kidist Mariam*,
387 F. Supp. 3d 71 (D.D.C. 2019) ........42, 43, 47, 48

*Ambellu v. Re'Ese Adbarat Debre Selam Kidist Mariam*,
406 F. Supp. 3d 72 (D.D.C. 2019) ........39

*Ananiev v. Wells Fargo Bank, N.A.*,
968 F. Supp. 2d 123 (D.D.C. 2013) ........15

*Anderson v. Wiggins*,
460 F. Supp. 2d 1 (D.D.C. 2006) ........17

*Antonacci v. City of Chicago*,
2015 U.S. Dist. LEXIS 58490 (N.D. Ill. May 5, 2015) ........8, 10, 19

*Antonacci v. City of Chicago*,
640 F. App'x 553 (7th Cir. 2016) ........ *passim*

*Antonacci v. Descrybe, LLC*,
C.A. No. 25-1093-CFC (D. Del.) ........10

*Antonacci v. Emanuel*,
2024 U.S. Dist. LEXIS 107279 (E.D. Va. May 23, 2024) ........ *passim*

*In re Antonacci*,
351 A.3d 1106 (D.C. 2026) ........25

*Arbaugh v. Y&H Comp.*,
546 U.S. 500 (2006)....................................................................................17, 18

*Arneja v. Gildar*,
541 A.2d 621 (D.C. 1988) ..............................................................................23

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015)..........................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................16, 56

*Atherton v. D.C. Off. of Mayor*,
567 F.3d 672 (D.C. Cir. 2009)..........................................................54, 55, 56

*Atl. Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*,
295 F. Supp. 2d 75 (D.D.C. 2003)..................................................................51

*Banneker Ventures, LLC v. Graham*,
19 F. Supp. 3d 231 (D.D.C. 2014)..................................................................52

*Bast v. Cohen, Dunn & Sinclair, PC*,
59 F.3d 492 (4th Cir. 1995) ............................................................................20

*Bates v. Northwestern Human Servs.*,
466 F. Supp. 2d 69 (D.D.C. 2006)..........................................................39, 40, 41

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................15, 45

*Bell v. Hood*,
327 U.S. 678 (1946)...........................................................................8, 10, 17, 18

*Best v. Kelly*,
39 F.3d 328 (D.C. Cir. 1994)..........................................................................17

*Boyle v. United States*,
556 U.S. 938 (2009)..........................................................................................36

*Brady v. Livingood*,
360 F. Supp. 2d 94 (D.D.C. 2004)..................................................................49

*Brock v. Oklahoma*,
2019 U.S. Dist. LEXIS 208599 (D.D.C. Dec. 4, 2019)...................................30

*Brown v. Califano*,
75 F.R.D. 497 (D.D.C. 1977)...................................................28, 29, 31, 32

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977)....................52

*Burnett v. Sharma*,
511 F. Supp. 2d 136 (D.D.C. 2007)....................55

*Busby v. Cap. One, N.A.*,
772 F. Supp. 2d 268 (D.D.C. 2011)....................46

*Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*,
569 F.3d 485 (D.C. Cir. 2009)....................21

*Carmichael v. Pompeo*,
486 F. Supp. 3d 360 (D.D.C. 2020)....................17

*Carnegie-Mellon Univ. v. Cahill*,
484 U.S. 343 (1988)....................48

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001)....................38

*Cent. Am. Bank for Econ. Integration v. Mossi*,
2025 U.S. Dist. LEXIS 189018 (D.D.C. Sept. 25, 2025)....................37, 39, 42

*Chalabi v. Hashemite Kingdom of Jordan*,
2007 U.S. Dist. LEXIS 68951 (D.D.C. Sept. 19, 2007)....................47

*Cheeks v. Fort Myer Constr. Corp.*,
216 F. Supp. 3d 146 (D.D.C. 2016)....................41, 43, 45

*Cheeks v. Fort Myer Constr. Corp.*,
728 F. App'x 12 (D.C. Cir. 2018)....................43

*Chennareddy v. Dodaro*,
697 F. App'x 704 (D.C. Cir. 2017)....................29

*Cimino v. Internt'l Bus. Machines Corp.*,
2019 U.S. Dist. LEXIS 168059 (D.D.C. Sept. 30, 2019)....................16

*Ciralsky v. CIA*,
355 F.3d 661 (D.C. Cir. 2004)....................28

*United States ex rel. Conteh v. IKON Off. Sols., Inc.*,
27 F. Supp. 3d 80 (D.D.C. 2014)....................33

*Curtis v. Lanier*,
535 F. Supp. 2d 89 (D.D.C. 2008)....................56

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................14, 15, 26

*Dalbis v. France*,
2026 U.S. Dist. LEXIS 1659 (D.D.C. Jan. 6, 2026)....................32

*DC2NY, Inc. v. Academy Bus, LLC*,
2019 U.S. Dist. LEXIS 134972 (D.D.C. Aug. 12, 2019)....................39, 42

*Desenberg v. U.S Dep't of Just.*.,
No. 23-CV-01534 (APM), 2023 WL 4706094 (D.D.C. July 24, 2023)....................18

*DeWayne v. United States*,
2020 U.S. Dist. LEXIS 166922 (D.D.C. July 28, 2020)....................47

*DeWayne v. United States*,
No. 20-CV-00515 (APM), 2020 WL 5393858 (D.D.C. July 28, 2020)....................20, 21

*Dial A Car, Inc. v. Transp. Inc.*,
884 F. Supp. 584 (D.D.C. 1995)....................50, 51

*District of Columbia v. Amazon.com, Inc.*,
320 A.3d 1073 (D.C. 2024)....................50

*Dodd v. Infinity Travel*,
90 F. Supp. 2d 115 (D.D.C. 2000)....................37

*Doe v. Siddig*,
810 F. Supp. 2d 127 (D.D.C. 2011)....................16

*Duarte v. Nolan*,
190 F. Supp. 3d 8 (D.D.C. 2016)....................15

*E. Sav. Bank, FSB v. Papageorge*,
31 F. Supp. 3d 1 (D.D.C. 2014).................... *passim*

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
48 F.3d 1260 (D.C. Cir. 1995)....................42

*Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
749 A.2d 724 (D.C. 2000)....................49

*Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*,
638 F. Supp. 2d 1 (D.D.C. 2009)....................25

*FC Inv. Grp. LC v. IFX Mkts., Ltd.*,
529 F.3d 1087 (D.C. Cir. 2008)....................25

*FDIC v. Bank of Am., N.A.*,
783 F. Supp. 3d 1 (D.D.C. 2025)....................35, 36

*State Bar ex rel. Fourth Dist. v. Antonacci*,
No. CL25000531-00 (Alexandria Cir. Ct.)....................13

*Fraley v. Ohio Gallia County*,
1998 WL 789385 (6th Cir. Oct. 30, 1998) (unpublished) ....................20

*Freeman v. Fallin*,
254 F. Supp. 2d 52 (D.D.C. 2003)....................15

*G'Sell v. Carven*,
724 F. Supp. 2d 101 (D.D.C. 2010)....................16

*Gilberti v. Harris*,
No. CV 24-2837, 2024 WL 5137074 (D.D.C. Dec. 17, 2024)....................18

*Graves v. United States*,
961 F. Supp. 314 (D.D.C. 1997)....................49

*Greenpeace, Inc. v. Dow Chem. Co.*,
808 F. Supp. 2d 262 (D.D.C. 2011)....................43, 45

*GTE New Media Servs., Inc. v. Ameritech Corp.*,
21 F. Supp. 2d 27 (D.D.C. 1998)....................50, 51

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
199 F.3d 1343 (D.C. Cir. 2000)....................26

*H.J. Inc. v. N.W. Bell Telephone Co.*,
492 U.S. 229 (1989)....................42

*Hall v. Clinton*,
285 F.3d 74 (D.C. Cir. 2002)....................56

*Hamrick v. United States*,
2010 U.S. Dist. LEXIS 86694 (D.D.C. Aug. 24, 2010) ....................30

*Hutchinson v. Staton*,
994 F. 2d 1076 (4th Cir. 1993) ....................33

*Intex Recreation Corp. v. Team Worldwide Corp.*,
390 F. Supp. 2d 21 (D.D.C. 2005)....................40

*Jiggetts v. District of Columbia*,
319 F.R.D. 408 (D.D.C. 2017)....................29

*Johns v. Newsmax Media, Inc.*,
887 F. Supp. 2d 90 (D.D.C. 2012) ........................................ 15

*Johnson v. Comm'n on Presidential Debates*,
869 F.3d 976 (D.C. Cir. 2017) ........................................ 52

*Johnson v. Dinapoli*,
2022 U.S. Dist. LEXIS 31320 (D.D.C. Feb. 18, 2022) ........................................ 28, 29

*Jones v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*,
2025 U.S. Dist. LEXIS 59302 (D.D.C. Mar. 30, 2025) ........................................ 16, 54, 55, 56

*Kaul v. Fed'n of State Med. Bds.*,
2021 U.S. Dist. LEXIS 62007 (D.D.C. Mar. 31, 2021) ........................................ 17, 28, 29

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018) ........................................ 41

*Klayman v. Judicial Watch, Inc.*,
2021 U.S. Dist. LEXIS 28116 (D.D.C. Feb. 16, 2021) ........................................ 17

*Klayman v. Judicial Watch, Inc.*,
296 F. Supp. 3d 208 (D.D.C. 2018) ........................................ 16

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997) ........................................ 35, 36

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ........................................ 13, 14

*Konan v. Sengel*,
239 F. App'x 780 (4th Cir. 2007) ........................................ 24

*Lemon v. Kramer*,
270 F. Supp. 3d 125 (D.D.C. 2017) ........................................ 15

*Lewis-Burke Assocs. LLC v. Widder*,
725 F. Supp. 2d 187 (D.D.C. 2010) ........................................ 56

*Light v. Wolf*,
816 F.2d 746 (D.C. Cir. 1987) ........................................ 57

*Lightning Lube, Inc. v. Wilco Corp.*,
4 F.3d 1153 (3d Cir. 1993) ........................................ 45

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................ 14

*Marino v. CIA*,
2012 U.S. Dist. LEXIS 139661 (D.D.C. Sept. 28, 2012) ....................................................18

*Marsh v. Hollander*,
339 F. Supp. 2d 1 (D.D.C. 2004) ........................................................................................23

*McCreary v. Heath*,
2005 U.S. Dist. LEXIS 34082 (D.D.C. Sept. 26, 2005) ....................................................55

*Mizlou Television Network, Inc. v. Nat'l Broad. Co.*,
603 F. Supp. 677 (D.D.C. 1984) ..........................................................................................52

*Modaressi v. Vedadi*,
441 F. Supp. 2d 51 (D.D.C. 2006) ......................................................................................15

*Moore v. U.S. Dep't of State*,
351 F. Supp. 3d 76 (D.D.C. 2019) ..............................................................................15, 16

*Morrow v. United States*,
723 F. Supp. 2d 71 (D.D.C. 2010) ......................................................................................14

*MSP Recovery Claims, Series LLC v. Pfizer, Inc.*,
2023 U.S. Dist. LEXIS 58653 (D.D.C. Apr. 4, 2023) ........................................................14

*Myers v. Holiday Inns, Inc.*,
915 F. Supp. 2d 136 (D.D.C. 2013) ....................................................................................14

*Nader v. Sec'y of the Air Force*,
648 F. Supp. 3d 64 (D.D.C. 2022) ......................................................................................28

*Nansemond Wharf-Suffolk Props., LLC v. Bank of Southside Va.*,
780 F. Supp. 2d 453 (E.D. Va. 2011) .................................................................................20

*Nat'l ATM Council, Inc. v. Visa Inc.*,
922 F. Supp. 2d 73 (D.D.C. 2013) ......................................................................................16

*Nihiser v. White*,
211 F. Supp. 2d 125 (D.D.C. 2002) ....................................................................................35

*NRDC v. Thomas*,
838 F.2d 1224 (D.C. Cir. 1988) ..........................................................................................21

*Oak Park Trust & Sav. Bank v. Therkildsen*,
209 F.3d 648 (7th Cir. 2000) ...............................................................................................20

*Oliver v. Black Knight Asset Mgmt., LLC*,
812 F. Supp. 2d 2 (D.D.C. 2011) ........................................................................................18

*Page v. Raimondo*,
2024 U.S. Dist. LEXIS 129362 (D.D.C. July 23, 2024)....17

*Perez v. Coleman*,
2025 U.S. Dist. LEXIS 164608 (D.D.C. Aug. 25, 2025) ....36, 43, 44

*Pinson v. U.S. DOJ*,
2023 U.S. Dist. LEXIS 54486 (D.D.C. Mar. 30, 2023)....37, 38

*Poblete v. U.S. Marshalls Serv.*,
253 F. Supp. 3d 115 (D.D.C. 2017)....18

*Pollard v. District of Columbia*,
285 F.R.D. 125 (D.D.C. 2012)....58

*Raja v. FDIC*,
2026 U.S. Dist. LEXIS 14132 (D.D.C. Jan. 26, 2026)....28, 29, 30, 32

*Republic of Kazakhstan v. Stati*,
380 F. Supp. 3d 55 (D.D.C. 2019), *aff'd sub nom. Republic of Kazakhstan, Ministry of Just. v. Stati*, 801 F. App'x 780 (D.C. Cir. 2020)....20

*Roman v. Spilman Thomas & Battle, PLLC*,
No. 7:23-cv-00749 (W.D. Va. May 22, 2024)....24

*Rotella v. Wood*,
528 U.S. 549 (2000)....33

*Sanders v. D.C.*
2013 U.S. Dist. LEXIS 89946 (D.D.C. June 17, 2013)....33

*Second Amend. Found. v. U.S. Conference of Mayors*,
274 F.3d 521 (D.C. Cir. 2001)....28

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985)....36

*Settles v. U.S. Parole Comm'n*,
429 F.3d 1098 (D.C. Cir. 2005)....14

*Shapiro v. McManus*,
577 U.S. 39 (2015)....18

*Son Ly v. Solin, Inc.*,
910 F. Supp. 2d 22 (D.D.C. 2012).... *passim*

*Spence v. VA*,
109 F. 4th 531 (D.C. Cir. 2024)....17

*Spiteri v. Russo*,
No. 12-CV-2780 MKB RLM, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015)....20

*Stallard v. Goldman Sachs Grp., Inc.*,
2024 U.S. Dist. LEXIS 215791 (D.D.C. Nov. 27, 2024) ....13, 14, 52

*Stankevich v. Kaplan*,
156 F. Supp. 3d 86 (D.D.C. 2016)....37

*Sterling Nat'l Mortg. Co. v. Infinitive Title Solutions*,
No. 10-22147, 2011 U.S. Dist. LEXIS 169005 (S.D. Fla. March 3, 2011)....33

*Swan v. Barbadoro*,
520 F.3d 24 (1st Cir. 2008)....20

*T.M. v. District of Columbia*,
961 F. Supp. 2d 169 (D.D.C. 2013)....28, 29, 30

*Tooley v. Napolitano*,
586 F.3d 1006 (D.C. Cir. 2009)....17

*Toumazou v. Turkish Rep. of N. Cyprus*,
71 F. Supp. 3d 7 (D.D.C. 2014)....30

*U.S. Dominion, Inc. v. MyPillow, Inc.*,
2022 U.S. Dist. LEXIS 90530 (D.D.C. May 19, 2022)....37, 38, 41

*United States v. Alston*,
609 F.2d 531 (D.C. Cir. 1979)....39

*United States v. Persico*,
832 F. 2d 705 (2d Cir. 1987)....33

*United States v. Turkette*,
452 U.S. 576 (1981)....36

*Van Buren v. United States*,
593 U.S. 374 (2021)....56

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
20 F.3d 771 (7th Cir. 1994) ....20

*WAKA, LLC v. DC Kickball*,
517 F. Supp. 2d 245 (D.D.C. 2007)....50, 51, 52

*Whaleco Inc. v. Shein Tech. LLC*,
2025 U.S. Dist. LEXIS 193394 (D.D.C. Sept. 30, 2025) ....30

*Williams v. GEICO Corp.*,
792 F. Supp. 2d 58 (D.D.C. 2011) ....................15

*Yeager v. Nat'l Pub. Radio*,
No. 20-CV-00755 (RC), 2021 WL 3510653 (D.D.C. Aug. 10, 2021) ....................22

*Youkelsone v. FDIC*,
910 F. Supp. 2d 213 (D.D.C. 2012) ....................33

*Zernik v. U.S. DOJ*,
630 F. Supp. 2d 24 (D.D.C. 2009) ....................36, 43

**Statutes**

18 U.S.C. 1952 ....................40

18 U.S.C. 1965 ....................27

18 U.S.C. § 1030 ....................56, 57

18 U.S.C. § 1341 ....................40

18 U.S.C. § 1343 ....................40

18 U.S.C. § 1961(1) ....................39

18 U.S.C. § 1962 ....................36, 45

28 U.S.C. § 1367(c)(3) ....................47, 48

28 U.S.C. § 1367(e) ....................47

28 U.S.C. § 1391(b) ....................27

42 U.S.C. § 1985 ....................48, 54, 55, 56

D.C. Code § 13-421 ....................25

D.C. Code § 13-422 ....................25

D.C. Code § 13-423 ....................26

D.C. Code § 28-4502 ....................47, 50, 51

D.C. Code § 28-4503 ....................47, 50, 51

D.C. Code § 28-4511(b) ....................47, 54

D.C. Code § 28-4515 ....................50

D.C. Code § 29-104.10 ....................................................................................................57

D.C. Code § 12-301(8).....................................................................................................56

Va. Code § 54.1-3910 ......................................................................................................24

**Other Authorities**

Fed. R. Civ. P. 4(h)(1)....................................................................................................57

Fed. R. Civ. P. 4(m) ........................................................................................................58

Fed. R. Civ. P. 8 .......................................................................................................... *passim*

Fed. R. Civ. P. 4(k)(1)(A) ................................................................................................14

Fed. R. Civ. P. 9(b) .....................................................................................32, 33, 39, 49

Fed. R. Civ. P. 12(b)(1).......................................................................................14, 17, 24

Fed. R. Civ. P. 12(b)(2)...................................................................................14, 15, 24, 26

Fed. R. Civ. P. 12(b)(3)...........................................................................................15, 28

Fed. R. Civ. P. 12(b)(5).............................................................................................4, 57

Fed. R. Civ. P. 12(b)(6)...........................................................................................15, 16

Va. Sup. Ct. R. pt. 6, § IV, ¶ 13-9(G)(3) .......................................................................25

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Louis B. Antonacci<br><br>Plaintiff,<br><br>v.<br><br>Rahm Israel Emanuel, *et al*.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:26-cv-00211-ACR |

**MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS**

Defendants Rahm Emanuel, The Lane Construction Corporation ("Lane") and its former General Counsel, Seth Firmender, the Seyfarth/Perkins Defendants—Seyfarth Shaw LLP ("Seyfarth"), Anita J. Ponder ("Ponder"), Perkins Coie LLP ("Perkins"),[1] and Matthew J. Gehringer ("Gehringer")— , Holland & Knight LLP ("Holland & Knight"), the Virginia State Bar ("VSB") and Richard W. Johnson, Jr., Assistant Bar Counsel for the VSB (collectively, the "VSB Defendants"), ROKK Solutions, LLC ("ROKK"), Descrybe LLC ("Descrybe"), Storij, Inc. d/b/a The So Company ("The So Company"), The Parrish Law Firm, PLLC and 9208 Lee Avenue, LLC (collectively, the "Parrish Defendants"), and Bean LLC (collectively "Defendants") hereby move to dismiss the Complaint filed by Plaintiff Louis B. Antonacci ("Plaintiff" or "Antonacci"). The 121-page Amended Complaint ("Complaint"), ECF 105-1, is baseless, fanciful, devoid of any plausible allegations or claims, and a regurgitation of the same allegations and claims already rejected by the several other courts that have been forced to address them by this serial and vexatious litigant.

[1] Effective June 26, 2026, Perkins Coie LLP changed its name to Ashurst Perkins Coie US LLP. ECF 114.

## INTRODUCTION

Despite three federal courts having previously dismissed with prejudice as wholly insubstantial and frivolous two similar complaints filed by Plaintiff, a *pro se* attorney, Plaintiff now attempts a third bite at the apple by filing yet another Complaint that recycles the same implausible allegations of a boundless criminal enterprise, made up of members, including the named Defendants, who share no connection with the other alleged enterprise members beyond an alleged intent to destroy Plaintiff and his legal career as committed "Zionists."

The Seventh Circuit rejected Antonacci's imaginative tale, aptly characterizing it as "legally frivolous" and recognizing that "each individual allegation is so unsupported by any plausible detail as to be preposterous." *Antonacci v. City of Chicago*, 640 F. App'x 553, 557 (7th Cir. 2016). The Eastern District of Virginia agreed, holding that Antonacci's claims are "wholly insubstantial," and any minor changes only served to "reinforce the implausibility of the alleged conspiracy." *Antonacci v. Emanuel*, No. 1:24-CV-172-MSN-LRV, 2024 WL 2988943, at *2 (E.D. Va. May 23, 2024), *aff'd*, 2025 WL 1065245 (4th Cir. Apr. 9, 2025) and *aff'd*, 2025 WL 1091848 (4th Cir. Apr. 9, 2025). The court went on to conclude that Antonacci's "wild accusations" against a "seemingly never-ending, number of people who have no apparent connection other than their interactions, however tangential, to Antonacci" were entirely devoid of merit. *Id.*, at *2; *see also id.* ("This Court agrees with the Seventh Circuit's assessment that Antonacci's previous, and now renewed, allegations are 'legally frivolous' because they are 'so unsupported by any plausible detail as to be preposterous.'" (quoting *Antonacci*, 640 F. App'x at 557). This Court should likewise reject the claims here, with prejudice, for several independent reasons, each of which separately requires dismissal.

Plaintiff's Complaint is as insubstantial and frivolous as the two that preceded it and warrants the same fate that they met. The Complaint's wild and outlandish accusations of a

"criminal Zionist enterprise" intent on violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") present no federal question suitable for decision, so the Complaint should be dismissed for lack of subject-matter jurisdiction. The Complaint also violates Fed. R. Civ. P. 8 by presenting not a short and plain statement of the claims, but rather a rambling and untidy assortment of preposterous claims that lump together all the Defendants indiscriminately, making it impossible for Defendants to prepare an adequate response or defense, which is also reason to dismiss the Complaint.

Antonacci's claims against the movants have previously been litigated. *See Antonacci*, 640 F. App'x at 557; *Antonacci*, 2024 WL 2988943, at *1. The Court should preclude him from attempting to re-litigate the same frivolous claims here as a matter of law. Indeed, Antonacci concedes that his dismissed Eastern District of Virginia matter is a "related case" to this litigation. Notice of Related Case ("Notice") (ECF 3). In his Notice, Antonacci admitted that this case was filed by the same litigant, against the *same* parties, involving the *same* subject matter. *Id.* (emphasis in original). He cannot plausibly argue that *res judicata* does not apply to prevent him from bringing the same frivolous claims yet again here.

Certain Defendants' role in Antonacci's fanciful conspiracy relates to litigation activity that is subject to absolute privilege. To the extent that Antonacci bases his conspiracy claim on purported defamation, litigation privilege rules cover any defamatory statements made by the Seyfarth/Perkins Defendants.

The claims against the VSB Defendants and Descrybe require dismissal for lack of personal jurisdiction because neither Defendant is subject to general or specific jurisdiction in the District of Columbia. The VSB is also entitled to sovereign immunity under the Eleventh Amendment as an agency of the Commonwealth of Virginia.

Even if the Court were to exercise jurisdiction and not dismiss the Complaint under Rule 8, the claims asserted against Defendants still require dismissal. In addition to being time-barred, the Complaint's RICO claim fails to state a plausible claim, as it does not sufficiently allege facts establishing either an "enterprise," that Defendants were members of any such enterprise, necessary predicate acts, or a "pattern of racketeering activity" that caused injury to Plaintiff. Given Plaintiff's failure to sufficiently plead a RICO violation, and because it fails to sufficiently allege an agreement to violate RICO and is time-barred, Plaintiff's RICO conspiracy claim also must fail. In addition, Antonacci's claims fail under Rule 9(b)'s heightened pleading standards.

Were the Court to exercise supplemental jurisdiction over Plaintiff's D.C. Antitrust Act conspiracy claim—and it should not, given the absence of a plausible RICO claim—that claim must be dismissed because it fails to sufficiently allege an agreement to violate that antitrust statute, does not plead the type of antitrust injury to the market necessary to confer antitrust standing on Plaintiff, and is time-barred.

Plaintiff's conspiracy claim to interfere with civil rights must also be dismissed for failure to state a plausible claim because it does not sufficiently allege the necessary agreement to deprive Plaintiff of any legal rights and protections, let alone one motivated by a class-based, invidiously discriminatory animus.

The Computer Fraud and Abuse Act ("CFAA") claim brought against only The So Company also fails because it pleads no facts showing any unauthorized access, pleads no cognizable loss, and is time-barred. Additionally, because Plaintiff never properly served The So Company, the Complaint against it should also be dismissed under Rule 12(b)(5).

Having previously filed roughly the same complaints dismissed with prejudice in other courts, Plaintiff, no stranger to the courts, should not be given license to further and needlessly

waste the time and effort of the parties or the Court, and Plaintiff's Complaint should be dismissed with prejudice.

## STATEMENT OF RELEVANT ALLEGED FACTS

Plaintiff, an attorney, alleges in his Complaint that, beginning when he joined the law firm of Holland & Knight, LLP as an associate in 2008 and continuing to this day, "a Zionist criminal enterprise has sought to destroy him" and his legal career. ECF 105-1 at 4.

This "Zionist criminal enterprise" is made up of "various actors" who have "a personal or professional relationship" with Plaintiff – including "corrupt" state and federal courts in Illinois and Virginia who have "defamed" him, former White House Chief of Staff, Mayor of Chicago and U.S. Ambassador to Japan "Rahm Emanuel, a Zionist tool," a "fraudulent" and "Zionist district court judge" in the Eastern District of Virginia, who dismissed "another federal suit against this Zionist criminal enterprise" filed by Plaintiff in 2024, and "the Zionist-run Virginia State Bar" – and who, on behalf of this "Zionist criminal enterprise," "spread . . . false narratives" and "lies" about Plaintiff "[i]n furtherance of this scheme" to "destroy him" and his legal career. *Id.* at 4-5. According to the Complaint, these "Zionists seek to elevate the weak to protect them from the strong, because Zionists are afraid of everything," "[t]his Zionist criminal enterprise has created a race to the bottom in the profession responsible for maintaining the credibility of our political institutions," and "[t]he Zionists must be stopped before they undo all social and economic progress over the past two centuries." *Id.* at 5-6.

Specifically, Plaintiff alleges in his Complaint that while he was an associate at Holland & Knight LLP, he filed a RICO and state law fraud claim "against an alleged enterprise that sought to defend a firm client," and he planned to name in the lawsuit "a Jew and a Zionist," Gerald Katz, but was countermanded by the firm's executive partner, Paul Kiernan, also a "Zionist and Jew." *Id.*, ¶¶ 29-46. At that time, Plaintiff began looking for another job and was on the verge of

receiving an offer to join the law firm of Sheppard Mullin LLP, but Stephen Shapiro, a partner at Holland & Knight and also "a Zionist and a Jew," "knowingly defamed" him to prevent him from being offered the position because "the criminal enterprise" of which Messrs. Kiernan and Shapiro were a part was "afraid of the legal theories espoused" by Plaintiff and "wished to end his career as quickly as possible" and "prevent him from gaining subsequent employment." *Id.*, ¶¶ 60-64, 72. Plaintiff was asked to resign from Holland & Knight on April 27, 2010. *Id.*, ¶¶ 53, 72. Plaintiff alleges that he was let go by Holland & Knight or forced to resign because he disagreed with the firm's decision about not bringing a certain claim in a case. *Id.* ¶¶ 39-45, 53, 64, 72. The Complaint does not contain allegations of any wrongful act by Holland & Knight subsequent to Plaintiff's departure from Holland & Knight in April 2010.

According to Plaintiff, Rahm Emanuel "is a leader" of the alleged "Zionist criminal enterprise" who, while he served as President Obama's Chief of Staff from January 2009 to October 2010, agreed with Paul Kiernan, Stephen Shapiro and Gerald Katz "to use their enterprise to destroy [Plaintiff's] legal career because his contempt for corruption posed a threat to them and the socialist totalitarianism that is the goal of Zionism." *Id.*, ¶¶ 87-88. After relocating to Chicago, in August 2011, Plaintiff accepted a job offer at Seyfarth Shaw, LLP ("Seyfarth") but "[t]his was a trap set by this enterprise, particularly through Kiernan, Seyfarth and Emanuel." *Id.*, ¶¶ 92-93, 127.

Plaintiff alleges that in August 2011, at the direction of then-Mayor Rahm Emanuel, the City of Chicago engaged Seyfarth and Ponder on a matter, and Seyfarth tasked Plaintiff to work with Ponder, but "she is impossible to work with and regularly harasses those assigned to work with her." *Id.*, ¶¶ 96-100. Emanuel retained Ponder so that, among other things, she could "compromise [Plaintiff's] legal career," which Mr. Emanuel "deems a threat to this enterprise."

*Id.*, ¶ 106. On May 22, 2012, Seyfarth, "at the behest of Rahm Emanuel, Paul Kiernan and Stephen Shapiro, who deem [Plaintiff] a threat to their criminal enterprise," terminated the employment of Plaintiff, who was "told that his work with Ponder months earlier was the issue," but Plaintiff alleges that "[t]he real reason [he] was terminated was to prevent him from promoting legal theories that would implicate this enterprise." *Id.*, ¶¶ 109-115.

In November 2012, Plaintiff filed suit against Seyfarth and Ponder in Illinois state court. *Id.*, ¶ 134. Because he was not a member of the Illinois Bar, he engaged an attorney, a Ms. Major, to represent him, and he alleges that Ms. Major, with Emanuel, Seyfarth, Gehringer, the former General Counsel of the law firm of Perkins Coie and "a Jew," a judge and court reporters in the case conspired to sabotage his case and damage his professional reputation. *Id.*, ¶¶ 122-142, 150, 153-156, 171-172, 179, 199-250.

At around the same time, in November 2012, Plaintiff submitted to the Illinois Bar an Illinois Bar application, which was assigned to Ellen Mulaney of the Illinois Bar Character and Fitness Committee for review. *Id.*, ¶ 132. Plaintiff alleges that an Inquiry Panel, which included Ms. Mulaney and others, scheduled a hearing on Plaintiff's application on January 25, 2013, and engaged in an ongoing pattern of defrauding, harassing and intimidating Plaintiff into withdrawing or settling his lawsuit against Seyfarth and Ponder, which he refused to do. *Id.*, ¶ 132-133, 138, 143-149, 158-197. In April 2013, the Inquiry Panel issued a report, which Plaintiff's alleges "is rife with fraud," declining to certify Plaintiff's Illinois Bar application. *Id.*, ¶¶ 157, 176-178.

On April 29, 2015, Plaintiff filed a complaint against Seyfarth, Ponder and others in the U.S. District Court for the Northern District of Illinois "alleging RICO and other fraud claims against members of this criminal enterprise." *Id.*, ¶ 251.[2] Six days later, U.S. District Court Judge

[2] A true and correct copy of that complaint was filed as ECF 28-2.

Milton I. Shadur dismissed Plaintiff's complaint *sua sponte* for lack of subject matter jurisdiction. *Id.*, ¶ 264. The court found that "Antonacci's assertions that he has assertedly been the victim of a massive global conspiracy on the part of what seems to be the entire world with which he comes into contact plainly appears to fail – flat out – the 'plausibility' requirement established by the *Twombly-Iqbal* canon that has taken the place of the long-standing and overly generous *Conley v. Gibson* approach." *Antonacci v. City of Chicago*, 2015 U.S. Dist. LEXIS 58490, *2 (N.D. Ill. May 5, 2015). The court held that "Antonacci cannot use civil RICO as the springboard for federal-question jurisdiction in the subjective and objective good faith required by Rule 11(b) . . . ." *Id.* at *5.

The Seventh Circuit affirmed the district court's judgment, ECF 105-1, ¶ 275, agreeing that "this is not a simple case of failure to state a claim on which relief can be granted" and instead "is governed" by *Bell v. Hood*, 327 U.S. 678 (1946) because "Antonacci's federal claims were so insubstantial that they did not suffice to engage federal jurisdiction . . . ." *Antonacci*, 640 F. App'x at 555. The Seventh Court held that

> Antonacci's complaint fails to raise anything that is worth salvaging . . . . The difficult question is whether Antonacci's RICO claims are legally frivolous, or if they simply fail to state a claim. In our view, the former is the proper description. While he premises his RICO claims on multiple allegations of fraud, each individual allegation is so unsupported by any plausible detail as to be preposterous.

*Id.* at 557. Plaintiff petitioned the U.S. Supreme Court for a writ of certiorari, which was denied in October 2016. ECF 105-1, ¶ 280.

Undeterred, as Plaintiff alleges, on February 14, 2024, he "filed his second federal lawsuit against this Zionist criminal enterprise" in the U.S. District Court for the Eastern District of

Virginia. *Id.*, ¶ 240.[3] Plaintiff alleges that "his second federal lawsuit against this Zionist criminal enterprise" was "prematurely assigned" to Judge Michael Nachmanoff, "a Zionist district judge appointed by Joe Biden," who dismissed the complaint for lack of subject matter jurisdiction. *Id.* at 5. Plaintiff appealed Judge Nachmanoff's ruling and "[t]he Fourth Circuit then sat on . . . [the] appeal for ten months, allowing the Zionist-run Virginia State Bar to pursue an attack on Antonacci's law license." *Id.* Plaintiff alleges that after the Fourth Circuit "affirmed [Judge] Nachmanoff's fraudulent disgrace in a one-page order," he petitioned the U.S. Supreme Court for a writ of certiorari, which was denied. *Id.*

In his order, Judge Nachmanoff noted that Plaintiff's second federal lawsuit "mirrors" his previous federal lawsuit filed in the Northern District of Illinois, and asserts "roughly identical allegations concerning all the events prior to his previous federal lawsuit," and also "that additional individuals and companies, which are part of the same criminal enterprise, have taken actions since then to destroy him." *Antonacci v. Emanuel*, 2024 U.S. Dist. LEXIS 107279, *6 (E.D. Va. May 23, 2024). For example, Plaintiff alleged, "without any other context," that one defendant "'race-baited' him at a restaurant and threatened to kill him before punching Antonacci in the nose," other defendants "involved in this alleged fraudulent scheme 'monitored Antonacci by illegally hacking into his computer system and/or mobile phone,"' and "Defendant Seth Firmender, whose employer was at one point Antonacci's client, 'set up Antonacci for a false claims act investigation' on the matter, though Antonacci does not allege that anyone ever brought a False Claims Act suit against him." *Id.*

According to Judge Nachmanoff, "[a]lthough Antonacci has added new defendants and allegations, the alleged conspiracy – and the fundamental implausibility of it – has not changed"

---

[3] A true and correct copy of that complaint was filed as ECF 28-3.

and he "agree[d] with the Seventh Circuit's assessment that Antonacci's previous, and now renewed, allegations are 'legally frivolous' because they are 'so unsupported by any plausible detail as to be preposterous.'" *Id.* at *7 (quoting *Antonacci*, 640 F. App'x at 557). Judge Nachmanoff observed that Plaintiff's new allegations, including those related to Defendant Seth Firmender, "do not move the needle towards plausibility – if anything they reinforce the implausibility of the alleged conspiracy. Antonacci continues to 'fl[ing] wild accusations at a large,' and seemingly never-ending, 'number of people' who have no apparent connection other than their interactions, however tangential, to Antonacci." *Id.* (quoting *Antonacci*, 640 F. App'x at 557).

Reiterating Judge Shadur's admonition that "Antonacci cannot use civil RICO as the springboard for federal-question jurisdiction," *id.* (quoting *Antonacci*, 2015 U.S. Dist. LEXIS 58490 at *5), Judge Nachmanoff dismissed Plaintiff's complaint with prejudice for lack of subject matter jurisdiction "[b]ecause Antonacci's RICO and [Computer Fraud and Abuse Act] allegations are 'wholly insubstantial.'" *Id.* (quoting *Bell*, 327 U.S. at 682-83).

Around this time, in an entirely separate matter, Plaintiff also filed suit against Descrybe, a limited liability company organized under the laws of the State of Delaware and headquartered in Massachusetts. ECF 105-1, ¶ 8. Descrybe uses generative AI to summarize and catalogue publicly-available caselaw. *Id.* ¶ 476. While searching his own name on the internet, Plaintiff allegedly discovered Descrybe's AI-generated summary of the opinion in *Antonacci v. City of Chicago*, 640 F. App'x 553. *Id.*, ¶ 477. According to Plaintiff, a single sentence in the case summary was incorrect. *Id.*, ¶ 478. Based on this single sentence, Plaintiff filed a complaint against Descrybe captioned *Antonacci v. Descrybe, LLC*, C.A. No. 25-1093-CFC (D. Del.), asserting a

defamation claim. *Id.*, ¶ 497. Plaintiff's complaint in that matter was dismissed without prejudice, and his motion for leave to amend is still pending.

Undeterred still, Plaintiff now attempts a third bite at the apple and recycles essentially the same allegations, which two federal courts have previously found to be "legally frivolous" and so "insubstantial" that they do not suffice to engage federal jurisdiction. *See generally*, ECF 105-1, ¶¶ 337-399. Plaintiff again alleges, like he did in his complaint filed in the Eastern District of Virginia, that, after Plaintiff applied for a position with the U.S. Department of Justice in September 2019, "[t]he enterprise saw [his] application as a direct threat to their activity, so it set the AECOM Fraud in motion." *Id.* ¶ 340.[4]

Supposedly toward that end, Plaintiff alleges that one of his childhood friends, who "agreed to assist the criminal enterprise, through Emanuel, in its attempt to destroy Antonacci and his legal career," "connected the enterprise" with Mr. Firmender, then Lane's General Counsel. *Id.* ¶¶ 306, 310. Lane then retained Plaintiff in October 2019, *id.* ¶ 345, to prepare "a legal analysis" of a dispute involving Lane's backcharge claim against AECOM Technical Services, Inc. ("AECOM"), Lane's design subcontractor on a construction project. *Id.* ¶¶ 346, 352, 357. That dispute developed into litigation in Fairfax County Circuit Court. *Id.*, ¶ 361.

The Complaint alleges that, because the enterprise protects Mr. Firmender and other members from accountability, Mr. Firmender agreed to perpetrate the "AECOM Fraud," a scheme through which Mr. Firmender agreed to orchestrate "dubious" claims against AECOM in order to "set[] up Antonacci for a false claims act investigation associated with Antonacci's representation of Lane" and "to sabotage Lane's case and implicate Antonacci in pursuit of Lane's dubious

[4] Indeed, just as the allegations in Plaintiff's second complaint mirrored those in his first complaint, most of the allegations in his latest Complaint now before this Court reiterate – often verbatim – the allegations in those earlier complaints. *See* Affidavit of Kelley Halliburton, ECF 28-4.

claims." *Id.*, ¶¶ 313, 316. The Complaint does not allege any False Claims Act investigation or claim was ever brought against Plaintiff. Plaintiff alleges that the AECOM Fraud consisted of, among other things: Lane changing its position regarding a legal issue "right before a hearing," *id.*, ¶ 316a; one of Lane's employees allegedly destroying documents, *id.*, ¶¶ 316a, 380; seeking to falsely associate Plaintiff with that employee's destruction of documents and data collection efforts, *id.*, ¶¶ 316b, 381; delaying hiring a consultant and ediscovery vendor, *id.*, ¶¶ 316d; and ordering the ediscovery vendor to stop work. *Id.*, ¶ 316e.

The Complaint alleges that the AECOM Fraud targeted Plaintiff and was premeditated and agreed between AECOM's counsel and Mr. Firmender, who assured AECOM's counsel that Lane would be satisfied with the outcome of that suit because Mr. Firmender could agree to settle it at any time. *Id.*, ¶ 347.

The Complaint alleges that Lane and AECOM held a two-day mediation in June 2020 that "was a staged event meant only to attempt to implicate Antonacci in the AECOM Fraud" because "[t]he parties had no intent of settling at mediation" and instead intended "to wait until the election to see if Biden won, in which case the enterprise's control of DOJ would allow them to perpetrate the AECOM Fraud with impunity." *Id.*, ¶ 359. According to the Complaint, "President Biden, an admitted Zionist, is affiliated with this enterprise, particularly through Emanuel." *Id.*, ¶ 362.

The Complaint alleges that Plaintiff was concerned that Fairfax County Circuit Court "Judge Thomas Mann, a Jew" who was assigned to the AECOM matter and had denied every motion and request presented by Antonacci, "was assisting this enterprise" and would use evidence presented by Antonacci against Lane, "thus providing Lane a basis for a legal malpractice claim." *Id.*, ¶ 387. The Complaint does not allege that Lane ever filed a legal malpractice claim against Plaintiff.

Plaintiff alleges that he raised concerns regarding the AECOM matter with Mr. Firmender, *id.*, ¶ 392, and "[i]mmediately after Antonacci raised his concerns, Firmender asked Antonacci to cease working on the case immediately." *Id.*, ¶ 393. "[O]n June 17, 2021, Firmender ordered all effort on the case halted." *Id.*, ¶ 384.

Plaintiff also alleges a host of conclusory allegations against Defendants entirely unconnected to this case. The Complaint contains, for example, only the conclusory allegation that Descrybe conspired with Defendants Rahm Emanuel, Ms. Ponder, and the law firm Perkins Coie LLP to publish the summary of the Seventh Circuit opinion in order to harm Antonacci as part of the larger "Zionist" conspiracy. *Id.*, ¶¶ 474-99. Similarly, Plaintiff asserts conclusory allegations that during the Parrish Defendants' representation of Plaintiff in a hit-and-run accident, they conspired with Defendants "to ensure Mr. Palma could not be held responsible, and Plaintiff could not receive renumeration for his medical expenses." *See id.*, ¶ 550(l).

Plaintiff's allegations against the VSB Defendants arise from disciplinary proceedings in Virginia. Johnson, an Assistant Bar Counsel, prosecuted the disciplinary case against Plaintiff, and the Circuit Court for the City of Alexandria suspended Plaintiff's Virginia law license. *Id.*, ¶¶ 421–24, 459, 463; *State Bar ex rel. Fourth Dist. v. Antonacci*, No. CL25000531-00 (Alexandria Cir. Ct.). Plaintiff alleges that the VSB Defendants also notified disciplinary authorities in the District of Columbia of his Virginia suspension, ECF 105-1, ¶ 471, but alleges no other connection between the VSB Defendants' disciplinary activities and the District of Columbia.

## **LEGAL STANDARD**

"Federal [district] courts are courts of limited jurisdiction." *Stallard v. Goldman Sachs Grp., Inc.*, 2024 U.S. Dist. LEXIS 215791, *8 (D.D.C. Nov. 27, 2024) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Federal law empowers federal district courts to hear only certain kinds of cases, and it is presumed that a cause lies outside this limited

jurisdiction.'" *MSP Recovery Claims, Series LLC v. Pfizer, Inc.*, 2023 U.S. Dist. LEXIS 58653, *8 (D.D.C. Apr. 4, 2023) (quoting *Kokkonen*, 511 U.S. at 377).

A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the "[C]ourt's jurisdiction." *Stallard*, 2024 U.S. Dist. LEXIS 215791 at *8 (quoting *Morrow v. United States*, 723 F. Supp. 2d 71, 75 (D.D.C. 2010)). "Thus, the Court is obligated to dismiss a claim if it 'lacks . . . subject-matter jurisdiction.'" *Id.* (quoting Fed. R. Civ. P. 12(b)(1)). Because it is to be presumed that a cause lies outside the Court's limited jurisdiction, the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Stallard*, 2024 U.S. Dist. LEXIS 215791 at *8-9 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

When deciding a Rule 12(b)(1) motion, "the Court 'may undertake an independent investigation that examines 'facts developed in the record beyond the complaint' in order to 'assure itself of its own subject matter jurisdiction.'" *MSP Recovery Claims, Series LLC*, 2023 U.S. Dist. LEXIS 58653 at *8 (quoting *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005)). On a Rule 12(b)(1) motion, the court does not assume the truth of legal conclusions; nor does it accept inferences that are unsupported by the facts set out in the complaint. *MSP Recovery Claims, Series LLC*, 2023 U.S. Dist. LEXIS 58653 at *8 (citing *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)). Moreover, "the [p]laintiff's factual allegations in the complaint will bear closer scrutiny in resolving a [Rule] 12(b)(1) motion than resolving a [Rule] 12(b)(6) motion for failure to state a claim." *Stallard*, 2024 U.S. Dist. LEXIS 215791 at *9 (internal quotations omitted).

Rule 12(b)(2) requires plaintiff to make "a prima facie showing of specific and pertinent jurisdictional facts." *Myers v. Holiday Inns, Inc.*, 915 F. Supp. 2d 136, 139 (D.D.C. 2013). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. Rule Civ. P. 4(k)(1)(A)).

The first question is whether the District of Columbia's statutory law permits the exercise of personal jurisdiction over a particular defendant. If the forum state's law is satisfied, courts will assess whether the exercise of personal jurisdiction comports with federal due process. *Id.*

Under Rule 12(b)(2), Plaintiff bears the burden of establishing personal jurisdiction over each Defendant. To satisfy that burden, Plaintiff must allege specific facts connecting each Defendant to the forum; conclusory assertions and aggregated allegations against multiple defendants are insufficient. *Duarte v. Nolan*, 190 F. Supp. 3d 8, 11 (D.D.C. 2016).

Pursuant to Rule 12(b)(3), "a defendant may, at the lawsuit's outset, test whether the plaintiff 'has brought the case in a venue that the law deems appropriate.'" *Johns v. Newsmax Media, Inc.*, 887 F. Supp. 2d 90, 96 (D.D.C. 2012) (quoting *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006)). To prevail on a motion to dismiss under Rule 12(b)(3) for improper venue, "the defendant must present facts that will defeat the plaintiff's assertion of venue." *Lemon v. Kramer*, 270 F. Supp. 3d 125, 138 (D.D.C. 2017) (quoting *Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 129 (D.D.C. 2013)). The "plaintiff . . . bears the burden of establishing that venue is proper." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (quoting *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003)).

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. *Moore v. U.S. Dep't of State*, 351 F. Supp. 3d 76, 87, (D.D.C. 2019). "To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to 'state a claim to relief that is plausible on its face.'" *Moore*, 351 F. Supp. at 87 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A facially plausible claim is one that 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged.'" *Moore*, 351 F. Supp. 3d at 87 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). *Accord*, *Doe v. Siddig*, 810 F. Supp. 2d 127, 132 (D.D.C. 2011).

"'Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief,' and the case can be dismissed." *Cimino v. Internt'l Bus. Machines Corp.*, 2019 U.S. Dist. LEXIS 168059, *12 (D.D.C. Sept. 30, 2019) (quoting *Iqbal*, 556 U.S. at 679). *Accord*, *Klayman v. Judicial Watch, Inc.*, 296 F. Supp. 3d 208, 217 (D.D.C. 2018).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed to be true and should be liberally construed in the plaintiff's favor, and the plaintiff must be given every favorable inference that may be drawn from the allegations of fact. *G'Sell v. Carven*, 724 F. Supp. 2d 101, 107 (D.D.C. 2010) (citations omitted). *Accord*, *Moore*, 351 F. Supp. 3d at 87. "However, 'the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.'" *G'Sell*, 724 F. Supp. 2d at 107 (internal quotations omitted). *See also* *Moore*, 351 F. Supp. 3d at 87 ("An 'unadorned, the defendant – unlawfully – harmed – me accusation' is not credited; likewise, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'") (quoting *Iqbal*, 556 U.S. at 678); *Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73, 79 (D.D.C. 2013) ("pleading must offer more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'") (quoting *Iqbal*, 556 U.S. at 678). "Nor does the court accept 'a legal conclusion couched as a factual allegation,' or 'naked assertions devoid of further factual enhancement.'" *G'Sell*, 724 F. Supp. 2d at 107 (quoting *Iqbal*, 556 U.S. at 678).

Finally, "although *pro se* complaints are generally 'held to less stringent standards,' . . . this leniency is not afforded to *pro se* litigants who . . . are licensed attorneys." *Jones v. Ogletree*,

*Deakins, Nash, Smoak & Stewart, P.C.*, 2025 U.S. Dist. LEXIS 59302, *11 (D.D.C. Mar. 30, 2025) (citing *Spence v. VA*, 109 F. 4th 531, 536 (D.C. Cir. 2024)). *See Klayman v. Judicial Watch, Inc.*, 2021 U.S. Dist. LEXIS 28116, *7 (D.D.C. Feb. 16, 2021) ("several courts in this district have found that *pro se* attorney litigants are 'not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff because an attorney is presumed to have knowledge of the legal system and need[s] less protections from the court'") (internal quotations omitted). In any event, any liberal standard afforded to a *pro se* litigant is certainly "not a license to ignore the Federal Rules of Civil Procedure," and "even *pro se* litigants must comply with [those] Rules." *Kaul v. Fed'n of State Med. Bds.*, 2021 U.S. Dist. LEXIS 62007, *12, 47 (D.D.C. Mar. 31, 2021) (internal quotations omitted).

## **ARGUMENT**

### A. Plaintiff's Complaint Should Be Dismissed For Lack of Subject-Matter Jurisdiction Because It is Wholly Insubstantial and Frivolous

"Dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction is justified where a -claim is "immaterial and made solely for the purpose of obtaining jurisdiction or [it] is 'wholly insubstantial and frivolous.'" *Carmichael v. Pompeo*, 486 F. Supp. 3d 360, 367 (D.D.C. 2020) (quoting *Arbaugh v. Y&H Comp.*, 546 U.S. 500, 513 n. 10 (2006) (quoting *Bell*, 327 U.S. at 682-83). *Accord*, *Agudas Chasidei Chabad v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008); *Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 25-26 (D.D.C. 2012); *Alec L. v. Jackson*, 863 F. Supp. 2d 11, 14 (D.D.C. 2012); *Anderson v. Wiggins*, 460 F. Supp. 2d 1, 7 (D.D.C. 2006). *See Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) ("A complaint may be dismissed on jurisdictional grounds when it 'is "patently insubstantial," presenting no federal question suitable for decision.'") (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)); *Page v. Raimondo*, 2024 U.S. Dist. LEXIS 129362, *6 (D.D.C. July 23, 2024) ("[A] court must dismiss a complaint



51847528.3

for lack of jurisdiction . . . where the plaintiff's claims are 'wholly insubstantial and frivolous.'") (quoting *Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015) (quoting *Bell*, 327 U.S. at 682-83)); *Marino v. CIA*, 2012 U.S. Dist. LEXIS 139661, *4 (D.D.C. Sept. 28, 2012) ("[F]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' . . . 'wholly insubstantial,' . . . 'plainly unsubstantial,' . . . or 'no longer open to discussion . . . .'") (citations omitted).

"The 'patently insubstantial' rule is a recognition that some allegations, although they may nominally reference federal law, are simply too outlandish to create an actual federal controversy within the meaning of the statute." *Poblete v. U.S. Marshalls Serv*., 253 F. Supp. 3d 115, 118 (D.D.C. 2017). "If the court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Oliver v. Black Knight Asset Mgmt., LLC*, 812 F. Supp. 2d 2, 8 (D.D.C. 2011) (citing *Arbaugh*, 546 U.S. at 514).

### 1. **Federal Courts Lack Jurisdiction To Adjudicate Frivolous Claims**

Courts should "dismiss a complaint as frivolous when the facts alleged rise to the level of the irrational or the wholly incredible or postulate events and circumstances of a wholly fanciful kind." *Gilberti v. Harris*, No. CV 24-2837, 2024 WL 5137074, at *1 (D.D.C. Dec. 17, 2024) (citation modified); *see also Desenberg v. U.S Dep't of Just.*., No. 23-CV-01534 (APM), 2023 WL 4706094, at *1 (D.D.C. July 24, 2023) ("Plaintiff's allegations rest on the kind of fantastic and delusional claims that warrant dismissal *sua sponte*."). In *Desenberg*, the court dismissed "bizarre conspiracy theories" alleging "conspiratorial criminal activity by a large group of individuals" employed by U.S. government agencies and "private sector internet companies." *Id*. The present Complaint contains equally bizarre theories and warrants dismissal for want of federal jurisdiction.

Plaintiff's Complaint mirrors his earlier federal complaints that were dismissed for lack of subject matter jurisdiction, and contains the same allegations of a massive global conspiracy of

breathtaking scope which Judge Shadur of the Northern District of Illinois concluded were "flat-out" implausible, *Antonacci*, 2015 U.S. Dist. LEXIS 58490 at *2, and which both the Seventh Circuit and Judge Nachmanoff of the Eastern District of Virginia concluded were "legally frivolous" because "they are so unsupported by any plausible detail as to be preposterous," and deprived the court of subject-matter jurisdiction because they were "wholly insubstantial." *Antonacci*, 640 F. App'x at 557; *Antonacci*, 2024 U.S. Dist. LEXIS 107279 at *7.

Indeed, the minor tweaks made by Plaintiff in his third Complaint only "reinforce the implausibility of the alleged conspiracy." *Antonacci*, 2024 U.S. Dist. LEXIS 107279 at *7. What was previously alleged to be a "criminal enterprise" has now become a "Zionist criminal enterprise," whose members include a parade of lawyers, judges, court reporters, family members, and others who are either "Jews" or "Zionists," including Rahm Emanuel and even President Biden. Without providing any plausible detail, the Complaint alleges that these "Jews" and "Zionists" conspired among themselves and with others to: destroy his career at Holland & Knight and then Seyfarth, and prevent him from obtaining employment elsewhere as an attorney, ECF 105-1, ¶¶ 22-251; infiltrate and access his computer and mobile phone, *id*., ¶¶ 252-263, 343, 669-672; undertake a disinformation campaign against Plaintiff, *id.*, ¶¶278-79; "race-bait" and attempt to murder Plaintiff, *id*., ¶¶ 281-293; set up Plaintiff for a False Claim Act claim and investigation and malpractice suit, *id*., ¶¶ 318-336; collect and fabricate opposition research and make "deepfakes" of Plaintiff, *id*., ¶ 419; persecute and prosecute him before the Virginia State Bar, *id*., ¶¶ 420-473; falsely claim that Plaintiff had tax liens on his property, *id*., ¶¶ 474-499; and undermine Plaintiff's personal injury case against a hit-and-run driver. *Id*., ¶¶ 500-514.

**2. <u>RICO Claims Require Non-Frivolous Pleading</u>**

Plaintiff's Complaint "continues to 'fling wild accusations at a large,' and seemingly never-ending, 'number of people' who have no apparent connection other than their interactions,

however tangential, to Antonacci." *Antonacci*, 2024 U.S. Dist. LEXIS 107279 at *7 (quoting *Antonacci*, 640 F. App'x at 557). Jurisdiction in this Court primarily depends entirely on Antonacci's civil RICO claims of, among other things, mail and wire fraud. Courts have repeatedly emphasized that civil RICO—specifically because of a potentially stigmatizing effect on innocent defendants, the threat of treble damages, and the potential abuse of RICO's "potent provisions"—requires well-reasoned, non-frivolous pleading in order to establish federal question jurisdiction.[5] The Complaint's alleged "Zionist conspiracy" does not even satisfy basic plausibility standards, and certainly falls far short of this exacting standard.

Ordinarily, civil RICO can serve as a basis for federal question jurisdiction. But, as the Seventh Circuit previously held with respect to Antonacci's claims at issue here, courts may dismiss suits for want of federal jurisdiction when a civil RICO claim is facially frivolous. *Antonacci*, 640 F. App'x at 557; *Antonacci*, 2025 WL 1091848, at *1. Sister courts in this District have also held that dismissal is warranted when civil RICO claims are "wholly insubstantial and frivolous." *DeWayne v. United States*, No. 20-CV-00515 (APM), 2020 WL 5393858, at *1 (D.D.C. July 28, 2020) (citation modified). And more broadly, courts widely agree with the conclusion that frivolous RICO claims should be dismissed.[6]

---

[5]*See Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman*, Esq., 758 F. Supp. 2d 153, 167 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. L. Offs. of David M. Bushman*, Esq., 443 F. App'x 582 (2d Cir. 2011) (holding that courts have "a particular imperative . . . to flush out frivolous civil RICO allegations at an early stage of the litigation") (citation modified); *see also Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d 55, 61-62 (D.D.C. 2019) (holding that "far-fetched theory of RICO liability lack[ed] legal support" and noting that RICO claims based on mail and wire fraud must be "particularly scrutinized"), *aff'd sub nom. Republic of Kazakhstan, Ministry of Just. v. Stati*, 801 F. App'x 780 (D.C. Cir. 2020); *Spiteri v. Russo*, No. 12-CV-2780 MKB RLM, 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013) ("Courts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies."), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015).

[6] *See, e.g., Fraley v. Ohio Gallia County*, 1998 WL 789385, at *2 (6th Cir. Oct. 30, 1998) (unpublished) (affirming dismissal of civil RICO claim as frivolous); *Swan v. Barbadoro*, 520 F.3d 24, 26 (1st Cir. 2008) (same); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 774 (7th Cir. 1994) (same): *Oak Park Trust & Sav. Bank v. Therkildsen*, 209 F.3d 648, 651 (7th Cir. 2000) (concluding the RICO theory was "feeble"); *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 494 & n.1, 496 (4th Cir. 1995) (holding that when faced with the "complete deficiency of a properly pleaded civil RICO claim," dismissal of such claims is "not only correct, but required."); *Nansemond Wharf-Suffolk*

Because Antonacci's wild allegations remain wholly insubstantial and frivolous, Plaintiff's Complaint should be dismissed for lack of subject-matter jurisdiction.

### B. Claim Preclusion Bars Antonacci's Allegations Against the Seyfarth/Perkins Defendants, Rahm Emanuel, and Bean LLC

The doctrine of *res judicata* ("claim preclusion") bars re-litigation of identical legal claims. *See DeWayne*, 2022 WL 1718953, at *3. Under the doctrine, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009). Res judicata "bars relitigation not only of matters determined in a previous litigation but also ones a party could have raised" in the prior suit. *NRDC v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988). Federal law controls the preclusive effect of a prior federal court dismissal. 18B Wright & Miller's Federal Practice & Procedure § 4466 (3d ed. Sept. 2025 update) ("The Supreme Court has repeatedly said that federal law controls, lower courts agree, and the commentators concur.").

Here, the Illinois Appellate Court affirmed dismissal of Antonacci's original claims involving Seyfarth's alleged conduct. *Antonacci*, 39 N.E.3d at 232. The Seventh Circuit then affirmed the dismissal of Antonacci's suit against Seyfarth, Perkins, and Gehringer filed in the Northern District of Illinois. Subsequently, the Eastern District of Virginia dismissed virtually identical claims, including against Rahm Emanuel and Bean LLC, and that too was affirmed on appeal. As a result, Antonacci's allegations regarding the Seyfarth/Perkins Defendants, Rahm Emanuel, and Bean LLC are barred as a matter of law.

*Props., LLC v. Bank of Southside Va.*, 780 F. Supp. 2d 453, 457 (E.D. Va. 2011) (concluding that because the suit did "not raise a RICO claim," the suit did not implicate any federal law and there was no federal question jurisdiction).

Each of the four *res judicata* prongs is satisfied. First, Antonacci's Complaint squarely meets the first prong of claim preclusion—that the suits involve the same claims or causes of action. Antonacci has re-asserted his civil RICO claims and purported to assert D.C. antitrust claims against the Seyfarth/Perkins, Rahm Emanuel and Bean LLC Defendants premised on the same events and occurrences as the ones featured in his dismissed Northern District of Illinois and Eastern District of Virginia matters. Second, the current version of Antonacci's lawsuit also meets the next element of claim preclusion—that the suit is between the same parties or their privies. Antonacci's purported co-conspirators are the same parties, or their privies, named in his dismissed Northern District of Illinois and Eastern District of Virginia cases (namely, Seyfarth, Perkins, Gehringer, Bean LLC, and Emanuel). Third, the prior judgments were final, satisfying the next prong of the *res judicata* test. The Seventh Circuit wholly rejected Antonacci's claims and affirmed their dismissal in the Northern District of Illinois matter. *Antonacci*, 640 F. App'x at 557. The court concluded that Antonacci's factual allegations, as well as the legal theories underpinning those allegations, were both "preposterous" and "legally frivolous." *Id.* This judgment was final when the Supreme Court denied certiorari. The Eastern District of Virginia found the same, and the Fourth Circuit affirmed. *Antonacci*, 2025 WL 1091848, at *1. The judgment was final when the Supreme Court again denied certiorari. *Antonacci*, 145 S. Ct. 2755 (2025). Finally, this Court's sister federal courts within the Fourth and Seventh Circuits are courts of competent jurisdiction, satisfying the fourth prong of the res judicata test. *See Yeager v. Nat'l Pub. Radio*, No. 20-CV-00755 (RC), 2021 WL 3510653, at *7 (D.D.C. Aug. 10, 2021) (holding res judicata when three "federal courts of competent jurisdiction have considered these claims" so there was "no reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation") (citation modified).

### C. Absolute Litigation Immunity Shields the Seyfarth/Perkins Defendants From Antonacci's Claims

Antonacci again alleges, in conclusory fashion, that the Seyfarth/Perkins Defendants have joined forces with many others to defame Antonacci. *See, e.g.*, Compl. at 4 (detailing purported "false narratives" and a "criminal enterprise" set out to "destroy" Antonacci); *id.* ¶ 336 ("The purpose of this defamation campaign is to ensure that Louis Antonacci receives no legal work or employment/business opportunities…."); *id.* ¶ 339 ("This enterprise has prevented Antonacci from obtaining secure employment, through widespread defamation and paying off everyone in his personal and professional networks, in order to keep him trapped."). Even if these outlandish allegations—among others—could state a plausible claim, which they do not, D.C. law protects any statements made in connection with prior litigation under an absolute privilege. Indeed, Antonacci alleges "[a]ll of Gehringer's acts alleged herein were on behalf of himself, Perkins Coie, Seyfarth, and Anita J. Ponder. . .who Gehringer represented as counsel of record in Antonacci's state and federal cases against Ponder, Seyfarth, Perkins Coie and Gehringer in Chicago." *Id.*, ¶ 3.

To the extent that this conspiracy is premised on purported defamation, any defamatory statements made by Perkins and Seyfarth—or their attorneys—are absolutely privileged under D.C.'s litigation privilege rules. *See Marsh v. Hollander*, 339 F. Supp. 2d 1, 8 (D.D.C. 2004) (protecting purportedly defamatory statements that are made "preliminary to or in the course of a judicial proceeding so long as the defamatory matter has some relation to the proceeding.") (citation modified). "For the absolute immunity of the privilege to apply, two requirements must be satisfied: (1) the statement must have been made in the course of or preliminary to a judicial proceeding; and (2) the statement must be related in some way to the underlying proceeding." *Arneja v. Gildar*, 541 A.2d 621, 623 (D.C. 1988). Here, both prongs are satisfied. Antonacci's allegations regarding the Seyfarth/Perkins Defendants relate to their work in litigation, and the

allegedly defamatory statements relate to the subject of those underlying proceedings. *See, e.g.*, Compl., ¶ 3; *id.*, ¶ 525 (alleging, among other things that the Seyfarth/Perkins Defendants "successfully endeavored to influence the outcome of Antonacci's federal case in Chicago"); *id.* ¶ 550(i) (same); *id.*, ¶ 607 (same); *id.*, ¶ 608 (alleging that the Seyfarth/Perkins Defendants "conspired to influence the outcome of Antonacci's SCOTUS Petition"); *id.*, ¶ 601 (alleging that Gehringer conspired to "unlawfully quash" a subpoena); *id.*, ¶ 597 (alleging, among other things, that Gehringer conspired with judges to influence how Antonacci appeared in court). Antonacci's own allegations make clear that the alleged conduct of the Seyfarth/Perkins Defendants was in the context of litigation before state and federal courts in Illinois. Perkins and Seyfarth's involvement in litigation is now being contorted into a global conspiracy to defame Antonacci. This is precisely the type of situation litigation privilege was intended to address.

### D. The VSB is Immune From Suit, and the Court Lacks Personal Jurisdiction Over the VSB Defendants and Descrybe

The VSB is entitled to dismissal under Rule 12(b)(1). The VSB acts as an administrative agency of the Supreme Court of Virginia, Va. Code § 54.1-3910, and is an arm of the Commonwealth entitled to Eleventh Amendment immunity. *See Konan v. Sengel*, 239 F. App'x 780, 781 (4th Cir. 2007); *Roman v. Spilman Thomas & Battle, PLLC*, No. 7:23-cv-00749 (W.D. Va. May 22, 2024). Virginia has not consented to this suit, and Plaintiff identifies no congressional abrogation of that immunity applicable to his claims.

The claims against both VSB Defendants also require dismissal under Rule 12(b)(2). Neither Defendant is alleged to have the continuous contacts with the District of Columbia necessary for general jurisdiction. Nor does the Complaint establish specific jurisdiction. The allegations against the VSB Defendants arise from an investigation and disciplinary prosecution concerning Plaintiff's Virginia law license, conducted in Virginia. *See* Compl., ¶¶ 421–24, 459,

463. Plaintiff's only allegation connecting these Defendants to the District is that notice of his Virginia suspension was transmitted to D.C. disciplinary authorities. *Id.*, ¶ 471. But Virginia's disciplinary rules require notification to disciplinary authorities in other jurisdictions where an attorney may be licensed. Va. Sup. Ct. R. pt. 6, § IV, ¶ 13-9(G)(3). That ministerial notification does not establish purposeful contacts with the District, particularly where correspondence and mailing documents into the forum are insufficient, standing alone, to establish personal jurisdiction. *See Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 9 (D.D.C. 2009). Plaintiff's subsequent D.C. disciplinary proceedings were conducted by D.C. authorities, not the VSB Defendants. *See In re Antonacci*, 351 A.3d 1106 (D.C. 2026).

Nor can Plaintiff rely on RICO's nationwide-service provisions to establish jurisdiction automatically. Section 1965(b) requires a showing that the ends of justice justify bringing additional defendants before the forum court. *See FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1099–1100 (D.C. Cir. 2008). The Complaint identifies no basis for invoking that exceptional provision against the VSB Defendants.

Similarly, the District of Columbia's jurisdictional statutes do not allow the Court to exert personal jurisdiction over Descrybe. District of Columbia law permits the exercise of personal jurisdiction over "persons domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422.[7] The District of Columbia's long-arm statute also permits the exercise of personal jurisdiction over non-domiciliaries for claims arising out of the transaction of business in the District, contracts

[7] For purposes of personal jurisdiction, the District of Columbia Code defines "person" to include business entities. D.C. Code § 13-421.

for services to be provided in the District, tortious conduct in the District or tortious injuries occurring in the District. D.C. Code § 13-423.

Descrybe has no requisite contacts with the District of Columbia. Descrybe is incorporated in the State of Delaware, and its principal place of business is in Massachusetts. ECF 105-1, ¶ 8. Descrybe does not keep any offices in the District of Columbia, Descrybe directs no targeted advertising toward the state of Virginia or the District of Columbia, Descrybe has executed no contracts in or involving the District of Columbia, and Descrybe does not engage in any other activities to uniquely avail itself of the District of Columbia. And the Complaint makes no allegations to the contrary.

There is also no connection between the District of Columbia and Plaintiff's allegations against Descrybe. The Complaint does not allege that Descrybe agreed to conspire against Plaintiff within the District of Columbia or that Descrybe's principals ever met with or spoke to the other Defendants in the District of Columbia (or ***anywhere***, for that matter). Because state law is not satisfied, this Court need not even assess whether exercising personal jurisdiction over Descrybe would conform to the requirements of federal due process.[8]

The Complaint has failed to establish personal jurisdiction, and thus all claims against Descrybe must be dismissed under Rule 12(b)(2).

---

[8] But to be clear, it would not. To satisfy federal due process, the plaintiff must show "minimum contacts" between the defendant and the forum establishing that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *GTE New Media Servs. Inc. v. BellSouth Corp*., 199 F.3d 1343, 1347 (D.C. Cir. 2000). But the Complaint lacks any allegation of "minimum contacts" that would connect Descrybe to the District of Columbia. As the Supreme Court explained in *Daimler*, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." 571 U.S. at 137 (internal quotations and citation omitted). But Descrybe is a Delaware company headquartered in Massachusetts, ECF 105-1, ¶ 8, and it has no business in the District of Columbia. The only remote connection between Descrybe and this jurisdiction is that Descrybe's website can be accessed in the District of Columbia, just as it can from anywhere via the internet. But "personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000).

### E. Plaintiff's Complaint Should Be Dismissed as to Descrybe and the VSB Defendants Because Venue is Improper

The Complaint alleges that "[v]enue in this district is appropriate" for Antonacci's claims against Descrybe pursuant to 28 U.S.C. § 1391(b) (the general venue statute) and 18 U.S.C. 1965 (the RICO venue statute). (Compl., ¶ 21.) The generally applicable venue statute provides:

> (b) Venue in General.—A civil action may be brought in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Likewise, the venue statute for federal RICO claims states that venue is proper in "any district in which [the defendant] resides, is found, has an agent, or transacts his affairs." 18 U.S.C. 1965.

The Complaint fails to satisfy the requirements of either venue statute. Descrybe is incorporated in Delaware and headquartered in Massachusetts, ECF 105-1, ¶ 8, and thus, like the VSB Defendants, it does not reside in the District of Columbia for the purposes of Section 1391(b)(1) of the general venue statute. The Complaint also fails to allege that any of the relevant events giving rise to the claim against Descrybe or the VSB Defendants occurred in the District of Columbia as required for Section (b)(2). *See* ECF 105-1 ¶¶ 474-99. And, as discussed above, there is no personal jurisdiction over Descrybe or the VSB Defendants as required for Section (b)(3).

Likewise, for Section 1965, neither Descrybe nor the VSB Defendants was served or otherwise found in D.C., has an agent operating in D.C., or conducts business in D.C.[9]

Accordingly, the Court should dismiss this action as to Descrybe and the VSB Defendants pursuant to Rule 12(b)(3).

### F. Plaintiff's Complaint Should Be Dismissed for Failure to Comply with Fed. R. Civ. P. 8

"Federal Rule of Civil Procedure 8(a)(2) provides that any pleading asserting a claim for relief must include a 'short and plain statement of the claims showing that the pleader is entitled to relief.'" *Raja v. FDIC*, 2026 U.S. Dist. LEXIS 14132, *7 (D.D.C. Jan. 26, 2026) (quoting Fed. R. Civ. P. 8(a)(2)). "Rule 8(d)(1) requires that the pleading be 'simple, concise, and direct.'" *Id.* (quoting Fed. R. Civ. P. 8(d)(6)). "Taken together, Rules 8(a) and 8(d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Id.* (quoting *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004)).

The purpose of Rule 8(a) "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (citations omitted). *Accord*, *Johnson v. Dinapoli*, 2022 U.S. Dist. LEXIS 31320, *1-2 (D.D.C. Feb. 18, 2022); *Kaul*, 2021 U.S. Dist. LEXIS 62007 at *47; *T.M. v. District of Columbia*, 961 F. Supp. 2d 169, 173-74 (D.D.C. 2013). Beyond that, Rule 8(a) "serves to sharpen the issues to be litigated and to confine discovery and the presentation of evidence at trial

[9] The Complaint's bald assertion that venue is appropriate, without any factual basis to support its claim, is insufficient. *See Nader v. Sec'y of the Air Force*, 648 F. Supp. 3d 64, 68 (D.D.C. 2022) (where "[t]he complaint simply states that venue is proper . . . without any additional supporting factual allegations," a "bare assertion is insufficient to carry [plaintiff's] burden of pleading facts that establish that venue is proper"); *see also Second Amend. Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (to establish venue, the plaintiff must allege "specific acts connecting [the] defendant with the forum")(quotation omitted).

within reasonable bounds." *T.M.*, 961 F. Supp. 2d at 174 (quoting *Brown*, 75 F.R.D. at 498). The Rule 8(a) "standard also assists the court in determining whether it has jurisdiction over the subject matter." *Johnson*, 2022 U.S. Dist. LEXIS 31320 at *2.

Rule 8(a) '"is by no means exacting,' and it 'accords the plaintiff wide latitude in framing his claims for relief." *T.M.*, 961 F. Supp. 2d at 174 (quoting *Brown*, 75 F.R.D. at 499). "Yet despite the liberality envisioned by the rule, even a *pro se* complaint is subject to dismissal if the pleading fails reasonably to inform the adverse party of the asserted cause of action." *Brown*, 75 F.R.D. at 499 (citations omitted).

"Thus the courts have unhesitatingly dismissed actions where the complaint: consisted of 'a labyrinthian prolixity of unrelated and vituperative charges that defy comprehension . . .; was 'confusing, ambiguous, redundant, vague and, in some respects, unintelligible . . .'; was 'so verbose, confused and redundant that its true substance, if any, is well disguised' . . .; contained . . . 'a completely unintelligible statement of argumentative fact' . . . with 'little more than demands, charges, and conclusions' . . .; represented 'circuitous diatribes far removed from the heart of the claim' . . .; or set forth ' . . . a meandering, disorganized, prolix narrative." *Brown*, 75 F.R.D. at 499 (citations omitted). *See e.g.*, *Chennareddy v. Dodaro*, 697 F. App'x 704, 706 (D.C. Cir. 2017) ("disjointed, voluminous, and unspecific pleadings do not comport with Rule 8."); *Raja*, 2026 U.S. Dist. LEXIS 14132 at *9-10 (plaintiff's complaint, "largely a reproduction of [his] prior complaint," "patently fails to satisfy Rule 8" because it "is again 'long, rambling, disjointed, [and] incoherent' and . . . contains 'an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments'") (quoting *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 413 (D.D.C. 2017)); *Johnson*, 2022 U.S. Dist. LEXIS 31320 at *3 (same); *Kaul*, 2021 U.S. Dist. LEXIS 62007 at *47

("complaint that is excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material does not meet [Rule 8's] liberal pleading requirement") (quoting *T.M.*, 961 F. Supp. 2d at 174); *Brock v. Oklahoma*, 2019 U.S. Dist. LEXIS 208599, *3 (D.D.C. Dec. 4, 2019) ("When a *pro se* litigant's complaint 'sets forth "a meandering, disorganized, prolix narrative" or is "so verbose, confused and redundant that its true substance, if any, is well disguised,"' the Court may dismiss the motion *sua sponte*") (quoting *Hamrick v. United States*, 2010 U.S. Dist. LEXIS 86694, *2 (D.D.C. Aug. 24, 2010)).

In addition, a plaintiff flouts Rule 8 "by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Whaleco Inc. v. Shein Tech. LLC*, 2025 U.S. Dist. LEXIS 193394, *19 (D.D.C. Sept. 30, 2025) (quoting *Toumazou v. Turkish Rep. of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014)). "Courts in this District have thus granted motions to dismiss when the plaintiff's 'factual allegations refer[red] to "Defendants" collectively without specifying which of' the individual defendants 'allegedly took each action described in the complaint.'" *Id.* (citations omitted). The throughline of those cases is that a plaintiff cannot escape his burden by grouping different entities under "Defendants" or some other umbrella without alleging some facts about the role each played in the challenged conduct or, at the very least, something about the nature of their business that might implicate them. *Id.* at *25. *See, e.g.*, *Raja*, 2026 U.S. Dist. LEXIS 14132 at *12 (complaint that "brings vague, conclusory allegations of unlawful and fraudulent action against all Defendants, without providing clarity as to which Defendants the allegations apply, and what those Defendants are specifically alleged to have done to harm Plaintiffs" fails under Rule 8).

Over the course of 121 pages and 672 paragraphs, Plaintiff's Complaint presents "a confused and rambling narrative of charges and conclusions concerning numerous persons [and] .

. . organizations" and "contains an untidy assortment of claims that are neither plainly nor concisely stated nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments." *Brown*, 75 F.R.D. at 499. Paragraph after paragraph present a meandering narrative of an alleged "criminal Zionist enterprise" made up of members with no connection to each other, allegedly taking unrelated actions together in order to destroy Plaintiff and his livelihood, including undermining his career at law firms, sabotaging his and their own ligation claims, setting Plaintiff up for failure and legal and malpractice liability, defaming Plaintiff, hacking into his computer and phone, targeting his law licenses and even attempting to kill him.

The Complaint also impermissibly lumps the Defendants together without sufficiently distinguishing their individual conduct. For example, it alleges indiscriminately that: "Defendants sought to sabotage the Circuit Court Case, ECF 105-1, ¶ 523b; "Defendants unnecessarily delayed the Circuit Court Case, *id.*, ¶ 523c; Defendants conspired with members of the Illinois Board of Bar Examiners, and the Illinois Committee on Character and Fitness, *id.*, ¶ 523d; "Defendants falsified official documents and took official action without legal authority," *id.*, ¶ 523e; "Defendants, through the AECOM Fraud, attempted to set up Antonacci for a False Claims Act violation," *id.*, ¶ 523f; "Defendants utilized interstate wires to provide false, incomplete, and/or misleading information" and "transmitted, and caused others to transmit, wire communications," *id.*, ¶¶ 523i, 523j; "Defendants attempted to murder Louis Antonacci," *id.* ¶ 527; "Defendants either infiltrated Antonacci's mobile device or communicated with his 'friends' to discover where he would be the evening before he was scheduled to fly to Germany," *id.*, ¶ 527a; "Defendants . . . conspired . . . to interfere with interstate commerce by extortion," *id.*, ¶ 547a; "Defendants . . . set up Antonacci Law to do business with a front company," *id.*, ¶ 550g; "Defendants conspired with Palma and Parrish in order to attempt to murder Antonacci," *id.*, ¶ 550l; "Defendants

conspired with Derran Eaddy to attempt to murder Antonacci and race-bait him," *id.*, ¶ 609; "Defendants . . . conspired with Rokk and Fusion GPS to perpetuate a surreptitious defamation campaign against Antonacci," *id.*, ¶ 610; and "Defendants . . . conspired with . . . the Virginia State Bar, to communicate to Mr. Antonacci, threats to take action as public officials, without lawful authority." *Id.*, ¶ 616.

Given all of this, "[i]t belabors the obvious to conclude that the [C]omplaint filed in this action falls far short of the admittedly liberal standard set in F. R. Civ. P. 8(a)." *Brown*, 75 F.R.D. at 499. And while ordinarily the remedy for noncompliance with Rule 8(a) is dismissal with leave to amend, "where, as here, . . . [P]laintiff has shown that he is no stranger to the courts, having filed . . . previous lawsuits akin to this one, dismissal with prejudice is not inappropriate." *Brown*, 75 F.R.D. at 499 (citation omitted). *Accord*, *Raja*, 2026 U.S. Dist. LEXIS 14132 at *13-14. *See Dalbis v. France*, 2026 U.S. Dist. LEXIS 1659, *2-3 (D.D.C. Jan. 6, 2026) (in dismissing plaintiff's complaint for failure to comply with Rule 8(a), "the Court concludes that dismissal WITH PREJUDICE is warranted due to [plaintiff's] repeat filing of essentially the same lawsuit that was previously dismissed with prejudice).

Plaintiff, himself an attorney, is no stranger to the courts, having previously filed in two other courts roughly the same complaints, which were dismissed with prejudice. "To permit [P]laintiff to institute this lawsuit another time will needlessly waste time and effort." *Brown*, 75 F.R.D. at 499. Instead, Plaintiff's Complaint should be dismissed with prejudice for failure to comply with Rule 8. Dismissal with prejudice is especially appropriate as the Court has allowed Plaintiff the opportunity to amend his Complaint. *See* Order (ECF 134).

**G. <u>Antonacci's Claims Fail Under Rule 9(b)</u>**

Rule 9(b) presents heightened pleading standards in cases of fraud, including civil RICO allegations sounding in fraud. Here, Antonacci claims, among other things, that wire fraud and

mail fraud were predicate acts for the application of RICO. *See* Compl., ¶¶ 523–524. Antonacci was therefore required to allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Such circumstances include "the time, place, and content of the false representations," as well as the identity of the person making the misrepresentations and what he obtained thereby. *United States ex rel. Conteh v. IKON Off. Sols., Inc.*, 27 F. Supp. 3d 80, 85 (D.D.C. 2014). Antonacci at various points attempts to allege that the Seyfarth/Perkins Defendants, among other things, "sought to sabotage" Antonacci's Illinois state court case; "unnecessarily delay[ed]" the case, and "falsified official documents." Compl. ¶¶ 140- 142; ¶¶ 523-524; ¶ 604. But these and similar conclusory allegations do not come close to providing the level of specificity required under Rule 9(b).

### H. Count I of the Complaint Must Be Dismissed Because It is Untimely and Does Not State a Plausible RICO Claim

#### 1. Count I Must Be Dismissed Because It is Untimely

"It is well established that RICO claims are subject to a four-year statute of limitations period, . . . which begins to run 'when a plaintiff knew or should have known of his injury."' *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 226 (D.D.C. 2012) (quoting *Rotella v. Wood*, 528 U.S. 549, 553 (2000)). *Accord*, *Sanders v. D.C.* 2013 U.S. Dist. LEXIS 89946, *2 (D.D.C. June 17, 2013). In the case of multiple defendants with multiple acts, the "injury" runs from the date of the individual acts of the individual purported members of the conspiracy.[10] Plaintiff filed his Complaint on January 23, 2026. To fall within the statute of limitations, he must allege that each

[10] *See Hutchinson v. Staton*, 994 F. 2d 1076, 1079 (4th Cir. 1993) ("[a]s to the remaining defendants, the court ruled that the limitations period had expired for their alleged individual acts."); *see also United States v. Persico*, 832 F. 2d 705, 714 (2d Cir. 1987) ("we conclude that in order to satisfy the statute of limitations for section 1962(c), the government must demonstrate that a defendant committed at least one predicate racketeering act within the limitations period"); *Sterling Nat'l Mortg. Co. v. Infinitive Title Solutions*, No. 10-22147, 2011 U.S. Dist. LEXIS 169005 at *13 (S.D. Fla. March 3, 2011) ("for purposes of analyzing the statute of limitations, the court looks solely to acts alleged against a particular defendant, regardless of the apparent commission of timely predicate acts by other members of the alleged racketeering enterprise").

individual defendant engaged in an overt act in furtherance of the racketeering scheme on or after January 23, 2022.

Antonacci first filed civil RICO claims against Seyfarth, Perkins, and Gehringer over a decade ago, in April 2015, alleging a global conspiracy virtually identical to the conspiracy later described in the Eastern District of Virginia and present matters. Antonacci filed the present suit well after the expiration of the statute of limitations for similar (if not identical) civil RICO claims against the Seyfarth/Perkins Defendants. This filing was also more than four years after the Supreme Court denied certiorari on Antonacci's 2015 RICO suit. Because Antonacci's re-litigation of his RICO claims occurs more than four years after he knew or should have known of any purported injuries, his RICO claims against the Seyfarth/Perkins Defendants are barred by the statute of limitations.

Plaintiff's RICO claim against Holland & Knight is also barred by the statute of limitations. Plaintiff does not allege any timely overt act for Holland & Knight, and the latest allegation against Holland & Knight is that it forced Plaintiff to resign on or about April 30, 2010. ECF 105-1, ¶ 72.

Similarly, the Complaint alleges that Lane retained Plaintiff in October 2019 to work on the AECOM matter, which went to litigation on November 17, 2020, "once it was clear that President Biden had won the election." *Id.*, ¶¶ 345, 361. Mr. Firmender then "perpetrated the AECOM Fraud" by "orchestrat[ing] dubious claims" against AECOM, "while setting up Antonacci for a false claims act investigation associated with Antonacci's representation of Lane," and attempting to "sabotage Lane's case and implicate Antonacci in the pursuit of Lane's dubious claims." *Id.*, ¶¶ 313-316. After Plaintiff allegedly raised concerns with Mr. Firmender regarding the AECOM matter, he "asked Lane to seek separate counsel to proceed with the matter." *Id.*, ¶ 391. Mr. Firmender asked Plaintiff to cease working on the case immediately and on June 17,

2021, Mr. Firmender ordered all effort on the case halted, and Lane immediately "retained . . . a Zionist, Washington, DC law firm." *Id.*, ¶¶ 384-393, 395.

According to the Complaint, therefore, at the time Plaintiff raised with Mr. Firmender his concerns regarding the alleged "AECOM Fraud," which he did before being directed to cease working on the AECOM matter on June 17, 2021, he knew of the alleged AECOM Fraud and Lane's alleged attempt to implicate him in it. RICO's four-year statute of limitations began to run at that time and the limitations period ended on June 17, 2025. Because Plaintiff did not file his Complaint until January 23, 2026, his RICO's claims asserted against Defendants in Count I are time-barred.

Although Plaintiff's allegations against the Parrish Defendants stem from events that occurred between 2024 and 2026, Compl., ¶¶506-514, Plaintiff's RICO claims against the Parrish Defendants are nevertheless barred by the four-year statute of limitations. This Court has declined to accept that the "four-year period of limitations for civil RICO actions should run from the date of the last 'predicate act' committed as part of the alleged 'pattern of racketeering activity.'" *Nihiser v. White*, 211 F. Supp. 2d 125, 129 (D.D.C. 2002) (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 179 (1997)). The court held that "acceptance of the argument would have lengthened the limitations period dramatically, because a series of predicate acts (including acts occurring at up to 10-year intervals) can continue indefinitely." *Id.* (internal quotations omitted). Declining to create a limitations period that is longer than Congress could have contemplated, the court characterized the argument as "one that would have conflicted with a basic objective—repose—that underlies limitations periods." *Id.* (internal quotations omitted); *see also FDIC v. Bank of Am., N.A.*, 783 F. Supp. 3d 1, 36 (D.D.C. 2025) ("Courts routinely reject a party's effort to tether a stale claim to new developments to extend the statute of limitations.").

Plaintiff's claims arose as early as 2015 when he filed his complaint in Illinois. While the Parrish Defendants were not parties to that matter, Plaintiff cannot extend the limitations period by introducing "new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period . . ." *FDIC*, 783 F. Supp. 3d at 36 (quoting *Klehr*, 521 U.S. at 190). The allegations against the Parrish Defendants are new predicate acts stemming from the alleged pattern of racketeering activity that took place outside of the limitations period. As such, the claims against the Parrish Defendants are barred by the four-year statute of limitations.

### 2. Count I Must Be Dismissed for Failure to State a Plausible RICO Claim Because It Does Not Sufficiently Allege The Existence of an "Enterprise," Necessary Predicate Acts or a "Pattern of Racketeering Activity" That Caused Plaintiff Injury

In order to state a claim for a violation of the RICO statute, 18 U.S.C. § 1962, "a plaintiff must allege the following elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Son Ly*, 910 F. Supp. 2d at 26 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). *Accord Perez v. Coleman*, 2025 U.S. Dist. LEXIS 164608, *2 (D.D.C. Aug. 25, 2025); *Zernik v. U.S. DOJ*, 630 F. Supp. 2d 24, 27 (D.D.C. 2009). For several reasons, Count I fails to plausibly allege that Defendants violated RICO.

Plaintiff's Complaint fails to allege – as it must – sufficient facts showing a cognizable enterprise distinct from its alleged members. The Complaint alleges that "[t]he association-in-fact of all Defendants . . . constitutes an 'enterprise.'" ECF 105-1, ¶ 539. An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "This type of enterprise must have three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these

associates to pursue the enterprise's purpose." *Cent. Am. Bank for Econ. Integration v. Mossi*, 2025 U.S. Dist. LEXIS 189018, *36 (D.D.C. Sept. 25, 2025) (internal quotations omitted). *Accord Pinson v. U.S. DOJ*, 2023 U.S. Dist. LEXIS 54486, *16 (D.D.C. Mar. 30, 2023); *U.S. Dominion, Inc. v. MyPillow, Inc*., 2022 U.S. Dist. LEXIS 90530, *4 (D.D.C. May 19, 2022). "Put differently, to successfully state a claim under RICO, a plaintiff must plead facts 'identifying the common purpose and organizational and decisonmaking structure of the alleged enterprise.'" *Cent. Am. Bank for Econ. Integration*, 2025 U.S. Dist. LEXIS 189018 at *37 (quoting *Stankevich v. Kaplan*, 156 F. Supp. 3d 86, 94 (D.D.C. 2016) (quoting *Dodd v. Infinity Travel*, 90 F. Supp. 2d 115, 117 (D.D.C. 2000)).

Plaintiff's Complaint fails to make that showing. Among other things, the Complaint baldly alleges that Mr. Firmender "agreed to work with this enterprise in its attempt to set up Antonacci for pursuing Lane's fabricated claims against its architect, whose attorney was aware of the scheme and helped to achieve it," "to set[] up Antonacci for a false claims act investigation" and claim, "to sabotage Lane's case and implicate Antonacci in pursuit of Lane's dubious claims," and "provid[e] Lane a basis for a legal malpractice claim" against Plaintiff. ECF 105-1 at 5, ¶¶ 313, 316, 387, 523f, 524f. But the Complaint contains no *facts* to support the claim that any Defendant, including but not limited to Mr. Firmender and Lane, agreed to work together with the enterprise in taking those actions, or that those actions were taken to further a shared, common purpose with the enterprise. Nor does the Complaint contain – as it must – any facts identifying the organizational and decision-making structure of the enterprise, or that Lane "communicated, met or otherwise coordinated" with other members of the enterprise or even knew any of those members. *Cent. Am. Bank for Econ. Integration*, 2025 U.S. Dist. LEXIS 189018 at *37. Instead, the facts alleged in the Complaint show that the actions allegedly taken by Lane and Mr. Firmender

regarding the "AECOM Fraud" were in isolation from, and had no relation to, any other actions taken by members allegedly associated with the enterprise.

Similarly, the Complaint contains no facts plausibly establishing that Holland & Knight or ROKK was part of an enterprise or communicated, met with, or coordinated with other members of the alleged enterprise beyond conclusory allegations.

"[M]embers of a RICO enterprise must be 'distinct' – that is, 'one must allege and prove the existence of two distinct entities: (1) a 'person;' and (2) an 'enterprise' that is not simply the same person referred to by a different name.'" *U.S. Dominion, Inc.*, 2022 U.S. Dist. LEXIS 90530 at *14 (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)). *Accord Pinson*, 2023 U.S. Dist. LEXIS 54486 at *15. Because the Complaint alleges no facts showing that Holland & Knight, Lane, ROKK, or Mr. Firmender associated, met or otherwise coordinated with the alleged enterprise, or that the actions of Holland & Knight, Lane, ROKK, or Mr. Firmender were part of the organizational and decision-making structure of that enterprise, it does not plausibly allege that those Defendants shared a common purpose of engaging in a course of conduct. Nor does the Complaint allege facts showing the necessary longevity sufficient to permit Lane and Mr. Firmender to pursue the alleged enterprise's purpose. The alleged "AECOM Fraud" transpired over only a limited period of months before Plaintiff's engagement as Lane's counsel was terminated. Because the Complaint does not allege facts showing a shared common purpose and relationships over a sufficiently long time among Holland & Knight, Lane, ROKK, Mr. Firmender and the other alleged members of the enterprise, it fails to identify – as it must – an enterprise distinct from Holland & Knight, Lane, ROKK, Mr. Firmender or the other Defendants, with which Defendants allegedly associated, and for that reason as well, Count I should be dismissed.

Apart from that, the Complaint fails to allege facts showing that the alleged enterprise engaged in a pattern of racketeering activity. Among the predicates constituting "racketeering activity" under RICO are mail fraud and wire fraud. *Bates v. Northwestern Human Servs.*, 466 F. Supp. 2d 69, 78 (D.D.C. 2006) (citing 18 U.S.C. § 1961(1)). The elements of federal mail and wire fraud are "(1) a scheme to defraud, and (2) use of the mails or wires for the purpose of executing the scheme." *Ambellu v. Re'Ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 77 (D.D.C. 2019) (quoting *United States v. Alston*, 609 F.2d 531, 536 (D.C. Cir. 1979)).

"RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *DC2NY, Inc. v. Academy Bus, LLC*, 2019 U.S. Dist. LEXIS 134972, *14 (D.D.C. Aug. 12, 2019). *Accord*, *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 14 (D.D.C. 2014). "Mail and wire fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that 'the circumstances constituting fraud . . . be stated with particularity.'" *Ambellu*, 406 F. Supp. 3d at 78. *Accord*, *Bates*, 466 F. Supp. 2d at 88.[11] "A party pleading fraud must therefore 'state the time, place[,] and content of the false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud.'" *Ambellu*, 406 F. Supp. 3d at 78 (quoting *Kowal*, 16 F.3d at 1278). *Accord, Cent. Am. Bank for Econ. Integration*, 2025 U.S. Dist. LEXIS 189018 at *40; *Bates*, 466 F. Supp. 2d at 89. Thus, "[r]elevant circumstances of mail and wire fraud subject to this heightened standard include 'the time, place and contents of [these] false representations." *Ambellu*, 406 F. Supp. 3d at 78.

[11] Rule 9(b) is designed in part "to allow a District Court to distinguish valid from invalid claims . . . and to terminate needless litigation early in the proceedings." *Id.* at 89 (citation omitted).

Among other things, Plaintiff's Complaint alleges without further detail that: "Firmender deliberately sought to sabotage Lane's case and implicate Antonacci in the pursuit of Lane's dubious claims, [by] utilizing interstate wires," ECF 105-1, ¶ 316; "utilizing interstate wires, a Lane Project engineer further invited Antonacci to Lane's Chantilly, VA office to give Antonacci two thumb drives containing data that Lane hoped would implicate Antonacci in the AECOM Fraud," *id.*, ¶ 351; "this enterprise utilized interstate wires to communicate to the process server that he should not file the documents with the clerk's office," *id.*, ¶ 377; "Defendants violated 18 U.S.C. § 1343 (Wire Fraud)" by "attempt[ing] to set up Antonacci for a False Claims Act violation" and through "Firmender, Wiggins, and others ma[king] false statements about Antonacci's litigation skills," *id.*, ¶¶ 523f, 523g; "Defendants violated 18 U.S.C. § 1341 (Mail Fraud) . . . "by attempt[ing] to set up Antonacci for a False Claims Act violation," *id.*, ¶ 524f; and Defendants violated 18 U.S.C. 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises)" through, among others, Allen Wiggins, Assistant General counsel for Lane, who "frequently traveled between North Carolina and Virginia, Connecticut and Washington, DC in furtherance of this fraudulent scheme." *Id.* ¶ 526a(ii).

Nowhere does the Complaint state – as it must – the time, place and content of the false representations allegedly made by Lane or Firmender, or any Defendant, by mail or wire, or what was retained by Lane or given up by Plaintiff as a consequence of the alleged fraud. The Complaint does not specify – as it must – "what fraudulent statements were made and in what context, when they were made, who made them, and the manner in which the statements were misleading." *Bates*, 466 F. Supp. 2d at 89 (quoting *Intex Recreation Corp. v. Team Worldwide Corp.*, 390 F. Supp. 2d 21, 24 (D.D.C. 2005)). Nor does the Complaint allege – as it must – that Lane or Firmender made "a false statement or omission of fact *to* the [P]laintiff," or that "the allegedly fraudulent statements

'misled the [P]laintiff,'" which is necessary to support a claim of wire or mail fraud. *Bates*, 466 F. Supp. 2d at 91 (citations omitted). Here, "the court is essentially left with conclusory statements" that Defendants "were committing fraud, with no true allegations." *Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 158 (D.D.C. 2016). Such allegations "do not satisfy Rule 9(b)'s pleading standard" and "are wholly insufficient to state a plausible claim." *Id.* at 158-59.[12]

While Plaintiff alleges "Defendants" broadly committed racketeering activities, Plaintiff does not plead any facts to explain how Holland & Knight was involved in any predicate act alleged. *See* ECF 105-1, ¶¶ 515-537. Plaintiff does not allege a single predicate act by Holland & Knight let alone the two requisite predicate acts. Plaintiff merely alleges Holland & Knight asked him to resign from Holland & Knight on or about April 30, 2010, which is not a criminal act or predicate act under RICO. *Id.*, ¶ 72. As such, Plaintiff has failed to state a claim against Holland & Knight. The same is true for the VSB Defendants. The Complaint alleges no facts showing that they joined the alleged enterprise, and its assertion that interstate mails or wires were used in the Virginia disciplinary investigation, Compl. ¶ 437, does not identify any fraudulent representation by either Defendant sufficient to establish mail or wire fraud.

Even if the Complaint's allegations of mail and wire fraud against Defendants were sufficiently pleaded (and they are not) the Complaint fails to allege a "pattern of racketeering activity" on the part of Defendants. "[T]he Supreme Court has construed the pattern element to

[12] Plaintiff's wire and mail fraud claims against Defendants, inclusive of Lane, Mr. Firmender, and the Seyfarth/Perkins Defendants, "fail for an additional, independent reason. Litigation-related activity, even if abusive or meritless, does not 'constitute a RICO predicate act.'" *U.S. Dominion, Inc.*, 2022 U.S. Dist. LEXIS 90530 at *17-18 (quoting *E. Sav. Bank FSB*, 31 F. Supp. 3d at 13). "Put differently, 'allegations of fraudulent . . . litigation activities – without more – cannot constitute a RICO predicate act." *Id.* at *18 (quoting *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)). Here, the Complaint alleges that Lane and Mr. Firmender used interstate wires and mailings in an attempt "to sabotage Lane's case [against AECOM] and implicate Antonacci in the pursuit of Lane's dubious claims." ECF 105-1, ¶ 316. Those litigation-related activities cannot constitute a RICO predicate act.

require a showing that the racketeering predicates are both related and continuous." *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 12 (citing *H.J. Inc. v. N.W. Bell Telephone Co*., 492 U.S. 229, 239 (1989)). *See Cent. Am. Bank for Econ. Integration*, 2025 U.S. Dist. LEXIS 189018 at *35 (to show a pattern, "[t]he predicate offenses must be 'related' and 'amount to or pose a threat of continued criminal activity'") (quoting *H.J., Inc*., 492 U.S. at 234). *Accord, DC2NY, Inc*., 2019 U.S. Dist. LEXIS 134972 at *13; *Ambellu v. Re'Ese Adbarat Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71, 85 (D.D.C. 2019).

Among the factors courts should consider when determining whether the plaintiff has established a "pattern of racketeering activity" are "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 12 (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995)). *Accord, Cent. Am. Bank for Econ. Integration*, 2025 U.S. Dist. LEXIS 189018 at *47-48; *Son Ly*, 910 F. Supp. 2d at 27.

In light of those factors, "at least one near bright-line rule has emerged: if a plaintiff alleges only a single scheme, a single injury, and a few victims, it is virtually impossible for the plaintiff to state a RICO claim." *DC2NY*, 2019 U.S. Dist. LEXIS 134972 at *13 (internal quotations omitted). *Accord, E. Sav. Bank, FSB*, 31 F. Supp. 3d at 12.

Although Plaintiff's Complaint contains the conclusory allegation that "Defendants' enterprise presents a clear threat of continued racketeering activity," ECF 105-1, ¶ 529, it contains no facts to suggest that the actions of Defendants present a threat of continued racketeering activity. Indeed, the Complaint alleges only a few discrete actions taken by Defendants with regard to, for example, the "AECOM Fraud" that occurred over only a few months while Plaintiff served as

Lane's counsel on the AECOM matter. The Complaint "allege[s] no continuing acts of wire or mail fraud" by Lane, Firmender or any other Defendant, and "identif[ies] no other reasons to believe that the specter of RICO violations [by Defendants] remains." *Ambellu*, 387 F. Supp. 3d at 86. Plaintiff has "therefore failed to plausibly allege the type of 'long-term criminal conduct' that Congress was concerned with in enacting the RICO statute." *Id.*

Moreover, Plaintiff's Complaint alleges only a single scheme – to destroy Plaintiff and his legal career – with one injury – that destruction – and a single victim, Plaintiff. "As such, [P]laintiff fails, at a minimum, to allege a *pattern* of racketeering activity, as his claims relate to a single alleged scheme, for which he was the sole injured party." *Zernik v. U.S. DOJ*, 630 F. Supp. 2d 24, 27 (D.D.C. 2009).

Finally, "[i]n order to state a claim under civil RICO, injured parties must show that the RICO predicate offense was not only the but for cause of their injury, but the proximate cause as well." *Greenpeace, Inc. v. Dow Chem. Co.*, 808 F. Supp. 2d 262, 269 (D.D.C. 2011) (citations omitted). *Accord, E. Sav. Bank FSB*, 31 F. Supp. 3d at 11. *See Perez v. Coleman*, 2025 U.S. Dist. LEXIS 164608, *2 (D.D.C. Aug. 25, 2025) ("To succeed on a RICO claim, a plaintiff must 'show that a RICO predicate offense was the proximate cause of injury to his or her business or property.'") (quoting *Cheeks v. Fort Myer Constr. Corp.*, 728 F. App'x 12, 13 (D.C. Cir. 2018)).

Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Greenpeace Inc.*, 808 F. Supp. 2d at 269 (citation omitted). *See E. Sav. Bank, FSB*, 31 F. Supp. 3d at 15 ("to plead a RICO injury, the injury alleged must involve a 'direct causal connection between the predicate offense and the alleged harm.'") (citation omitted). "A link that is too remote, purely contingent, or indirect is insufficient." *Greenpeace, Inc.*, 808 F. Supp. 2d at 269 (citation omitted). *Accord, Cheeks*, 216 F. Supp. 3d at 159.

After alleging in only conclusory terms that "Defendants" committed "RICO violations," the Complaint alleges without further detail that "[a]s a proximate result of these RICO violations, Mr. Antonacci has been injured in the amount of $35,000,000 in lost earnings." ECF 105-1, ¶ 534. "Plaintiff's conclusory assertions do not state a claim under RICO or any other federal law." *Perez*, 2025 U.S. Dist. LEXIS 164608 at 2. The Complaint fails to allege – as it must – any *facts* showing a direct relation between the acts of wire or mail fraud allegedly committed by Defendants and Plaintiff's alleged lost earnings. Among other things, the Complaint alleges that Firmender agreed to orchestrate dubious claims against AECOM to "set up" Plaintiff for a False Claims Act investigation or claim, ECF 105-1, ¶ 313, but does not allege that any such investigation or claim was ever brought against Plaintiff. The Complaint alleges that the enterprise utilized interstate mails and wires to communicate with the process server to prejudice Antonacci's case and give Lane a basis to file a malpractice claim against Plaintiff, *id.*, ¶¶ 377, but "[f]ortunately, Antonacci quickly noticed and resolved the issue." *Id.*, ¶ 378. Plaintiff alleges that he was concerned that Judge Mann would use evidence presented by Plaintiff in the AECOM matter against Lane and provide Lane with a basis for a legal malpractice claim against Plaintiff, *id.*, ¶ 387, but does not allege that Lane ever filed any such claim against Plaintiff. And the Complaint alleges that "Lane's IT Department, at the behest of Firmender, sought to falsely associate Antonacci with Lane's destruction of documents" but "Antonacci promptly corrected Lane." *Id.*, ¶ 381.

Not only does the Complaint not allege any facts showing a direct relation between Defendants' alleged wire and mail fraud and Plaintiff's alleged lost earnings, it alleges facts showing the alleged conduct of Defendants caused no adverse consequences for Plaintiff. That "lack of causation is another fatal flaw to [P]laintiff's RICO claim." *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 15.

### I. Count II of the Complaint Must Be Dismissed Because It Does Not State a Plausible RICO Conspiracy Claim and is Untimely

The elements of a RICO conspiracy claim are that (1) two or more people agreed to commit a RICO offense and (2) a defendant agreed to further the endeavor. *Cheeks*, 216 F. Supp. 3d at 153 (citation omitted). *See* 18 U.S.C. § 1962(d) (making it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b) and (c) of" RICO). "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 16 (quoting *Lightning Lube, Inc. v. Wilco Corp*., 4 F.3d 1153, 1191 (3d Cir. 1993)). "Since . . . [P]laintiff has failed to plead a RICO violation under 18 U.S.C. § 1962(a)-(c), [his] claim under § 1962(d) must fail, because there was no violation in which . . . [any] defendant could have conspired." *Id*. *Accord*, *Son Ly*, 910 F. Supp. 2d at 28; *Greenpeace, Inc*., 808 F. Supp. 2d at 274.

Furthermore, Plaintiff has "failed to allege" – as he must – "any facts directly showing" an "agreement to commit RICO offenses and . . . to further the endeavor to commit RICO offenses." *Cheeks*, 216 F. Supp. 3d at 162. The Complaint does not contain any real conspiracy allegations against Defendants and instead lodges bald allegations without any factual support. For example, Antonacci alleges "Firmender conspired on behalf of himself and this enterprise," "Shapiro and Kiernan conspired on behalf of themselves, Holland & Knight, and this enterprise," and "Rokk conspired on behalf of itself and this enterprise." ECF 105-1, ¶¶ 573, 576, 579. Those conclusory allegations, with "no further details" showing the necessary agreement, "will not do" because Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id*. (quoting *Twombly*, 550 U.S. at 555). *See Son Ly*, 910 F. Supp. 2d at 28 (plaintiffs fail to state a claim for RICO conspiracy where they do not set forth any factual

allegations that defendants agreed to further any such RICO conspiracy, "other than plaintiff's' conclusory allegations").

Plaintiff makes similarly conclusory assertions regarding the other Defendants. The Complaint fails to provide even general allegations that might suggest where or how Descrybe met other Defendants, when or why Descrybe agreed with those Defendants to conspire against Antonacci, or what the terms of the Defendants' agreement involved, all of which renders the claim insufficient. *See Busby v. Cap. One, N.A.*, 772 F. Supp. 2d 268, 278 (D.D.C. 2011) ("[T]he plaintiff's conspiracy claim is grounded on the bare, conclusory assertion that the defendants 'conspired to commit, and did commit fraud, on which Plaintiff relied to her detriment.' Such an allegation, unadorned by any substantiating factual allegations, is insufficient to state a viable conspiracy claim."); *Acosta Orellana v. CropLife Intern.*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010) ("Fatal then to the plaintiffs' conspiracy theory claim is the failure . . . to provide any indication of when or how such an agreement was brokered, or how the CropLife Defendants specifically, as opposed to all the named defendants generally, were parties to an agreement.").

Plaintiff alleges similar conclusory allegations against the Parrish Defendants. For example, Plaintiff alleges that "the Defendants conspired with Palma and Parrish in order to attempt to murder Antonacci so he could not prosecute his Fourth Circuit Appeal, and [failing] to have achieve[d] that goal, conspired with Parrish to ensure Palma could not be held responsible and Antonacci could not receive renumeration for his medical expenses." ECF 105-1, ¶ 550(l). Similarly, the Complaint alleges no facts showing an agreement between the Parrish Defendants and any other Defendants to murder Plaintiff; instead, it alleges merely that Defendants "conspired" with one another, which is insufficient.[13]

---

[13] Finally, even if the Complaint otherwise stated a plausible claim for RICO conspiracy against Defendants – and it does not – that claim must still fail because it is untimely. "The statute of limitations for a civil conspiracy claim

### J. Count III of the Complaint Must Be Dismissed for Lack of Subject-Matter Jurisdiction and Failure to State a Plausible and Timely Antitrust Conspiracy Claim

Plaintiff appears to allege in Count III that Defendants conspired in order "to destroy Antonacci's legal career" and "monopolize the private practice of law among corrupt Zionists," and that, "as a proximate result of these violations of D.C. Code §§ 28-4502 and 4503, Mr. Antonacci has been injured in the amount of $35,000,000 in lost earnings." ECF 105-1 ¶¶ 590-592, 611, 635, 649. Count III should be dismissed for several reasons.

As a threshold issue, the D.C. Antitrust Law claim is untimely. Antonacci's claims are brought pursuant to the D.C. Antitrust Act, inclusive of D.C. Code § 28-4511(b), which sets a four-year statute of limitations for efforts to recover damages. By his own account, Antonacci claims to have suffered damage as a result of a conspiracy that was, according to Antonacci, directed at him long before he filed suit in the Northern District of Illinois in 2015. The Complaint here is replete with allegations of purported harm suffered more than four years ago. *See, e.g.*, Compl. ¶¶ 109-117 (detailing harm purportedly suffered in 2012); *id.*, ¶¶ 118-251 (detailing allegations between 2012 and 2015). Antonacci's D.C. antitrust claim is time-barred.

Courts routinely "decline to exercise supplemental jurisdiction" over a state law claim when the court "has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).[14] *See, e.g.*, *DeWayne v. United States*, 2020 U.S. Dist. LEXIS 166922, *3 (D.D.C.

under RICO is four years and accrues upon discovery." *Chalabi v. Hashemite Kingdom of Jordan*, 2007 U.S. Dist. LEXIS 68951, *14 (D.D.C. Sept. 19, 2007) (citations omitted). The four-year statute of limitations began to run against Holland & Knight when, according to the Complaint, Plaintiff discovered the RICO conspiracy in 2009 while working at Holland & Knight on the Katz fraud case. ECF 105-1 at 4, ¶¶ 29-30, 33. The four-year statute of limitations against Lane and Mr. Firmender began to run at the latest on June 17, 2021, when, according to the Complaint, Plaintiff became aware of the alleged AECOM Fraud and Lane's attempt to implicate him in it and was directed to stop working on the AECOM matter after he raised his concerns with Mr. Firmender. Because Plaintiff did not file his Complaint until January 23, 2026, well past the end of the limitations period on June 17, 2025, his RICO conspiracy claim asserted against Defendants is time-barred.

[14] "For the purposes of supplemental jurisdiction, the term 'State' includes the District of Columbia." *Ambellu*, 387 F. Supp. 3d at 86 n. 5 (citing 28 U.S.C. § 1367(e)).

July 28, 2020) ("Absent a plausible RICO cause of action, the court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.") (citing 28 U.S.C. § 1367(c)(3)); *Ambellu*, 387 F. Supp. 3d at 87 ("Because the Court has dismissed the RICO counts, it finds that declining to exercise jurisdiction is proper."); *Son Ly*, 910 F. Supp. 2d at 29 (in the usual case in which the federal-law claims are eliminated, "judicial economy, convenience, fairness, and comity . . . will point toward declining to exercise jurisdiction over the remaining state-law claims") (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 n. 7 (1988)). *See also Antonacci*, 2024 U.S. Dist. LEXIS 107279 at *7 ("Antonacci cannot use civil RICO as the springboard for federal question jurisdiction" and "[a]s that is the only basis for jurisdiction, the Court will decline to exercise supplemental jurisdiction over Antonacci's state-law claims.") (citing 28 U.S.C. § 1367(c)(3)).

Here too, because the primary purported basis for jurisdiction over the claims asserted against Defendants is RICO, and because Plaintiff's RICO claims must be dismissed, the Court should decline to exercise jurisdiction over Plaintiff's remaining state-law claim against Defendants for conspiracy to violate the D.C. Antitrust Act.[15]

Even were the Court to exercise supplemental jurisdiction over Count III, that claim must still fail. "In order to survive a motion to dismiss for failure to state a claim for civil conspiracy under District of Columbia law, a complaint must allege with some factual support: '(1) an agreement between two or more persons, (2) to participate in an unlawful act, or in a lawful act in an unlawful manner, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme.'" *Acosta*

[15] Although Count IV alleges that "all" the Defendants also violated 42 U.S.C. § 1985, it contains no allegations specific to many of the Defendants, including but not limited to the Seyfarth/Perkins Defendants, Lane, and Firmender. As discussed below, Count IV fails to state a claim against the omitted Defendants and, thus, cannot constitute a basis for federal subject-matter jurisdiction.

*Orellana*, 711 F. Supp. 2d at 113 (quoting *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000)).

Again, "the existence of an agreement . . . is the 'essential element of a conspiracy claim.'" *Id*. (quoting *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997)). "[I]n pleading that a defendant entered into an agreement the plaintiff must set forth more than just conclusory allegations of [the] agreement." *Id*. (quoting *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004)) (citing *Graves*, 961 F. Supp. at 321). Allegations that fail "to provide any indication of when or how such an agreement was brokered, or how [the defendants] . . . were parties to an agreement" are "lacking and devoid of any factual support" and "fatal" to a civil conspiracy claim. *Id*.

Count III contains only conclusory allegations that all the "Defendants" agreed to effect a preconceived plan, and each Defendant "conspired on behalf of himself and this enterprise." *See* ECF 105-1, ¶¶ 590, 635. Those bald allegations are "not buttressed with any factual support" showing when or how the alleged agreement was brokered and how it is that any individual Defendant became a party to it, which "render[s] the pleading deficient." *Id*.

Indeed, Plaintiff's civil conspiracy claim, by including allegations that Firmender, through acts of wire and mail fraud, "conspired with the Defendants and others . . . to orchestrate the AECOM Fraud," ECF 105-1, ¶ 611, is, as noted previously, subject to the heightened pleading requirements of Rule 9(b), which requires that the circumstances constituting fraud be stated with particularity. As shown above, the Complaint's allegations, including those in Count III, do not satisfy Rule 9(b)'s heightened pleading standard and are wholly insufficient to state a plausible claim for civil conspiracy alleged in Count III.

Count III must fail for additional reasons. D.C. Code § 28-4502 prohibits "every contract, combination . . . or conspiracy in restraint of trade . . . within the District of Columbia," and D.C. Code § 28-4503 makes it unlawful for "any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce . . . within the District of Columbia."[16]

To state a claim under D.C. Code § 28-4502, the plaintiff "must show that there is a 'concerted action' that 'unreasonably restrains trade.'" *District of Columbia v. Amazon.com, Inc.*, 320 A.3d 1073, 1080 (D.C. 2024) (citing *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 186 (2010)). *See WAKA, LLC v. DC Kickball*, 517 F. Supp. 2d 245, 250 (D.D.C. 2007) (to state a claim under Section 1 of the Sherman Act, "a plaintiff must allege that 'defendants entered into some contract, combination, conspiracy, or other concerted activity that unreasonably restricts trade in the relevant market'") (quoting *Dial A Car, Inc. v. Transp. Inc.*, 884 F. Supp. 584, 591 (D.D.C. 1995)).

To state a claim under D.C. Code § 28-4503 for alleged monopolization, a plaintiff must allege that the Defendant had (1) "a specific intent to destroy competition or control competition in the relevant market" and (2) "a dangerous probability of success in actually monopolizing the relevant market." *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 48-49 (D.D.C. 2018) (quoting *Dial A Car, Inc.*, 884 F. Supp. at 589). To sufficiently assert a claim under D.C. Code § 28-4503 for conspiracy to monopolize, a plaintiff must allege "(1) the existence of a combination or conspiracy to monopolize, (2) overt acts done in furtherance of the combination or conspiracy, (3) an effect upon an appreciable amount of . . . intrastate commerce, and (4) specific intent to

[16] "Because these provisions essentially track the language of §§ 1, 2 of the Sherman Act, respectively, much of the analysis for federal antitrust claims will provide much force in the context of these provisions." *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 45 (D.D.C. 1998). *See also* D.C. Code § 28-4515 (allowing court to "use as a guide interpretations given by federal courts to comparable antitrust statutes").

monopolize a designated segment of commerce." *Id.* at 49 (quoting *GTE New Media Servs.*, 21 F. Supp. 2d at 44).

"To survive a 12(b)(6) motion to dismiss in an antitrust case, plaintiffs must do more than simply paraphrase the antitrust laws or state in conclusory terms that [the defendant] has violated those laws." *WAKA, LLC*, 517 F. Supp. 2d at 249 (citing *Dial A Car, Inc.*, 884 F. Supp. at 588). If the facts he narrates do not at least outline or adumbrate such a violation, "he will get nowhere merely by dressing them up in the language of antitrust," and '"[b]are legal conclusion[s]' will not suffice." *Id.* (quoting *Dial A Car, Inc.*, 884 F. Supp. at 588).

Here, Plaintiff merely states in conclusory terms that individual Defendants conspired on behalf of themselves and other Defendants to take actions that constitute violations of D.C. Code §§ 28-4502 and 4503. ECF 105-1, ¶¶ 590, 611, 619, 627-649.

Indeed, Count III does not even attempt to "dress up" those alleged antitrust violations "in the language of antitrust." For example, the Complaint does not narrate *any* facts showing how or why Firmender's actions in "orchestrating the AECOM Fraud": "unreasonably restrains trade," which is necessary to state a claim under Section 4502; evinces "a specific intent" to destroy or control competition in the relevant market and "a dangerous probability of success in actually monopolizing the relevant market," which is necessary to state a claim for alleged monopolization under Section 4503; or had "an effect upon an appreciable amount of commerce" in the District of Columbia and revealed a "specific intent to monopolize a designated segment of commerce," which is necessary to state a claim for conspiracy to monopolize under Section 4503.

Absent those required factual allegations, the Complaint does not plead the type of "antitrust injury" necessary to confer on Plaintiff standing to bring his antitrust claims. *Atl. Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*, 295 F. Supp. 2d 75, 88 (D.D.C. 2003). "Because

the antitrust laws were enacted for the 'protection of *competition*, not *competitors*,' . . . a plaintiff must . . . show an anticompetitive impact on the market." *WAKA, LLC*, 517 F. Supp. 2d at 249 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977)). *Accord, Banneker Ventures, LLC v. Graham*, 19 F. Supp. 3d 231, 251 (D.D.C. 2014). *See Stallard*, 2024 U.S. Dist. LEXIS 215791 at *24-25 (in determining whether a plaintiff has "antitrust standing" courts must focus on "the bedrock principle of this field: antitrust laws protect market (*i.e.*, economic) competition") (quoting *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 983 (D.C. Cir. 2017).

"Therefore, in proving an antitrust injury, the plaintiff must plead . . . an '[actual] injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *WAKA, LLC*, 517 F. Supp. 2d at 249 (quoting *Brunswick Corp.*, 429 U.S. at 489). "Absent injury to competition, injury to plaintiff as competitor will not satisfy the pleading requirement." *Id.* (quoting *Mizlou Television Network, Inc. v. Nat'l Broad. Co.*, 603 F. Supp. 677, 684 (D.D.C. 1984)). *Accord, Banneker Ventures, LLC*, 19 F. Supp. 3d at 251. *See Johnson*, 869 F.3d at 983 (plaintiffs only claim injuries to them as individuals, but "injury to a single competitor does not suffice to constitute an injury to competition," so the "injuries [p]laintiffs claim are simply not those contemplated by the antitrust laws" and, therefore, their "antitrust claims fail to meet the requirements of antitrust standing"). *See also Stallard*, 2024 U.S. Dist. LEXIS 215791 at *25 ("plaintiff lacks antitrust standing because he has not properly alleged how Voodoo harmed the competitive mobile video game market").

Beyond implausibly alleging in conclusory terms that a "purpose" of Defendants' "plan was to monopolize the private practice of law among corrupt Zionists in the District of Columbia, the City of Chicago, and Northern Virginia," ECF 105-1, ¶ 592, Plaintiff's Complaint pleads no

facts showing that, in "orchestrating the AECOM Fraud," either Lane or Mr. Firmender caused any economic injury to any market, or had any effect on an appreciable amount of commerce in the District of Columbia.

The Complaint, therefore, does not plausibly allege the type of "antitrust injury" necessary to confer on Plaintiff standing to bring his antitrust claims. Indeed, the real gravamen of Count III and the Complaint generally, alleged repeatedly, is that the enterprise: sought to destroy Plaintiff, ECF 105-1 at 4; has "defamed" or "disparaged" him, *id.*; spread "false narratives" and "lies" about him, *id.*; "attempted to murder" him, *id.*; attempted "to associate" him with "dubious claims . . . orchestrated" by Lane or Mr. Firmender in order to "set up," "sabotage," "target," and "implicate" him in the "AECOM Fraud," *id.*, at 5, ¶¶ 316, 347, 351; "wished to end his career," *id.*, ¶ 64, "sought retaliation against him, *id.*, ¶ 65; sought "to prevent" him "from obtaining employment," *id.*, ¶ 81; sought to ensnare him in "a trap," *id.*, ¶ 93; sought to "sabotage" one of his cases, *id.*, ¶ 40; acted to sabotage his Illinois Bar application, *id.*, ¶ 176; collected and fabricated "opposition research" on him, *id.*, ¶ 419; "infiltrated" his computer and mobile phone, *id.*, ¶ 367; and prosecuted him before the Virginia State Bar. *Id.*, ¶ 459.

In short, as Count III makes clear, the alleged purpose of the enterprise's concerted plan "was to destroy Antonacci's legal career." *Id.*, ¶ 591. The D.C. Antitrust Act, however, was enacted to protect "competition," and not an individual from those types of individual injuries asserted by Plaintiff. Because Plaintiff's alleged injuries do not suffice to constitute an economic injury to competition or the market, his claims in Count III must be dismissed for lack of antitrust standing.

For the foregoing reasons, Plaintiff's claims against Holland & Knight in Count III also fail. Plaintiff alleges no facts specific to Holland & Knight's alleged antitrust violations. *Id.*,

¶¶ 589-649. Nor can Plaintiff's allegation that he was forced to resign from Holland & Knight in April 2010 be an antitrust violation or injury. *Id.*, ¶ 593.[17]

**K. Count IV of the Complaint Must Be Dismissed for Failure to State a Plausible Conspiracy Claim to Interfere with Civil Rights**

The Complaint alleges in Count IV (mislabeled "Count V" by Plaintiff) that "all Defendants" conspired to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985. Specifically, without making any mention of Holland & Knight, Lane or Mr. Firmender, Count IV alleges that "[Richard] Johnson and the Virginia State Bar, while acting under the color of state law, deprived Antonacci of rights, privileges and immunities guaranteed by the U.S. Constitution," by investigating him and suspending his Virginia Bar license, *id.*, ¶¶ 652-662, 665, and that those acts are "part of the same conspiracy and all Defendants are therefore liable for the conspiratorial acts alleged herein." *Id.*, ¶ 663. Count IV fails to state a plausible claim.

In order "[t]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, any person or class of persons the equal protection of the laws [or of equal privileges and immunities under the laws], . . . and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *Jones*, 2025 U.S. Dist. LEXIS 59302 at *17 (quoting *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009)). "Notably, '[t]he statute does not apply to *all* conspiratorial tortious interference with

[17] And again, even if Plaintiff had antitrust standing – and he does not – and the Complaint otherwise stated a plausible claim under the D.C. Antitrust Act – and it does not – that claim must still fail because it too is untimely under the statute's four-year limitations period. D.C. Code § 28-4511(b). The only allegations related to Holland & Knight are Plaintiff's allegations pertaining to his resignation on or about April 30, 2010, which is well outside the four-year statute of limitations on April 30, 2014 and is time-barred. For Lane and Mr. Firmender, the limitations period began to run at the latest on June 17, 2021, when, according to the Complaint, Plaintiff became aware of the alleged AECOM Fraud and Lane's attempt to implicate him in it and was directed to stop working on the AECOM matter after he raised his concerns with Mr. Firmender. Because Plaintiff did not file his Complaint until January 23, 2026, well past the end of the four-year limitations period on June 17, 2025, his D.C. Antitrust Act claim asserted against Defendants is time-barred.

the rights of others, but only those motivated by some class-based, invidiously discriminatory animus.'" *Id*. at *17-18 (quoting *Atherton*, 567 F.3d at 688).[18]

Again, a conspiracy requires, among other things, "an agreement between two or more persons." *Jones*, 2025 U.S. Dist. LEXIS 59302 at *15. Count IV, however, "fails to identify an agreement" between Firmender or Lane and Mr. Johnson, the Virginia State Bar or any other Defendant to investigate Plaintiff and seek the suspension of his Virginia Bar license, "but rather asserts in wholly conclusory terms," *id*., that the actions of Mr. Johnson, the Virginia State Bar and Shaun So are "all part of the same conspiracy" allegedly also involving the other Defendants. ECF 105-1, ¶ 663.

The allegations against the VSB Defendants likewise fail to establish an agreement to deprive Plaintiff of equal protection or other federally protected rights. Plaintiff alleges that Johnson prosecuted disciplinary charges and that the VSB participated in proceedings leading to the suspension of his Virginia law license. But those allegations identify no agreement with other Defendants, much less one motivated by the class-based, invidiously discriminatory animus required by § 1985(3). *See Atherton*, 567 F.3d at 688.

But again, "[c]onclusory allegations of an agreement will not suffice." *Jones*, 2025 U.S. Dist. LEXIS 59302 at *15 (quoting *Burnett v. Sharma*, 511 F. Supp. 2d 136, 143 (D.D.C. 2007)). Like the complaint in *Jones*, Plaintiff's Complaint "contains only 'conclusory allegations' of a conspiracy; it 'fails to allege the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between [Defendants] to deprive [Plaintiff] of any legal rights or protections," *id*., at *18 (quoting *McCreary*, 2005 U.S. Dist.

[18] "This requirement is to be read narrowly to avoid converting Section 1985 into a general federal tort law." *McCreary v. Heath*, 2005 U.S. Dist. LEXIS 34082, *19 (D.D.C. Sept. 26, 2005) (citation omitted).

LEXIS 34082 at *17-18), "let alone an agreement 'motivated' by 'class-based, invidiously discriminatory animus.'" *Id*. (quoting *Atherton*, 567 F.3d at 688). Count IV therefore fails to state a claim against the VSB Defendants as well as the other Defendants.[19]

**L. The CFAA Claim Must Be Dismissed for Failure to State a Plausible Claim**

Count V fails for the same reasons set out in Section A: the Eastern District of Virginia already held Plaintiff's CFAA allegations against The So Company "wholly insubstantial." *Antonacci*, 2024 U.S. Dist. LEXIS 107279, at *7. It fails on the merits for three more reasons. First, a CFAA plaintiff must plead facts showing that the defendant accessed a protected computer without authorization or by exceeding authorized access. 18 U.S.C. § 1030; *Van Buren v. United States*, 593 U.S. 374, 378-79 (2021). The Complaint offers only the bare recital that "So and Wheeler, on behalf of Storij, knowingly, and with intent to defraud, accessed Antonacci's computer systems and mobile phone without authorization or exceeding authorized access." Compl., ¶ 669. The only supporting "fact" is that Shaun So once asked for a Zoom call, *id.*, ¶ 366, from which Plaintiff speculates that The So Company hacked his camera and audio or, alternatively, misled unnamed "authorities" into issuing a warrant. *Id*., ¶¶ 369-70. Plaintiff does not allege how, when, or what was accessed, or when or how he learned of it. Such "threadbare recitals" do not state a claim. *Iqbal*, 556 U.S. at 678.

Second, a CFAA claim requires "loss" of at least $5,000. 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), (e)(11), (g); *Lewis-Burke Assocs. LLC v. Widder*, 725 F. Supp. 2d 187, 192 (D.D.C. 2010). The

[19] The statute of limitations for claims under 42 U.S.C. § 1985 is three years under District of Columbia Code § 12-301(8). *Curtis v. Lanier*, 535 F. Supp. 2d 89, 95 (D.D.C. 2008) (citing *Hall v. Clinton*, 285 F.3d 74, 82 (D.C. Cir. 2002)). Plaintiff alleges an ongoing conspiracy under § 1985 by all Defendants beginning in approximately 2009 and continuing through the suspension of Plaintiff's Virginia State Bar license in 2025. ECF 105-1, ¶¶ 651-666. Plaintiff does not allege Holland & Knight took any recent actions as part of the alleged conspiracy under § 1985 that are within the three-year statute of limitations. The only actions Plaintiff alleges Holland & Knight took occurred in 2010, which is well beyond the three-year statute of limitations. Plaintiff's claim against Holland & Knight is time-barred.

Complaint alleges only "economic damage . . . including lost profits, in an amount to be proven at trial." Compl., ¶ 672. It identifies no cost of responding to an offense, assessing damage, or restoring data, and does not even allege that any loss exceeded $5,000.

Third, Count V is time-barred. A CFAA action must be brought "within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). Plaintiff alleges that the access occurred while The So Company was his client, from 2015 to 2021, and that the "scheme" continued only "through May 2022." Compl., ¶¶ 258-59, 263, 409. He formally terminated the relationship on December 8, 2023, *id.*, ¶ 417, and named The So Company in a CFAA claim in the Eastern District of Virginia in February 2024, *id.*, ¶ 420, confirming he knew of the alleged damage before then. Plaintiff did not file this action until January 23, 2026, well over two years later. Count V should be dismissed with prejudice.

**M. <u>Ineffective Service Upon Storij Pursuant To Rule 12(b)(5)</u>**

When service is challenged, the plaintiff bears the burden of showing that it "satisfied the requirements of the relevant portions of Rule 4 and any other applicable provisions of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987); *see* Fed. R. Civ. P. 4(h)(1). Plaintiff cannot meet that burden. His only attempt at service was delivery on February 9, 2026, to CT Corporation System in Washington, D.C. ECF 18. But on February 22, 2021, The So Company filed a Withdrawal of Foreign Registration Statement that expressly "revokes the authority of its registered agent to accept service on its behalf" and designates a Brooklyn, New York address for service. ECF 68-4, ¶¶ 4A-4B. That revocation became effective 31 days later. D.C. Code § 29-104.10. CT Corporation confirmed as much the next day, notifying Plaintiff that it was "not the registered agent" and could not "forward the documents to any party." [20]

[20] A true and correct copy of the Notice of Rejected Service of Process is attached hereto as Exhibit A.

Plaintiff's reliance on a stale entry on the D.C. Department of Licensing and Consumer Protection website, ECF 68-5, changes nothing. The same record lists The So Company's status as "Withdrawn" as of February 22, 20221, and a government website cannot confer authority that the principal revoked. "[T]here must be evidence that the defendant intended to confer that authority upon the agent," and an agent's acceptance of papers is "not enough." *Pollard v. District of Columbia*, 285 F.R.D. 125, 128 (D.D.C. 2012). More than 90 days have passed since the Complaint was filed without valid service, and Plaintiff, an experienced attorney, has shown no good cause. Fed. R. Civ. P. 4(m). The Complaint should be dismissed as to The So Company.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted this 16th day of November 2026.

/s/ Christopher W. Mahoney
Christopher W. Mahoney, DC Bar No. 394416
BARCLAY DAMON LLP
1742 N Street, NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
cmahoney@barclaydamon.com

*Counsel for Defendants*
*The Lane Construction Corporation and*
*Seth Firmender*

*On behalf of all Defendants*

Jason A. Ross, DC Bar No. 1047909
Jeanne Louise Heiser, DC Bar No. 219176
JACKSON LEWIS P.C.
11790 Sunrise Valley Drive, Suite 400
Reston, Virginia 20191
(703) 483-8300 – Telephone
(703) 483-8301 – Facsimile
Jason.Ross@jacksonlewis.com
JeanneLouise.Heiser@jacksonlewis.com

*Counsel for Holland & Knight, LLP*

Barak Cohen, DC Bar No. 485945
Barak.Cohen@ashurstperkins.com
ASHURST PERKINS COIE US LLP
700 13th Street, NW, Suite 800
Washington, D.C. 20005-3960
Telephone: 202-654-6200
Facsimile: 202-654-9000

Jason R. Waters, DC Bar No. 491066
Shari Manasseh, DC Bar. No. 1031029
Lauren Gilman, DC Bar No. 90008050
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
8444 Westpark Drive - Suite 510
McLean, VA 22102-5102
Telephone: (703) 245-9300
Facsimile: (703) 245-9301
Jason.Waters@wilsonelser.com

Thomas J. Tobin, DC Bar No. 1049101
Tommy.Tobin@ashurstperkins.com
ASHURST PERKINS COIE US LLP
1301 Second Ave., Ste. 4200
Seattle, WA 98101
Telephone: 206-359-8000
Facsimile: 206-359-9000

*Attorneys for Anita Ponder, Matthew Gehringer, Perkins Coie LLP, and Seyfarth Shaw LLP*

Shari.Ohri@wilsonelser.com
Lauren.Gilman@wilsonelser.com

*Counsel for Storij Inc., d/b/a The So Company*

Jonathan Su, DC Bar No. 478171
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200
jonathan.su@lw.com

Edward N. Siskel (*pro hac vice*)
LATHAM & WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
(312) 876-7700
ed.siskel@lw.com

*Attorneys for Defendant Rahm I. Emanuel*

Joshua A. Levy, DC Bar No. 475108
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Ste. 605
Washington, D.C. 20006
Tel: 202-845-3215
Jal@levyfirestone.com

*Attorney for Defendant Bean LLC*

Paul-Kalvin Collins, DC Bar No. 1741865
BAILEY & GLASSER, LLP
1055 Thomas Jefferson, Suite 510
Washington, DC 20007
Phone: (202) 463-2101
Fax: (202) 463-2103
pcollins@baileyglasser.com

*Attorney for Defendant ROKK*

David A. Vogel, DC Bar No. 442289
COOLEY LLP
One Freedom Sq. | Reston Town Center
11951 Freedom Dr.
Reston, VA 20190-5656
dvogel@cooley.com

Katelyn Kang (*pro hac vice*)
COOLEY LLP
55 Hudson Yards, Floor 43
New York, NY 10001-2157
kkang@cooley.com

*Attorney for Defendant Descrybe LLC*

Ethan P. Fallon, DC Bar No. 1029705
Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
efallon@oag.state.va.us

*Counsel for The Virginia State Bar and Richard W. Johnson, Jr.*

Justin M. Flint (#491782)
ECCLESTON & WOLF, P.C.
1629 K Street, NW, Suite 260
Washington, DC 20006
Tel: (202) 857-1696
Fax: (202) 857-0762
flint@ewdc.com

*Counsel for Defendants Parrish Law Firm, PLLC and 9208 Lee Avenue LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of November 2026, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing upon all parties of record to this cause by electronic notification (NEF) to the CM/ECF participating attorneys.

/s/ Christopher W. Mahoney
Christopher W. Mahoney